IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION NO. |
| ALLEN PENDERGRASS, | 1:17-cr-224-AT-CMS |
| Defendant. | |

### REPORT AND RECOMMENDATION

This case is before the Court on the initial and particularized Motion to Suppress Search Warrant filed by Defendant Allen Pendergrass. [Docs. 26, 40]. For the reasons that follow, I recommend that the Motion to Suppress be denied.

### BACKGROUND

Defendant has been charged in a ten-count indictment with wire fraud, money laundering conspiracy, and aggravated identity theft. [Doc. 1]. The object of the pending Motion to Suppress is a search warrant dated September 19, 2013, signed by a Fulton County Magistrate Court judge, with an attached affidavit executed by Douglas Ricks, an officer with the Atlanta Police Department (the "Warrant").[1] [Doc. 44-1 at 1-8].

---

[1] Defendant did not file a copy of the warrant with his motion. In his filings, Defendant fails to provide important details about the warrant such as the place to

The Warrant authorizes a search of the business property located at 4854 Old National Highway, in Atlanta, Georgia with the name "Asset Financial Recovery, LLC" on the front door. [Doc. 44-1 at 1]. Among other things, the Warrant authorizes the seizure of computers and a subsequent search of those computers for evidence of forgery and theft by taking. [Id. at 2-3]. Officer Ricks provided the following detailed, sworn testimony in support of his request for issuance of the Warrant:

> The City of Atlanta's Major Fraud Unit was notified of a fraud against the city committed by the business of Asset Financial Recovery, Inc. They advised us an asset recovery company contacted the financial department of the City of Atlanta both by emails and telephone to advise they represented various businesses and individuals who had not received payments awarded to them by the City of Atlanta. The asset recovery company provided names of businesses and individuals who were owed money by the City of Atlanta. The City of Atlanta's Financial Department conducted an audit to see if the checks had been cashed by those businesses and individuals and learned the checks had not been cashed. The City of Atlanta cancelled the original checks [and] then re-issued checks to the victims through the recovery company (Asset Financial Recovery, Inc.). The checks were mailed to [P.O. Box] 1809 in Fayetteville, Georgia 30214.

---

be searched and the items to be seized; all he provides is the date (September 19, 2013) and the name of the affiant (Officer Ricks). [Doc. 40 at 1]. In connection with its response, the Government filed a warrant with the same date and affiant as the warrant described in the Motion to Suppress. [Doc. 44-1]. I have assumed for purposes of this Report and Recommendation that the warrant attached to the Government's response is the warrant about which Defendant is objecting. I note that Defendant did not file a reply brief or otherwise indicate that the Government was working off of the wrong warrant.

On July 16, 2013, Ms. Linda Guy from the City of Atlanta's financial department received information from attorney Ashley Miller advising she is a victim of identity fraud.  Attorney Miller advised she represented the law firm of Weissman, Nowack, Curry and Wilco in a case against the City of Atlanta.  Attorney Miller told financial officer Linda Guy her signature had been forged on the documents sent to the City of Atlanta requesting a payment of $8,000.00 dollars to be sent to the listed P.O. Box. On June 03, 2013, the City of Atlanta's financial department then checked the other request that had been by made by Asset Financial Recovery, Inc.  Currently the City of Atlanta's financial department is not sure how Asset Financial Recovery, Inc. obtained the names of the businesses and individuals who had not been paid by the City of Atlanta.  Ms. Guy told us Asset Financial Recovery, Inc. filed an open records request and this is possibly how they learned who had not received payments from the City of Atlanta.

I checked the business, Asset Financial Recovery Inc. to see if it is [a] legitimate business in the state of Georgia. I learned the company was incorporated on 10-22-2012 as a profit corporation. The registered agents are Deidre Barber, Allen James Pendergrass and Nathan Pendergrass.  Investigator Bower told me he can see in the account statements deposits of more than $26,000.00 dollars on May 15, 2013 and $100,000.00 into the account of Assets Financial Recovery Inc. on June 20, 2013.  He also identified the person making the deposits as Allen James Pendergrass.  Investigator Bower also advised me as soon as the money was deposited into the business account numerous checks were made payable to Deidra Barber and Terrell McQueen[.T]hese check[s] were in excess of ten thousand dollars. Then email request[s] for payment were made by Mr. Terrell McQueen.

Investigator Bower sent me pictures of the suspect Mr. Allen James Pendergrass cashing the fraudulently obtained checks. The checks were cashed in Fulton County at the Wells Fargo bank located at 5060 Old Bill Cook Road, College Park, Georgia 30349. I secured two arrest warrants for Forgery 3rd degree and two for Theft by Taking against Mr. Allen James Pendergrass.

