IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| *v.* | 1:17-CR-00224-AT-CMS |
| ALLEN PENDERGRASS | |

**The Government's Notice of Intention to Introduce and Motion in Limine to Permit the Admission of Evidence of Defendant's Acts Not Alleged in the Indictment**

The United States of America ("Government"), by Byung J. Pak, United States Attorney, and Jeffrey A. Brown and Teresa M. Stolze, Assistant United States Attorneys for the Northern District of Georgia, files this motion in limine to admit and give notice of the Government's intent to introduce evidence of: 1) the prior conviction of Defendant for Bank Fraud pursuant to Federal Rule of Evidence 404(b), and 2) evidence of additional acts of fraud by Defendant as intrinsic evidence at trial, or in the alternative, pursuant to Federal Rule of Evidence 404(b).

## I.   Background

In June 2017, a grand jury in the Northern District of Georgia returned an indictment charging Defendant with five counts of mail fraud, one count of conspiracy to commit money laundering, and four counts of aggravated identity theft. (Doc. 1.)  The indictment alleges that Defendant engaged in the conspiracy and fraudulent activity, in the Northern District of Georgia and elsewhere,

beginning from at least as early as February 2013, and continuing until on or about April 2014.  (*Id*.)  Defendant pleaded not guilty.  (Doc. 12.) Trial is set for November 26, 2018.  (Doc. 69.)

The Indictment specifically alleges that Defendant operated a mail fraud scheme out of the Northern District of Georgia.  At trial, the Government will present evidence that Defendant both conspired with others to perpetuate and directly participated in a scheme in which he and his employees would use public/open records laws to acquire the names of individuals and companies owed outstanding monies by government agencies, including the City of Atlanta. The Defendant himself, and through his employees and partners, would then mail correspondence to the government agency, including forged power of attorney forms, fraudulently claiming that Defendant's company was the authorized agent for rightful owner of the unclaimed funds.   The funds would then be deposited into bank accounts controlled by the Defendant, his employees, and conspirators, without remitting the proceeds to their rightful owners.

## II.  Summary of Issue and Evidence the Government Seeks to Introduce.

The Government anticipates that some critical questions at trial will be whether Defendant had knowledge of the scheme, whether he intended to participate in the scheme to defraud, whether he was aware of the actions of his subordinates—all going to an anticipated defense of mistake.  Defendant has pled not guilty, and thereby placed his intent at issue in this matter. Furthermore, the Government expects that Defendant will challenge the

Government's theory that he directly participated in this scheme, or otherwise directed or conspired with his employees and partners, including co-defendant Terrell McQueen, to carry out the scheme.  Particularly because the specific counts alleged in the Indictment involve incidents where co-defendant McQueen, not Defendant Pendergrass, signed and sent the forged documents, Defendant's intent and knowledge of the scheme will be central at trial.

The Government intends, therefore, to prove Defendant's knowledge, intent, and lack of mistake or accident through evidence of acts beyond those specifically alleged in the indictment, including 1) Defendant's prior conviction for Bank Fraud, and 2) a series of five additional bad acts arising out of the same scheme and during the same timeframe as those alleged in the indictment.  The evidence of Defendant's prior conviction for Bank Fraud will be offered pursuant to Federal Rule of Evidence 404(b).  For purposes of this motion, the Government will refer to the Defendant's prior conviction for Bank Fraud as "The Ohio Conviction."

The five additional bad acts, in turn, all having occurred as part of the same scheme as alleged in the indictment and at or about the same timeframe, are intrinsic to the charged conduct and will be offered as elements of and/or inextricably intertwined with the crimes charged in the indictment.   For purposes of this motion, the Government will collectively refer to the Defendant's five additional bad acts as the "Other Bad Acts" evidence.  As the Other Bad Acts by Defendant are intrinsic to the charged conduct and necessary to complete the story of the charged conduct, this evidence is not subject to Rule

3

404(b) analysis.  These actions provide a full view of Defendant's role in the scheme, his full knowledge and participation in the scheme, and the breadth of the scheme beyond what is charged on the face of the Indictment itself.

Alternatively, even if the Court determines that the Other Bad Acts evidence is not admissible under an intrinsic evidence theory, the evidence is nonetheless admissible under Rule 404(b).  Both the Ohio Conviction and the Other Bad Acts evidence will be offered and subject to use during the Government's case-in-chief, cross-examination, and on rebuttal.

## A. Defendant's Ohio Conviction

At trial, the Government will seek to introduce evidence of Defendant's Ohio Conviction, pursuant to Federal Rule of Evidence 404(b).  Specifically, the Government will seek to introduce the Defendant's federal conviction for two counts of Bank Fraud, violations of Title 18, United States Code, Section 1344, in the United States District Court for the Southern District of Ohio, for which the Defendant was sentenced on June 10, 2015, Case No. 2:14-cr-00021-GCS. (Doc. 41, SDOH, 2:14-CR-21)   The indictment in that case shows a scheme where the Defendant deposited stolen U.S. Treasury checks into a bank account opened in the name of his company, Guishard, Wilburn, & Shorts.  (Doc. 1, SDOH, 2:14-CR-21).  To further the scheme, Defendant produced false documents to banks

regarding the stolen checks.  *Id*.  Upon his plea of guilty to this offense, Defendant was sentenced to a term of imprisonment of 30 months.[1]

### B.  The Other Bad Acts Evidence

The Government hereby gives notice of its intent to offer evidence of the following five other crimes, wrongs, or acts, the Other Bad Acts, committed by Defendant during the trial of this case:

### 1.  Atlanta Quarterback Club Incident

Beginning on a date unknown and continuing until or about March 2013, Defendant devised a scheme to defraud the City of Atlanta by forging and mailing correspondence, including limited power of attorney forms and other documents, fraudulently claiming that Defendant's business was an agent of the Atlanta Quarterback Club, the rightful owner of unclaimed funds.   The Atlanta Quarterback Club never gave Defendant or his company authorization to act on their behalf.  Defendant directly participated in the scheme as evidenced by correspondence directing the City of Atlanta to send the check owed to the Atlanta Quarterback Club to Defendant's company.   Defendant's signature is listed on the correspondence.[2]

---

[1] (Doc. 41, SDOH, 2:14-CR-21) Copies of the indictment and judgement are available in the Clerk's Office of the Southern District of Ohio and online through PACER, and have been produced to defense counsel in discovery.

[2] Documentation, including but not limited to copies of the correspondence between defendant and City of Atlanta in reference to the Atlanta Quarterback Club and a check from the City of Atlanta issued to Atlanta Quarterback Club, c/o Guishard, Wilburn, & Shorts, LLC., have been provided to defense counsel in discovery, including at bates numbers AQC–2030782-Box 3-00001838 - 1848;

### 2. Tousa Homes Incident

Beginning on a date unknown and continuing until or about May 2013, the Defendant devised a scheme to defraud the City of Fort Collins, Colorado, by forging and mailing correspondence, including limited power of attorney forms and other documents, fraudulently claiming that Defendant's business was the agent of Tousa Homes, the rightful owner of unclaimed government funds. Tousa Homes never gave such authorization.  Defendant directly participated in the scheme as evidenced by correspondence directing the City of Fort Collins to reissue the check owed to Tousa Homes to Defendant's company.   Defendant's signature is listed on the correspondence.[3]

### 3. Lee Family Trust Incident

Beginning on a date unknown and continuing until or about July, 2014, the Defendant devised a scheme to defraud the government of Harris County, Texas by forging and mailing correspondence, including limited power of attorney forms and other documents fraudulently claiming that the Defendant's business was an agent of Lee Family Trust, the rightful owner of the unclaimed funds.

---

AQC–2030782-Box 4-00002190; AQC–2030782-Box 4-00002232 -  2240; AQC–2030782-Box 4-00002286; AQC–2030782-Box 4-00002740; AQC–2030782-Box 4-00003242.

[3] Documentation, including but not limited to the Memorandum of Interview of Sorana Keever and records of the City of Fort Collins have been provided to defense counsel in discovery, including at bates numbers 2030782-BOA-000134; Box 1-000204 – 0260; Box 2-000359 – 0370; Box 2-000970 – 0980; Box 3-000923; Box 2-001082; Box 3-001647; Box 3-001924; Fort-Collins-0001 – 0018; and Reports-0035-41.

Defendant personally participated in this scheme by contacting local attorney Michael Cohen for assistance in setting up a trust bank account in which the checks from Harris County could be converted to Defendant's own use. Defendant also directly negotiated with Cohen to have Cohen issue the checks to Defendant after they were placed into the account.   Defendant also opened a separate account in the name of Lee Family Trust with himself as the sole signee. Representatives of the Lee Family Trust will testify that they never authorized Defendant, his companies, or employees to act as an agent for the Lee Family Trust in any way.[4]

### 4.  Holland and Knight Incident

On or about January of 2013, Defendant Pendergrass along with co-defendant Terrell McQueen, devised a scheme to defraud the City of Atlanta out of over $349,000.00 owed to law firm Holland and Knight.   The scheme was achieved by falsifying a power of attorney document and other documents fraudulently claiming that Defendant's business was an agent for Holland and Knight.   Co-Defendant McQueen, who directly drafted the forged documents and conducted the transaction, provided $10,000.00 of the fraudulently claimed funds to Defendant before the bank began to question the nature of the deposit.

---

[4] Documentation, including the Memorandum of Interview of Michael J. Cohen and records of the Harris County Tax Assessor's-Collector's office have been provided to defense counsel in discovery, including at bates numbers 230782-Harris Co-CO-0001-0017; BOA-000173-270; Box 1-000138; Box 1-000537; Box 2-000929-0930; Box 2-000968; Box 3-001164; Box 3-001742; Box 3-001904-1905; Box 3-003132; Box 4-002134; Box 4-002150-2152; Box 4-002705-2758; Box 4-003590-3599

McQueen will testify that Defendant directly participated in and had knowledge of the scheme, including the forged power of attorney documentation.[5]

### 5. Hemisphere, Inc. Incident

On or about October 2012, Defendant through his company, Guishard, Wilburn, and Shorts, LLC., devised a scheme to defraud the City of Atlanta out of over $22,000.00 in unclaimed funds owed to Hemisphere, Inc.  As a part of the scheme, Defendant sent fraudulent power of attorney forms and other correspondence to the City of Atlanta, claiming to be authorized agent of Hemisphere, Inc., and bearing the forged signature of Gordon Griffin. Defendant's signature is listed on the correspondence.  Neither Mr. Griffin nor anyone from Hemisphere, Inc., ever gave such an authorization.   In addition, Defendant filed for the incorporation of a company with a similar name as Hemisphere with the Georgia Secretary of State's Office in a further effort to perpetuate the scheme.[6]

---

[5] Documentation, including the Memorandum of Interview of Terrell McQueen have been provided to defense counsel in discovery, including at bates numbers 230782-Box 3-001838; Box 3-001848; Box 3-003242.

[6] Documentation, including but not limited to the Memorandum of Interview of Gordon Griffin and falsified power of attorney have been provided to defense counsel in discovery, including at bates numbers 230782-BOA-000132; BOA-000237; BOA-000251; BOA-000261; Box 1-000813-0816; Box 2-000008; Box 2-000017-0023; Box 3-001838; Box 3-001848; Box 3-002939; Box 3-003244; Box 4-002187-2188; Reports-0024-0034; Suntrust-000002-00006; Synovus-000014.

### III. <u>Argument and Citation of Authority</u>

**A. Defendant's Ohio Conviction is admissible as 404(b) evidence.**

Rule 404(b) permits courts to admit evidence of a crime, wrong, or other acts to prove intent, knowledge, or absence of mistake or accident.  Fed. R. Evid. 404(b)(1), (2).  The Eleventh Circuit has established a three-part test to determine the admissibility of extrinsic evidence under Rule 404(b): (1) the evidence must be relevant to an issue other than defendant's character; (2) there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act; and (3) the probative value of the evidence cannot be substantially outweighed by its unfair prejudice.  *United States v. Zapata*, 139 F.3d 1355, 1357 (11th Cir. 1998).  Rule 404(b) is "a rule of inclusion, and . . . accordingly, 404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003).

**1. The Ohio Conviction is relevant to Defendant's intent to commit and knowledge of the charged conduct, and lack of mistake or accident.**

In this case, Defendant's Ohio Conviction is relevant to his intent to commit the charged offense, as well as his knowledge, and lack of mistake or accident. Defendant's not guilty plea makes proving intent a material issue at the trial.  "A defendant who enters a not guilty plea makes intent a material issue, imposing a substantial burden on the government to prove intent; the government may meet this burden with qualifying 404(b) evidence absent affirmative steps by the

defendant to remove intent as an issue." *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995) (by pleading not guilty to cocaine conspiracy, defendant placed his intent in issue, and therefore evidence of his subsequent cocaine conspiracy conviction was admissible under Rule 404(b)) (citation omitted); *accord United States v. Edouard*, 485 F.3d 1324, 1343-45 (11th Cir. 2007) (defendant who pleaded not guilty to conspiracy to import cocaine made intent a material issue, and defendant's prior uncharged cocaine smuggling activities was relevant proof of intent under Rule 404(b)); *United States v. Buchanan*, 633 F.2d 423, 426 (5th Cir. 1981).  Once intent is at issue, the relevancy prong of Rule 404(b) "is satisfied 'once it is determined that the extrinsic offense requires the same intent as the charged offense and that the jury could find [the defendant] committed the extrinsic offense.'" *United States v. Jackson*, 761 F.2d 1541, 1543 (11th Cir. 1985) (holding that extrinsic evidence that defendant had written out fraudulent medical excuses was admissible to prove intent in charged offense of signing fraudulent physician reports and medical bills) (internal citations omitted).

In fraud cases in particular, the Eleventh Circuit has routinely found that where an accused pursues a defense on the basis that he did not intend to defraud the victims, his prior financial dealings that are similar to the charged conduct and resulted in defrauding people are admissible to prove his intent to engage in the charged conduct.  *United States v. Ellisor*, 522 F.3d 1255, 1267-1268 (11th Cir. 2008) (evidence of defendant's prior fraud of selling tickets to a fictional special event was admissible to show his intent to defraud by promoting

and selling tickets to an illusory Christmas art show as charged in the
indictment).

In cases alleging fraudulent schemes and conspiracies, intent and knowledge
of the scheme are often dual burdens the Government must show, and extrinsic
acts involving a scheme with a similar mental state as the charged conduct are
admissible for those purposes. *United States v. Prophete*, 522 F. App'x 583, 586
(11th Cir. 2013) (evidence of prior fraud scheme of a similar nature admissible
under Rule 404(b) because it showed defendant's intent and his knowledge of the
scheme); *United States v. Sanchez*, 790 F.2d 1561, 1564 (11th Cir. 1986) (evidence of
prior money laundering scheme admissible to prove intent for charged
conspiracy because the prior scheme "was similar in time and form to the
charged conspiracy and, as such, aided in establishing that [defendant] acted
with knowledge that his acts were illegal").

In this case, the mental state associated with the Ohio Conviction is identical
to that required to convict on the indicted charge because both involve
Defendant's intent to defraud.  Both cases involve Defendant obtaining checks
under false and fraudulent pretenses and using forged documents to deposit said
checks into bank accounts for the benefit of his own use.  In the Ohio Conviction,
Defendant perpetuated a scheme in which he used false and forged documents
to utter stolen checks.  In the scheme charged in the Indictment here, Defendant
and his companies used a scheme in which he used false and fraudulent
documents to cause governmental victims to issue checks.  In both cases,

11

Defendant's mental state, his intent to defraud by use of false and forged documentation, was identical.

### 2.   There is sufficient proof for a jury to find Defendant committed the Ohio Conviction.

Admitting evidence under Rule 404(b) also requires the Government to provide "sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question . . ." *Edouard*, 485 F.3d at 1344.  That standard is easily met here, as Defendant pled guilty to two counts of Bank Fraud in the Southern District of Ohio.

### 3.   The probative value of the Ohio Conviction is not substantially outweighed by unfair prejudice.

Defendant's Ohio Conviction is highly probative of Defendant's guilt in the case at bar, and not substantially outweighed by a danger of unfair prejudice. "[E]vidence of criminal activity other than the charged offense, whether inside or outside the scope of Rule 404(b), must still satisfy the requirements of Rule 403." *Edouard*, 485 F.3d at 1344 (citation omitted).  Under Rule 403, the Court may exclude evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading to the jury.  Fed. R. Evid. 403.   When evaluating probative value, courts may consider factors such as prosecutorial need, the overall similarity between the extrinsic and charged offenses, and the temporal proximity between the extrinsic and charged offenses. *Jernigan*, 341 F.3d at 1282 (citation omitted).

Here, the prosecutorial need for the evidence is critical.  The co-defendant in this case, Terrell McQueen, is expected to testify regarding Defendant's key role in the scheme as the leader and organizer of the various asset recovery companies.  Defendant's plea of guilty to Bank Fraud involving one of the same companies, Guishard, Wilburn, & Shorts, LLC., corroborates McQueen's testimony.  The Ohio Conviction is additionally probative because it is needed to rebut Defendant's anticipated defense that he lacked knowledge of the fraudulent activities undertaken by McQueen and other employees.

The extrinsic and charged offenses are also extremely similar in nature.  Both involve Defendant conducting fraudulent schemes involving illegally obtained checks and forged documents to support the schemes.

In addition, the Ohio Conviction and the charged offenses were committed near in time to one another.  Specifically, the conduct underlying the Ohio Conviction occurred between February and August of 2012, where the indicted conduct in this case occurred at least as early as April of 2013 and lasted at least until April of 2014.   The Eleventh Circuit has routinely affirmed the use of Rule 404(b) evidence involving acts that occurred further in time from the charged conduct.  *See*, *e.g.*, *United States v. Calderon*, 127 F.2d 1314, 1332 (11th Cir. 1997) (concluding that a six-year span did not render the extrinsic acts too remote for proper consideration).

By contrast, there is no danger of unfair prejudice from admitting the prior conviction.  Although any prior conviction can be prejudicial, the standard is whether the evidence is *unfairly* prejudicial.  *See* Fed. R. Evid. 403 advisory

committee's note ("'Unfair prejudice' . . . means an undue tendency to suggest a decision on an improper basis").  Defendant in this case cannot make the required showing.  Finally, any potential prejudice can be cured by a limiting instruction from the Court.  *Zapata*, 139 F.3d at 1358 ("[a]t the time of the admission of the extrinsic evidence and in the final jury instructions, the district judge diminished the prejudicial impact of the evidence by properly instructing the jury for what limited purpose the extrinsic evidence was to be used.").

### B.  The Other Bad Acts evidence is intrinsic to the charged offenses and, therefore, is not subject to the requirements of Rule 404(b).

It is well-established in the Eleventh Circuit that evidence of criminal activity other than the offense charged is admissible as intrinsic evidence – and need not satisfy the requirements of Rule 404(b) – if the evidence "[1] arose out of the same transaction or series of transactions as the charged offense, [2] if it was inextricably intertwined with the evidence regarding the charged offense, or [3] if it is necessary to complete the story of the crime of trial. . ."  *United States v. Wells*, 995 F.2d 189, 191-92 (11th Cir. 1993) (quoting *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983) (internal marks omitted); *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004) (intrinsic evidence admissible "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime").

1.   **The Other Bad Acts, as conduct that arose out of the scheme as the charged offenses, are inextricably intertwined with the charged offense and necessary to complete the story at trial.**

Particularly in a fraud and conspiracy case such as the case in this Indictment, evidence of the pattern of fraudulent activity in which Defendant, along with his co-conspirators, participated has been found by the Court to be intrinsic evidence subject to 404(b) as it is necessary to complete the story of the crime.  *United States v. Muscatell*, 42 F.3d 627, 630-31 (11th Cir. 1995); *United States v. US Infrastructure*, Inc., 576 F.3d 1195, 1210-11 (11th Cir. 2009) (evidence of other bribes paid by the defendant during the same time as the charged bribes was admissible as inextricably intertwined events in relation to the charged offense, and relevant to the "chain of events surrounding the charged crimes, including context and setup.")

The case of *United States v. McClean*, 138 F.3d 1398 (11th Cir. 1998), a cocaine conspiracy case, is illustrative of how the circumstances surrounding the charged conspiracy can be both inextricably intertwined with the indicted conduct and necessary for the jury to understand the complete story of the conspiracy.  In *McClean*, the Government presented evidence that the defendant was a member of a well-known cocaine distribution organization that operated at a location in Ft. Lauderdale called the "Gucci Hole," which, the Government showed had operated for years before the period charged in the indictment.  *McClean* at 1400-1402.  The Government also presented testimony from a confidential informant who testified that she worked at the Gucci Hole approximately a year before

crimes charged in the indictment and she sold drugs there for the defendant. *Id*., at 1402-1403.

The defendant in *McClean* moved to suppress the background evidence about the Gucci Hole, and the confidential informant's testimony as irrelevant, prejudicial, and unnoticed Rule 404(b) evidence. *Id*. at 1403. The Government responded that the evidence was intrinsic to the charged offenses. *Id*. The trial court admitted the testimony, and the Eleventh Circuit affirmed. *See id*. at 1403-04. The Court held that the evidence was "inextricably intertwined" with the Government's proof of the charged offenses. *Id*. at 1404. Specifically, the Court held that the background evidence about Gucci Hole "explained why McClean was the target of the government's investigation." *Id*. The Court also held that the confidential informant's testimony about working at Gucci Hole, and her work there for McClean "explained the relationship" between them and "was vital to establishing her credibility." *Id*.

Like in *McClean*, evidence of Defendant's Other Bad Acts is vital to establishing McQueen's credibility at trial because it will corroborate his expected testimony that Defendant was the leader and organizer of the fraudulent scheme. This leadership role also further explains the relationship between Defendant and McQueen, just as the intrinsic evidence in *McClean* established the relationship between the witness and the defendant in that case. This type of evidence is exactly what the Eleventh Circuit contemplated as evidence that "completes the story" and is "inextricably intertwined" with the charged offense. As the Court explained in *United States v. Prophete*, 522 F.

16

App'x 583, 585 (11th Cir. 2013), "evidence is inextricably intertwined when "it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." Here, the Defendant's active role in the scheme and his knowledge of the scheme as a whole is shown throughout the Other Bad Acts conduct – it is inextricably intertwined with the evidence regarding the charged offense and is vital to the Government's case.

One of the Other Bad Acts in particular, the Holland and Knight Incident, shows how McQueen took orders from Defendant and that the Defendant took a personal cut of the proceeds, even when Defendant's personal signature is not specifically found on the forged documents. In the Lee Family Trust Incident, Defendant's active role was shown by his personal meetings with witness Michael Cohen to set up bank accounts. Similarly, in the Atlanta Quarterback Club Incident and in the Tousa Incident, Defendant personally signed the correspondence falsely claiming his company was the proper agent for the victims. These acts by Defendant are evidence that disproves Defendant's expected defense that McQueen and other subordinates acted without his knowledge or approval. In addition, the Other Bad Acts conduct explains the size and breadth of the scheme, how it targeted several government agencies across several states, and has been operating since at least 2012. This evidence is necessary to complete the story of the charged conduct and is, therefore, not subject to the 404(b) analysis. *United States v. Cancelliere*, 69 F.3d 1116, 1124 (11th Cir. 1995), as amended on clarification (Feb. 2, 1996) ("rule 404(b) does not apply

where the evidence concerns the context, motive, and set-up of the crime and is linked in time and circumstances with the charged crime.") (internal citations omitted).

### 2. The Other Bad Acts evidence is admissible under a Rule 403 balancing test.

The same test described above regarding Rule 403 as it applied to Defendant's Ohio Conviction also applies to the analysis as to whether the Other Bad Acts conduct are admissible as intrinsic evidence. Under Rule 403, the Court may exclude evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading to the jury. Fed. R. Evid. 403. The Other Bad Acts evidence should be admitted in this case as it is highly probative in nature, the prosecutorial need is strong, and there is no danger of unfair prejudice in their admittance. Furthermore, any prejudicial impact of the evidence can be cured by a limiting instruction from the Court. *Zapata*, 139 F.3d at 1358.

### 3. Even if the Other Bad Acts conduct is not considered intrinsic, it is otherwise admissible under Rule 404(b).

Even if the Court decides the Other Bad Acts conduct is not intrinsic to the crimes charged, the evidence would still be admissible under a 404(b) analysis. Like Defendant's Ohio Conviction, the other bad acts evidence is (1) relevant to an issue other than Defendant's character, namely intent, knowledge, and lack of accident or mistake; (2) there is sufficient proof so that a jury could find that Defendant committed the acts; and (3) the probative value of the evidence is not substantially outweighed by its unfair prejudice. *Zapata*, 139 F.3d at 1357.

18

Here, the other bad acts evidence is directly relevant to proving Defendant's intent and knowledge of the charged conduct, and lack of mistake or accident. As stated above, Defendant's not guilty plea makes proving intent a material issue at the trial. The active role he took in the Other Bad Acts directly shows his knowledge of the scheme and the intent to defraud.

There is also sufficient proof to find, by a preponderance of the evidence, that the Defendant committed each of the Other Bad Acts. In each case, the Government expects to call testimony of the victims of the fraud, the victims of the identify theft, and documentary evidence, as well as the testimony of co-defendant McQueen. Even as to the Holland and Knight incident where much of the proof relies upon the testimony of co-conspirator McQueen, "the uncorroborated word of an accomplice ... provides a sufficient basis for concluding that the defendant committed extrinsic acts admissible under Rule 404(b)." *United States v. Dickerson*, 248 F.3d 1036, 1047 (11th Cir. 2001) (citing *United States v. Bowe*, 221 F.3d 1183, 1192 (11th Cir.2000)).

Finally, as discussed above, under a Rule 403 balancing test, the probative value of the evidence is high, in fact vital, to the Government's ability to rebut the anticipated defense at trial of Defendant's lack of knowledge or intent, and is not substantially outweighed by prejudice to Defendant.

## IV. <u>Conclusion</u>

For the foregoing reasons, the Government requests the Court grant the motion to introduce the 1) Defendant's Ohio Conviction under Federal Rule of Evidence 404(b) and 2) Defendant's Other Bad Acts conduct as intrinsic to the

crimes charged in the indictment.  Alternatively, the Government requests that
the Court rule that the Other Bad Acts conduct is admissible under Federal Rule
of Evidence 404(b).  The Government requests leave to supplement this motion if
it learns additional information relevant to the outcome thereof.

Respectfully submitted,

BYUNG J. PAK
United States Attorney

/s/ JEFFREY A. BROWN
Jeffrey A. Brown
Assistant United States Attorney
600 U.S. Courthouse 75 Spring St., S.W.
Atlanta, GA 30303
404-581-6064
404-581-6181 (fax)
Georgia Bar No. 088131

/s/ TERESA STOLZE
Teresa M. Stolze
Assistant United States Attorney
600 U.S. Courthouse 75 Spring St., S.W.
Atlanta, GA 30303
404-581-6027
404-581-6181 (fax)
Georgia Bar No. 151873

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Robert Citronberg

October 1, 2018

/s/ Jeffrey A. Brown

Jeffrey A. Brown

Assistant United States Attorney

/s/ Teresa M. Stolze

Teresa M. Stolze

*Assistant United States Attorney*