IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>ALLEN PENDERGRASS | Criminal Action No.<br><br>1:17-CR-00224-AT-CMS |

**The Government's Amended Notice of Intention to Introduce and Motion in Limine to Permit the Admission of Evidence of Defendant's Acts Not Alleged in the Indictment[1]**

The United States of America ("Government"), by Byung J. Pak, United States Attorney, and Jeffrey A. Brown and Teresa M. Stolze, Assistant United States Attorneys for the Northern District of Georgia, files this motion in limine to admit and give notice of the Government's intent to introduce evidence of: 1) the prior two convictions of Defendant for bank fraud and theft pursuant to Federal Rule of Evidence 404(b), and 2) evidence of additional acts of fraud by Defendant as intrinsic evidence at trial, or in the alternative, pursuant to Federal Rule of Evidence 404(b).

I.  **Background**

In June 2017, a grand jury in the Northern District of Georgia returned an indictment charging Defendant with five counts of mail fraud, one count of

---

[1] This filing amends the Notice of Intention to Use 404(b) Evidence (Doc. 71) filed on October 12, 2018 and includes an additional conviction the government seeks to introduce pursuant to FRE 404(b).

conspiracy to commit money laundering, and four counts of aggravated identity theft. (Doc. 1.)  The indictment alleges that Defendant engaged in the conspiracy and fraudulent activity, in the Northern District of Georgia and elsewhere, beginning from at least as early as February 2013, and continuing until on or about April 2014.  (*Id*.)  Defendant pleaded not guilty.  (Doc. 12.) Trial is set for November 26, 2018.  (Doc. 69.)

The indictment specifically alleges that Defendant operated a mail fraud scheme out of the Northern District of Georgia.  At trial, the Government will present evidence that Defendant both conspired with others to perpetuate and directly participated in a scheme in which he and his employees would use public/open records laws to acquire the names of individuals and companies owed outstanding monies by government agencies, including the City of Atlanta. The Defendant himself, and through his employees and partners, would then mail correspondence to the government agency, including forged power of attorney forms, fraudulently claiming that Defendant's company was the authorized agent for the rightful owner of the unclaimed funds.   The funds would then be deposited into bank accounts controlled by the Defendant, his employees, and conspirators, without remitting any portions of the proceeds to their rightful owners.

## II.  <u>Summary of Issue and Evidence the Government Seeks to Introduce.</u>

The Government anticipates that among the critical questions at trial will be whether Defendant had knowledge of the scheme, whether he intended to participate in the scheme to defraud, and whether he was aware of the actions of

his subordinates—all going to an anticipated defense of mistake.  Defendant has pled not guilty, and thereby placed his intent at issue in this matter. Furthermore, the Government expects that Defendant will challenge the Government's theory that he directly participated in this scheme, or otherwise directed or conspired with his employees and partners, including co-defendant Terrell McQueen, to carry out the scheme.  Particularly because the specific counts alleged in the Indictment involve incidents where co-defendant McQueen, not Defendant Pendergrass, signed and sent the forged documents, Defendant's intent and knowledge of the scheme will be central at trial.

The Government intends, therefore, to prove Defendant's knowledge, intent, and lack of mistake or accident through evidence of acts beyond those specifically alleged in the indictment, including 1) Defendant's prior convictions for theft and bank fraud, and 2) a series of five additional bad acts arising out of the same scheme and during the same timeframe as those alleged in the indictment.  The evidence of Defendant's two prior convictions for theft and bank fraud will be offered pursuant to Federal Rule of Evidence 404(b).  For purposes of this motion, the Government will refer to the Defendant's prior conviction for theft as "The Colorado Conviction."  For purposes of this motion, the Government will refer to the Defendant's prior conviction for bank fraud as "The Ohio Conviction."   Collectively, the Government will refer to these two incidents as the "Prior Convictions."

The five additional bad acts, in turn, all having occurred as part of the same scheme as alleged in the indictment and at or about the same timeframe, are

3

intrinsic to the charged conduct and will be offered as elements of and/or inextricably intertwined with the crimes charged in the indictment.   For purposes of this motion, the Government will collectively refer to the Defendant's five additional bad acts as the "Other Bad Acts" evidence.  As the Other Bad Acts by Defendant are intrinsic to the charged conduct and necessary to complete the story of the charged conduct, this evidence is not subject to Rule 404(b) analysis.  These actions provide a full view of Defendant's role in the scheme, his full knowledge and participation in the scheme, and the breadth of the scheme beyond what is charged on the face of the indictment itself.

Alternatively, even if the Court determines that the Other Bad Acts evidence is not admissible under an intrinsic evidence theory, the evidence is nonetheless admissible under Rule 404(b).  Both the two Prior Convictions and the Other Bad Acts evidence will be offered and subject to use during the Government's case-in-chief, cross-examination, and on rebuttal.

### A. Defendant's Colorado Conviction

At trial, the Government will seek to introduce evidence of Defendant's Colorado Conviction, pursuant to Federal Rule of Evidence 404(b).  Specifically, the Government will seek to introduce the Defendant's Conviction from Larimer County, Colorado for one count of felony theft, a violation of Title 18, Colorado Revised Statutes, Chapter 4, Section 401(1)(a) and (2)(d), for which the Defendant was sentenced on June 26, 2015, in Case No. 2014CR00157.  The criminal complaint in that case alleges that at least as early as April 3, 2013 and continuing until or about May 2013, Defendant, through his company, Guishard, Wilburn, &

4

Shorts, devised a scheme to defraud the City of Fort Collins, Colorado, by forging and mailing correspondence, including limited power of attorney forms and other documents, fraudulently claiming that Defendant's business was the agent of Tousa Homes, the rightful owner of unclaimed government funds.  The false power of attorney forms included the forged signature of Sorana Keever, as an agent of Tousa homes.  Neither Tousa Homes nor Sorana Keever ever gave authorization for Defendant or his company to act on their behalf.  Defendant directly participated in the scheme as evidenced by correspondence from Defendant's company directing the City of Fort Collins to reissue the check owed to Tousa Homes to Defendant's company, Guishard, Wilburn, and Shorts (GWS).  Defendant's signature is listed on the correspondence as Vice President of GWS.  The correspondence also indicated that the checks owed by City of Fort Collins to Tousa Homes should be sent to directly to GWC at a Post Office Box in the city of Fayetteville, Georgia.[2]

### B. Defendant's Ohio Conviction

At trial, the Government will seek to introduce evidence of Defendant's Ohio Conviction, pursuant to Federal Rule of Evidence 404(b).  Specifically, the

---

[2] Documentation, including but not limited to Defendant's conviction from Lamar County District Court, the Complaint in case 2014CR001157, related police reports and arrest warrants have been provided to defense counsel in discovery; the Memorandum of Interview of Sorana Keever and records of the City of Fort Collins have also been provided to defense counsel in discovery, including at bates numbers 2030782-BOA-000134; Box 1-000204 – 0260; Box 2-000359 – 0370; Box 2-000970 – 0980; Box 3-000923; Box 2-001082; Box 3-001647; Box 3-001924; Fort-Collins-0001 – 0018; and Reports-0035-41.

Government will seek to introduce the Defendant's federal conviction for two counts of Bank Fraud, violations of Title 18, United States Code, Section 1344, in the United States District Court for the Southern District of Ohio, for which the Defendant was sentenced on June 10, 2015, Case No. 2:14-cr-00021-GCS. (Doc. 41, SDOH, 2:14-CR-21).  The indictment in that case alleged a scheme where the Defendant deposited stolen U.S. Treasury checks into a bank account opened in the name of his company, Guishard, Wilburn, & Shorts.  (Doc. 1, SDOH, 2:14-CR-21).  To further the scheme, Defendant produced false documents to banks regarding the stolen checks.  *Id.*  Upon his plea of guilty to this offense, Defendant was sentenced to a term of imprisonment of 30 months.[3]

## C. The Other Bad Acts Evidence

The Government hereby gives notice of its intent to offer evidence of the following five other crimes, wrongs, or acts, the Other Bad Acts, committed by Defendant during the trial of this case:

### 1.   Weissman, Nowack, Curry, and Wilco Incident

Beginning on a date unknown and continuing until or about August 2013, Defendant, through his company, Asset Forfeiture Recovery, Inc., devised a scheme to defraud the City of Atlanta by forging and mailing correspondence, including limited power of attorney forms and other documents, fraudulently claiming that Defendant's business was an agent of the law firm of Weissman,

---

[3] (Doc. 41, SDOH, 2:14-CR-21) Copies of the indictment and judgement are available in the Clerk's Office of the Southern District of Ohio and online through PACER, and have been produced to defense counsel in discovery.

Nowack, Curry, and Wilco, the rightful owner of unclaimed funds, and bearing the forged signature of Ashley Miller, an attorney at Weissman, Nowack, Curry, and Wilco.   Neither Weissman, Nowack, Curry, and Wilco nor Ashley Miller ever gave Defendant's company authorization to act on its behalf.   As part of the correspondence sent by Defendant's company to City of Atlanta related to this incident, Ashley Miller's signature was forged.   Defendant's company also directed the City of Atlanta to send the money owed to Weissman, Nowack, Curry, and Wilco directly to Defendant's company.   This scheme was discovered when Ashley Miller contacted the City of Atlanta and informed the City that she had been the victim of identity fraud.   The discovery of this information was the initial alarm that led City of Atlanta to contact law enforcement and eventually led to the larger investigation of Defendant's activities, including the incidents detailed below and to the formal charges in this indictment.[4]

### 2.  Quarterback Club Incident

Beginning on a date unknown and continuing until or about March 2013, Defendant devised a scheme to defraud the City of Atlanta by forging and mailing correspondence, including limited power of attorney forms and other documents, fraudulently claiming that Defendant's business was an agent of the

---

[4] Documentation, including but not limited to copies of the correspondence between Defendant's company and City of Atlanta in reference to Ashley Miller and Weissman, Nowack, Curry, and Wilco have been provided in discovery to defense counsel, including at Bates Numbers Box 4-00001964 – 1969.  In addition, police reports referencing law enforcement's investigation into this incident have also been provided in discovery to defense counsel, including at Bates Numbers COA-00061 - 0068.

Atlanta Quarterback Club, the rightful owner of unclaimed funds.   The Atlanta

Quarterback Club never gave Defendant or his company authorization to act on

its behalf.  Defendant directly participated in the scheme as evidenced by

correspondence from Defendant's company directing the City of Atlanta to send

the check owed to the Atlanta Quarterback Club to Defendant's company.

Defendant's signature is listed on the correspondence.[5]

### 3.   Lee Family Trust Incident

Beginning on a date unknown and continuing until or about July 2014, the

Defendant devised a scheme to defraud the government of Harris County, Texas

by forging and mailing correspondence, including limited power of attorney

forms and other documents fraudulently claiming that the Defendant's business

was an agent of Lee Family Trust, the rightful owner of the unclaimed funds.

Defendant personally participated in this scheme by contacting local attorney

Michael Cohen for assistance in setting up a trust bank account in which the

checks from Harris County could be converted to Defendant's own use.

Defendant also directly negotiated with Cohen to have Cohen issue the checks to

Defendant after they were placed into the account.   Defendant also opened a

---

[5] Documentation, including but not limited to copies of the correspondence
between Defendant and City of Atlanta in reference to the Atlanta Quarterback
Club and a check from the City of Atlanta issued to Atlanta Quarterback Club,
c/o Guishard, Wilburn, & Shorts, LLC., have been provided to defense counsel
in discovery, including at bates numbers AQC–2030782-Box 3-00001838 - 1848;
AQC–2030782-Box 4-00002190; AQC–2030782-Box 4-00002232 -  2240; AQC–
2030782-Box 4-00002286; AQC–2030782-Box 4-00002740; AQC–2030782-Box 4-
00003242.

separate account in the name of Lee Family Trust with himself as the sole signee. Representatives of the Lee Family Trust will testify that they never authorized Defendant, his companies, or employees to act as an agent for the Lee Family Trust in any way.[6]

### 4.   Holland and Knight Incident

On or about January of 2013, Defendant Pendergrass along with co-defendant Terrell McQueen, devised a scheme to defraud the City of Atlanta out of over $349,000.00 owed to law firm Holland and Knight.   The scheme was achieved by falsifying a power of attorney document and other documents fraudulently claiming that Defendant's business was an agent for Holland and Knight.   Co-Defendant McQueen, who directly drafted the forged documents and conducted the transaction, provided $10,000.00 of the fraudulently claimed funds to Defendant before the bank began to question the nature of the deposit. McQueen will testify that Defendant directly participated in and had knowledge of the scheme, including the forged power of attorney documentation.[7]

---

[6] Documentation, including the Memorandum of Interview of Michael J. Cohen and records of the Harris County Tax Assessor's-Collector's office have been provided to defense counsel in discovery, including at bates numbers 230782-Harris Co-CO-0001-0017; BOA-000173-270; Box 1-000138; Box 1-000537; Box 2-000929-0930; Box 2-000968; Box 3-001164; Box 3-001742; Box 3-001904-1905; Box 3-003132; Box 4-002134; Box 4-002150-2152; Box 4-002705-2758; Box 4-003590-3599

[7] Documentation, including the Memorandum of Interview of Terrell McQueen have been provided to defense counsel in discovery, including at bates numbers 230782-Box 3-001838; Box 3-001848; Box 3-003242.

### 5.  Hemisphere, Inc. Incident

On or about October 2012, Defendant through his company, Guishard, Wilburn, and Shorts, LLC., devised a scheme to defraud the City of Atlanta out of over $22,000.00 in unclaimed funds owed to Hemisphere, Inc.  As a part of the scheme, Defendant sent fraudulent power of attorney forms and other correspondence to the City of Atlanta, claiming to be authorized agent of Hemisphere, Inc., and bearing the forged signature of Gordon Griffin. Defendant's signature is listed on the correspondence.  Neither Mr. Griffin nor anyone from Hemisphere, Inc., ever gave such an authorization.   In addition, Defendant filed for the incorporation of a company with a similar name as Hemisphere with the Georgia Secretary of State's Office in a further effort to perpetuate the scheme.[8]

## III. Argument and Citation of Authority

### A. Defendant's Prior Convictions are admissible as 404(b) evidence.

Rule 404(b) permits courts to admit evidence of a crime, wrong, or other acts to prove intent, knowledge, or absence of mistake or accident.  Fed. R. Evid. 404(b)(1), (2).  The Eleventh Circuit has established a three-part test to determine the admissibility of extrinsic evidence under Rule 404(b): (1) the evidence must

---

[8] Documentation, including but not limited to the Memorandum of Interview of Gordon Griffin and falsified power of attorney have been provided to defense counsel in discovery, including at bates numbers 230782-BOA-000132; BOA-000237; BOA-000251; BOA-000261; Box 1-000813-0816; Box 2-000008; Box 2-000017-0023; Box 3-001838; Box 3-001848; Box 3-002939; Box 3-003244; Box 4-002187-2188; Reports-0024-0034; Suntrust-000002-00006; Synovus-000014.

be relevant to an issue other than defendant's character; (2) there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act; and (3) the probative value of the evidence cannot be substantially outweighed by its unfair prejudice. *United States v. Zapata*, 139 F.3d 1355, 1357 (11th Cir. 1998). Rule 404(b) is "a rule of inclusion, and . . . accordingly, 404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003).

> ### 1. Both Prior Convictions are relevant to Defendant's intent to commit and knowledge of the charged conduct, and lack of mistake or accident.

In this case, both of Defendant's Prior Convictions are relevant to his intent to commit the charged offense, as well as his knowledge, and lack of mistake or accident. Defendant's not guilty plea makes proving intent a material issue at the trial. "A defendant who enters a not guilty plea makes intent a material issue, imposing a substantial burden on the government to prove intent; the government may meet this burden with qualifying 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995) (by pleading not guilty to cocaine conspiracy, defendant placed his intent in issue, and therefore evidence of his subsequent cocaine conspiracy conviction was admissible under Rule 404(b)) (citation omitted); *accord United States v. Edouard*, 485 F.3d 1324, 1343-45 (11th Cir. 2007) (defendant who pleaded not guilty to conspiracy to import cocaine made intent a material issue, and defendant's prior uncharged cocaine smuggling

11

activities was relevant proof of intent under Rule 404(b)); *United States v. Buchanan*, 633 F.2d 423, 426 (5th Cir. 1981).  Once intent is at issue, the relevancy prong of Rule 404(b) "is satisfied 'once it is determined that the extrinsic offense requires the same intent as the charged offense and that the jury could find [the defendant] committed the extrinsic offense.'" *United States v. Jackson*, 761 F.2d 1541, 1543 (11th Cir. 1985) (holding that extrinsic evidence that defendant had written out fraudulent medical excuses was admissible to prove intent in charged offense of signing fraudulent physician reports and medical bills) (internal citations omitted).

In fraud cases in particular, the Eleventh Circuit has routinely found that where an accused pursues a defense on the basis that he did not intend to defraud the victims, his prior financial dealings that are similar to the charged conduct and resulted in defrauding people are admissible to prove his intent to engage in the charged conduct.  *United States v. Ellisor*, 522 F.3d 1255, 1267-1268 (11th Cir. 2008) (evidence of defendant's prior fraud of selling tickets to a fictional special event was admissible to show his intent to defraud by promoting and selling tickets to an illusory Christmas art show as charged in the indictment).

In cases alleging fraudulent schemes and conspiracies, intent and knowledge of the scheme are often dual burdens the Government must show, and extrinsic acts involving a scheme with a similar mental state as the charged conduct are admissible for those purposes.  *United States v. Prophete*, 522 F. App'x 583, 586 (11th Cir. 2013) (evidence of prior fraud scheme of a similar nature admissible

12

under Rule 404(b) because it showed defendant's intent and his knowledge of the scheme); *United States v. Sanchez*, 790 F.2d 1561, 1564 (11th Cir. 1986) (evidence of prior money laundering scheme admissible to prove intent for charged conspiracy because the prior scheme "was similar in time and form to the charged conspiracy and, as such, aided in establishing that [defendant] acted with knowledge that his acts were illegal").

Here, the mental state associated with the Colorado Conviction is identical to that required to convict on the indicted charges.  Both include nearly identical criminal conduct and both include the Defendant's intent to defraud city government victims.  In the Colorado conviction, Defendant used an asset forfeiture recovery company to obtain information about outstanding money owed to victims by a city government.   Defendant and his company would then forge power of attorney documents and other communications, falsely purporting to be the agent of the victim, in order to obtain those funds for themselves.  This exact format was followed in the indicted conduct in this case; the intent is the same in both cases.

Likewise, the mental state associated with the Ohio Conviction is identical to that required to convict on the indicted charge because both involve Defendant's intent to defraud.  Both cases involve Defendant obtaining checks under false and fraudulent pretenses and using forged documents to deposit said checks into bank accounts for the benefit of his own use.  In the Ohio Conviction, Defendant perpetuated a scheme in which he used false and forged documents to utter stolen checks.  In the scheme charged in the indictment here, Defendant and his

13

companies used a scheme in which he used false and fraudulent documents to cause governmental victims to issue checks.  In both cases, Defendant's mental state, his intent to defraud by use of false and forged documentation, was identical.

### 2.   There is sufficient proof for a jury to find Defendant committed the Prior Convictions.

Admitting evidence under Rule 404(b) also requires the Government to provide "sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question . . ."  *Edouard*, 485 F.3d at 1344.  That standard is easily met here in both of the Prior Convictions.  In the Colorado Conviction, Defendant pled guilty to one count of theft.  In the Ohio Conviction, the Defendant pled guilty to two counts of Bank Fraud.

### 3.   The probative value of the Prior Convictions are not substantially outweighed by unfair prejudice.

Defendant's Prior Convictions are highly probative of Defendant's guilt in the case at bar, and not substantially outweighed by a danger of unfair prejudice. "[E]vidence of criminal activity other than the charged offense, whether inside or outside the scope of Rule 404(b), must still satisfy the requirements of Rule 403." *Edouard*, 485 F.3d at 1344 (citation omitted).  Under Rule 403, the Court may exclude evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading to the jury.  Fed. R. Evid. 403.   When evaluating probative value, courts may consider factors such as prosecutorial need, the overall similarity between the extrinsic and charged

offenses, and the temporal proximity between the extrinsic and charged offenses. *Jernigan*, 341 F.3d at 1282 (citation omitted).

Here, the prosecutorial need for the evidence is critical. The co-defendant in this case, Terrell McQueen, is expected to testify regarding Defendant's key role in the scheme as the leader and organizer of the various asset recovery companies. In both Prior Convictions, Defendant's pleas of guilty involving one of the same companies, Guishard, Wilburn, & Shorts, LLC., as alleged in the indictment in this case corroborates McQueen's testimony. In addition, the Colorado Conviction highlights Defendant's personal role in the scheme as his signature is listed on some of the correspondence. In both cases, the convictions are probative to the issue of intent and are needed to rebut Defendant's anticipated defense that he lacked knowledge of the fraudulent activities undertaken by McQueen and other employees.

The extrinsic and charged offenses are also extremely similar in nature. Both the prior convictions and the charged conduct involve Defendant conducting fraudulent schemes involving illegally obtained checks and forged documents to support the schemes. The Colorado conviction in particular involved a nearly identical scheme as the charged conduct.

In addition, the Prior Convictions and the charged offenses were committed near in time to one another, thus highlighting the probative value of the Prior Convictions. Specifically, the conduct underlying the Ohio Conviction occurred between February and August of 2012, where the indicted conduct in this case occurred at least as early as April of 2013 and lasted at least until April of 2014.

15

The conduct underlying the Colorado Conviction occurred even closer in time - less than a year before the indicted conduct (as early as April of 2013 and until at least May of 2013).  The Eleventh Circuit has routinely affirmed the use of Rule 404(b) evidence involving acts separated by much greater lengths of time from the charged conduct.  *See, e.g.*, *United States v. Calderon*, 127 F.2d 1314, 1332 (11th Cir. 1997) (concluding that a six-year span did not render the extrinsic acts too remote for proper consideration).

By contrast, there is no danger of unfair prejudice from admitting the Prior Convictions.  Although any prior conviction can be potentially prejudicial, the standard is whether the evidence is *unfairly* prejudicial.  *See* Fed. R. Evid. 403 advisory committee's note ("'Unfair prejudice' . . . means an undue tendency to suggest a decision on an improper basis").  This high burden is why Rule 403 has long been considered an "extraordinary remedy that must be used sparingly because it results in the exclusion of concededly probative evidence." *United States v. Holt*, 408 Fed Appx. 229, 236 (11th Cir. 2010); *accord United States v. Church*, 955 F.2d 688, 700 (11th Cir. 1992) ("[T]he court's discretion to exclude evidence under Rule 403 is narrowly circumscribed").  Defendant in this case cannot make the required showing.  Here, the stark similarity of the Prior Convictions and charged conduct increases the likelihood that a jury will consider the evidence as it relates to Defendant's intent, and not merely as evidence of Defendant's bad character.  Finally, any potential prejudice can be cured by a limiting instruction from the Court.  *Zapata*, 139 F.3d at 1358 ("[a]t the time of the admission of the extrinsic evidence and in the final jury instructions,

the district judge diminished the prejudicial impact of the evidence by properly instructing the jury for what limited purpose the extrinsic evidence was to be used.").

### B. The Other Bad Acts evidence is intrinsic to the charged offenses and, therefore, is not subject to the requirements of Rule 404(b).

It is well-established in the Eleventh Circuit that evidence of criminal activity other than the offense charged is admissible as intrinsic evidence – and need not satisfy the requirements of Rule 404(b) – if the evidence "[1] arose out of the same transaction or series of transactions as the charged offense, [2] if it was inextricably intertwined with the evidence regarding the charged offense, or [3] if it is necessary to complete the story of the crime of trial. . ." *United States v. Wells*, 995 F.2d 189, 191-92 (11th Cir. 1993) (quoting *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983) (internal marks omitted); *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004) (intrinsic evidence admissible "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime").

### 1. The Other Bad Acts, as conduct that arose out of the scheme as the charged offenses, are inextricably intertwined with the charged offense and necessary to complete the story at trial.

Particularly in a fraud and conspiracy case such as here, evidence of the pattern of fraudulent activity in which Defendant, along with his co-conspirators, participated is admissible as intrinsic evidence subject to 404(b) because it is necessary to complete the story of the crime. *United States v. Muscatell*, 42 F.3d 627, 630-31 (11th Cir. 1995); *United States v. US Infrastructure*, Inc., 576 F.3d 1195, 1210-11 (11th Cir. 2009) (evidence of other bribes paid by the defendant during

the same time as the charged bribes was admissible as inextricably intertwined events in relation to the charged offense, and relevant to the "chain of events surrounding the charged crimes, including context and setup.")

The case of *United States v. McClean*, 138 F.3d 1398 (11th Cir. 1998), a cocaine conspiracy case, is illustrative of how the circumstances surrounding the charged conspiracy can be both inextricably intertwined with the indicted conduct and necessary for the jury to understand the complete story of the conspiracy. In *McClean*, the Government presented evidence that the defendant was a member of a well-known cocaine distribution organization that operated at a location in Ft. Lauderdale called the "Gucci Hole," which, the Government showed had operated for years before the period charged in the indictment. *McClean* at 1400-1402. The Government also presented testimony from a confidential informant who testified that she worked at the Gucci Hole approximately a year before crimes charged in the indictment and she sold drugs there for the defendant. *Id.*, at 1402-1403.

The defendant in *McClean* moved to suppress the background evidence about the Gucci Hole, and the confidential informant's testimony as irrelevant, prejudicial, and unnoticed Rule 404(b) evidence. *Id.* at 1403. The Government responded that the evidence was intrinsic to the charged offenses. *Id.* The trial court admitted the testimony, and the Eleventh Circuit affirmed. *See id.* at 1403-04. The Court held that the evidence was "inextricably intertwined" with the Government's proof of the charged offenses. *Id.* at 1404. Specifically, the Court held that the background evidence about Gucci Hole "explained why McClean

18

was the target of the government's investigation." *Id.* The Court also held that the confidential informant's testimony about working at Gucci Hole, and her work there for McClean "explained the relationship" between them and "was vital to establishing her credibility." *Id.*

As in *McClean*, evidence of Defendant's Other Bad Acts is vital to establishing McQueen's credibility at trial because it will corroborate his expected testimony that Defendant was the leader and organizer of the fraudulent scheme. This leadership role also further explains the relationship between Defendant and McQueen, just as the intrinsic evidence in *McClean* established the relationship between the witness and the defendant in that case. This type of evidence is exactly what the Eleventh Circuit contemplated as evidence that "completes the story" and is "inextricably intertwined" with the charged offense. As the Court explained in *United States v. Prophete*, 522 F. App'x 583, 585 (11th Cir. 2013), "evidence is inextricably intertwined when "it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." Here, the Defendant's active role in the scheme and his knowledge of the scheme as a whole is shown throughout the Other Bad Acts conduct – it is inextricably intertwined with the evidence regarding the charged offense and is vital to the Government's case.

One of the Other Bad Acts in particular, the Holland and Knight Incident, shows how McQueen took orders from Defendant and that the Defendant took a personal cut of the proceeds, even when Defendant's personal signature does not appear on the forged documents. In the Lee Family Trust Incident, Defendant's

active role was shown by his personal meetings with witness Michael Cohen to set up bank accounts.   Similarly, in the Atlanta Quarterback Club Incident, Defendant personally signed the correspondence falsely claiming his company was the proper agent for the victim.   These acts by Defendant are evidence that disproves Defendant's expected defense that McQueen and other subordinates acted without his knowledge or approval.

In addition, the Other Bad Acts conduct explains the size and breadth of the scheme, how it targeted several government agencies across several states, and has been operating since at least 2012.  The Weissman, Nowack, Curry, and Wilco Incident explains how law enforcement originally became aware of the Defendant's activities and how the investigation began into the remaining incidents, including the conduct charged in the indictment.   This evidence is necessary to complete the story of the charged conduct and is, therefore, not subject to the 404(b) analysis.  *United States v. Cancelliere*, 69 F.3d 1116, 1124 (11th Cir. 1995), as amended on clarification (Feb. 2, 1996) ("rule 404(b) does not apply where the evidence concerns the context, motive, and set-up of the crime and is linked in time and circumstances with the charged crime.") (internal citations omitted).

## 2. The Other Bad Acts evidence is admissible under a Rule 403 balancing test.

The same test described above regarding Rule 403 as it applied to Defendant's Prior Convictions also applies to the analysis as to whether the Other Bad Acts conduct are admissible as intrinsic evidence.  Under Rule 403, the Court may exclude evidence if its probative value is substantially outweighed by a danger

of unfair prejudice, confusing the issues, or misleading to the jury.  Fed. R. Evid.
403.  However, Rule 403 should be used sparingly because it results in the
exclusion of concededly probative evidence.  *Holt*, 408 Fed Appx. at 326.  The
Other Bad Acts evidence should be admitted in this case as it is highly probative
in nature, the prosecutorial need is strong, and there is no danger of unfair
prejudice in their admittance.  Neither is there a danger of confusing or
misleading the jury.  Furthermore, any prejudicial impact of the evidence can be
cured by a limiting instruction from the Court.  *Zapata*, 139 F.3d at 1358.

### 3.   Even if the Other Bad Acts conduct is not considered intrinsic, it is otherwise admissible under Rule 404(b).

Even if the Court decides the Other Bad Acts conduct is not intrinsic to the
crimes charged, the evidence would still be admissible under a 404(b) analysis.
Like Defendant's Prior Convictions, the other bad acts evidence is (1) relevant to
an issue other than Defendant's character, namely intent, knowledge, and lack of
accident or mistake; (2) there is sufficient proof so that a jury could find that
Defendant committed the acts; and (3) the probative value of the evidence is not
substantially outweighed by its unfair prejudice.  *Zapata*, 139 F.3d at 1357.

Here, the other bad acts evidence is directly relevant to proving Defendant's
intent and knowledge of the charged conduct, and lack of mistake or accident.
As stated above, Defendant's not guilty plea makes proving intent a material
issue at the trial.  The active role he took in the Other Bad Acts directly shows his
knowledge of the scheme and the intent to defraud.

There is also sufficient proof to find, by a preponderance of the evidence, that the Defendant committed each of the Other Bad Acts.  In each case, the Government expects to present testimony from the fraud victims, the victims of the identify theft, and documentary evidence, as well as the testimony of co-defendant McQueen.  Even as to the Holland and Knight incident where much of the proof relies upon the testimony of co-conspirator McQueen, "the uncorroborated word of an accomplice ... provides a sufficient basis for concluding that the defendant committed extrinsic acts admissible under Rule 404(b)." *United States v. Dickerson*, 248 F.3d 1036, 1047 (11th Cir. 2001) (citing *United States v. Bowe*, 221 F.3d 1183, 1192 (11th Cir.2000)).

Finally, as discussed above, under a Rule 403 balancing test, the probative value of the evidence is high, in fact vital, to the Government's ability to rebut the anticipated defense at trial of Defendant's lack of knowledge or intent, and is not substantially outweighed by prejudice to Defendant.

## IV. Conclusion

For the foregoing reasons, the Government requests the Court grant the motion to introduce the 1) Defendant's two Prior Convictions under Federal Rule of Evidence 404(b) and 2) Defendant's Other Bad Acts conduct as intrinsic to the crimes charged in the indictment.  Alternatively, the Government requests that the Court rule that the Other Bad Acts conduct is admissible under Federal Rule of Evidence 404(b).

The Government requests leave to supplement this motion if it learns additional information relevant to the outcome thereof.

Respectfully submitted,

BYUNG J. PAK
United States Attorney

/s/ JEFFREY A. BROWN
Jeffrey A. Brown
Assistant United States Attorney
600 U.S. Courthouse 75 Spring St., S.W.
Atlanta, GA 30303
404-581-6064
404-581-6181 (fax)
Georgia Bar No. 088131

/s/ TERESA STOLZE
Teresa M. Stolze
Assistant United States Attorney
600 U.S. Courthouse 75 Spring St., S.W.
Atlanta, GA 30303
404-581-6027
404-581-6181 (fax)
Georgia Bar No. 151873

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Robert Citronberg

November 2, 2018

/s/ Jeffrey A. Brown

Jeffrey A. Brown

Assistant United States Attorney

/s/ Teresa M. Stolze

Teresa M. Stolze

*Assistant United States Attorney*