UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:17-cr-00224-AT-CMS |
| ) | |
| ALLEN J.  PENDERGRASS, ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT'S MOTION TO DISMISS INDICTMENT
PURSUANT TO
THE FIFTH AND SIXTH AMENDMENT (PRE-INDICTMENT)**

Comes now Defendant Allen Pendergrass, by and through undersigned counsel, and files this motion to dismiss pursuant to the speedy trial clause of the Sixth Amendment and his due process rights as outlined in the Fifth Amendment.

**I.    BACKGROUND**

As outlined in the magistrate court's report and recommendation (doc. 47), the investigation into this case started in 2013.  A search warrant was issued at Asset Financial Recovery, LLC on September 19, 2013.  Atlanta Police Department officer Douglas Ricks provided the sworn affidavit for the warrant.  There, he detailed allegations of fraud committed against the City of Atlanta by Asset Financial Recovery and Guishard, Wilburn, & Shorts, LLC, businesses which Mr. Pendergrass operated and for which he served as a registered agent.

1

The allegations in the APD affidavit mirror those that were eventually included in the indictment in this case in June of 2017 (*i.e.,* that Mr. Pendergrass and others defrauded the City of Atlanta by claiming to represent individuals and businesses who were awaiting payment from the city related to various issues, but that when the funds were recovered, they were put to personal use by Mr. Pendergrass and others involved in the alleged scheme).  In the affidavit, Officer Ricks notes that arrest warrants were issued for Mr. Pendergrass.  He was arrested on September 19, 2013, and held in connection with Fulton County Superior Court case number 13CP139937 until he was released on bond on October 4, 2013.  (*See* Ex. A, Fulton County docket and Ex. B, bond order.)  He was released from Fulton County pretrial supervision for lack of prosecution on April 3, 2014.  (*See* Ex. C, release from pretrial services.)

On January 30, 2014, Mr. Pendergrass was charged in the Southern District of Ohio with crimes arising out of his operating Guishard, Wilburn & Shorts.  See *US v. Pendergrass*, 2:14-CR-21. (See Ex. D, Ohio indictment.)

Mr. Pendergrass asserts that his arrest on Fulton County charges was directly related to the present case.  The failure to bring federal charges in this district when he was initially arrested September 2013 was a result of a calculated decision to permit his prosecution in multiple districts for related events and to gain tactical advantage by depriving him of the opportunity to interview witnesses and collect

evidence in 2013, before staffing changes and a recent hacking event rendered the collection of evidence and interviewing of witnesses more difficult for the defense.

## II.     MR. PENDERGRASS' SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL HAS BEEN VIOLATED.

The Sixth Amendment grants to the accused in all criminal prosecutions "the right to a speedy and public trial." U.S. Const. Amend. VI. Federal Rule of Criminal Procedure 48 permits a court to dismiss an indictment if "unnecessary delay" occurs in presenting a charge to a grand jury, filing an information against a defendant, or bringing a defendant to trial. This rule "vests much discretion in the trial court, and dismissal is mandatory only if the defendant's constitutional rights have been violated." *United States v. Knight*, 562 F.3d 1314, 1324 (11th Cir. 2009) (quotation marks and citation omitted). A defendant's rights under the Speedy Trial Clause of the Sixth Amendment are triggered by "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *United States v. Marion,* 404 U.S. 307, 320 (1971). Dismissing an indictment does not toll the speedy trial calendar when the next indictment is for precisely the same offense and the same transaction. *See United States v. Avalos*, 541 F.2d 1100 (5th Cir. 1976), cert. denied, 430 U.S. 970, 97 S. Ct. 1656, 52 L. Ed. 2d 363 (1977).

In *Avalos*, the government arrested defendant on drug charges in Washington, D. C. and then dismissed the charges in what the Court of Appeals for the D. C.

3

Circuit found was a deliberate attempt at forum shopping. *See also United States v. Lara*, 172 U.S. App. D.C. 60, 520 F.2d 460 (D.C.Cir.1975) (providing further detail of the prosecutions). The defendant was rearrested in Miami and tried. Reviewing his speedy trial claim, the Fifth Circuit Court of Appeals held the applicable period for a speedy trial ran continuously from his arrest in Washington until his trial in Miami, even though there was a nine-month period between the Washington dismissal and the Miami arrest when he was not under arrest or indictment. The court held that because "the decision to dismiss in the District of Columbia and begin the case anew in Florida was dictated by tactics and not by necessity the government must be charged with these nine months of delay." *Lara*, 520 F.2d at 465.

In *U.S. v. Nixon*, 634 F.2d 306, 309 (5th Cir.1981), the Fifth Circuit Court of Appeals elaborated on the holding in *Avalos*:

> It is clear from *Avalos*, however, as well as other cases, that "(for) purposes of determining when the right to speedy trial attaches the basis for the arrest is critical." *Gravitt v. United States*, 523 F.2d 1211, 1215 n.6 (5th Cir. 1975) (emphasis in original). In *Gravitt*, petitioner was initially arrested on a state warrant charging armed robbery and assault. A search incident to the arrest revealed a large number of firearms. Some time later, a formal complaint and arrest warrant were filed by federal officials charging him with interstate transportation of firearms by a convicted felon. When the speedy trial question was presented, the Court focused on the basis of the arrest and held that the time was not to be measured from the time of the initial arrest but from the time the petitioner was accused of the crime he was then challenging. The cases of *United States v. DeTienne*, 468 F.2d 151 (7th Cir. 1972), cert. denied, 410 U.S. 911, 93 S. Ct. 974, 35 L. Ed. 2d 274 (1973), and *United States v. Cabral*, 475 F.2d 715 (1st Cir. 1973), also make it clear that the basis of the arrest is critical.

4

> Of course, if the second charge is but a part of or only gilds the initial charge, the initial arrest would start the critical period for trial. As the Seventh Circuit observed in *DeTienne*:
>
>> (If) the crimes for which a defendant is ultimately prosecuted really only gild the charge underlying his initial arrest and the different accusatorial dates between them are not reasonably explicable, the initial arrest may well mark the speedy trial provision's applicability as to prosecution for all the interrelated offenses. 468 F.2d at 155.

*Nixon*, 634 F.2d at 309.

Here, it is apparent that Officer Douglas Ricks played an integral part in each prosecution of Mr. Pendergrass and, presumably, as the officer who swore out the search warrant and arrests warrants for Mr. Pendergrass, he will be a player in this case. He describes the same behavior in the search warrant sworn out in 2013 that has become the basis for the indictment in this case, four years later. Mr. Pendergrass' 2013 arrest by Officer Ricks was an arrest in connection with this case and Mr. Pendergrass asserts that the Court should consider the length of time between that arrest and the 2017 indictment when evaluating this motion.

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court set out a four-factor test for determining whether delay between the initiation of criminal proceedings and the beginning of trial violates a defendant's Sixth Amendment right to a speedy trial. The test requires the court to consider the length of the delay, the cause of the delay, the defendant's assertion of his right to a speedy trial, and the

presence or absence of prejudice resulting from the delay. *Barker*, 407 U.S. at 530-533.

### A. The length of the delay should trigger consideration of all the relevant factors.

Here, the delay between his arrest by the City of Atlanta and the present indictment was almost 4 years (September 2013 through June 2017). This delay is sufficient to warrant an evidentiary hearing on the matter. *See Avalos,* 541 F.2d 1100 (a fifteen-month delay is sufficient seriously to consider the reasons for delay and other elements of the appellants' speedy trial claim); *Gravitt v. United States,* 523 F.2d at 1214 (sixteen-month delay required evidentiary hearing on speedy trial claim); *Arrant v. Wainwright*, 468 F.2d 677 (5th Cir. 1972) (almost two-year delay was "clearly sufficient" to require serious consideration of speedy trial claim).

In *Gravitt*, the Fifth Circuit Court of Appeals addressed the issue raised here. It explained:

> the lower court indicated a belief that Gravitt became an "accused" only at the time of the first indictment's return. This ignored the record, which indicates that appellant's right to a speedy trial in fact attached prior to the return of the first indictment, when he was in state custody, federal authorities knew where to locate him, a formal complaint was filed, and an arrest warrant issued. *See Dickey v. Florida*, 1970, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26; *Pitts v. North Carolina*, 4 Cir. 1968, 395 F.2d 182. It is from this point in time that the delay must be computed.

523 F.2d at 1215.

In *Gravitt*, a federal complaint was filed while the defendant was in state custody on related charges. However, a federal indictment was not returned until after the defendant's trial on the related state charges. Although no federal complaint was filed in this district at the time of his arrest, it is clear that the arresting law enforcement officers were in contact with federal authorities (Officer Ricks is named as a witness in the federal case in Ohio) and federal authorities clearly knew how to locate Mr. Pendergrass if necessary. Rather than requesting his presence in this district to answer the present charges, federal prosecutors waited until Mr. Pendergrass had nearly completed his sentence on related charges out of the Southern District of Ohio. And only then was Mr. Pendergrass brought to this district. He has clearly been disadvantaged by this decision. *See Gravitt, 523 F.2d at 1216*, holding:

> Actual prejudice is not to be viewed narrowly. It includes three types of prejudice identified by the Supreme Court in *Barker:* (1) undue and oppressive pretrial incarceration; (2) anxiety and concern which accompany public accusation; and (3) impairment of one's defense.

(Internal citations omitted.)

### B. It appears the government caused the delay to ensure that Mr. Pendergrass was prosecuted in another district and made to serve the maximum amount of time possible in each district.

"A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. Mr. Pendergrass asserts that he was arrested and held on charges in Fulton

7

County that mirror the charges raised here. He believes the lack of immediate prosecution in either Fulton County or the Northern District of Georgia was the direct result of a plan to gain a tactical advantage over him and to ensure he served consecutive sentences in multiple jurisdictions.

### C. Mr. Pendergrass is asserting his right to a speedy trial.

Mr. Pendergrass could not assert his speedy trial rights in a federal prosecution in this district because he was not federally indicted until 2017. He did not know that he would be subject to charges here even after the Fulton County District Attorney's Office refused to come forward with an indictment. This is true, despite admonishments from Fulton County pretrial services that the district attorney's office must indict Mr. Pendergrass or he would be released from supervision for want of prosecution. He could not predict the level of calculation and cruelty the United States government would exercise in waiting for his 30-month Ohio sentence to be almost complete before pulling him back to this district to stand trial for charges from 2013.

### D. Mr. Pendergrass has been prejudiced by the delay.

Mr. Pendergrass asserts that he is prejudiced by the fact that he was in custody in another district for much of the time between his arrest on state charges and the indictment in this case so he could not investigate the case in Atlanta. Further, he was not given the opportunity to request a transfer of his case under Rule 20 so that

he might have resolved both at or near the same time. By waiting 4 years after his arrest to charge him, the government ensured that he would be sentenced separately in two different districts if convicted in both. Finally, a recent hacking event makes it extraordinarily difficult to obtain records from the City of Atlanta now. Many records have been destroyed. See *With paper and phones, Atlanta struggles to recover from a cyberattack* (https://www.cnbc.com/2018/04/02/with-paper-and-phones-atlanta-struggles-to-recover-from-a-cyberattack.html) (reporting in some cases 16 years of records have been lost and entire city hard drives erased). The loss of records and the staffing turnovers in the City of Atlanta, will make it difficult for him to conduct an investigation into this matter. Further, Mr. Pendergrass asserts that prejudice should be presumed based on the nature and extent of the delay here.

As the *Gravitt* court noted, in determining whether a defendant suffered substantial actual prejudice, the court should examine the circumstances of his detention, including whether he underwent a trial in another district or state, and, if so, the time consumed in trial proceedings, and whether in the interval he served any sentences then or previously imposed. In this connection, it should also determine whether a detainer was in fact lodged to appellant's prejudice. 523 F.2d at 1216.

And, in *Doggett v. United States*, 505 U.S. 647 (1992), the Supreme Court held that an "extraordinary" eight-and-one-half-year delay between the defendant's indictment and arrest, which resulted from the government's "egregious persistence

9

in failing to prosecute [him]," violated his right to a speedy trial even in the absence of "affirmative proof of particularized prejudice." *Doggett*, 505 U.S. at 652, 655, 657.  As noted by Justice White in *Barker*:

> [I]nordinate delay between public charge and trial, . . . wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

407 U.S. at 531 (White, J, concurring):

For all of these reasons, Mr. Pendergrass asserts that the indictment in this case should be dismissed with prejudice.

## III. MR. PENDERGRASS' FIFTH AMENDMENT DUE PROCESS RIGHTS HAVE BEEN VIOLATED.

Even if a charge is brought within the period provided by the statute of limitations, a defendant may be able to show that pre-accusation delay has violated his Fifth Amendment due process rights. To obtain a dismissal of the charges by reason of pre-indictment delay, a defendant has the burden of establishing that the government engaged in intentional delay to gain a tactical advantage, and that he suffered actual prejudice. *United States v. Lovasco*, 431 U.S. 783 (1977); *United States v. Marion*, 404 U.S. 307, 324 (1971).

Mr. Pendergrass argues that the delay in this case was intentional and was an attempt to secure his continued custody from one federal district to another, to ensure

that he could not seek concurrent punishment pursuant to Rule 20, and to prevent him from preparing to defend his case in the time he was incarcerated in another district. His arrest and pending action in Fulton County were merely a "ruse" to place him under supervision while this district and the Southern District of Ohio coordinated their efforts to prosecute him. Pursuant to the "ruse" exception, a state arrest will start the Speedy Trial clock "when the Government has knowledge that an individual is held by state authorities solely to answer to federal charges." *United States v. Woolfolk*, 399 F.3d 590, 596 (4th Cir. 2005); *see also United States v. Clark*, 754 F.3d 401, 405-06 (7th Cir. 2014) (ruse exception possible if defendant has evidence of agency between federal and state authorities); *United States v. Benitez*, 34 F.3d 1489, 1494 (9th Cir. 1994) ("Speedy Trial Act time periods may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act."). Many Courts of Appeals have recognized the "ruse" exception in the context of an INS civil detention where there is "collusion or evidence that the detention was for the sole or primary purpose of preparing for criminal prosecution." *United States v. Garcia-Martinez*, 254 F.3d 16, 20 (1st Cir. 2001); *see also United States v. Guevara-Umana*, 538 F.3d 139, 142 (2d Cir. 2008); *United States v. Pasillas-Castanon*, 525 F.3d 994, 997 (10th Cir. 2008); *United States v. Drummond*, 240 F.3d 1333, 1336 (11th Cir. 2001); *United States v. De La Pena-Juarez*, 214 F.3d 594, 598 (5th Cir. 2000). Here, it is apparent

that the arrest on state charges was a ruse.  Fulton County arrested him and held him under the supervision of the court for four months before pretrial services announced that he was released from its supervision due to lack of prosecution but his case remained pending in Fulton County.  See Fulton County case number 13CP139937.  He was never prosecuted in Fulton County, however.  Once his federal sentence out of Ohio was nearly complete, he was hauled back to this Court to answer to the present charges.

For all of these reasons, Mr. Pendergrass asserts that the indictment in this case should be dismissed with prejudice.

Respectfully submitted this 29th day of January 2019.

/s/SARALIENE S. DURRETT
Saraliene S. Durrett
GA Bar No. 837897
Counsel for Mr. Pendergrass

## **CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this date electronically filed the foregoing motion to continue with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney(s) of record:

All Defense Counsel

All AUSAs of record

This 29th day of January 2019.

/s/SARALIENE S. DURRETT
Saraliene S. Durrett
GA Bar No. 837897
Counsel for Mr. Pendergrass