IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INDICTMENT |
| v. | : | |
| | : | NO. 1:17-CR-224-AT-CMS |
| | : | |
| ALLEN PENDERGRASS | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS INDICTMENT PURSUANT TO THE FIFTH AND
SIXTH AMENDMENT (PRE-INDICTMENT)

COMES NOW, the UNITED STATES OF AMERICA ("Government"), through its counsel Byung J. Pak, United States Attorney for the Northern District of Georgia, and Jeffrey A. Brown, Assistant United States Attorney, files this Response to Defendant's Motion to Dismiss Indictment Pursuant to Fifth and Sixth Amendment (Pre-Indictment). (Doc. 90).

INTRODUCTION

Defendant's argument that the Indictment should be dismissed based on pre-indictment delay is not supported by law or facts. First, Defendant's Sixth Amendment pretrial trial right did not attach when he was arrested on state law charges and he has not shown requisite unnecessary delay. Second, Defendant's has failed to show intentional delay and his unsupported claims that the Fulton County

1

action was a ruse is without support and he is not entitled to relief under the Fifth Amendment. Therefore, this Court should deny his motion to dismiss on both grounds.

## PROCEDURAL HISTORY

I.   Atlanta Police Department Investigation

In or about, August 2013, Investigator D. Ricks with the Atlanta Police Department (APD) opened an investigation related to the theft of approximately $200,000 from the City of Atlanta by the recovery company, Asset Financial Recovery. APD investigators learned that Defendant Allen Pendergrass was associated with the company and opened the post office box where fraudulently obtained checks were mailed. Investigators learned that Defendant, co-defendant and others associated with Asset Financial Recovery were fraudulently claiming they represented individuals and businesses that were owed money by the City of Atlanta and submitting fraudulent documentation directing the city to mail checks to the Defendant's post office box. In August 2013, investigators obtained photographs of the Defendant and co-defendant, Terrell McQueen, depositing some of the stolen checks into a bank account the Defendant controlled. Investigators also interviewed victims of the fraud who stated they did not give Asset Financial

Recovery authority to recover funds owed to them by the City of Atlanta.

In September 19, 2013, law enforcement officers executed a search warrant on the offices of Asset Financial Recovery in College Park, Georgia and seized several boxes of documents and computers. On the same date, APD officers also arrested Defendant and co-defendant on third degree forgery, theft by taking and theft by deception charges. In 2014, federal investigators with Internal Revenue Service-Criminal Investigations and the United States Postal Inspection Service adopted the case after they received information that Defendant and his companies had operated a similar fraudulent scheme throughout the country. Federal investigators subpoenaed local and state government agencies around the nation and interviewed numerous victims and witnesses about the fraud scheme.

II.    Northern District of Georgia Indictment

On June 27, 2017, a grand jury charged the Defendant and his co-defendant, Terrell McQueen with five counts of mail fraud in violation of Title 18, United States Code, Section 1341, one count of conspiring to commit money laundering in violation of Title 18, United States Code Section, 1956(h) and four counts of aggravated identity theft in violation of Title 18, United States Code, Section 1028A.

3

(Doc. 1.).1  The indictment specifically alleges that Defendant operated a mail fraud scheme in the Northern District of Georgia between an unknown date and April 2014. (Doc. 1). The Government alleges that Defendant both conspired with others to perpetuate and directly participated in a scheme in which he and his employees would use public/open records laws to acquire the names of individuals and companies owed outstanding monies by government agencies, including the City of Atlanta. (Doc. 1). The Defendant himself, and through his employees and partners, would then mail correspondence to the government agency, including forged power of attorney forms, fraudulently claiming that Defendant's company was the authorized agent for the rightful owner of the unclaimed funds. (Doc. 1). The fraudulently obtained funds would then be deposited into bank accounts controlled by the Defendant, his employees, and conspirators, without remitting any portions of the proceeds to their rightful owners.

III.   <u>Southern District of Ohio Indictment</u>

On January 30, 2014, a federal grand jury in the Southern District of Ohio

---

1 At the time Defendant was indicted in this case, he was in federal custody on unrelated federal case that was charged in the Southern District of Ohio. On July 21, 2017, Defendant made his initial appearance in the case and he was arraigned after he was transported from Federal Correctional Institute Jesup. (Doc. 12).

returned an indictment against Defendant in a case styled *United States v. Allen J. Pendergrass*, Case No. 2:14-cr-21 (S.D. Ohio) ("the Ohio Case"). In the Ohio Case, Defendant was charged with fifty-one counts of bank fraud based on allegations that he deposited stolen United States Treasury checks into a bank account in Columbus, Ohio during a six-month period between February and August 2012. He was also charged with one count of aggravated identity theft based on his use on September 5, 2012 of the name and social security number of another person to obtain money from that same Columbus, Ohio bank. Defendant was the sole person charged in the Ohio Case.

## FACTUAL AND LEGAL ANALYSIS

**1. Defendant is not entitled to relief under the Sixth Amendment's right to a speedy trial.**

"The protections of the Sixth Amendment are activated 'only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution.' " *United States v. Reme*, 738 F.2d 1156, 1162 (11th Cir. 1984)(quoting *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)), cert. denied 471 U.S. 1104, 105 S.Ct. 2334, 85 L.Ed.2d 850 (1985). Defendant's Sixth Amendment speedy trial right did not attach at the point that he was accused and arrested on state law charges on September 19, 2013 by the

5

Atlanta Police Department, however. *See United States v. Ingram,* 446 F.3d 1332, 1339 (11th Cir. 2006) (Only pretrial delay following a person's arrest, charge, or indictment is relevant to whether the Speedy Trial Clause of the Sixth Amendment is triggered."); *Gravitt v. United States*, 523 F.2d 1211, 1215 n.6 (5th Cir. 1975)(rejecting prisoner's contention that, with respect to his prosecution on federal gun charges, his Sixth Amendment speedy trial right attached when he was arrested on state armed robbery and assault charges because he "was arrested on charges stemming from violations of Georgia state law, not on charges stemming from the federal firearms conviction which he now challenges"). *See also United States v. MacDonald*, 456 U.S. 1, 10, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982)("Of course, an arrest or indictment by one sovereign would not cause the speedy trial guarantees [of the Sixth Amendment] to become engaged as to possible subsequent indictments by another sovereign"); *United States v. Green*, 508 F.3d 195, 203 (5th Cir. 2007)("[A]s with the Speedy Trial Act,[a] prior state arrest ..., even if based upon the same operative facts as a subsequent federal accusation, does not trigger the sixth amendment right to a speedy trial" (internal quotation marks omitted) ); *United States v. Garner*, 32 F.3d 1305, 1309 (8th Cir. 1994)(concluding "arrest on state charges does not engage the [Sixth Amendment] speedy trial protection for a subsequent

6

federal charge ... even if the arrest is for conduct that is the basis of a subsequent indictment for a federal offense"(internal quotation marks and citations omitted) ), *cert. denied*, 514 U.S. 1020, 115 S.Ct. 1366, 131 L.Ed.2d 222 (1995); *United States v. Gomez*, 776 F.2d 542, 549 (5th Cir. 1985); *United States v. Walker*, 710 F.2d 1062, 1069 (5th Cir. 1983) cert. denied, 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 229 (1984); *United States v. Hendricks*, 661 F.2d 38, 39-40 and n.1 (5th Cir. 1981). Defendant was "accused" for purposes of his Sixth Amendment speedy trial rights in this case only after the criminal prosecution in this case was begun. Therefore, because Defendant was indicted on June 27, 2017 and made his initial appearance on those federal charges shortly thereafter on July 21, 2017, that delay would not even trigger a Sixth Amendment speedy trial analysis under these cases.

Here, Defendant claims without citing any controlling authority that he was accused for purposes of the Sixth Amendment by virtue of his September 19, 2013 arrest by APD officers. While, there is no question that Defendant was arrested on September 19, 2013, by APD officers. Defendant makes no claim that State authorities were acting on behalf of the United States in making that arrest. Moreover, cases cited by Defendant do not support his argument that a separate state arrest would trigger a Defendant's Sixth Amendment right to a speedy trial without

additional acts taken by federal investigators. In support of his argument, Defendant cites *Gravitt v. United States*, 523 F.2d at 1215. However, the Court in *Gravitt* noted that prisoner's "right to a speedy trial in fact attached prior to the return of the first [federal] indictment, when he was in state custody, federal authorities knew where to locate him, a formal complaint [charging him with violation of federal law] was filed, and an arrest warrant issued." 523 F.2d at 1215. There are no similar facts in this case that would suggest that Defendant's Sixth Amendment right attached prior to the filing of the Indictment. Therefore, because Defendant does not argue that any other delay in this case triggers the Sixth Amendment his claim fails.

### 2. Defendant is not entitled to relief under the Fifth Amendment's Due Process Clause.

To establish a violation of due process because of pre-indictment delay, a defendant must show "(1) that the delay caused actual prejudice to the conduct of [his] defense, and (2) that the delay was the product of deliberate action by the government designed to gain a tactical advantage." *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986) (citing *United States v. Warren*, 772 F.2d 827, 836 (11th Cir. 1985)). "This standard is 'an exceedingly high one.' " *Id*. (*citing Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984) (per curiam)).

Both prongs of this test must be satisfied to make relief available to a

> defendant; that is, the court need not decide whether one prong is satisfied where a defendant does not carry his burden to show the other. E.g., United States v. Thomas, 62 F.3d 1332 (11th Cir. 1995) (declining to decide prejudice prong where defendants did not meet their burden to show pre-indictment delay was deliberate for the purpose of tactical advantage).

*United States v. Hawes*, No. 5:14-CR-397-RDP-TMP, 2015 WL 4067331, at *2 (N.D. Ala. July 1, 2015); *see also United States v. Corbin*, 734 F.2d 643, 647-48 (11th Cir. 1984) ("We need not reach the question of whether the delay was intended to gain tactical advantage, because the defendants have made no showing that they were prejudiced by the delay.").

To demonstrate prejudice, the defendant must show that her ability to defend against the charges in the indictment "has been 'meaningfully impaired . . . to such an extent that the disposition of the criminal proceeding [will] likely [be] affected.'" *United States v. McKoy*, 129 F. App'x 815, 819 (4th Cir. 2005). " '[T]o carry the heavy burden of proving actual prejudice from pre-indictment delay, concrete proof is required; mere speculation and bare allegations will not suffice.' " *Id*. (quoting *United States v. McCoy*, 977 F.2d 706, 711 (1st Cir.1992)). "Prejudice is not presumed based on a lengthy delay, but rather actual prejudice must be shown in each case." *Jackson v. Benton*, 315 F. App'x 788, 791 (11th Cir. 2009) (citing *Stoner*

*v. Graddick*, 751 F.2d 1535, 1544 (11th Cir. 1985)).

"The burden of satisfying the 'tactical advantage' test rests with the defendant, and that burden has been characterized as a 'heavy' one." *United States v. Stoll*, No. 10–60194–CR, 2011 WL 939251, at \*7 (S.D.Fla. Feb.16, 2011), adopted by 2011 WL 765949, at \*1 (S.D.Fla. Feb.25, 2011) (citation omitted).

"[T]he government does not bear the burden of explaining the reason for the delay." *United States v. Ramirez*, 491 F. App'x 65, 70 (11th Cir. 2012). "[W]here the record shows no reason for the delay (or where delay is due to simple negligence), no due process violation exists." *United States v. Foxman*, 87 F.3d 1220, 1224 n.2 (11th Cir. 1996) (citations omitted); see also Butler, F.2d 792 at 1534 (holding that mere "inaction in bringing the case is insufficient . . . to establish that the government's actions were motivated by an attempt to gain a tactical advantage").

## A. Defendant has failed to show that delay caused actual prejudice.

Defendant does not allege actual prejudice when alleging that his Fifth Amendment Due Process were violated or incorporate the arguments he makes in connection with his claims that his Sixth Amendment right to speedy trial has been violated. (Def. Br. at 8-9). In that section he argues he was prejudiced because; (1)

10

he was in custody in another federal district during the time of his state arrest and Indictment in this case and unable to investigate the Atlanta fraud; (2) he would be sentence separately in two districts if were convicted of both; (3) City of Atlanta staff turnover and hacking incident is making it difficult to obtain records. (*Id.*). These are exactly the type of "bare allegations" that have been found to be insufficient to satisfy the defendant's heavy burden of proving actual prejudice. *See Campbell*, 2005 WL 6436621, at *3. "When a defendant asserts prejudice because of the loss of evidence, [he] must show that the loss impaired [his] ability to provide a meaningful defense." *United States v. Solomon*, 686 F.2d 863, 872 (11th Cir. 1982). Defendant "has presented no evidence that [his] defense strategy would have been different if [he] had been indicted sooner or that any evidence [actually] became unavailable because of the time lapse." *United States v. Skinner*, 433 F.3d 613, 616-17 (8th Cir. 2006). Instead, he makes only a general and unsubstantiated claim of prejudice, and he has failed to demonstrate specifically how the delay in any way impaired his ability to provide a meaningful defense. "[V]ague argument[s] related to the possible loss of unspecified evidence" and arguments "based on pure speculation" or "the mere possibility of prejudice" should be "summarily rejected." *United States v. Rosso*, No. 3:14-CR-00014-TCB, 2015 WL 7115860, at *19 n.20

11

(N.D. Ga. Nov. 12, 2015) (citing *United States v. Jones*, No. CR406-38, 2006 WL 1653762, at *2 (S.D. Ga. June 7, 2006)). "As [Defendant] has not demonstrated any actual or substantial prejudice to [his] defense, [his] Fifth Amendment pre-indictment delay claim fails." *Skinner*, 433 F.3d at 617.

## B. Defendant has failed to show that the delay was the product of deliberate action by the Government designed to gain a tactical advantage.

Even if Defendant could show actual prejudice, his due process claim would still fail because he "has not demonstrated that the delay was for the purpose of giving the government a tactical advantage." *United States v. Solomon*, 686 F.2d 863, 872 (11th Cir. 1982). "Tactical advantage is the touchstone in pre-indictment delay cases." *United States v. Wetherald*, 636 F.3d 1315, 1324 (11th Cir. 2011). "Under the standard first used in [Solomon] and since used consistently in this circuit, to prevail on a due process claim, the defendant must show that any delay by the government not only caused actual prejudice, but that the prosecution 'deliberately caused the delay to gain any tactical advantage.' " *United States v. Benson*, 846 F.2d 1338, 1342–43 (11th Cir. 1988) (*citing United States v. Caporale*, 806 F.2d 1487, 1514 (11th Cir. 1986)). As Judge Story said in *United States v. Campbell*: "Only if a defendant is able to prove both such tactical maneuvering and

12

actual substantial prejudice will due process have been offended." 2005 WL 6436621, at *4. Since Defendant cannot show actual prejudice, this Court "need not reach the question of whether the delay was intended to gain tactical advantage." *Corbin*, 734 F.2d at 647–48.

Furthermore, Defendant has "not suggested what tactical advantage the government hoped to gain [by his arrest on state charges and 4-month supervision], or pointed to any tactical advantage that in fact resulted from the delay." *Caporale*, 806 F.2d at 1514. Therefore, any delay in bringing federal charges in this case did not result in any prejudice to Defendant.

CONCLUSION

For the reasons stated herein, the Government respectfully requests that Court

deny the Defendant's motion.

This 15th day of February, 2019.

Respectfully submitted,

BYUNG J. PAK
UNITED STATES ATTORNEY

*/s/Jeffrey A. Brown*
JEFFREY A. BROWN
ASSISTANT UNITED STATES ATTORNEY
600 U.S. Courthouse
75 Spring St., S.W.
Atlanta, GA 30303
404/581-6064
404/581-6181 (fax)
Georgia Bar No. 088131

14

<u>CERTIFICATE OF SERVICE</u>

I served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Saraliene Durrett

This 15th day of February, 2019.

/S/ Jeffrey A. Brown
JEFFREY A. BROWN
ASSISTANT UNITED STATES ATTORNEY

15