UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17-cr-00224-AT-CMS |
| | ) |
| ALLEN J. PENDERGRASS, | ) |
| Defendant. | ) |
| _____ | ) |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
INDICTMENT PURSUANT TO
THE FIFTH AND SIXTH AMENDMENT (PRE-INDICTMENT)**

**I.  MR. PENDERGRASS HAS SHOWN GOOD CAUSE TO PERMIT THE COURT TO CONSIDER HIS UNTIMELY MOTION.**

"The district court's desire to avoid penalizing a criminal defendant for the inadvertence of his attorney constitutes 'cause' under 12(f) and is within the court's discretion." *United States v. Hall*, 565 F2d 917, 920 (5th Cir. 1978)[1]. In *Hall*, the former Fifth Circuit Court of Appeals found no abuse of discretion in a district court's decision to consider an untimely filed motion to suppress, even when the motion was filed during trial. *Id.* The court relied upon similar holdings in *Glisson v. United States,* 406 F.2d 423, 425 (5th Cir. 1969), *overruled on other grounds by*

---

[1] *See Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) (holding that the decisions of the United States Court of Appeals for the Fifth Circuit as that court existed on September 30, 1981, shall be binding as precedent in the Eleventh Circuit).

1

*United States v. Johnson*, 431 F.2d 441 (5th Cir. 1970), and *United States v. Seeley,* 301 F. Supp. 811, 813-14 (D.R.I.1969). In *Seeley*, a district court judge addressed an untimely motion to dismiss and found that "it is settled that discretion lies in the trial judge to permit motions to dismiss even after the plea when justice requires." *See also United States v. Gonzalez*, 81 F. Supp. 3d 1212, 1227 (D. NM 2015) (Addressing a similar issue, finding good cause for the defendant's failure to meet the deadline, and stating that because he did not file the untimely motion on the eve of trial, it was overly formalistic to insist upon compliance with a deadline that had passed before new counsel took the case).

Here, Mr. Pendergrass did not wait until the eve or trial or until trial began. Counseled filed the motion as soon as humanly possible after reviewing the voluminous discovery that was initially produced to her. Mr. Pendergrass has done nothing to delay the filing of the motion and he should not be penalized by either the failure of his prior counsel to recognize that such a motion should be filed or the failure of his present counsel to review the case more quickly.

As previously noted, the government will suffer no prejudice by any delay resulting from a hearing on this motion and/or the time it may take the Court to review the present claims. It is the government – not Mr. Pendergrass – that chose to wait almost 4 years to bring this case. Mr. Pendergrass, who earnestly believes that the government has engaged in unconstitutional delay in his case, will be

prejudiced if the Court rejects his motions merely because counsel were not timely with their filings. He again asserts that there is sufficient information presently available to warrant a hearing regarding the US Attorney's Office's decision to delay his prosecution for almost 4 years. Forcing him to trial without the granting him the opportunity to investigate and argue further will result in a denial of Due Process and justice in this case.

Mr. Pendergrass requests the opportunity to litigate this issue with a hearing and further briefing if warranted.

## II. THE CASES CITED BY THE GOVERNMENT SHOULD NOT INFORM THIS COURT'S DECISION BECAUSE THE DEFENDANTS IN THOSE CASES EITHER NEVER FILED THE MOTIONS AT ISSUE IN THE DISTRICT COURT OR THEY MADE NO ATTEMPT TO SHOW GOOD CAUSE FOR UNTIMELY FILINGS.

The cases cited by the government involve defendants who either failed to raise their issues before the trial court and therefore were prohibited from litigating the issues on appeal or who never attempted to show good cause for untimely filings. *See cases outlined Doc. 106 at 3-5.*

In *United States v. Durham*, 659 Fed. Appx. 990 (11th Cir. 2016), the Court noted that although Durham argued on appeal that the admission of certain evidence was improper, he "did not file a pre-trial motion to suppress, and at trial, he did not object to the admissibility of the evidence obtained pursuant to the search warrant, and incident to his arrest." The Court held that "[a]lthough there is a narrow good-

3

cause exception to waiver in this context, Durham has not argued that he is entitled to this exception. Thus, Durham has waived this argument." *Id*. at 993.

Likewise, in *United States v. Burke*, 633 F.3d 984 (10th Cir. 2011) (where the briefs and the oral arguments at the trial court level focused exclusively on one issue related to the suppression of evidence the appellate court considered a new issue on this topic raised for the first time on appeal to be waived.) Additionally, the *Burke* court found that "Burke has made no effort to 'demonstrate [good] cause for his failure to raise the issue.'" *Id.* at 988. *See also United States v. Curbelo*, 726 F.3d 1260 (11th Cir. 2013) ("Defendant did not file a motion to suppress the GPS-tracking evidence in the district court, but he claims we can review the issue for plain error."); *United States v. Barrington*, 648 F.3d 1178 (11th Cir. 2011) ("Barrington concedes that he did not raise these contentions in the district court. Accordingly, he is deemed to have waived them, absent "good cause.").

The government also asserts that a defendant cannot show good cause when his prior attorney "consciously decided not to file a motion." Doc. 106 at 3.  In *United States v. Ramirez*, 324 F.3d 1225 (11th Cir. 2003), the court criticized the defendant's attorneys' choice to wait until after opening statements to claim the indictment was defective so that they could gain a strategic advantage by raising the defense after jeopardy attached.  Finding that "[t]his tactic is precisely what Rule 12 was designed to prevent," the Court held that as a result of this *conscious tactical*

decision, the defendants waived their defense by failing to raise it before trial. *Id.* at 1228.

Notably, the Sixth Circuit Court of Appeals recognized that the "potential harshness of a strict application of this rule is mitigated by a safety valve that allows district courts to grant relief from the waiver for "good cause." *Id.* at 964. The Court also explained that "***Good cause is a flexible standard heavily dependent on the facts of the particular case as found and weighed by the district court in its equitable discretion.***" *Id*. at 965 (emphasis added). The government's suggestion that prior counsel deliberately decided not to file the motion at issue is not supported by any record before this Court. The record is replete with prior counsel's reference to his health issues and, despite the fact that the case was destined for trial, there were very few pretrial motions filed. Those that were filed were perfunctory and lacking in detail. There were no objections filed when these motions were denied. There is certainly no evidence that prior counsel considered the present issue and rejected it.

The government also relies upon *United States v. Taylor*, 792 F.2d 1019 (11th Cir. 1986). The facts in *Taylor* are of note. There the appellate court explained:

> We cannot say that the district court abused its discretion. While it *may* have been *permissible* for the district court to consider the motion despite its untimeliness, White has cited no case in which a district court was required to do so under similar circumstances. The "cause" offered by White's attorney -- his appearance only three weeks before trial -- hardly explains his failure timely to raise the motion to suppress. Surely

>three weeks is enough time to examine the documents that are to be used against one's client. Moreover, it is unlikely that substitute counsel stepped in without learning anything about the case from White's first attorney, especially about evidence so damaging as a confession to kidnapping. The assertion of cause appears even less convincing when it is considered in light of the fact that White's attorney announced he was ready for trial and urged that the jury be sworn on the first day of trial, although he was given the option to delay the swearing of the jury for several days. He did not then move to suppress the statements for another three days. We are hard pressed to find any "cause" in this set of facts, let alone cause so compelling that we must hold that the district court abused its discretion in refusing to overlook White's waiver under Rule 12(b)(3).

(Emphasis in original.) Here, the motion was filed well before trial and shortly after new counsel came aboard. It should be noted, however, that present counsel has yet to receive the file from prior counsel. This delay is due to prior counsel's illness and his failure to meet with present counsel or prepare the file for pick up. The facts here are distinguishable from those in the cases offered by the govenrment and they warrant a hearing on this matter.

### III.   DISCOVERY ISSUES REMAIN IN THIS CASE.

Despite repeated requests, present counsel has not received Mr. Pendergrass' file from prior counsel. In an effort to move the case along, on December 18, 2018, present counsel contacted the government asking if the government could provide discovery instead because it was proving difficult to get it from prior counsel. The government responded that it had already mailed discovery to present counsel. On December 18, 2018, present counsel received the discovery from the government.

It was one disc. The letter that accompanied it stated that it was "discovery in the above-referenced criminal action" and that it was being produced "pursuant to your request." The disc contains thousands and thousands of documents, some of which were seized from Mr. Pendergrass' business, some of which were obtained through subpoenas and other sources.

After the filing of the present motion to dismiss and the Court's order that the parties confer regarding discovery, the government notified counsel there was an additional disc and a video that counsel had not received. The government sent the additional disc to present counsel[2] on March 19, 2019. The roughly 2-minute video[3] was emailed to counsel on March 29th. The second disc also contains numerous files including spreadsheets, letters, emails, and other items apparently copied from some of Mr. Pendergrass' computers.

Present counsel has repeatedly asked for access to the financial files on Mr. Pendergrass' seized computers. Counsel notified the government that she believes these files will be Quickbooks files and other financial documents. The government

---

[2] According to the government, 4 discs were sent to prior counsel. Those discs have apparently been combined in to the 2 discs that were copied and sent to present counsel.

[3] The video apparently shows the reading of Mr. Pendergrass' Miranda rights on the day of his arrest while his office was being searched, but counsel cannot get the sound to play. The government is sending an additional disc with the video to counsel. Counsel has asked if there are any other videos from the search of Mr. Pendergrass' building, but none have been provided.

provided disc 2 to counsel on March 19, 2019 and stated that if the requested files are not contained on this disc, the computer hard drives would have to be copied. Counsel completed the initial review of this disc on March 30. Counsel then notified the government that it did not appear that the Quickbooks files were on the disc and she asked if the agent could provide a path to the files on the disc. The government responded that if the files are not on the disc, it can image the entire hard drive if we can say which computer(s) would need to be copied. No path the files was provided.

    Mr. Pendergrass asserts that, despite his requests, he did not receive copies of his discovery from prior counsel nor did he review discovery with prior counsel. To say the least, Mr. Pendergrass is frustrated with what he views as the failings of his prior counsel and with the volume of discovery produced, the complete lack of organization of the files produced, and the apparent lack of files that he believes to be relevant to his case in the produced files. He has not been permitted access to his seized computers and he has not used them in over 5 years so it is very difficult for him to recall specific files or their locations on certain computers.[4]

On March 29, 2019, present counsel received "supplemental discovery" from the government via email. In the emailed file, there are emails that were not previously

---

[4] As seen in the emails produced on March 29, 2019, when Mr. Pendergrass' Ohio attorney asked for access to Mr. Pendergrass' seized computers, APD Detective Ricks chose to ignore this request. It appears that Mr. Pendergrass' attorney was not granted access to these computers. See Attached.

produced in discovery showing that the Fulton County District Attorney's Office was in contact with AUSA Jeff Brown in May 2014 (after Mr. Pendergrass had been released from Fulton County pretrial release at the insistence of the pretrial release staff because he had yet to be indicted in State court).  See attached.  There is no other information provided about meetings that were arranged between these offices but certainly the government cannot deny that the Fulton County District Attorney's Office knew about the federal investigation in this case as early as 2014.  It is also true that the Fulton County District Attorney's Office was notified repeatedly that Fulton County pretrial services was going to release Mr. Pendergrass because he had not been indicted by that office in the Spring of 2014.  Shortly thereafter, the DA's office contacted AUSA Jeff Brown to discuss the investigation.  See attached email.  The Fulton case then remained open – and remains open – despite the fact that it appears no charges were being considered.  The Fulton County case is open even though no charges have been filed and despite the fact that it is too late under Georgia law to indict him in connection with the allegations here.  *See* O.C.G.A. 17-3-1 (four year statute of limitations on most felonies in Georgia).  The purpose, then, of keeping this Fulton case open appears to have been to ensure that Mr. Pendergrass was under the supervision or authority of a court in this State.  To be sure, he was notified by his case manager when he was in federal prison that he had to resolve the Fulton County case before he could be released to a half-way house.  Of course, he

9

was indicted in this federal case before his sentence in the other federal case ended. APD Detective Ricks and US Postal Inspector Kermie Green have apparently continued to work closely with all prosecuting authorities throughout the last 6 years.

The emails also show that the APD was in contact with potential victims in 2013 who noted that they had used Mr. Pendergrass's company to successfully obtain assets in the past and that they were *not* the victims of fraud in this case. Due to the massive amount of discovery and the complete lack of organization of that discovery, counsel has not been able to confirm that this email is contained on the 2 discs she has received, but she has not seen it there. Certainly, the email provides a potential lead for a witness in this case to show the operation of the legitimate asset protection business that Mr. Pendergrass ran for many many years.

Counsel and Mr. Pendergrass are doing their best to make it through the recently produced discovery but there are numerous files that require close attention to detail and it will take a significant amount of time to review them. Additionally, Mr. Pendergrass is still asking for access to his computers or copies of the hard drives containing his Quickbook and other financial files. Counsel will provide the government with a hard drive for the purpose of getting these copies.

## IV. THE GOVERNMENT HAS DELAYED TO GAIN A TACTICAL ADVANTAGE HERE AND THE DELAY IN PROSECUTION HAS PREJUDICED MR. PENDERGRASS.

The government argues that Mr. Pendergrass cannot show prejudice connected to the delay of this case. Mr. Pendergrass maintains all of his previous arguments, including the assertion that prejudice is not required with a Sixth Amendment violation like the one presented here. *See Doggett v. United States*, 505 U.S. 647 (1992), where the Supreme Court held that an "extraordinary" eight-and-one-half-year delay between the defendant's indictment and arrest, which resulted from the government's "egregious persistence in failing to prosecute [him]," violated his right to a speedy trial even in the absence of "affirmative proof of particularized prejudice."

Still, Mr. Pendergrass has been prejudiced here.

As noted in the previously filed APD report, the goal of the US Postal Service investigation in 2013 was federal prosecution. Keeping the Fulton County case open and pending since 2013 (without indictment) permitted the prosecution of Mr. Pendergrass in other districts, where the allegations were older and may have triggered statute of limitations concerns had they been delayed, but still ensured that a hold remained on him in Georgia. Thus ensuring he could not be released from prison without returning – in custody – to Atlanta.

Since his arrest in September 2013, he has suffered severe anxiety and concern regarding pretrial arrest and post-trial potential imprisonment.  After his arrest by APD and USPIS, he sat in custody in Fulton County before he was permitted to post bond in a case directly related to the investigation at issue here.  He was then subject to pretrial release for six months in Fulton County, during which time he could not leave the Atlanta metro area without permission.  He had a "24 hour curfew," which meant he was restricted to his house most of the time.  He was subject to urine testing and he was required to wear an ankle monitor.  He was required to take classes as part of his pretrial release.

Additionally, as a result of the pending Fulton County case, he was unable to receive the benefits of early release after serving his sentence in another federal district, even though he successfully completed the RDAP program.  He has been unable to access his computers and other office equipment since the seizure in 2013 and he asserts that information on these computers will assist him in the defense of this case.  **As seen in the emails produced on March 29, 2019, when Mr. Pendergrass' Ohio attorney asked for access to Mr. Pendergrass' seized computers, APD Detective Ricks chose to ignore this request.  It appears that Mr. Pendergrass' attorney was not granted access to these computers.**  See Attached.

As a sixty-two-year-old man, the defendant currently suffers from memory loss and now takes medicine to enhance his memory. He believes his inability to recall specific events related to this case will prejudice his defense. The loss of records and staff turnover in places like the City of Atlanta may make it difficult to fully investigate his defense.

The government has also certainly used the delay to its advantage. It now intends to bolster its weak case against Mr. Pendergrass – a case in which it appears that all relevant business correspondence and/or fraudulent documents can be directly tied to the co-defendant with his name and/or signature – by attempting to admit evidence of his prior conviction in other districts. Of course, these convictions all happened ***AFTER*** the APD and U.S. Postal Service raided his office and arrested him back in 2013. Now, however, the government wants to use those convictions to ensure a conviction here. To further that goal, it has filed a notice of intent to present evidence of these other cases under Rule 404(b).

Further, as already noted, the calculated effort to divide the allegations related to Mr. Pendergrass' businesses to be tried in different jurisdictions at different times ensured that Mr. Pendergrass would serve the maximum amount of time for each alleged crime. As noted, the APD and US Postal service worked together to arrest Mr. Pendergrass and seize all of his business documents and property. APD, US Postal Service, the US Attorney's Offices in various districts,

and the Fulton County District Attorney's Office were in contact with each other about Mr. Pendergrass and the allegations presented here for many years before the indictment was sought in this case. Indeed, Postal Inspector Kermie Green and APD Detective Ricks were listed as witnesses in the cases in other states and federal districts.

Mr. Pendergrass believes these years' long discussions about him and his alleged business activities show a concerted effort to delay his prosecution in this district for the purpose of ensuring that prosecutions in other districts would occur first. He asserts that he has shown violations of his Fifth and Sixth Amendment rights and he asserts that the indictment in this case should be dismissed with prejudice. Should the Court determine that additional evidence is required to prove these violations, Mr. Pendergrass requests a hearing on this motion.

Respectfully submitted this 1st day of April 2019.

/s/SARALIENE S. DURRETT
Saraliene S. Durrett
GA Bar No. 837897
Counsel for Mr. Pendergrass

## **CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this date electronically filed the foregoing reply with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney(s) of record:

All Defense Counsel

All AUSAs of record

Respectfully submitted this 1st day of April 2019.


/s/SARALIENE S. DURRETT
Saraliene S. Durrett
GA Bar No. 837897
Counsel for Mr. Pendergrass