IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

ALLEN PENDERGRASS

CRIMINAL INDICTMENT

NO. 1:17-CR-224-AT-CMS

## **FINAL REPORT AND RECOMMENDATION**

This case is before the Court on a Motion to Dismiss Indictment filed by Defendant Allen Pendergrass in which he argues that the case against him should be dismissed based on what he considers to be violations of his Sixth Amendment right to a speedy trial and his Fifth Amendment right to due process.  [Doc. 90]. He complains that the federal government waited nearly four years to indict him after his original arrest by state authorities, that the federal government did so with the intent to gain a tactical advantage, and that the delay caused him actual prejudice.  For the reasons discussed below, I recommend that the motion be denied.

# I.     BACKGROUND

On September 19, 2013, a detective with the Atlanta Police Department

("APD") obtained two warrants from a judge in Fulton County Magistrate Court:

(1) an arrest warrant for Pendergrass; and (2) a search warrant for his business,

Asset Financial Recovery, Inc.  [Doc. 44-1 at 1-8].   In the search warrant

application, the detective averred:

> The City of Atlanta's Major Fraud Unit was notified of a fraud against the city committed by the business of Asset Financial Recovery, Inc. They advised us an asset recovery company contacted the financial department of the City of Atlanta both by emails and telephone to advise they represented various businesses and individuals who had not received payments awarded to them by the City of Atlanta.  The asset recovery company provided names of businesses and individuals who were owed money by the City of Atlanta.  The City of Atlanta's Financial Department conducted an audit to see if the checks had been cashed by those businesses and individuals and learned the checks had not been cashed.  The City of Atlanta cancelled the original checks [and] then re-issued checks to the victims through the recovery company (Asset Financial Recovery, Inc.).  The checks were mailed to [P.O. Box] 1809 in Fayetteville, Georgia 30214.

> On July 16, 2013, Ms. Linda Guy from the City of Atlanta's financial department received information from attorney Ashley Miller advising she is a victim of identity fraud.  Attorney Miller advised she represented the law firm of Weissman, Nowack, Curry and Wilco in a case against the City of Atlanta.  Attorney Miller told financial officer Linda Guy her signature had been forged on the documents sent to the City of Atlanta requesting a payment of $8,000.00 dollars to be sent to the listed P.O. Box. On June 03, 2013, the City of Atlanta's financial department then checked the other request that had been by made by

2

Asset Financial Recovery, Inc.  Currently the City of Atlanta's financial department is not sure how Asset Financial Recovery, Inc. obtained the names of the businesses and individuals who had not been paid by the City of Atlanta.  Ms. Guy told us Asset Financial Recovery, Inc. filed an open records request and this is possibly how they learned who had not received payments from the City of Atlanta.

I checked the business, Asset Financial Recovery Inc. to see if it is [a] legitimate business in the state of Georgia. I learned the company was incorporated on 10-22-2012 as a profit corporation. The registered agents are Deidre Barber, Allen James Pendergrass and Nathan Pendergrass.  Investigator Bower told me he can see in the account statements deposits of more than $26,000.00 dollars on May 15, 2013 and $100,000.00 into the account of Asset[] Financial Recovery Inc. on June 20, 2013.  He also identified the person making the deposits as Allen James Pendergrass.  Investigator Bower also advised me as soon as the money was deposited into the business account numerous checks were made payable to Deidra Barber and Terrell McQueen[. T]hese check[s] were in excess of ten thousand dollars. Then email request[s] for payment were made by Mr. Terrell McQueen.

Investigator Bower sent me pictures of the suspect Mr. Allen James Pendergrass cashing the fraudulently obtained checks. The checks were cashed in Fulton County at the Wells Fargo bank located at 5060 Old Bill Cook Road, College Park, Georgia 30349. I secured two arrest warrants for Forgery 3rd degree and two for Theft by Taking against Mr. Allen James Pendergrass.

On August 28, 2013 Sgt. Cooper and [I] went to the address of the business and noticed a grey Mercedes with the tag number of AVQ5903 Ga. I asked investigator V. Bracley to check it on ACIC. She advised me the car is registered to Allen James Pendergrass with the address 44l Hwy 279 Fayetteville, Ga. 30214.  Sgt. Cooper and I walked inside the business and saw a glass case on the wall with the locations of each business in the building. Asset[] Financial Recovery Inc. is located in suite 161. We took pictures of the office door with

3

the business's name plate next to it. I then contacted Investigator Ron Bower from Wells Fargo Bank. I asked him to check the deposits and to let me know if there were pictures of the deposits being made in their bank.  Mr. Bower advised he did have two pictures of the suspect Mr. Allen Pendergrass depositing the two fraudul[ent]ly obtained che[c]ks. He sent me the two images.

Base[d] on the above information I am requesting a search warrant for the business of Asset Financial Recovery.

[Doc. 44-1 at 12].[1]

The record reflects that at the time the APD detective obtained the warrants, federal law enforcement officers were assisting in the investigation.  Federal agents were present for the execution of the search warrant, and all of the electronic evidence seized during the search was immediately turned over to federal agents. The detective's notes reflect his understanding at that time that the United States Postal Inspection Service was planning to seek a federal prosecution.  [Doc. 101-1 at 4; Doc. 101-3 at 6; Doc. 101-2].

On the day of the search, September 19, 2013, Pendergrass was arrested by officers from the APD, and he remained in state custody until October 4, 2013,

---

[1]  Several words in the affidavit have incorrect capitalization that I have corrected for ease of reading.

when he was released on bond due to the state's failure to indict him. [Doc. 90-1 at 1].

Approximately three months later, on January 30, 2014, a federal grand jury in the Southern District of Ohio returned an indictment against Pendergrass in a case styled *United States v. Allen J. Pendergrass*, Case No. 2:14-cr-21 (S.D. Ohio) ("the Ohio Case"). [Doc. 36-1]. In the Ohio Case, Pendergrass was charged with aggravated identity theft and fifty-one counts of bank fraud. That case involved the deposit of stolen U.S. Treasury checks into a bank account in Ohio in 2012. [Id.]. Pendergrass was convicted in the Ohio Case and sentenced to thirty months in prison, with a projected release date of August 28, 2017. [Doc. 143-1 at 1; Doc. 143-2 at 1].

According to the government's brief, in the spring of 2014, federal prosecutors adopted the City of Atlanta unclaimed funds case after receiving information that Pendergrass and his companies had operated a similar fraudulent scheme throughout the country. [Doc. 96 at 3]. Federal prosecutors, however, did not obtain an indictment at that time.

In 2015 and 2016, the Federal Bureau of Prisons ("BOP") was in contact multiple times with Fulton County about the status of the charges against

5

Pendergrass stemming from the September 2013 arrest.  The record reflects that in

July 2015, the BOP contacted Fulton County, advising that the BOP was aware of

the September 2013 arrest and asking Fulton County for the status of the charges:

> If [Pendergrass] is wanted by your department and you wish a
> detainer placed, it will be necessary for you to forward a certified
> copy of your warrant to us along with a cover letter stating your desire
> to have it lodged as a detainer.  If you have no further interest in the
> subject please forward a letter indicating so.

[Doc. 143-2 at 2].  It is not clear from the record whether Fulton County responded

to the BOP at that time, but in November 2015, the BOP declined to release

Pendergrass to a halfway house because of the Fulton County charges.  [Doc. 143-

1 at 1; Doc. 143-2 at 1].  A 2016 BOP memo shows that at some point, the Fulton

County District Attorney's office had advised the BOP that "the Indictment is still

pending and would be presented to the Grand Jury in 2017."  [Doc. 143-2 at 1].

Thus, Pendergrass was never allowed to go to a halfway house because of the

pending charges in Fulton County.

On June 27, 2017, just as Pendergrass was about to be released from federal

custody, a grand jury in the Northern District of Georgia returned a five-count

indictment against him and his co-defendant Terrell McQueen.  [Doc. 1].   It is

undisputed that the conduct for which the APD arrested Pendergrass in September

6

2013 is the same conduct that forms the factual basis of the instant federal indictment. The indictment alleges that Pendergrass and McQueen used forged limited powers of attorney and other fraudulent documents to fraudulently obtain unclaimed funds held by local and state governments. [Id. ¶¶ 2–5]. The indictment charges Pendergrass with five counts of mail fraud, four counts of aggravated identity theft, and one count of being part of a money laundering conspiracy. [Id.].

In 2019, in response to a subpoena issued by this Court requesting records related to Fulton County's investigation into Pendergrass, Fulton County advised that the case was "mistakenly listed as 'open' in the court's online case management system" and that a "Decline form" had recently been filed to "correctly" show that Fulton County's case against Pendergrass is closed. [Doc. 143-5].

In his motion to dismiss, Pendergrass argues that the government's failure to bring federal charges in this district when he was initially arrested in September 2013 was the result of a calculated decision to permit his prosecution in multiple districts, ensure consecutive sentences for related events, and gain a tactical advantage by depriving Pendergrass of the opportunity to interview witnesses and

7

collect evidence.  [Doc. 90 at 2–3].  After taking discovery on the issues related to this motion, Pendergrass filed a supplemental brief, arguing that the state prosecution was a mere placeholder for the federal prosecution and that it was a "a ruse to ensure that Mr. Pendergrass continued under state supervision pending the federal indictment, thereby permitting federal prosecutors to avoid any speedy trial issue that might arise with the delay while ensuring Mr. Pendergrass would remain ineligible for halfway house placement prior to indictment in this district." [Doc. 143 at 5].

The Government responds that the motion should be denied because the Sixth Amendment right to a speedy trial did not attach until Pendergrass was indicted in this case in 2017 and that Pendergrass has not made the requisite showing for a Fifth Amendment due process violation.  [Doc. 96].  I agree.

## II.   DISCUSSION

This issue presented by this motion is whether the preindictment delay—i.e., the delay between the date that the government was aware of the allegedly criminal conduct and the date that Pendergrass was indicted—amounts to a violation of Pendergrass's constitutional rights.  The crux of his claim is that he has been harmed by the government's decision to wait until 2017 to indict him, even though

8

federal agents had evidence related to the crime at least as early as September 2013. Pendergrass argues that his Fifth Amendment right to due process has been violated as a result of the preindictment delay. [Doc. 90 at 10–11].

The primary guarantee against the government bringing overly stale criminal charges are statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay. *United States v. Lovasco*, 431 U.S. 783, 789 (1977). Statutes of limitations, however, do not fully define a defendant's rights with respect to the events occurring prior to indictment; thus "the Due Process Clause has a limited role to play in protecting against oppressive delay." *Id.* In analyzing speedy trial claims, courts should be mindful that:

> prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. To impose such a duty would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.

*Id.* at 791 (citation and internal quotation marks omitted).

To obtain a dismissal of charges due to preindictment delay, a defendant must make two independent showings: "(1) that the delay caused actual prejudice to the conduct of his defense, and (2) that the government intentionally caused the delay in order to gain a tactical advantage over the

9

defendant." *See United States v. Caporale*, 806 F.2d 1487, 1514 (11th Cir. 1986).  *Id.*  This is an "exceedingly high" standard for the defendant to meet. *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984).  Pendergrass has failed to meet this standard with respect to both factors.

On the issue of actual prejudice, Pendergrass is required to show that his ability to defend against the charges in the indictment has been meaningfully impaired to the point that the disposition of case will likely be affected.  *See United States v. McKoy*, 129 F. App'x 815, 819 (4th Cir. 2005).   Pendergrass has not shown that his ability to defend against the charges was impaired at all, much less significantly.  He has pointed to no specific witness,  document, or other piece of evidence that is now lost to him as a result of being indicted nearly four years after the offenses were allegedly committed, and he has identified no defense strategy that is now impaired due to the passage of time.  Instead, he raises general complaints about anxiety, fading memories, and unspecified City of Atlanta documents that now are lost:

> As a sixty-two-year-old man, the defendant currently suffers from memory loss and now takes medicine to enhance his memory.  He believes his inability to recall specific events related to this case will prejudice his defense.  The loss of records and staff turnover in places like the City of Atlanta may make it difficult to fully investigate his defense.

10

[Doc. 107 at 13; *see also* Doc. 90 at 9; Doc. 101 at 4].   But he provides no specifics about how his defense might be aided if he had a better memory or access to more documents from the City of Atlanta.   Similarly flawed is his speculation that the delay caused him to lose his opportunity to have his two federal cases resolved at the same time and possibly obtain concurrent sentences.   [Doc. 107 at 12–13]. These baseless claims are insufficient to meet the "exceedingly high" standard for making out a Due Process violation.   *See United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986) ("Speculative allegations, such as [a] general allegation of loss of witnesses and failure of memories, are insufficient to demonstrate the actual prejudice required") (citation omitted).

       But even if Pendergrass could show that he was prejudiced by the delay, the motion still fails because he has failed to show that there was an intentional delay for the purpose of gaining a tactical advantage.[2]  Showing that the

_____

       [2] Pendergrass argues that an evidentiary hearing on the issue of communication between state and federal authorities is required to determine why Pendergrass was not federally indicted until four years after his 2013 APD arrest. [Doc. 101 at 6].  The defendant bears the "heavy" burden of satisfying the tactical advantage test.  *See United States v. Stoll*, No. 10-60194-CR, 2011 WL 939251, at *7 (S.D. Fla. Feb. 16, 2011).  Because this burden rests with the defendant, the government is not required to explain the reason for the delay.  *See United States v.*

government has caused an intentional delay to gain a tactical advantage is "the touchstone in preindictment cases." *United States v. Wetherald*, 636 F.3d 1315, 1324 (11th Cir. 2011). Pendergrass has not shown what possible advantage the government would gain by waiting to indict the case. Pendergrass asserts that because of the delay, the Government gained a tactical advantage of being able to prosecute him in more than one district, ensuring maximum punishment in each district. This, however, does not amount to a tactical advantage at trial. And to the extent that Pendergrass was not allowed to go to a halfway house, I see no direct correlation between the BOP's actions and the actions of the federal prosecutors. The record reveals nothing to show that anyone acting on behalf of the government played any role whatsoever in Fulton County's decision to advise the BOP that it intended to indict Pendergrass or the BOP's decision to withhold placement at a halfway house.

In one of his later briefs, Pendergrass argues that by waiting for the Ohio prosecutors to pursue their case first, the Atlanta prosecutors can now use the Ohio convictions as Rule 404(b) evidence. [Doc. 107 at 13]. At oral argument, the

---

*Ramirez*, 491 F. App'x 65, 70 (11th Cir. 2012). The request for an evidentiary hearing is DENIED.

government correctly pointed out that a conviction is not necessary to introduce prior acts of misconduct under Rule 404(b) to prove motive, intent, or the other items on the 404(b) list. Further, mere inaction in pursuing immediate prosecution is insufficient on its own to establish that the government's actions were motivated by an attempt to gain a tactical advantage. *See Butler*, 792 F.2d at 1534 (holding that the defendant failed to carry the burden of showing intentional delay by the government to gain a tactical advantage because, at most, the evidence showed the government failed to prosecute the case earlier because of a lack of interest in the case).

### B. Sixth Amendment Claim

Pendergrass also claims that his Sixth Amendment right to a speedy trial has been violated. The Sixth Amendment to the United States Constitution provides the right to a speedy and public trial to the accused in all criminal prosecutions. [Doc. 90 at 2 (citing U.S. CONST. AMEND. VI)]. In a federal prosecution, the Sixth Amendment is triggered by either an arrest by federal authorities or the lodging of charges by the federal government; an arrest by state law enforcement does not trigger a defendant's Sixth Amendment speedy trial rights in a federal criminal case. *See United States v. MacDonald*, 456 U.S. 1, 10 n.11. (1982) ("an arrest or

13

indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign."); *United States v. Marion*, 404 U.S. 307, 320 (1971) (holding that the Sixth Amendment analysis is concerned only with delay following an arrest or an indictment and that pre-indictment delay, is "wholly irrelevant" to the Sixth Amendment analysis).

Pendergrass attempts to shoehorn his pre-indictment delay claim into the framework of a Sixth Amendment claim by arguing that his Sixth Amendment speedy trial rights in this federal case attached in September 2013 when he was arrested by state law enforcement officers.  In support of this argument, he points out that the conduct for which he was arrested in 2013 is the same conduct that forms the basis for the federal indictment; that when he was arrested, federal law enforcement officers were present when he was arrested and intended to pursue federal charges against him at that time; that the federal agents took all of the electronic evidence seized during the 2013 search; and that the state never brought charges against him.

This argument fails because a defendant is not an "accused" in federal court—and therefore the Sixth Amendment is not triggered—until he is arrested on federal charges or federal charges are filed against him.  *See United States v. Reme*,

14

738 F.2d 1156, 1162 (11th Cir. 1984) (ruling that an arrest for being an illegal alien did not amount to an "accusation" that would trigger the Sixth Amendment right to a speedy trial); *United States v. Ponce-Aldana*, No. 2:07-CR-2-WCO, 2008 WL 11432188, at *1 (N.D. Ga. Jan. 7, 2008) (ruling that a defendant's arrest more than three years earlier by state authorities did not make him an "accused" for purposes of the federal prosecution, and therefore the state arrest did not trigger the defendant's Sixth Amendment right to a speedy trial).   Because Pendergrass was not an "accused," for purposes of the Sixth Amendment analysis, until he was indicted by a federal grand jury in 2017, the September 2013 arrest did not trigger his Sixth Amendment right to a speedy trial.   He has cited no caselaw holding that an arrest by state law enforcement can be the functional equivalent of a federal arrest, and there is ample caselaw rejecting that premise.  *See, e.g., United States v. Gomez*, 776 F.2d 542, 549 (5th Cir. 1985) ("A prior state arrest, however, even if based upon the same operative facts as a subsequent federal accusation, does not trigger the sixth amendment right to a speedy trial.").   In September 2013, Pendergrass was not arrested by federal agents, taken before a federal magistrate judge, or subjected to any federal charges.  As such, he was not "accused" by the federal government in 2013.

15

Pendergrass was indicted in this case on June 27, 2017, while still serving his federal sentence in the Ohio Case, and a writ of habeas corpus ad prosequendum was issued.  [Docs. 1, 5].  He was arraigned on July 21, 2017, and given a bond on August 9, 2017.  [Docs. 12, 21, 22].  In the instant motion,[3] Pendergrass is not complaining about any post-indictment delay that might involve speedy trial rights.  As such, his Sixth Amendment claim fails.  *See Butler*, 792 at 1533 ("Because the delay alleged in this case occurred prior to indictment, the sixth amendment is inapplicable.")

### III.   CONCLUSION

For the reasons stated, I recommend that Pendergrass's Motion to Dismiss Indictment [Doc. 90] be **DENIED**.

It appearing that there are no further pretrial or discovery matters to bring before the undersigned as to this defendant, it is therefore **ORDERED** that this case be and is hereby **CERTIFIED** as ready for trial.

---

[3] Pendergrass previously argued that post-indictment delay violated the Speedy Trial Act, but Judge Totenberg denied that motion.  [Docs. 89, 111].

16

**SO REPORTED AND RECOMMENDED**, this 16th day of March, 2020.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE