UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:17-cr-00224-AT-CMS |
| ) | |
| ALLEN J. PENDERGRASS, ) | |
|     Defendant. ) | |

### DEFENDANT'S OBJECTIONS TO
### REPORT AND RECOMMENDATION (DOC 152)

Mr. Pendergrass objects to factual findings and legal conclusions included in the report and recommendation issued on March 16, 2020 (doc. 152) as follows:

As a slight correction to the facts outlined in the report and recommendation, Mr. Pendergrass notes that he was released on bond while the Fulton County case was still pending (October 2013), but was released from Fulton County pre-trial supervision in the spring of 2014 after the pre-trial services department determined that the case was not being prosecuted in Fulton County. Doc. 89-3. This fact is consistent with the government's claim that it "adopted" the case from Fulton County in the Spring of 2014. Doc. 96 at 3. The case was apparently discarded by Fulton County prosecutors in Spring 2014 at the latest (while remaining open in their system) so that it could be prosecuted by the federal government.

Mr. Pendergrass also notes that, in addition to stating that Mr. Pendergrass' case was "mistakenly listed as open" until November 15, 2019 in the Fulton County system, the state prosecutor also noted that it had no records responsive to defense counsel's subpoena for:

1. The entire Fulton County District Attorney's file for case number 13CP139937 (or related cases against Allen Pendergrass) (State v. Allen Pendergrass), including police reports (APD case number 132261160-01), recordings, reports, notes, emails, or other information related to the investigation of Allen Pendergrass.

2. Any emails, records of calls, notes, memoranda, or other documents showing communication between the Fulton County District Attorney's Office (or its representatives) and the United States Attorney's Office for the Northern District of Georgia (or its representatives including Jeff Brown) regarding Allen Pendergrass and the potential prosecution of Mr. Pendergrass, and/or related to case number 13CP139937.

Doc. 128; Doc. 143-5. So, the agency that was purportedly prosecuting Mr. Pendergrass from 2013 through 2017 had no file related to Mr. Pendergrass, including police reports (APD case number 132261160-01), recordings, reports, notes, emails, or other information related to the investigation of Allen Pendergrass. Mr. Pendergrass asserts that this supports his claim that Fulton County never intended to prosecute him and that it was merely holding the prosecution in place until the federal government brought its indictment.

### *Mr. Pendergrass objects to the denial of his Fifth Amendment claim.*

Mr. Pendergrass objects to the denial of his Fifth Amendment claims. The statute of limitations is the primary safeguard against the government bringing stale

criminal charges, *United States v. Marion*, 404 U.S. 307, 322, 92 S. Ct. 455, 464, 30 L. Ed. 2d 468 (1971), but when a defendant establishes substantial prejudice, due process may require the dismissal of an otherwise timely indictment if the delay was the product of a deliberate act by the government to gain a tactical advantage, *United States v. Foxman*, 87 F.3d 1220, 1222 (11th Cir. 1996). Mr. Pendergrass asserts that he has been prejudiced by the government's decision to delay this case and he believes that he can show that the decision to delay the case was a deliberate act to gain tactical advantage if a hearing were held in this case.

### *Prejudice*

As noted in the previously filed APD report, the goal of the US Postal Service investigation in 2013 was federal prosecution. Keeping the Fulton County case open and pending since 2013 (without indictment) permitted the prosecution of Mr. Pendergrass in other districts, where the allegations were older and may have triggered statute of limitations concerns had they been delayed, but still ensured that a hold remained on him in Georgia. Thus, the government ensured he could not be released from prison without returning – in custody – to Atlanta.

Since his arrest in September 2013, he has suffered severe anxiety and concern regarding pretrial arrest and post-trial potential imprisonment. After his arrest by APD and USPIS, he sat in custody in Fulton County before he was permitted to post bond in a case directly related to the investigation at issue here.

He was then subject to pretrial release for six months in Fulton County, during which time he could not leave the Atlanta metro area without permission. He had a "24 hour curfew," which meant he was restricted to his house most of the time. He was subject to urine testing and he was required to wear an ankle monitor. He was required to take classes as part of his pretrial release.

In the Spring of 2014, he was released from pre-trial supervision in Fulton County because it did not appear the county was going to prosecute him. From that point forward, there was no need for Mr. Pendergrass to try record important facts or events because he was not on notice of any prosecution. He has been disadvantaged by the delay in prosecution because he did not know to begin preparing his defense or working with a lawyer to defend these 2013 allegations until the federal indictment was brought in 2017.

Additionally, as a result of the pending Fulton County case, he was unable to receive the benefits of early release after serving his sentence in another federal district, even though the BOP was prepared to release him to a half-way house. As a sixty-two-year-old man, the defendant currently suffers from memory loss and now takes medicine to enhance his memory. He believes his inability to recall specific events related to this case will prejudice his defense. The loss of records and staff turnover in places like the City of Atlanta will make it difficult to fully investigate his defense.

The government has also certainly used the delay to its advantage. It now intends to bolster its weak case against Mr. Pendergrass – a case in which it appears that all relevant business correspondence and/or fraudulent documents can be directly tied to the co-defendant with his name and/or signature – by attempting to admit evidence of his prior conviction in other districts. Of course, these convictions all happened **AFTER** the APD and U.S. Postal Service raided his office and arrested him back in 2013. To further that goal, it has filed a notice of intent to present evidence of these other cases under Rule 404(b). The magistrate court found no prejudice with this use of this 404(b)evidence, echoing the government's claim that it could have used the evidence even if it had not secured a conviction in another district. Doc. 152 at 13. Surely, this court cannot deny that the weight of a **conviction** on unrelated fraud charges is much greater that the *mere allegations* the government may have been able to bring prior to Mr. Pendergrass' Ohio conviction. Notifying the jury that Mr. Pendergrass has a prior federal conviction for fraud-related offenses will poison this case and it will likely lead the jury to believe that Mr. Perkins is a bad man who must have committed the acts alleged here in a way that mere allegations would not.

Further, as already noted, the calculated effort to divide the allegations related to Mr. Pendergrass' businesses to be tried in different jurisdictions at different times ensured that Mr. Pendergrass would serve the maximum amount of

time for each alleged crime. As noted, the APD and US Postal service worked together to arrest Mr. Pendergrass and seize all of his business documents and property. APD, US Postal Service, the US Attorney's Offices in various districts, and the Fulton County District Attorney's Office were in contact with each other about Mr. Pendergrass and the allegations presented here for many years before the indictment was sought in this case. Indeed, Postal Inspector Kermie Green and APD Detective Ricks were listed as witnesses in the cases in other states and federal districts. It is impossible to deny that the government has gained the advantage by delaying the case and that Mr. Pendergrass will suffer accordingly.

### *Purposeful Delay*

Mr. Pendergrass objects to the Court's denial of the request for a hearing regarding his claim that the federal government deliberately delayed bringing an indictment in his case to gain a tactical advantage. Doc. 152 at 11, n2. The Court cites to *United States v. Stoll,* No. 10-60194-CR, 2011 WL 939251 (S.D. Fla. Feb. 16, 2011), to supports its conclusion. *Stoll* is distinguishable. In *Stoll*, the government provided a factual proffer detailing its investigation of the case to counter a claim that it had "back burned" the case for three years. The AUSA was then placed under oath and was questioned by Stoll's counsel for approximately 30 minutes. *Stoll*, 2011 WL 939251at *9. The government made no such representations under oath about any continuing investigation in this case because

6

it could not.  The same allegations and charges that were being considered in 2013 were the allegations and charges submitted to the federal grand jury in 2017.  After hearing about the extensive investigation in the case, the *Stoll* court determined that "The size, scope and magnitude of this case, brought against thirteen defendants, necessitated a federal investigation which spanned a two-year time frame." No such finding was made here.

It is impossible for Mr. Pendergrass to make a showing of deliberate delay when all of the evidence regarding the reasons for the delay is in the hands of the government, the Fulton County District Attorney's Office, and the Atlanta Police Department.  Mr. Pendergrass again asks that a hearing be held, at which employees of the Fulton County District Attorney's Office and the Atlanta Police Department can testify and explain the timing of their investigation and "prosecution" of Mr. Pendergrass.

### ***Mr. Pendergrass objects to the denial of his Sixth Amendment claim.***

Mr. Pendergrass objects to the denial of his Sixth Amendment claims. The Court relies upon *United States v. Marion*, 404 U.S. 307, 320 (1971), and its holding that the Sixth Amendment is triggered by "arrest" or indictment to deny Mr. Pendergrass' claims.  As previously noted, Mr. Pendergrass **was arrested** in September 2013.  Federal agents were present and it is clear that a federal investigation and prosecution was contemplated at the time of his arrest.  The Court

relies upon *United States v. Ponce-Aldana*, No. 2:07-CR-2-WCO, 2008 WL 11432188 (N.D. Ga. Jan. 7, 2008), to support the finding that an arrest by state authorities does not make him an accused for the purposes of federal prosecution. However, the Supreme Court has held that a defendant's rights under the Speedy Trial Clause of the Sixth Amendment are triggered by "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *United States v. Marion*, 404 U.S. 307, 320 (1971).  There is no doubt that Mr. Pendergrass was subject to the actual restraints imposed by arrest and there is no doubt that federal agents were involved in the arrest and investigation beginning in 2013.

It does not appear that *Ponce-Aldana* is similar to the case presented here because no federal authorities were involved in the arrest or investigation of the defendant until many years after the state court prosecution began.  It should be noted that state authorities **actually prosecuted** Mr. Ponce-Aldano, as opposed to just placing a hold over him until the federal prosecutors could bring their case, as happened here.  Likewise, *United States v. Gomez*, 776 F.2d 542 (5th Cir. 1985), does not govern this case because it does not appear that there was federal involvement in the initial arrest and investigation.  Further, as outlined in *United States. v. Nixon*, 634 F.2d 306, 309 (5th Cir.1981):

> "(for) purposes of determining when the right to speedy trial attaches the basis for the arrest is critical." *Gravitt v. United States*, 523 F.2d

8

1211, 1215 n.6 (5th Cir. 1975) (emphasis in original). In Gravitt, petitioner was initially arrested on a state warrant charging armed robbery and assault. A search incident to the arrest revealed a large number of firearms. Some time later, a formal complaint and arrest warrant were filed by federal officials charging him with interstate transportation of firearms by a convicted felon. When the speedy trial question was presented, the Court focused on the basis of the arrest and held that the time was not to be measured from the time of the initial arrest but from the time the petitioner was accused of the crime he was then challenging. The cases of *United States v. DeTienne*, 468 F.2d 151 (7th Cir. 1972), cert. denied, 410 U.S. 911, 93 S. Ct. 974, 35 L. Ed. 2d 274 (1973), and *United States v. Cabral,* 475 F.2d 715 (1st Cir. 1973), also make it clear that the basis of the arrest is critical.

Of course, if the second charge is but a part of or only gilds the initial charge, the initial arrest would start the critical period for trial. As the Seventh Circuit observed in DeTienne:

> (If) the crimes for which a defendant is ultimately prosecuted really only gild the charge underlying his initial arrest and the different accusatorial dates between them are not reasonably explicable, the initial arrest may well mark the speedy trial provision's applicability as to prosecution for all the interrelated offenses.  468 F.2d at 155.

*Nixon*, 634 F.2d at 309.

Finally, Mr. Pendergrass has repeatedly asserted that pursuant to the "ruse" exception, a state arrest will start the Speedy Trial clock "when the Government has knowledge that an individual is held by state authorities solely to answer to federal charges." *United States v. Woolfolk*, 399 F.3d 590, 596 (4th Cir. 2005); *see also United States v. Clark*, 754 F.3d 401, 405-06 (7th Cir. 2014) (ruse exception possible if defendant has evidence of agency between federal and state

9

authorities); *United States v. Benitez*, 34 F.3d 1489, 1494 (9th Cir. 1994) ("Speedy Trial Act time periods may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act."). *Compare United States v. Harris,* 551 Fed. Appx. 699 (4th Cir. 2014) ("Unlike in *Woolfolk*, however, Harris does not suggest that the federal government knew—or even should have known—that he was being held on state charges prior to his case being referred to federal authorities.") Many Courts of Appeals have recognized the "ruse" exception in the context of an INS civil detention where there is "collusion or evidence that the detention was for the sole or primary purpose of preparing for criminal prosecution." *United States v. Garcia-Martinez,* 254 F.3d 16, 20 (1st Cir. 2001); *see also United States v. Guevara-Umana*, 538 F.3d 139, 142 (2d Cir. 2008); *United States v. Pasillas-Castanon*, 525 F.3d 994, 997 (10th Cir. 2008); *United States v. Drummond*, 240 F.3d 1333, 1336 (11th Cir. 2001); *United States v. De La Pena-Juarez*, 214 F.3d 594, 598 (5th Cir. 2000).

Mr. Pendergrass asserts that because the federal prosecution merely gilded the charge underlying his state arrest and the state case served as a ruse for the federal prosecutor, the Speedy Trial clock should have started running at the time of his arrest by state authorities (as part of the joint state and federal investigation) in September 2013. For all of the reasons outlined in the extensive briefing on this

matter and for the reasons outlined here, Mr. Pendergrass asks this Court to decline to adopt the magistrate court's report and recommendation.

Mr. Pendergrass maintains all of his previous arguments, including the assertion that prejudice is not required with a Sixth Amendment violation like the one presented here. *See Doggett v. United States*, 505 U.S. 647 (1992), where the Supreme Court held that an "extraordinary" eight-and-one-half-year delay between the defendant's indictment and arrest, which resulted from the government's "egregious persistence in failing to prosecute [him]," violated his right to a speedy trial even in the absence of "affirmative proof of particularized prejudice."

For all of the reasons outlined here, Mr. Pendergrass objects to the factual findings and legal conclusions drawn by the magistrate court and he objects to the denial of his motion to dismiss the indictment for pre-indictment delay.

Respectfully submitted this 30th day of March 2020.

Respectfully submitted,
s/Saraliene S. Durrett
SARALIENE S. DURRETT
GA Bar No. 837897
Attorney for Allen Pendergrass

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that I have this day served upon all counsel of record a true and correct copy of the foregoing objections by electronic filing through the Court's CM/ECF system.

Respectfully submitted this 30th day of March 2020.

                                        Respectfully submitted,
                                        s/Saraliene S. Durrett
                                        SARALIENE S. DURRETT
                                        GA Bar No. 837897
                                        Attorney for Allen Pendergrass

1800 Peachtree Street, NE
Suite 300
Atlanta, GA 30309
(404) 433-0855
ssd@defendingatl.com