```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF GEORGIA
 2                         ATLANTA DIVISION

 3

 4  UNITED STATES OF AMERICA     ) DOCKET NO. 1:17-CR-224-AT-CMS
                                 )
 5                               ) ATLANTA, GEORGIA
                                 ) FEBRUARY 26, 2020
 6           V.                  )
                                 )
 7  ALLEN J. PENDERGRASS,        )
                                 )
 8            DEFENDANT.         )

 9

10

11                    TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE CATHERINE M. SALINAS
                   UNITED STATES MAGISTRATE JUDGE
12

13

    APPEARANCES OF COUNSEL:
14
    FOR THE GOVERNMENT:          JEFFREY A. BROWN
15                               TERESA M. STOLZE
                                 OFFICE OF THE U.S. ATTORNEY
16

17  FOR THE DEFENDANT:           SARALIENE DURRETT

18

19
    COURT REPORTER:              ANDY ASHLEY
20                               1949 U. S. COURTHOUSE
                                 75 TED TURNER DRIVE
21                               ATLANTA, GEORGIA  30303-3361
                                 (404) 215-1478
22

23
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
24  PRODUCED BY COMPUTER.

25
```

```
 1                    P R O C E E D I N G S
 2   (ATLANTA, FULTON COUNTY, GEORGIA; FEBRUARY 26, 2020
 3   IN OPEN COURT.)
 4            THE COURT:  THIS IS CASE NUMBER 1:17-CR-224.  IT'S
 5   UNITED STATES VERSUS ALLEN PENDERGRASS.  COUNSEL, WOULD YOU
 6   STATE YOUR APPEARANCES PLEASE?
 7            MR. BROWN:  YES, GOOD MORNING, JEFF BROWN ON BEHALF
 8   OF THE GOVERNMENT ALONG WITH TERESA STOLZE.
 9            THE COURT:  GOOD MORNING.
10            MS. DURRETT:  GOOD MORNING, YOUR HONOR, SARALIENE
11   DURRETT ON BEHALF OF MR. PENDERGRASS.
12            THE COURT:  AND MR. PENDERGRASS IS HERE.  GOOD
13   MORNING.
14            THE DEFENDANT:  GOOD MORNING, JUDGE.
15            THE COURT:  WELL, I APPRECIATE YOU ALL COMING IN.  I
16   THOUGHT THIS MOTION MADE SOME INTERESTING ISSUES, AND I WANTED
17   TO MAKE SURE THAT I HAD MY LAW RIGHT, SO I WANTED, IF YOU
18   WOULD, TO HELP ME JUST WORK MY WAY THROUGH THE LAW ON THESE
19   DIFFERENT POINTS.
20            THE FIRST QUESTION I HAVE IS REALLY FOR YOU, MS.
21   DURRETT, ON THE SIXTH AMENDMENT ARGUMENT.  WHAT IS YOUR
22   AUTHORITY FOR SAYING THAT THE RIGHT ATTACHES WHEN HE'S ARRESTED
23   ON THE STATE ARREST BECAUSE IT LOOKED TO ME LIKE THE LAW IS
24   PRETTY CLEARLY AGAINST YOU?
25            MS. DURRETT:  WELL, I DON'T THINK THE LAW IS AGAINST
```

1   ME, YOUR HONOR.  I THINK THAT THE CASES WHILE YOU MAY NOT HAVE

2   FOUND A CASE WITH THE EXACT SAME SET OF FACTS AS OURS, I THINK

3   THE CASE LAW IS VERY CLEAR THAT THE SIXTH AMENDMENT CAN BE

4   TRIGGERED BY AN ARREST.  IT DOESN'T HAVE TO BE AN INDICTMENT.

5   IT DOESN'T HAVE TO BE A COMPLAINT.

6           WE FIND THAT IN MARION WHERE THE COURT SAYS THAT IT

7   HAS TO BE -- YOU HAVE TO BECOME AN ACCUSED, AND YOU BECOME AN

8   ACCUSED WHEN THERE IS EITHER A FORMAL INDICTMENT OR INFORMATION

9   OR ELSE THE ACTUAL RESTRAINTS IMPOSED BY ARREST AND THE HOLDING

10  TO ANSWER FOR A CRIMINAL CHARGE, SO I THINK THAT'S THE FIRST

11  BASIS THERE.

12          NOW I DID CITE SOME CASES IN THE BRIEF, GRAVITT AND

13  AVALOS THAT TALK ABOUT STATE PROSECUTIONS AND FEDERAL

14  PROSECUTIONS, BUT I KNOW THAT THE COURT HAS ASKED IF THERE'S A

15  PARTICULAR CASE ON POINT, AND ALL I CAN SAY IS I COULDN'T FIND

16  A CASE WITH SIMILAR FACTS TO OURS WHERE THERE WAS AN ARREST,

17  AND I WANTED TO DO A TIMELINE FOR THE COURT, BUT MR.

18  PENDERGRASS IS ARRESTED IN SEPTEMBER OF 2013 --

19          THE COURT:  JUST SO YOU KNOW I'VE GOT IT CLOSE IN MY

20  MIND.

21          MS. DURRETT:  I KNOW YOU DO, BUT I THINK THE

22  IMPORTANT PART IS THE DAY AFTER HIS ARREST ALL OF THE EVIDENCE

23  IN THE CASE --

24          THE COURT:  ALL THE ELECTRONIC EVIDENCE I BELIEVE.

25          MS. DURRETT:  -- GOES TO THE FEDERAL PROSECUTOR.

```
 1          THE COURT:  BUT I THINK IT WAS ONLY THE ELECTRONIC.
 2   I SAW THAT, TOO.  WELL, I THINK ALL THE ELECTRONIC EVIDENCE
 3   WENT TO THE FEDERAL PEOPLE, BUT THERE WAS OTHER STUFF SEIZED,
 4   TOO, THAT I DON'T THINK WENT TO THE FEDS.  THAT'S WHAT IT
 5   LOOKED LIKE TO ME.
 6          MS. DURRETT:  I DON'T KNOW IF WE HAVE EVIDENCE OF
 7   WHERE IT WENT, RIGHT, BUT THAT WAS ONE OF THE REQUESTS THAT WE
 8   HAD WAS WE THINK THERE NEEDS TO BE AN EVIDENTIARY HEARING WHERE
 9   PEOPLE FROM THE APD TESTIFY OR PEOPLE FROM THE PROSECUTOR'S
10   OFFICE TESTIFY BECAUSE I DON'T KNOW WHERE THAT EVIDENCE WENT.
11   THE ONLY CHAIN OF CUSTODY I GOT WAS FOR THE COMPUTERS THAT WERE
12   SEIZED, AND THEY WERE SENT TO THE FEDERAL INVESTIGATORS.  SO
13   THAT HAPPENS IN SEPTEMBER OF 2013.
14          THEN MR. PENDERGRASS IS BROUGHT INTO THIS COURT ON
15   MARCH 6TH, 2014 TO GET A BOND FOR HIS OHIO STATE CASE, SO HE
16   GETS BROUGHT INTO COURT HERE, GIVEN THAT BOND.  THEN THERE ARE
17   EMAILS BETWEEN THE U.S. ATTORNEY'S OFFICE, FULTON COUNTY, THE
18   IRS AND THE POSTAL INSPECTORS IN THE SPRING OF 2014, SO THAT
19   WOULD BE MARCH AND MAY THAT WE HAVE IN 2014.
20          AT THE SAME TIME THAT THAT'S HAPPENING, FULTON COUNTY
21   PRETRIAL IS SAYING HEY, ARE YOU GUYS GOING TO PROSECUTE THIS
22   GUY IN FULTON COUNTY BECAUSE IF YOU'RE NOT WE'RE GOING TO LET
23   HIM OFF PRETRIAL RELEASE, AND THERE'S NO RESPONSE.  THEN
24   THERE'S THE MEETING PRESUMABLY WITH FULTON COUNTY AND THE U.S.
25   ATTORNEY'S OFFICE.
```

```
 1              THERE ARE OTHER EMAILS THAT HAPPEN AT THAT TIME WHERE
 2    IT'S CLEAR THAT THE FEDERAL GOVERNMENT IS INVESTIGATING THIS
 3    CASE --
 4              THE COURT:  SO THE WAY I'VE WRITTEN -- SO I'VE
 5    STARTED WRITING MY FACTS, AND I WROTE THAT AT SOME POINT THE
 6    STATE LAW ENFORCEMENT AND PROSECUTORS DECIDED NOT TO PROSECUTE
 7    THIS CASE.  I THINK WE KNOW THAT NOW AT SOME POINT BECAUSE OF
 8    WHAT YOU GOT BACK FROM YOUR SUBPOENAS, AND IT LOOKS LIKE IT
 9    MIGHT HAVE HAPPENED IN MAY OF 14, AND THAT WAS ONE OF THE
10    QUESTIONS THAT I'M GOING TO ASK THE GOVERNMENT WHAT'S THE
11    TIMELINE JUST TO KIND OF GET A FEEL FOR IT, BUT EVEN IF THAT'S
12    TRUE, I JUST DON'T THINK THAT WHEN YOU HAVE -- HE WAS NOT
13    ARRESTED BY FEDERAL LAW ENFORCEMENT.  SO YOU MUST BE SAYING
14    THAT THE ARREST WAS ESSENTIALLY A FEDERAL ARREST; IS THAT WHAT
15    YOU'RE SAYING?
16              MS. DURRETT:  IT WAS CERTAINLY A JOINT ARREST,
17    RIGHT?  THEY GO IN WITH THE FEDERAL LAW ENFORCEMENT OFFICERS
18    AND THE STATE LAW ENFORCEMENT OFFICERS, AND I THINK I FILED
19    WITH THE COURT THE LIST OF ALL THE OFFICERS WHO WERE PRESENT AT
20    THE TIME OF ARREST, AND IT CERTAINLY INVOLVES FEDERAL
21    OFFICERS.
22              SO THE IDEA THAT THE FEDS SAID OH, WELL, IT'S A STATE
23    ARREST, WE'RE NOT RESPONSIBLE FOR THAT, AND THEN THEY END UP
24    BRINGING THE EXACT SAME CHARGES THAT ARE OUTLINED IN THE ARREST
25    WARRANT AND SEARCH WARRANT IS LAUGHABLE TO ME.  TO BE LIKE
```

1   WELL, WE WERE PRESENT, WE TOOK PART IN ALL THE INVESTIGATION,

2   WE TOOK CUSTODY OF THE EVIDENCE, HE WAS ARRESTED, WE DIDN'T

3   HAVE ANYTHING TO DO WITH THAT ARREST, IT'S IMPOSSIBLE TO

4   BELIEVE.

5          THE COURT:  WELL, I DON'T THINK THAT THEY HAD TO NOT

6   HAVE ANYTHING TO DO WITH IT, BUT WE SEE IT ALL THE TIME WHERE

7   THERE'S A JOINT ARREST, AND WHEN WE'RE ON DUTY I HAVE TO DEAL

8   WITH THE COMPLAINT THAT THE FEDERAL PROSECUTORS COME IN AND

9   FILE SO THEY CAN GET HIM BACK FROM THE STATE IF THE STATE

10  ARRESTS HIM.  THAT DID NOT HAPPEN HERE.

11         AND IN GRAVITT, A CASE THAT BOTH SIDES CITED, THERE

12  WAS A COMPLAINT.  THERE WAS A FEDERAL COMPLAINT AND A FEDERAL

13  ARREST WARRANT, AND IN THAT CASE THE COURT SAID WELL ONCE THAT

14  HAPPENED IT WAS INCUMBENT UPON THE FEDS TO MOVE THE CASE, AND

15  THEY DIDN'T INDICT HIM, AND I THINK THAT'S WHAT HAPPENED, SO I

16  FELT LIKE THAT'S A DISTINCTION.  BECAUSE HERE THERE WERE

17  FEDERAL LAW ENFORCEMENT OFFICERS PRESENT, BUT THEY DIDN'T TAKE

18  THAT NEXT STEP.  THEY DIDN'T BRING A COMPLAINT.  THEY DIDN'T

19  GET THE ARREST WARRANT, AND THEY DON'T HAVE TO.

20         MS. DURRETT:  AND I THINK THAT'S WHY WE NEED AN

21  EVIDENTIARY HEARING TO DETERMINE WHY THAT STEP WAS NOT TAKEN.

22         THE COURT:  WHY DOES IT MATTER?  DON'T THEY HAVE THE

23  ABILITY -- THERE'S A STATUTE OF LIMITATIONS THAT THEY CAN --

24         MS. DURRETT:  RIGHT, BUT, YOUR HONOR, I DO THINK --

25  AND I THINK THEY'RE GOING TO ARGUE ABOUT THE STATUTE OF

1  LIMITATIONS, BUT THERE IS CASE LAW THAT SAYS THAT'S NOT THE

2  COURT'S ONLY CONCERN.  IF THERE IS THIS JOINT INVESTIGATION

3  WHERE THEY HAVE A HAND IN HIS ARREST AND HE BECOMES ACCUSED AT

4  THAT TIME --

5          THE COURT:  I FEEL LIKE ALL THAT CASE LAW IS OLD, AND

6  I FEEL LIKE IT WAS BEFORE THE DUAL SOVEREIGNTY DOCTRINE HAS

7  REALLY BEEN DEVELOPED FROM THE SUPREME COURT LIKE IN THE 80'S.

8  IT SEEMED LIKE ALL THE CASES THAT YOU CITED WERE OLD, AND

9  BECAUSE OF THAT, I DIDN'T SEE ANYTHING THAT SAYS YOU CAN EVER

10  DO THIS.  BECAUSE SOME OF THOSE CASES WERE PRETTY CLOSE

11  INCLUDING ONE THAT I WAS LIKE OH, MY GOD, THIS IS EXACTLY THE

12  CASE SHE HAS, AND THEN I FOUND A CASE THAT ABROGATED IT LATER,

13  YOU KNOW, BECAUSE THE CASE LAW HAD DEVELOPED AND THE SUPREME

14  COURT HAD DEVELOPED THIS DOCTRINE.  SO IT LOOKED TO ME LIKE YOU

15  DIDN'T HAVE ANY CASES THAT UNDER ANY CIRCUMSTANCES HAS DONE

16  THIS.

17          MS. DURRETT:  BECAUSE OF THE FACTS ARE DIFFERENT --

18          THE COURT:  NO, THE FACTS ARE THE SAME.  I MEAN I

19  THINK THERE ARE A LOT OF TIMES THAT THERE'S THESE JOINT -- WELL

20  MAYBE NOT.  I GUESS YOU SAY BECAUSE THEY WERE ACTIVELY PRESENT

21  AT THE TIME IT MAKES A DIFFERENCE.

22          MS. DURRETT:  AND BECAUSE THAT SAME LAW ENFORCEMENT

23  OFFICER OFFICER RICKS HAS BEEN INVOLVED IN ALL OF THESE

24  INVESTIGATIONS AGAINST MR. PENDERGRASS, AND IN HIS SEARCH

25  WARRANT HE SAYS THE FEDS ARE PURSUING A PROSECUTION AGAINST MR.

1   PENDERGRASS.  SO THEY ALL KNOW THAT THEY'RE GOING TO PURSUE

2   HIM, BUT THEY DECIDE NOPE, HANDS OFF ON THIS ARREST, AND YOU

3   DON'T HAVE TO CHARGE HIM FOR FOUR MORE YEARS.

4          THE COURT:  AND I HAVE MY FACTS WRITTEN WITH THAT

5   STATEMENT "FROM THE BEGINNING IT WAS ANTICIPATED THAT THIS WAS

6   GOING TO GO FEDERAL."  I HAVE THAT, I THINK THAT LOOKS LIKE IT

7   FROM THE DOCUMENTS, BUT I DON'T KNOW THAT THAT MATTERS.  THAT'S

8   WHAT I'M TRYING TO SAY.  I'M PLANNING TO GIVE YOU THAT FROM THE

9   BEGINNING BECAUSE THEY WERE -- THE FEDS WERE THERE.  THE FEDS

10  TOOK THE ELECTRONIC DOCUMENTS, AND I THINK THE DETECTIVE'S NOTE

11  SAYS THE FEDS ARE GOING TO PURSUE THIS CASE, SO I'M GOING TO

12  GIVE YOU THAT.

13         MS. DURRETT:  IT'S A SHAM, RIGHT, THE IDEA THAT

14  THERE'S GOING TO BE SOME PROSECUTION IN FULTON COUNTY IS JUST

15  NOT TRUE.

16         THE COURT:  SO WHAT DOES THE SHAM GET YOU?  I KNOW

17  YOU'VE SAID THAT, YOU'VE THROWN THAT AROUND.  I FEEL LIKE THAT

18  MAYBE COMES INTO THE FIFTH AMENDMENT ANALYSIS MAYBE, BUT I'M

19  NOT REALLY SURE, AND I WAS GOING TO ASK YOU ABOUT THAT, BUT YOU

20  DON'T HAVE ANY CASES WHERE ANYONE -- IN THE LAST 20 YEARS WHERE

21  ANY COURT HAS ALLOWED THAT, HAS SAID THAT SIXTH AMENDMENT RIGHT

22  ATTACHES FROM AN EARLIER ARREST WHERE THERE WAS NOT A

23  CORRESPONDING CRIMINAL COMPLAINT AND ARREST WARRANT.

24         MS. DURRETT:  YOUR HONOR, I THINK THERE ARE CASES

25  THAT TALK ABOUT WHETHER IT JUST GILDS THAT PROSECUTION IF WE

1  END UP WITH THE SAME SET OF FACTS IN A LATER PROSECUTION, THEN

2  I DON'T THINK YOU CAN SAY THAT, AND I'M LOOKING AT FROM THE

3  ELEVENTH CIRCUIT 1996, SORRY IF THAT'S TOO OLD, BUT IT DOES

4  TALK ABOUT THAT GILDING WHERE WE'RE SAYING OKAY, YOU'VE GOT

5  THAT INITIAL ARREST OR INITIAL SET OF FACTS, AND THEN THIS

6  LATER PROSECUTION IT KIND OF TAGS ON TOP OF THAT.

7          AND SO I'M LOOKING AT UNITED STATES VERSUS DEROSE AND

8  IT'S 74 F.3D 1177, AND IT TALKS ABOUT THAT, AND IT TALKS ABOUT

9  THE CASES THAT I'VE CITED.  IT SAYS THE NIXON COURT STATED THAT

10 IF THE CRIMES FOR WHICH THE DEFENDANT IS ULTIMATELY PROSECUTED

11 REALLY ONLY GILD THE CHARGE UNDERLYING HIS INITIAL ARREST AND

12 THE DIFFERENT ACCUSATORIAL DATES BETWEEN THEM ARE NOT

13 REASONABLY EXPLICABLE, THE INITIAL ARREST MAY WELL MARK THE

14 SPEEDY TRIAL PROVISIONS APPLICATION AS THE PROSECUTION FOR ALL

15 THE INTERRELATED OFFENSES.

16          THE COURT:  OKAY.

17          MS. DURRETT:  SORRY, I DIDN'T ARTICULATE THAT VERY

18 WELL, BUT I DID CITE NIXON IN MY BRIEF AND SOME OF THESE OTHER

19 CASES THAT TALK ABOUT THAT, BUT I THINK THAT'S THE POINT --

20          THE COURT:  I THINK NIXON IS OLD, THOUGH, OLD MEANING

21 1970'S, I THINK.  LET'S ME SEE.  81.  AND AT LEAST -- SO I WAS

22 READING DOWELL WHICH IS A FIRST -- I'M NOT SURE IF ANYBODY

23 CITED THIS.  IT'S A FIRST CIRCUIT CASE THAT TALKS ABOUT HOW

24 THINGS CHANGED ESSENTIALLY IN 82 WITH THE MCDONALD SUPREME

25 COURT CASE WHERE IT SAYS AN ARREST OR INDICTMENT BY ONE

1   SOVEREIGN WOULD NOT CAUSE THE SPEEDY TRIAL GUARANTEES TO BECOME

2   ENGAGED AS TO POSSIBLE SUBSEQUENT INDICTMENTS BY ANOTHER

3   SOVEREIGN, AND I KIND OF FEEL LIKE THAT'S A GAME CHANGER, SO

4   I'LL LOOK AT THIS ELEVENTH CIRCUIT CASE DEROSE; IS THAT WHAT

5   YOU SAID?

6         MS. DURRETT:  YES, AND I WOULD THEN SAY THAT WE

7   DEFINITELY WANT THE COURT TO MAKE A DETERMINATION ABOUT WHETHER

8   HAVING FEDERAL OFFICERS PRESENT AT THE TIME OF ARREST AND

9   INVOLVED IN THE INVESTIGATION AND TAKING POSSESSION OF THE

10  EVIDENCE THAT WAS SEIZED MEANS THAT HE WAS NOT ARRESTED BY THE

11  FEDS BECAUSE I THINK HE IS.  I MEAN IF THE COURT IS GOING TO

12  SAY LOOK, YOU HAVE TO HAVE A DEFINITE ARREST BY FEDERAL

13  OFFICERS, I'M GOING TO ASSERT THAT THAT HAPPENED IN THIS

14  CASE BECAUSE THEY WERE PRESENT, THEY WERE PART OF THE

15  INVESTIGATION.

16        THE COURT:  BUT I MEAN YOU CAN'T JUST CHANGE THE

17  WORLD.  HE WASN'T ARRESTED BY FEDERAL OFFICERS.  HE DIDN'T COME

18  INTO FEDERAL COURT AND ANSWER FOR HIS CRIME.  IF YOU'RE

19  ARRESTED BY FEDERAL OFFICERS, YOU COME IN HERE WITHIN ONE OR

20  TWO DAYS, AND WE SEE YOU AND, YOU KNOW, THERE'S A PROCESS, AND

21  THAT IS NOT WHAT HAPPENED, HE WAS ARRESTED AND WAS TAKEN INTO

22  STATE CUSTODY.  I MEAN THAT'S LIKE -- THAT'S A TOUGH ONE TO

23  JUST KIND OF SAY THEY'RE THE SAME I THINK.

24        MS. DURRETT:  RIGHT, BUT WE OBJECT -- I MEAN,

25  YOUR HONOR, I WOULD JUST ASK THAT YOU MAKE A SPECIFIC FINDING

1   ABOUT THAT BECAUSE I THINK THAT'S A REAL POINT OF ISSUE IN THIS

2   CASE.

3           THE COURT:  OKAY.  I THINK I DISAGREE WITH YOU ON

4   THAT POINT, BUT I WILL DO THAT CLEARLY SO IT'S SOMETHING THAT

5   IF YOU FEEL THE NEED TO TAKE UP, AND, OF COURSE, YOU CAN

6   RAISE THAT UNDER YOUR OBJECTIONS BECAUSE IT'S GOING TO BE AN

7   R&R, SO I THINK WHAT I'M GOING TO DO IS JUST STOP THERE ON THAT

8   POINT.

9           SO LET'S TALK ABOUT THE -- I MEAN IN MY WRITING I'M

10  JUST TELLING YOU HOW I'M GOING TO PUT THIS TOGETHER, AND SO

11  MOVING TO THE FIFTH AMENDMENT, TELL ME HOW THE RUSE CASES WHERE

12  THEY FIT IN.  I'M JUST A LITTLE CONFUSED ON THAT.

13          MS. DURRETT:  TO THE FIFTH AMENDMENT?

14          THE COURT:  OR THAT THEY'RE IN THE SIXTH AMENDMENT?

15          MS. DURRETT:  I THINK THEY'RE IN THE SIXTH AMENDMENT,

16  YOUR HONOR.  I MEAN I THINK IT'S A SHAM TO SAY THAT FULTON WAS

17  EVER GOING TO PROSECUTE HIM.  I JUST DON'T THINK THAT WAS GOING

18  TO HAPPEN, AND I THINK AT LEAST BY THE LATEST THE SPRING OF

19  2014 EVERYONE INVOLVED IN THE CASE KNEW THAT.

20          THE COURT:  OKAY.  AND SO WOULD YOU TAKE THAT TO THE

21  NEXT LEVEL, THOUGH, AND SAY EVEN IF YOU DON'T START THE CLOCK

22  IN SEPTEMBER OF 16, YOU SHOULD START THE CLOCK IN MAY OF 17 --

23  OH, NO, I GOT MY YEARS WRONG.

24          MS. DURRETT:  2014.

25          THE COURT:  2014 IS WHEN HE WAS ARRESTED.

1          MS. DURRETT:  HE WAS ARRESTED IN SEPTEMBER OF 2013,

2    AND THE EMAILS, THE FEW EMAILS THAT WE HAVE SHOWING

3    COMMUNICATION BETWEEN FULTON COUNTY AND THE U.S. ATTORNEY'S

4    OFFICE ARE IN THE SPRING OF 2014, I THINK THEY ARE MARCH AND

5    MAY THAT WE HAVE, AND SHOWING THAT THEY'RE DOING SOME

6    INVESTIGATION ABOUT TERRELL MCQUEEN, AND THEN THERE'S THIS

7    MEETING THAT'S GOING TO BE HELD BETWEEN FULTON COUNTY AND MR.

8    BROWN.

9          THE COURT:  OKAY.  SO YOUR ARGUMENT WOULD BE EVEN IF

10   I DON'T GO WITH YOU ON THE ARREST, I SHOULD STILL START THE

11   CLOCK -- THE SIXTH AMENDMENT RIGHT SHOULD ATTACH IN MAY WHEN IT

12   WAS CLEAR THAT THE STATE WAS NOT GOING TO PURSUE THE CASE.

13         MS. DURRETT:  RIGHT, AND HE HAD ALREADY BEEN

14   RELEASED, HE WAS RELEASED ON APRIL 2ND FROM PRETRIAL RELEASE IN

15   FULTON COUNTY AFTER THEY REPEATEDLY CONTACTED THE DA'S OFFICE

16   SAYING ARE YOU GOING TO PROSECUTE THIS PERSON, IF NOT WE'RE

17   GOING TO RELEASE HIM.

18         THE COURT:  OKAY.  AND THAT'S USING THAT RUSE KIND OF

19   SHAM ARGUMENT.  TELL ME ABOUT THE FIFTH AMENDMENT.

20         MS. DURRETT:  WE TALKED A LITTLE BIT ABOUT WHAT WE

21   THINK THE TACTICAL ADVANTAGE IS.  BECAUSE I THINK WITH THE

22   FIFTH AMENDMENT WE HAVE TO SHOW PREJUDICE AND WE HAVE TO SHOW

23   THAT THERE WAS A DELIBERATE INTENTION TO DELAY THE PROCESS FOR

24   A TACTICAL ADVANTAGE.

25            I THINK A COUPLE OF THINGS AS FAR AS THE TACTICAL

1  ADVANTAGE GOES.  ONE, NOW THEY'VE GOT THIS 404(B) EVIDENCE THAT

2  THEY SAY THEY'RE GOING TO USE WHICH CAME IN BECAUSE THEY KNEW

3  HE WAS GOING TO BE PROSECUTED IN THESE OTHER DISTRICTS BECAUSE

4  OFFICER RICKS IS THEIR MAIN OFFICER WHO'S PROSECUTING MR.

5  PENDERGRASS IN EVERY DISTRICT.

6          THE COURT:  SO IS THIS AN ARGUMENT OF YOU SHOULD HAVE

7  PROSECUTED ME SOONER?

8          MS. DURRETT:  YEAH.  REMEMBER HE COULDN'T GET THE

9  DETAINER.  I HAVE EVIDENCE NOW THAT HE WAS ELIGIBLE FOR

10 TRANSFER FROM A LOW SECURITY PRISON TO A MINIMUM SECURITY

11 FACILITY BUT WAS INELIGIBLE FOR THAT BECAUSE OF HIS DETAINER,

12 SO IT INCREASED HIS SECURITY POINTS.

13         THE COURT:  SO I MEAN HE COULD HAVE USED THE

14 INTERSTATE AGREEMENT ON DETAINERS TO REQUEST THAT THOSE CHARGES

15 EITHER BE DROPPED OR HANDLED.

16         MS. DURRETT:  RIGHT, AND SO I HAVE AN EXHIBIT WHERE

17 HE IS EMAILING THE STAFF OF THE PRISON ON DECEMBER 12TH, 2016.

18 I'LL MARK IT AS DEFENDANT'S EXHIBIT 1, AND HE IS SAYING I'M

19 CONTESTING THAT THERE IS A DETAINER AGAINST ME, RIGHT, BECAUSE

20 THERE ACTUALLY ISN'T A DETAINER.  THERE'S THESE PENDING CHARGES

21 IN FULTON COUNTY, AND NOBODY IS SENDING A DETAINER, RIGHT, SO

22 MAY I APPROACH?

23         THE COURT:  YES.

24         MS. DURRETT:  SO HE'S WRITING TO THE PRISON SAYING

25 PER OUR PREVIOUS CONVERSATION REGARDING THE HALFWAY HOUSE, YOU

1   INDICATED I WAS INELIGIBLE FOR THE HALFWAY HOUSE DUE TO THE

2   DETAINER WHICH I CONTESTED I DON'T HAVE AND IN WHICH RECORDS

3   CLEARLY INDICATE I DON'T HAVE, AND SO HE IS DOING WHATEVER HE

4   CAN DO TO FIGURE OUT THE DETAINER IN 2016.  HE JUST DOESN'T

5   KNOW THAT IT'S A DIFFERENT ENTITY THAT'S HOLDING HIM.  THERE IS

6   NO ACTUAL DETAINER PLACED.

7           THERE IS THIS EMAIL THAT GOES OUT FROM THE JESUP

8   OFFICIALS TO THE FULTON COUNTY DISTRICT ATTORNEY'S OFFICE

9   SAYING WE HAVE INFORMATION THAT YOU HAVE CHARGES PENDING

10  AGAINST HIM, AND THEY WRITE BACK AND SAY THERE'S GOING TO BE AN

11  INDICTMENT IN 2017, AND THAT'S IT, AND THAT'S THE HOLD THAT'S

12  PLACED ON HIM, SO IT PREVENTS HIM FROM GOING TO A MINIMUM

13  SECURITY PRISON, AND IT PREVENTS HIM FROM GETTING THE HALFWAY

14  HOUSE PLACEMENT.

15          THE COURT:  WHAT WROTE THAT EMAIL?

16          MS. DURRETT:  SOMEONE FROM THE FULTON COUNTY DA'S

17  OFFICE.

18          THE COURT:  BUT THEY DIDN'T SAY WHO WAS GOING TO BE

19  BRINGING THE INDICTMENT?

20          MS. DURRETT:  RIGHT, AND WE KNOW WHO IT WAS, RIGHT?

21          THE COURT:  AT THAT POINT PROBABLY THEY HAD ALREADY

22  TURNED OVER THEIR WHOLE FILE TO THE --

23          MS. DURRETT:  WHICH IS WHY WE THINK WE NEED AN

24  EVIDENTIARY HEARING.  I MEAN I DO THINK THERE'S SOME

25  INFORMATION IN HERE THAT SHOWS THERE WAS A TACTICAL DECISION, A

1  DECISION TO GAIN A TACTICAL ADVANTAGE AGAINST MR. PENDERGRASS,

2  AND I THINK I CITED FOR THE COURT IN A DIFFERENT FILING, HE HAD

3  AN ATTORNEY THAT WAS REPRESENTING HIM IN OHIO WHO WROTE TO

4  OFFICER RICKS AND SAID HEY, I WANT TO GET ACCESS TO THOSE

5  COMPUTERS THAT YOU HAVE, AND THEN RICKS SENT AN EMAIL TO THE

6  IRS AND POSTAL SERVICE WORKERS, THE AGENTS, AND SAYS I JUST

7  IGNORED THAT GUY, I JUST IGNORED THAT ATTORNEY SAID HE WANTED

8  ACCESS TO THOSE COMPUTERS.

9          SO THERE'S STILL A LOT GOING ON THAT WE DON'T HAVE

10  INFORMATION ABOUT.  WE HAVE VERY SMALL PICTURES OF WHAT'S

11  HAPPENING, AND SO I UNDERSTAND THE COURT, YOU KNOW, IS SAYING

12  GIVE ME THE CASE LAW, AND WHAT I'M SAYING IS I'M MISSING PIECES

13  OF THE PUZZLE AS FAR AS PREJUDICE GOES AND THE REASON FOR THE

14  DELAY, BUT I DEFINITELY THINK SOMEONE WAS DELAYING THIS CASE TO

15  ENSURE THAT HE GETS THE MAXIMUM PENALTY IN OTHER PLACES.

16          HE COULD HAVE BEEN RELEASED TO A HALFWAY HOUSE 15 TO

17  17 MONTHS EARLIER THAN HE WAS RELEASED BASED ON THE DOCUMENTS

18  WE HAVE, BUT HE WASN'T RELEASED BECAUSE SOMEBODY WAS HOLDING

19  HIM.  SO I JUST THINK WE'RE MISSING SOME OF THE INFORMATION WE

20  NEED.

21          THE COURT:  DOESN'T YOUR PREJUDICE NEED TO GO TO HIS

22  DEFENSE?

23          MS. DURRETT:  WELL, NO, NOT NECESSARY.  SO THERE ARE

24  CASES, THE DOGGETT CASE IN PARTICULAR TALKS ABOUT HOW IT'S

25  DIFFICULT TO SHOW PREJUDICE TO YOUR DEFENSE AFTER SUCH AN

1  EXTENDED PERIOD OF TIME, AND SO IT CAN BE PRESUMED THAT THERE

2  IS PREJUDICE IN CERTAIN SITUATIONS, AND I THINK THAT'S WHERE WE

3  ARE HERE IS HE'S OLDER NOW, SOME OF HE WITNESSES MAY BE GONE,

4  SOME OF THE WITNESS' MEMORY MAY BE DIFFERENT, HIS MEMORY IS

5  CERTAINLY AFFECTED.

6          THE COURT:  I MEAN YOU'RE SAYING HE HAS WITNESSES WHO

7  MIGHT BE -- I MEAN THAT'S A LITTLE VAGUE, RIGHT?  SOME OF THEIR

8  WITNESSES MIGHT BE GONE.  IT MIGHT BE BAD FOR THE GOVERNMENT

9  BECAUSE THEIR CASE COULD GET HARDER TO PROVE.  DOES HE HAVE

10 WITNESSES THAT ARE GOING TO BE ABLE TO HELP HIM?  I MEAN THESE

11 CHARGES SEEM PRETTY, YOU KNOW, PAPER INTENSIVE.

12         MS. DURRETT:  THAT'S ANOTHER GOOD POINT, YOUR HONOR,

13 ON PAPER ALL OF THE ALLEGATIONS ARE AGAINST MR. MCQUEEN, RIGHT,

14 AND SO NOW THE GOVERNMENT SAYS HAHA, BUT WE HAVE THESE 404(B)

15 ALLEGATIONS THAT WE CAN BRING IN FROM ANOTHER DISTRICT, SO WHAT

16 HAVE IS A WEAK CASE AGAINST MR. PENDERGRASS, BUT BECAUSE WE

17 WAITED SO LONG AND LET HIM GET PROSECUTED SOMEWHERE ELSE, NOW

18 WE CAN BRING THOSE IN AGAINST HIM HERE TO MAKE OUR CASE

19 STRONGER.

20         SO AS FAR AS WITNESSES THAT ARE MISSING, CERTAINLY

21 ALL OF THE EVIDENCE IN OUR OPINION SO FAR HAS SHOWN THAT MR.

22 MCQUEEN WAS THE ONE COMMUNICATING WITH OFFICERS OR PEOPLE WHO

23 WORKED AT THE CITY OF ATLANTA, BUT THERE MAY BE PEOPLE THERE

24 WHO CAN TESTIFY OR WHO WOULD HAVE BEEN ABLE TO TESTIFY THAT

25 THEY DIDN'T HAVE CONTACT WITH MR. PENDERGRASS ON THIS.

1          THE COURT:  OKAY.

2          MS. DURRETT:  IT'S HARD TO SHOW A NEGATIVE, RIGHT.

3     IT'S HARD TO SHOW WE WOULD HAVE HAD THIS EXCULPATORY EVIDENCE,

4     AND SOME OF THE CASES TALK ABOUT HE HAD NO REASON TO BE SITTING

5     IN HIS CELL MAKING NOTES ABOUT THIS OR TRYING TO FIGURE OUT

6     WHAT HIS DEFENSE WAS BECAUSE FULTON COUNTY WAS NOT PROSECUTING

7     HIM, AND HE KNEW THAT, AND HE KEPT TELLING THE OFFICIALS THERE

8     ARE NO CHARGES AGAINST ME, THERE IS NO DETAINER AGAINST ME.  SO

9     HE HAD NO REASON TO BE RECORDING WHAT HE THOUGHT HIS DEFENSE

10    SHOULD BE OR WHO THE WITNESSES SHOULD BE UNTIL 2017, AND I DO

11    THINK HE WAS IMPAIRED BY THAT.

12         THE COURT:  OKAY.  THANKS.  MR. BROWN, WHAT DO YOU

13    HAVE TO SAY.  YOU CAN GO IN ANY ORDER.  I WAS INTERESTED IN THE

14    TIMELINE, AND MS. DURRETT I THINK, YOU KNOW, FRUSTRATINGLY

15    EXPRESSED THAT WE DON'T KNOW WHAT THE TIMELINE WAS, WHEN THE

16    STATE DECIDED NOT TO PURSUE IT, AND I THOUGHT TO THE EXTENT YOU

17    WOULD IF YOU WOULD JUST TELL US THAT FROM YOUR PERSPECTIVE THAT

18    WOULD BE HELPFUL.

19         MR. BROWN:  YES, I MEAN I KNOW THE QUESTION YOU HAD

20    IN YOUR ORDER, JUDGE, WAS WHEN DID THE GOVERNMENT LEARN THAT

21    FULTON COUNTY DID NOT INTEND TO PURSUE A CASE AGAINST THE

22    DEFENDANT, AND THE FIRST THING I'LL SAY IS I PROVIDED, THE

23    GOVERNMENT PROVIDED ALL THE EMAIL COMMUNICATIONS THAT THE

24    AGENTS HAD WITH THE LOCAL POLICE DETECTIVE, THAT OUR OFFICE HAD

25    WITH OUR INVESTIGATORS AS WELL AS THE APD INVESTIGATOR, AND I

1   WENT BACK AND LOOKED AT MY EMAILS, AND I RECALL THE ONLY EMAIL

2   IN THERE THAT CITES THAT KIMBERLY BURROUGHS, WHO WAS AN ADA

3   FROM FULTON COUNTY, WAS GOING TO REACH OUT TO ME, AND I RECALL

4   HAVING A CONVERSATION WITH HER BECAUSE SHE THOUGHT THERE WAS A

5   SEPARATE INVESTIGATION BY THE ATTORNEY GENERAL'S OFFICE.

6           BUT TO ANSWER THAT QUESTION DIRECTLY, THE GOVERNMENT

7   NEVER LEARNED WHEN FULTON COUNTY WAS NOT GOING TO PROSECUTE THE

8   CASE.  WE'RE DUAL SOVEREIGNS.  IN EVERY SINGLE CASE THAT I'VE

9   HAD IN THE 13 YEARS I'VE BEEN IN THIS OFFICE, ANY TIME I HAVE

10  CONTACT WITH AN ADA OR ANY ADA'S, IT'S ALWAYS DO WHATEVER YOU

11  WANT WITH YOUR CASE, DON'T WAIT ON US, DO WHAT YOU'RE GOING TO

12  DO --

13          THE COURT:  I KNOW, BUT TO THE EXTENT YOU KNEW --

14          MR. BROWN:  TO THE EXTENT I KNOW IS I THINK IT WOULD

15  HAVE BEEN AROUND MAY 2014 THAT I RECALL, BUT I NEVER RECALL A

16  CONVERSATION OR AN EMAIL WHERE THEY SAY LISTEN, WE'RE NOT GOING

17  TO GO FORWARD WITH OUR PROSECUTION.  I DON'T RECALL THAT.  I DO

18  HAVE --

19          THE COURT:  IT'S IN MY R&R I SAY AT SOME POINT

20  PROBABLY IN MAY 2014 --

21          MR. BROWN:  I THINK THAT WOULD BE --

22          THE COURT:  -- FULTON COUNTY PROBABLY DECIDED THAT IT

23  WAS NOT GOING TO PURSUE THIS.

24          MR. BROWN:  TO THE BEST OF MY RECOLLECTION, YES,

25  JUDGE, MAY 2014.

1          THE COURT:  SO LET'S JUST ASSUME THAT THOSE ARE THE

2    FACTS FROM THAT BECAUSE WE DON'T HAVE THEM HERE.  WE HAVEN'T

3    HAD THIS EVIDENTIARY HEARING THAT THEY WANT, BUT LET'S JUST GO

4    AHEAD AND ASSUME THAT THAT'S WHAT HAPPENED, THAT'S WHEN YOU

5    WERE EMAILING WITH THEM.

6          MR. BROWN:  RIGHT.

7          THE COURT:  DO YOU KNOW WHEN THE FILE WAS

8    TRANSFERRED?

9          MR. BROWN:  THE FILE MEANING THE ATLANTA POLICE

10   DEPARTMENT DETECTIVE'S FILE, THE GOVERNMENT RECEIVED THAT, AND

11   I WROTE THAT DOWN, ON NOVEMBER 19TH, 2018 IS WHEN WE HAD THE

12   DETECTIVE COME TO OUR OFFICE TO PREP FOR TRIAL, AND I ASKED HIM

13   TO BRING HIS FILE.

14         HE WENT TO APD, GOT HIS FILE, BROUGHT IT TO US, AND

15   WE WENT OVER IT WITH HIM, PREPPED HIM FOR TRIAL, AND HE LEFT

16   HIS FILE THERE BECAUSE HE WAS GOING TO BE BACK FOR TRIAL IN TWO

17   OR THREE WEEKS, AND THAT'S WHEN WE HAD THE DETECTIVE'S FILE.

18   BEFORE THAT WE HAD NO OTHER RECORDS FROM THE DETECTIVE'S FILE.

19         THE COURT:  OKAY.  SO IT WASN'T LIKE IN 2014 THEY

20   SAID WE'RE NOT GOING TO DO IT, AND BY THE WAY, HERE'S A BIG

21   NOTEBOOK?

22         MR. BROWN:  CORRECT.  I MEAN I'M NOT GOING TO REHASH

23   WHAT YOU'VE ALREADY SAID, BUT THERE IS NO CASE LAW SUPPORTING

24   THE DEFENDANT'S ARGUMENT UNDER THE SIXTH AMENDMENT THAT THE

25   ACTUAL ARREST BY THE STATE SOMEHOW IS THE TIME THAT THE COURT

1  SHOULD CONSIDER IN RELATING TO -- IN TERMS OF A SPEEDY TRIAL

2  ISSUE UNDER THE SIXTH AMENDMENT.  IT'S JUST NOT THERE.  THERE

3  IS NO CASE LAW.

4          I SAW THE FIRST CIRCUIT CASE THAT WAS DIRECTLY ON

5  POINT, BUT IT WAS ABROGATED BY THE SUPREME COURT IN ANOTHER

6  FIRST CIRCUIT CASE THAT COMES RIGHT AFTER THAT THAT SAYS YEAH,

7  THIS CAN'T HAPPEN, THEY'RE DUAL SOVEREIGNS, SO I WON'T GET INTO

8  ALL THAT.  I THINK THE CASE LAW IS CRYSTAL CLEAR.

9          I THINK THE DEFENSE IS REALLY STRETCHING, BUT THERE

10  IS NO CASE LAW SUPPORTING HER POSITION AT ALL.  ZERO.  SHE'S A

11  VERY GOOD ADVOCATE.  SHE'S LOOKED FOR MONTHS, AND SHE HASN'T

12  FOUND ANY BECAUSE NONE EXISTS.  SO, THEREFORE -- SO THAT'S ON

13  THE SIXTH AMENDMENT I THINK IS CRYSTAL CLEAR, THERE IS NO

14  AUTHORITY SUPPORTING HER POSITION AT ALL.

15          THE COURT:  I THINK THAT'S HOW I'M GOING TO WRITE MY

16  R&R.  SO LET'S MOVE ON TO THE FIFTH, THE FIFTH SEEMS A LITTLE

17  BIT -- THERE'S MORE GOING ON WITH THE FIFTH AMENDMENT.

18          MR. BROWN:  I MEAN THE PROBLEM WITH THE FIFTH

19  AMENDMENT AND I STATED IT WHEN THE GOVERNMENT RESPONDED BACK IN

20  FEBRUARY OF 2019 IS THE DEFENDANT HASN'T MET THEIR BURDEN AT

21  ALL.

22          WHAT SHE JUST GOT UP BEFORE YOU AND IT WILL BE ON THE

23  RECORD ARE MERE ALLEGATIONS OF ANY KIND OF TACTICAL ADVANTAGE

24  THE GOVERNMENT WOULD ACTUALLY GAIN.  THERE WAS NONE.

25          THE COURT:  WHAT ABOUT THE 404(B) THAT SEEMED LIKE A

1  CONCRETE EXAMPLE OF SOMETHING?

2          MR. BROWN:  THAT'S NOT A CONCRETE EXAMPLE OF ANY

3  TACTICAL ADVANTAGE.  THE GOVERNMENT COULD HAVE USED THAT

4  IRRESPECTIVE OF A CONVICTION.  SO THERE'S NO ADVANTAGE BY

5  DELAYING THIS CASE.  THERE'S NO ADVANTAGE.

6          I MEAN THIS IS REALLY INTERESTING, YOU KNOW, SHE'S A

7  VERY GOOD ADVOCATE AND SHE'S ZEALOUS, BUT THERE'S NOTHING

8  THERE.  WE PROVIDED OVER 136 PAGES OF EMAIL COMMUNICATIONS.

9  THERE IS NO CONCERTED EFFORT BASED ON THE EVIDENCE IN THIS

10  CASE.  THERE'S NOTHING.  SO WHAT SHE SAID IS BARE ALLEGATIONS,

11  HIS WITNESSES MAY HAVE HAD MEMORY.  SHE HASN'T BROUGHT ONE

12  WITNESS WHO SAID YOU KNOW WHAT I WOULD HAVE REMEMBERED

13  SOMETHING BACK THEN BUT NOW I DON'T.

14          IT'S BARE ALLEGATIONS AND THE COURTS ROUTINELY STATE

15  THAT'S NOT ENOUGH.  SO THERE'S NOT ENOUGH FOR A HEARING.

16  THERE'S NOT ENOUGH FOR THIS COURT TO CONSIDER HER ALLEGATION

17  UNDER THE FIFTH AMENDMENT.  THERE'S NOTHING HERE.  AND QUITE

18  FRANKLY IF YOU LOOK AT IT -- I DIDN'T BRING THE POINT HERE, BUT

19  SHE MAKES ONE ARGUMENT THAT THIS IS SOMEHOW THE GOVERNMENT'S

20  PLAN TO HAVE HIM STRUNG ALONG BY FULTON COUNTY AND KEEP THIS

21  CASE OPEN.  THERE IS NO TACTICAL ADVANTAGE WHATSOEVER, AND WHAT

22  THE COURT JUST INTIMATED TO THE 404(B) WE COULD'VE USED THAT

23  IRRESPECTIVE OF THE CONDITION, JUDGE, SO THERE'S NO ADVANTAGE.

24  ZERO.  YOU TOUCHED ON IT EARLIER --

25          THE COURT:  I THINK SHE ALSO, MR. PENDERGRASS ALSO

1  ASSERTS THAT BY WAITING UNTIL HE HAD COMPLETED A SENTENCE ON

2  THE FIRST ONE BEFORE INDICTING HIM ON THE SECOND ONE LOOKS LIKE

3  THAT'S TRYING TO PREVENT HIM FROM MAYBE GETTING A CONCURRENT

4  SENTENCE, SOMETHING LIKE THAT.

5       MR. BROWN:  ONCE AGAIN THAT'S NOT A TACTICAL

6  ADVANTAGE FOR THE GOVERNMENT'S PROSECUTION OF THE DEFENDANT,

7  NUMBER 1.  NUMBER 2, THERE'S NO EVIDENCE THAT HAPPENED, AND

8  NUMBER 3 --

9       THE COURT:  WELL, THE TIMELINE LOOKS LIKE THAT'S WHAT

10  HAPPENED.  I MEAN YOU HAVE THE CASE FOR THREE YEARS, AND YOU

11  WAIT UNTIL HE'S JUST ABOUT TO BE RELEASED, AND THEN YOU INDICT

12  HIM, BUT IS THAT A TACTICAL ADVANTAGE?

13       MR. BROWN:  I MEAN THE LAW IS REALLY CLEAR AS TO WHAT

14  THEY MUST SHOW UNDER THE FIFTH AMENDMENT, AND YOU TALKED ABOUT

15  ONE OF THE TWO -- THE CASE LAW IS REALLY CLEAR.  WHAT DID IT

16  SAY?  ONE, THE DELAY CAUSED ACTUAL PREJUDICE OF THE CONDUCT OF

17  HIS DEFENSE.  THE DEFENDANT MUST SHOW.  HASN'T SHOWN ANY.  TWO,

18  THAT THE DELAY WAS A PRODUCT OF DELIBERATE ACTION BY THE

19  GOVERNMENT DESIGNED TO GAIN A TACTICAL ADVANTAGE IN THE

20  PROSECUTION.

21       SO EVEN WE WERE TO SAY SOMEHOW THE GOVERNMENT DID

22  THAT, WE WAITED UNTIL THE VERY END BEFORE HE WAS RELEASED, AND

23  THEN WE INDICTED HIM, WHAT TACTICAL ADVANTAGE DOES THAT HAVE IN

24  THE GOVERNMENT'S PROSECUTION OF THIS CASE?  THIS CASE AS THE

25  COURT KNOWS FROM LOOKING AT THE RECORD, THIS IS A DOCUMENT

1  CASE.

2          DEFENSE COUNSEL INDICATED EARLIER THAT WELL THE

3  EVIDENCE IS ALL AGAINST MR. MCQUEEN.  NO, IT'S NOT.  THE

4  EVIDENCE IS REALLY STRONGLY AGAINST THE DEFENDANT.  HE

5  CONTROLLED THE BANK ACCOUNTS IN WHICH FRAUDULENT FUNDS WERE

6  OBTAINED.  HE USED THAT MONEY FOR HIMSELF AND PAID MR.

7  MCQUEEN.  WE HAVE A STILL PHOTOGRAPH OF HIM IN THE BANK CASHING

8  THE MAJORITY OF THE CHECKS IN THE INDICTMENT.  A BANK ACCOUNT

9  THAT HE CONTROLLED.  HE CASHED THEM.  HE'S THERE WITH MR.

10  MCQUEEN, AND THEN THE MONEY GOES TO HIM.  SO HE'S THE SOLE

11  CONTROLLER OF THE BANK ACCOUNT.  THERE'S NO TACTICAL ADVANTAGE

12  TO WAIT UNTIL THE VERY END.  SO I KNOW SHE'S TRYING TO MAKE

13  SOME ARGUMENTS, BUT THEY'RE JUST NOT THERE.

14          THE COURT:  SO WOULD YOU SAY POSSIBLY RESULTING IN A

15  HIGHER OR LONGER NUMBER MONTHS INCARCERATED WHEN CONSIDERED IN

16  CONJUNCTION WITH THE OTHER CASE, IS THAT NOT A TACTICAL

17  ADVANTAGE?

18          MR. BROWN:  IT'S NOT A TACTICAL ADVANTAGE OF SOMEHOW

19  MAKING OUR CASE STRONGER AGAINST HIM.  I MEAN IT COULD HAVE THE

20  ADVANTAGE OF HIM SERVING ADDITIONAL TIME POSSIBLY, SURE, BUT IT

21  DOESN'T RELATE TO A TACTICAL ADVANTAGE WE GAIN IN OUR

22  PROSECUTION.  THERE'S NO TACTICAL ADVANTAGE IN THE PROSECUTION

23  OF THIS CASE BASED ON THE CHARGES IN THE INDICTMENT BY DOING

24  THAT.  THERE'S NONE.  THERE IS -- AND SHE HASN'T EVEN COME UP

25  WITH ONE.

1          SO WHAT YOU'RE TALKING ABOUT IS A CONSEQUENCE OF

2   POSSIBLY DOING THAT, BUT THAT'S NOT A TACTICAL ADVANTAGE AS IT

3   RELATES TO THE PROSECUTION OF THE CASE, AND THAT'S WHAT THE

4   COURTS TALK ABOUT.  SO IT'S NOT MAKING THE SENTENCE LONGER, HIM

5   SERVING MORE TIME, WHO KNOWS WHAT THE JUDGE WOULD HAVE DONE IF

6   HE PLED GUILTY AND IT WAS CONCURRENT OR NOT, BUT THAT'S BESIDE

7   THE POINT.  THERE'S NO TACTICAL ADVANTAGE IN THE PROSECUTION BY

8   DOING THAT, JUDGE, AND SHE HASN'T COME UP WITH ONE.

9          SO I MEAN I THINK THIS CASE IS, YOU KNOW, CERTAINLY

10  IT'S BEEN AROUND FOR A WHILE, AND THE LAST YEAR WE'VE BEEN

11  GOING BACK AND FORTH WITH MOTIONS.  DEFENSE COUNSEL HAS HAD A

12  NUMBER OF EXTENSIONS IN FILING THEIR RESPONSES, AND THE

13  GOVERNMENT HAS DONE WHAT IT'S SUPPOSED TO DO, AND EVERYTHING

14  THE COURT ASKED THE GOVERNMENT HAS DONE.  I THINK THIS CASE

15  NEEDS TO MOVE ON AND GET TO A TRIAL.

16         I THINK THERE'S NOTHING THAT THE DEFENSE HAS BROUGHT

17  UP IN THEIR MOTIONS, THERE ARE MANY MOTIONS, THAT WOULD WARRANT

18  THIS COURT TO HAVE A FURTHER DELAY IN HAVING A HEARING BECAUSE

19  THE CASE LAW DOESN'T SUPPORT THEIR ARGUMENT.  EVEN IF

20  EVERYTHING SHE SAID WERE TRUE AS RELATING TO THE SIXTH

21  AMENDMENT DOESN'T MAKE A DIFFERENCE.

22         THE COURT:  WERE YOU PERSONALLY AWARE THAT THEY WERE

23  TRYING TO RELEASE HIM TO THE HALFWAY HOUSE?

24         MR. BROWN:  I HAD NO KNOWLEDGE OF THAT, JUDGE.  I

25  MEAN I NEVER HAD KNOWLEDGE ABOUT THAT.  SO THAT WAS NO

1   ADVANTAGE THE GOVERNMENT WOULD'VE HAD.  I HAD NO -- THE ANSWER

2   IS NO.

3           THE COURT:  I MEAN THAT'S JUST A FACT THAT WE DON'T

4   LIKE, RIGHT?  I DON'T LIKE THE FACT THAT THIS WAS SITTING.

5   THEY KNEW FOR YEARS THEY WEREN'T GOING TO PURSUE THESE CHARGES,

6   AND BECAUSE OF THAT HE DIDN'T GET TO GO TO THE HALFWAY HOUSE.

7   HE'S NOT ACTUALLY RELEASED EARLIER THAN HE WOULD HAVE BEEN

8   INCARCERATED BUT THROUGH THE HALFWAY HOUSE, BUT THAT'S A FACT

9   THAT I DON'T LIKE --

10          MR. BROWN:  RIGHT.

11          THE COURT:  -- AND I KNOW JUDGE TOTENBERG IS NOT

12   GOING TO LIKE.  I'M JUST ASKING YOU IF YOU KNEW THAT WAS

13   HAPPENING.

14          MR. BROWN:  NO KNOWLEDGE, AND QUITE FRANKLY EVEN

15   THOUGH THIS IS NOT PARTICULARLY RELEVANT BUT IT'S TRUTHFUL, AS

16   RELATES TO THIS CASE OR THE DELAY, IT'S IN THE EMAILS WE

17   PROVIDED TO DEFENSE COUNSEL, THERE WERE LOTS OF COMPUTERS,

18   THERE WERE LOTS OF DOCUMENTS, AND THERE WAS A BACKLOG WITH THE

19   POSTAL SERVICE IN ANALYZING ALL THIS, SO FULTON COUNTY COULD

20   HAVE AND SHOULD HAVE GONE FORWARD WITH THEIR CHARGES.

21          WE WERE LOOKING FOR ADDITIONAL CHARGES BECAUSE THERE

22   WAS CONDUCT IN THIS CASE GOING BACK MANY YEARS IN WHICH HE HAD

23   THIS KIND OF BUSINESS, AND WE WERE SPENDING OUT DOZENS OF

24   SUBPOENAS TRYING TO SEE IF THERE WERE OTHER CHARGES AND OTHER

25   VICTIMS.  SO THAT'S WHY THE CASE TOOK SO LONG, BUT ONCE AGAIN

1   THAT'S NOT EVEN RELEVANT TO THIS COURT'S CONSIDERATION OF THE

2   FACTS AND LAW BEFORE IT.

3           THE COURT:  ALL RIGHT.  THANK YOU.

4           MR. BROWN:  THANK YOU.

5           MS. DURRETT:  I DON'T THINK THEY SAID WHEN THEY GOT

6   THE FILE FROM FULTON COUNTY OR IF THEY EVER GOT A FILE FROM

7   FULTON COUNTY.  I DON'T KNOW IF THE COURT IS GOING TO PRESUME

8   THAT THEY GOT IT IN APRIL OR MAY OF 2014.

9           THE COURT:  I THOUGHT IT WAS THE FILE, THE BIG

10  NOTEBOOK --

11          MS. DURRETT:  THE APD FILE, AND THEN REMEMBER WHEN WE

12  SUBPOENAED FULTON COUNTY THAT ATTORNEY WROTE BACK AND SAID WE

13  DON'T HAVE A FILE FOR THIS PERSON, AND WE ACCIDENTALLY HAD THE

14  CASE LEFT OPEN IN OUR ODYSSEY SYSTEM, BUT WE'VE CLOSED IT NOW,

15  SO WE DON'T HAVE A FILE FOR HIM.  SO DESPITE THE FACT THAT THEY

16  HAD AN OPEN CASE FOR HIM FOR SIX YEARS, THEY HAD NO FILE AT THE

17  DISTRICT ATTORNEY'S OFFICE FOR MR. PENDERGRASS.

18          THE COURT:  I DON'T THINK THERE'S EVIDENCE THAT

19  FULTON COUNTY'S FILE WAS SENT TO THE U.S. ATTORNEY'S OFFICE.  I

20  THOUGHT --

21          MS. DURRETT:  THERE'S EVIDENCE THAT THEY NEVER HAD A

22  FILE FOR MR. PENDERGRASS, AND I THINK THAT'S TELLING, RIGHT,

23  BECAUSE IT WAS THE U.S. ATTORNEY'S OFFICE THAT WAS PROSECUTING

24  HIM, NOT THE FULTON COUNTY DISTRICT ATTORNEY'S OFFICE BECAUSE

25  THEY DIDN'T HAVE A FILE FOR HIM EVEN AFTER THEY SEARCHED THEIR

1   ARCHIVES WHEN WE SUBPOENAED THEM.  SO THAT'S ONE POINT.

2           THE SECOND THING IS THE GOVERNMENT, I THINK,

3   REPRESENTED THAT THEY GAVE US 130 PAGES OF EMAILS OR SOMETHING

4   LIKE THAT.  MAYBE I'M MISREMEMBERING THIS, BUT IF THEY'RE

5   SAYING THAT THERE'S 130 PAGES OF EMAILS BACK AND FORTH BETWEEN

6   THE FULTON COUNTY DA'S OFFICE, I HAVE TWO.  ONE THAT SAYS WE'RE

7   GOING TO HAVE A MEETING, AND THEN THIS OTHER EMAIL BETWEEN THE

8   POSTAL SERVICE AND JEFF BROWN AND THE IRS SAYING WE'RE STILL

9   INVESTIGATING MR. MCQUEEN.  SO IF THERE ARE ADDITIONAL EMAILS

10  EITHER I HAVE MISSED THOSE, OR I DON'T BELIEVE THEY'VE BEEN

11  PRODUCED TO ME.  SO I GUESS I'D LIKE THE RECORD CLEAR ON THAT.

12          THEN HE TALKED ABOUT THE INVESTIGATION OH, WE WERE

13  STILL SENDING OUT SUBPOENAS, AND THAT'S THE REASON FOR THE

14  DELAY.  WELL THE LAST THING THAT'S CHARGED IN THE INDICTMENT IS

15  FROM MAY OF 2013, AND I DON'T THINK THERE WAS ANY FURTHER

16  INVESTIGATION OF THE CASE, NOTHING NEW HAPPENED THAT I CAN TELL

17  FROM THE CASE FROM THE TIME HE WAS ARRESTED UNTIL THE TIME HE

18  WAS INDICTED.  SO THE IDEA THAT WE WERE STILL INVESTIGATING OR

19  THERE WAS GOING TO BE MORE ADDITIONAL INFORMATION, THAT

20  CERTAINLY HASN'T BEEN BORNE OUT BY ANYTHING THAT I'VE SEEN.

21          AND THEN, YOU KNOW, HE'S TALKED ABOUT HOW THERE'S NO

22  TACTICAL ADVANTAGE, I HAVEN'T SHOWN ANY PREJUDICE, LIKE I SAID

23  THERE IS CASE LAW THAT TALKS ABOUT THE IDEA THAT THE INDICTMENT

24  OR THE COMPLAINT PUTS YOU ON NOTICE, THAT YOU NEED TO START

25  PREPARING A DEFENSE, THAT YOU NEED TO GET AN ATTORNEY, OR YOU

1  NEED TO START THINKING ABOUT HOW YOU'RE GOING TO DEFEND THIS

2  CASE, AND THE IDEA THAT HE'S TOLD IN APRIL OF 2014 FULTON

3  COUNTY IS NOT PROSECUTING YOU, WE ARE LETTING YOU OFF PRETRIAL

4  RELEASE, AND THERE'S NOTHING HAPPENING, AND THEN WHEN IT'S

5  RAISED IN THE BUREAU OF PRISONS AND THEY SAY OH, FULTON COUNTY

6  HAS CHARGES AGAINST YOU, HE WRITES BACK AND SAYS THEY DON'T,

7  THERE IS NO DETAINER, SO HE IS STILL UNDER THE IMPRESSION NO

8  ONE IS PROSECUTING ME FOR THIS CRIME, RIGHT, AND THAT'S IN

9  2016.

10        AND THEN ALL OF A SUDDEN IN 2017, THERE'S AN

11  INDICTMENT, AND NOW HE'S ON NOTICE, HEY, GUESS WHAT, YOU DO

12  NEED TO START PREPARING A DEFENSE, YOU DO NEED TO START MAKING

13  A LIST OF WITNESSES AND TRYING TO INTERVIEW PEOPLE WHO CAN COME

14  IN AND GIVE TESTIMONY ON YOUR BEHALF, THAT'S PREJUDICE, AND

15  THAT'S TACTICAL ADVANTAGE THAT THE GOVERNMENT GOT IN THIS

16  CASE.  THANKS.

17        THE COURT:  CAN YOU GIVE ME THE NAME OF ANY WITNESS

18  THAT IS NOW UNAVAILABLE THAT HE CAN THINK OF THAT WOULD HAVE

19  BEEN AVAILABLE THREE YEARS AGO?

20        MS. DURRETT:  I DON'T, YOUR HONOR, BUT I'LL TALK WITH

21  HIM, AND WE'LL SUBMIT IT TO THE COURT.

22        THE COURT:  THANK YOU.  ANYTHING ELSE THAT YOU ALL

23  WANT TO ADD?

24        MR. BROWN:  I WOULD JUST SAY THAT SHE TALKED ABOUT

25  THE RECORD OF 130 SOMETHING.  IN FEBRUARY OF 2019 JUDGE

1  TOTENBERG ASKED THE GOVERNMENT TO PROVIDE ANY EMAIL

2  COMMUNICATIONS THAT IT HAD BETWEEN THE AGENTS, AGENTS

3  COMMUNICATIONS OR ANYTHING RELATED TO THE GOVERNMENT'S

4  COMMUNICATIONS.  THERE ARE NO EMAILS BETWEEN THE GOVERNMENT AND

5  THE FULTON COUNTY DISTRICT ATTORNEY'S OFFICE.  ZERO.  I HAVEN'T

6  PROVIDED ANY BECAUSE THERE ARE NONE.

7          THE ONLY EMAILS -- SHE CITES AN EMAIL WHERE A FEDERAL

8  INVESTIGATOR SAID THAT THE ADA IS GOING TO REACH OUT TO ME AND

9  TALK TO ME ABOUT THE CASE, BUT THERE'S NO EMAILS.  SO THE 136

10 PAGES I'M TALKING ABOUT IS THE 136 PAGES OF SUPPLEMENTAL

11 DISCOVERY THAT WAS PROVIDED ON MARCH 19TH, 2019 ORDERED BY THE

12 COURT TO TURN OVER ANY EMAIL COMMUNICATIONS YOU HAVE RELATING

13 TO THE FULTON COUNTY DISTRICT ATTORNEY'S OFFICE OR YOUR

14 INVESTIGATORS ABOUT THE INVESTIGATION OF THIS CASE.  SO THAT'S

15 THE 136 PAGES I'M TALKING ABOUT, AND SHE'S RECEIVED THAT.  SO

16 THERE ARE NO ADDITIONAL EMAILS, AND THERE ARE NO EMAILS THE

17 GOVERNMENT HAS WITH THE FULTON COUNTY DISTRICT ATTORNEY'S

18 OFFICE.

19          THE COURT:  ALL RIGHT.  ANYTHING ELSE?

20          MS. DURRETT:  NO.

21          THE COURT:  I APPRECIATE YOU ALL COMING IN AND

22 HELPING ME WORK THROUGH THIS, AND I'LL GET MY R&R OUT AS SOON

23 AS I CAN.  THANK YOU.  WE'LL BE IN RECESS.

24          (PROCEEDINGS CONCLUDED.)

25

```
 1
 2                       C-E-R-T-I-F-I-C-A-T-E
 3
 4  UNITED STATES OF AMERICA
 5  NORTHERN DISTRICT OF GEORGIA
 6
 7           I, ANDRE G. ASHLEY, DO HEREBY CERTIFY THAT I AM A
 8  U.S. DISTRICT REPORTER FOR THE NORTHERN DISTRICT OF GEORGIA,
 9  THAT I REPORTED THE FOREGOING AND THE SAME IS A TRUE AND
10  ACCURATE TRANSCRIPTION OF MY MACHINE SHORTHAND NOTES AS TAKEN
11  AFORESAID.
12           IN TESTIMONY WHEREOF I HAVE HEREUNTO SET MY HAND ON
13  THIS 10TH DAY OF APRIL, 2020.
14
15
16
17
18
                              S/ ANDRE G. ASHLEY
19                            ANDRE G. ASHLEY
                              OFFICIAL COURT REPORTER
20                            NORTHERN DISTRICT OF GEORGIA
21
22
23
24
25
```