> On August 28, 2013 Sgt. Cooper and [I] went to the address of the business and noticed a grey Mercedes with the tag number of AVQ5903 Ga. I asked investigator V. Bracley to check it on ACIC. She advised me the car is registered to Allen James Pendergrass with the address 44l Hwy 279 Fayetteville, Ga. 30214. Sgt. Cooper and I walked inside the business and saw a glass case on the wall with the locations of each business in the building. Asset[] Financial Recovery Inc. is located in suite 161. We took pictures of the office door with the business's name plate next to it. I then contacted Investigator Ron Bower from Wells Fargo Bank. I asked him to check the deposits and to let me know if there were pictures of the deposits being made in their bank. Mr. Bower advised he did have two pictures of the suspect Mr. Allen Pendergrass depositing the two fraudul[ent]ly obtained che[c]ks. He sent me the two images.
>
> Base[d] on the above information I am requesting a search warrant for the business of Asset Financial Recovery.

[Doc. 44-1 at 12, "Affidavit"].[2]

Defendant argues that there is no probable cause for the issuance of the Warrant, and therefore all evidence and fruits of the search and seizure pursuant to that Warrant should be suppressed. [Doc. 40 at 1-2]. Quoted below is the totality of Defendant's argument in his two-page particularized Motion to Suppress:

> The affidavit, signed by Officer Ricks, relates (after much boilerplate) that a purported victim related that her signature had been forged and funds in the amount of $8,000 had been misappropriated. She then filed an open records request to obtain information from the city of Atlanta. She then apparently related what she believed might had

---

[2] Several words in the Affidavit have incorrect capitalization that I have corrected for ease of reading.

>[sic] happened, but the city never investigated to see if that check or any other check(s) had been misappropriated.

[Doc. 40 at 1].

Although I originally set the Motion to Suppress for an evidentiary hearing, the parties later informed me during a pre-trial conference on January 22, 2018 that no such hearing was necessary. [Doc. 42].

The Government filed a response to Defendant's Motion to Suppress, arguing that there is more than ample evidence presented in the Affidavit to establish probable cause to support the Warrant, and even if there were not, the Warrant can be saved by the Leon good faith exception to the exclusionary rule. [Doc. 44]. As noted above, Defendant did not file a reply brief.

## DISCUSSION

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). The search warrant affidavit must "state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) (citation omitted). "[T]he affidavit should establish a

connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." Id. (citation omitted).

"[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate judge's decision to issue the warrant." United States v. Bushay, 859 F. Supp. 2d 1335, 1379 (N.D. Ga. 2012) (citing Massachusetts v. Upton, 466 U.S. 727, 728 (1984)). Courts are not to "interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." Id. at 1379 (citing United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994)); see also United States v. Robinson, 62 F.3d 1325, 1331 (11th Cir. 1995) (requiring the reviewer to afford "great deference" to a judicial determination of probable cause).

The Government argues, and I agree, that the Affidavit makes a sufficient showing that there is a fair probability that evidence of the crimes of theft by taking and forgery would be recovered in the business location. [Doc. 44 at 2]. In his Affidavit, Officer Ricks avers that people affiliated with Asset Financial Recovery ("AFR"), had falsely represented to the City of Atlanta that AFR

represented certain individuals and companies who were owed payments from the City of Atlanta. Officer Ricks states that in reliance on that false representation, the City of Atlanta mailed checks to AFR to P.O. Box 1809 in Fayetteville, Georgia. He states further that one of the fraud victims advised the City of Atlanta that her signature had been forged on documents requesting the payment of $8000 to be sent to that same post office box. Moreover, Officer Ricks states that his investigation revealed that Defendant, who was a registered agent of AFR, was identified by a bank investigator as the individual cashing two fraudulently obtained checks and that Defendant's car had been seen outside the AFR location that was searched. These facts are sufficient to show a connection between the premises that were searched (the AFR office) and the criminal conduct that was being investigated, as well as a fair probability that evidence of the crimes would be found at AFR's office.

Defendant's Motion to Suppress is also due to be denied based on the good faith exception to the exclusionary rule articulated by the Supreme Court in United States v. Leon, 468 U.S. 897, 922 (1984). In Leon, the Supreme Court held that even if a search warrant is ultimately found to be unsupported by probable cause, the Fourth Amendment will not bar admission of evidence obtained by law enforcement officers if the officers were acting in reasonable reliance upon the

search warrant. See United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002) (citing Leon, 468 U.S. at 922). The Eleventh Circuit interpreted Leon as follows:

> The Leon good faith exception applies in all but four limited sets of circumstances [citation omitted]. The four sets of circumstances are as follows: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S. Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."

Id. (internal citations omitted). Here, Defendant has not argued or shown that any of these four sets of circumstances exists. Thus, even if the Warrant was unsupported by probable cause (which it was not), the Fourth Amendment does not bar admission of any evidence obtained pursuant to the Warrant.

For all the reasons stated, I find no basis for suppression.

## **CONCLUSION**

For the foregoing reasons, I **RECOMMEND** that Defendant's Motion to Suppress [Docs. 26, 40] be **DENIED**.

I have now addressed all referred pretrial matters and have not been advised of any impediments to the scheduling of a trial. Accordingly, Defendant's case is **CERTIFIED READY FOR TRIAL**.

**SO REPORTED AND RECOMMENDED**, this 22nd day of February, 2018.

_Catherine Salinas_
CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE