UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17-cr-00224-AT-CMS |
| | ) |
| ALLEN J. PENDERGRASS, | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S RESPONSE TO GOVERNMENT NOTICE OF INTENT TO ADMIT EVIDENCE OF ACTS NOT CHARGED IN THE INDICTMENT

The indictment in this case charges Mr. Pendergrass with mail fraud (counts 1-5), money laundering conspiracy (count 6), and aggravated identity theft (counts 7-10). Doc. 1. The indictment alleges that Mr. Allen and co-defendant Terrell McQueen allegedly devised a scheme to defraud the City of Atlanta by contacting the city and requesting lists of unclaimed funds. The indictment alleges that, after receiving this information, McQueen and Allen would mail correspondence and limited power of attorney forms fraudulently claiming that Guishard, Wilborn, and Shorts and Asset Financial Recovery or a related company was the rightful owner of the unclaimed funds. The indictment alleges that Pendergrass and McQueen used the actual names and forged signatures of the rightful owners of the unclaimed funds and then deposited the fraudulently obtained funds into banks accounts they

controlled and then used the funds for personal benefit. The indictment alleges 5 specific acts of mail fraud occurring on **April 5, 2013 and May 13, 2013**. Doc. 1 at 4. The money laundering conspiracy is alleged to have begun on a date unknown and continuing **until April 2014**. Doc. 1 at 5. The aggravated identity theft charges have corresponding victims and, therefore, track the dates outlined in counts 1-5 (April 5, 2013 and May 13, 2013).

Mr. Pendergrass was not indicted in this case until June 27, 2017. Doc. 1.[1]

## I. THIS COURT SHOULD REJECT THE GOVERNMENT'S REQUEST TO ADMIT IRRELEVANT, UNCHARGED CONDUCT AS INTRINSIC OR UNDER RULE 404(B).

The government now asserts that it intends to present certain evidence to show Mr. Pendergrass' knowledge, intent, and lack of mistake or accident. The "other acts" at issue are:

1. Defendant's conviction for bank fraud in Ohio;

2. Defendant's conviction for felony theft in Colorado;

3. A series of five additional bad acts arising out of the same scheme and during the same timeframe as those alleged in the indictment.

Doc. 73 at 3.

---

[1] He was arrested on September 19, 2013, and held in connection with Fulton County Superior Court case number 13CP139937 until he was released on bond on October 4, 2013. (*See* Doc. 90, Ex. 1, Fulton County docket, Ex. 2, bond order, Ex. 3, arrest warrant.) He was released from Fulton County pretrial supervision for lack of prosecution on April 3, 2014. (*See* Doc. 90, Ex. 4, release from pretrial services.)

2

The government asserts that the prior convictions should be admitted under Rule 404(b), while five other acts "will be offered as elements of and/or inextricably intertwined with crimes charged in the indictment. Doc. 73 at 3. The government believes these other acts are "necessary to complete the story of the charged conduct." Doc. 71 a 3.

### A. The prior convictions should be excluded because they do not satisfy the requirements for 404(b) evidence.

The government is offering the prior convictions to suggest that Mr. Pendergrass is a bad person and that, if he committed similar acts on a different occasion, he must have committed the acts at issue here. Specifically, the government argues:

> Particularly because the specific counts alleged in the Indictment involve incidents ***where co-defendant McQueen, not Defendant Pendergrass, signed and sent the forged documents***, Defendant's intent and knowledge of the scheme will be central at trial.

Doc. 73 at 3. This government is clearly asking for the jury to make an improper inference based upon the admission of this evidence. The government wants to the jury to find that even though there is **no evidence** that Mr. Pendergrass created forged documents or contacted the victims in connection with the counts charged in the indictment, he is still guilty because he is a bad man: ***once a fraudster always a fraudster***. This Court should reject that request.

Rule 404(b) states that:

> *(1)* *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> *(2)* *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

The Eleventh Circuit Court of Appeals applies a three-part test to determine whether extrinsic evidence of prior bad acts is admissible under Rule 404(b). First, the evidence must be relevant to an issue other than the defendant's character; Second, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; [and] Third, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403. *United States v. Matthews*, 431 F.3d 1296, 1310-1311 (11th Cir. 2005).

To meet the first requirement for admissibility, the proponents of Rule 404(b) evidence must do more than conjure up a proper purpose—they must also establish a chain of inferences no link of which is based on a propensity inference. *United States* v. *Echeverri*, 854 F.2d 638, 644 (3d Cir. 1988); *Sampson,* 980 F.2d at 886-87; *see also* 22 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM JR., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5239, at 459 (1978)

("[E]vidence of other crimes can be used to prove the conduct of a person if the inference to conduct can be made without the need to infer the person's character as a step in the reasoning from the other acts to the conduct in issue."). The government has not provided this link.

**B.     The prior convictions should be excluded.**

*The Ohio federal court conviction*

Mr. Pendergrass was indicted on January 30, 2014, in the Southern District of Ohio. The indictment alleges that from February 2012 through October 2012, Mr. Pendergrass created a scheme to defraud Huntington National Bank by depositing stolen United States Treasury checks into his account and withdrawing the funds. He pleaded guilty to two counts of bank fraud. On January 30, 2014, he was sentenced to 30 months in custody, to run concurrent to his Colorado case. The Ohio case is not probative of Mr. Pendergrass' intent, knowledge, or lack of mistake in this case and it certainly does not complete the story of the crimes charged. It would also be unduly prejudicial to admit such evidence at the upcoming trial.

*The Colorado state court conviction*

The Colorado case involves conduct that allegedly occurred between April 3, 2013 and May 2013. The complaint alleges that Mr. Pendergrass, through his company Guishard, Wilburn, & Shorts, devised a scheme to defraud the city of Fort Collins, Colorado by forging and mailing correspondence, including limited power

5

of attorney forms and other documents, fraudulently claiming that Defendant's business was the agent of Tousa Homes, the rightful owner of unclaimed government funds.

Mr. Pendergrass pleaded guilty to one count of theft ($1000-20,000) and was sentenced on June 26, 2015. His sentence was concurrent with his Ohio sentence. Although arguably similar in nature, the Colorado case alleged that Mr. Pendergrass himself forged documents and contacted the City of Fort Collins. Here, the government is arguing that it must admit this prior conviction because it cannot show that Mr. Pendergrass contacted the named victims or forged the documents at issue. The government is arguing that because it does not have sufficient evidence to convict Mr. Pendergrass based on its allegations and evidence, it must be permitted to bring in is prior convictions to convince the jury that he really is the kind of bad person who would commit the acts charged here. The Colorado case is not relevant to prove any fact at issue; it is simply character evidence and it should be excluded. It would also be unduly prejudicial to admit such evidence at the upcoming trial.

### C. The prior convictions are not probative of Mr. Pendergrass' knowledge, intent, or absence of mistake.

The government has offered the following purposes for admitting the evidence: knowledge, intent, and lack of mistake. These arguments should be rejected.

> ### i.   *The prior convictions are not probative of Mr. Pendergrass' knowledge of any fact relevant to the present case.*

"[W]here the evidence comes in to prove knowledge, admissibility requires 'a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act.' . . . Thus the question in a prior bad acts case is whether the proffered evidence really does tend to prove something material by a means other than bad character." *United States v. Martinez*, 182 F.3d 1107, 1111 (9th Cir. 1999).

The government fails to allege how the prior convictions are probative of Mr. Pendergrass' knowledge of the scheme at issue. Just because Mr. McQueen created forged documents and used information collected from an asset collection business does not mean that Mr. Pendergrass was aware of his fraudulent scheme or the methods he used to carry it out.

> ### ii.   *The prior convictions are not probative of Mr. Pendergrass' intent.*

The government next argues that the prior convictions are probative Mr. Pendergrass' intent in this case. "Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses." *United States v. Dorsey*, 819 F.2d 1055, 1059 (11th Cir. 1987). Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404(b) test is satisfied. *Id.; United States v. Dickerson*, 248 F.3d 1036, 1047 (11th Cir. 2001).

However, here, the claim that Mr. Pendergrass' intent in prior cases is relevant to show his intent in this case is just another way of asking the jury to find that the defendant "acted in accordance" with her alleged bad character. Fed. R. Evid. 404(b)(1). It cannot make its arguments in this case without explicitly arguing that Mr. Pendergrass had the propensity to commit the crimes charged because he acted in the same manner on a previous occasion.

### *iii.     The prior convictions do not show an absence of mistake.*

Absence of mistake or accident is one of the permissible purposes listed in Rule 404(b). However, "the government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove. *United States v. Merriweather,* 78 F.3d at 1076 (6th Cir. 1996). Thus, for other acts evidence to be admissible for the purpose of showing absence of mistake or accident, the defendant must assert a defense based on some type of mistake or accident. *See United States v. Newsom,* 452 F.3d 593, 606 (6th Cir. 2006) (finding absence of mistake not to be a permissible purpose, in a felon in possession case, when the defendant's only defense was that the gun was not his and that he did not know that it was under his seat). Here, Mr. Pendergrass is asserting that he was not involved in the fraud at issue –not that he was mistakenly involved. For that reason, this evidence should not be admitted to show absence of mistake. *See United States*

*v. Bell*, 516 F.3d 432, 443 (6th Cir. 2008) (find error in admission of evidence under "absence of mistake" because "Bell's argument was not that he was mistaken about the narcotic nature of the substances seized by the police, but rather that he never possessed the marijuana and crack cocaine. . . . In other words, Bell was claiming that it was a mistake for the police to think that the drugs were his, not that he was mistaken about the fact that the substances found were drugs.").

As the Third Circuit Court of Appeals explained in *United States v. Morley*, 199 F.3d 129, 133 (3rd Cir. 1999), even when evidence is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." The government cannot make such a connection in this case.

### D. The probative value of this proposed evidence is substantially outweighed by the danger of unfair prejudice.

When faced with the type of evidence the government is lobbying for here, the risk is high that "the jury may convict the defendant not for the offense charged but for the extrinsic offense." *See United States v. Beechum,* 582 F.2d 898, 914 (5th Cir. 1978); *see also United States v. Myers,* 550 F.2d 1036, 1044 (5th Cir. 1977) ("A concomitant of the presumption of innocence is that a defendant must be tried for what he did, not for who he is. The reason for this rule is that it is likely that the defendant will be seriously prejudiced by the admission of evidence indicating that

9

he has committed other crimes.").

In *United States v. Matthews*, in his concurring opinion, Judge Tjoflat argued that that the court had failed to explain how the probative value of the prior drug activity actually proceeded through a non-propensity inference:

> It is difficult to argue that a person had an intention to do something on a particular occasion because he or she demonstrated that intention previously without implicitly suggesting that the person has a proclivity towards that intent… Courts must be vigilant to ensure that poisonous predisposition evidence is not brought before the jury in more attractive wrapping… If the inferential chain must run through the defendant's character—and his or her predisposition towards a criminal intent—the evidence is squarely on the propensity side of the elusive line.

*United States v. Matthews*, 431 F.3rd 1296, (11th Cir. 2005).

In following Judge Tjoflat's *Matthews* concurrence, other Federal Circuit Courts have also held that in assessing probative value of other-acts evidence, the court must assure itself that the inferences to be derived from the act are independent of any propensity inference. In *United States v. Gomez,* the Seventh Circuit Court of Appeals held that the district court should not have admitted evidence of Gomez's cocaine possession pursuant to Rule 404(b) because evidence of the defendant's history of drug dealing tended to prove his identity as a participant in the charged drug deal only by way of a forbidden propensity inference: **Once a drug dealer, always a drug dealer.** *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014); *see also United States v. Smith*, 725 F.3rd 340 (3rd Cir. 2013) (reversing on a 404(b)

issue "in light of the significantly prejudicial nature of the prior acts evidence and noting for prior drug sales to "speak to Smith's motives," "one must necessarily (a) assume something about Smith's character based on the 2008 evidence (that he was a drug dealer) and (b) infer that Smith acted in conformity with that character in 2010 by dealing drugs and therefore had a motive to defend his turf."; *United States v. Hall,* 858 F.3d 254, 262 (4th Cir. 2017) (reversing because the prior convictions were not linked to the present charges by similar circumstances and noting that the prior convictions helped to render the defendant's involvement in the charged marijuana distribution "more plausible" through "precisely the criminal propensity inference Rule 404(b) is designed to forbid.")

For all of these reasons, this Court should reject the government's request to admit evidence of text messages allegedly related to marijuana sales under Rules 403 and 404(b).

### E.   The government's delay in bringing this case is what made the 404(b) evidence possible.

As noted in the previously filed APD report, the goal of the US Postal Service investigation in 2013 was federal prosecution. Keeping the Fulton County case open and pending since 2013 (without indictment) permitted the prosecution of Mr. Pendergrass in other districts, where the allegations were older and may have triggered statute of limitations concerns had they been delayed, but still ensured that

a hold remained on him in Georgia. Thus, the government ensured he could not be released from prison without returning – in custody – to Atlanta.

The government now seeks to use the delay to its advantage. It intends to bolster its weak case against Mr. Pendergrass – a case in which it appears that all relevant business correspondence and/or fraudulent documents can be directly tied to the co-defendant with his name and/or signature – by attempting to admit evidence of his prior conviction in other districts. Of course, these convictions all happened AFTER the APD and U.S. Postal Service raided his office and arrested him back in 2013.

When addressing this evidence, the magistrate court found no prejudice with this use of this evidence, echoing the government's claim that it could have used the evidence even if it had not secured a conviction in another district. Doc. 152 at 13. Surely, this court cannot deny that the weight of a conviction on unrelated fraud charges is much greater that the *mere allegations* the government may have been able to bring prior to Mr. Pendergrass' Ohio conviction. Notifying the jury that Mr. Pendergrass has prior ***convictions*** for fraud and theft will poison this case and it will likely lead the jury to believe that Mr. Pendergrass is a bad man who must have committed the acts alleged here in a way that mere allegations would not. The

government should not be permitted to unduly prejudice Mr. Pendergrass based on its own decision to delay the charging of this case.

Further, as already noted, the calculated effort to divide the allegations related to Mr. Pendergrass' businesses to be tried in different jurisdictions at different times ensured that Mr. Pendergrass would serve the maximum amount of time for each alleged crime.  As noted, the APD and US Postal service worked together to arrest Mr. Pendergrass and seize all of his business documents and property.  APD, US Postal Service, the US Attorney's Offices in various districts, and the Fulton County District Attorney's Office were in contact with each other about Mr. Pendergrass and the allegations presented here for many years before the indictment was sought in this case.  Indeed, Postal Inspector Kermie Green and APD Detective Ricks were listed as witnesses in the cases in other states and federal districts.  It is impossible to deny that the government has gained the advantage by delaying this case and that Mr. Pendergrass will suffer accordingly if the Court permits the admission of this evidence.  The government seeks to separate the allegations in these three cases when stands to benefit from multiple prosecutions, but it seeks to bring all of these allegations together when it serves their purpose of

gaining another conviction against Mr. Pendergrass. This Court should reject these tactics.

### F. Even when the government is permitted to use evidence for a limited purpose, it often pushes that boundary and makes improper use of such evidence.

Even in cases where the Eleventh Circuit has determined that some prior acts are admissible under 404(b), it has frowned on the type of arguments outlined by the government here. *See United States v. Jeune*, 2021 U.S. App. LEXIS 25102 (11th Cir. 2021). In the majority opinion in *Jeune*, two judges found that some 404(b) evidence was admissible but even they took issue with the government's use of that evidence once it was admitted. They held:

> But the government's four references to Jeune's having gone "back" to committing tax fraud were simply impermissible under Rule 404(b). For example, in its opening, the government urged, "When she came out of prison, *she went back to what she knew best*, committing more tax fraud but this time it was different.
>
> . . .
>
> This is a clear propensity argument—which, by its express terms, Rule 404(b) does not allow. The government must do better.
>
> . . .
>
> Despite our disappointment with this aspect of the government's trial presentation, we find no basis to conclude plain error occurred here and to reverse on this record.

*Id.* at *29. In dissent, Judge Martin noted that:

> [T]he rule allows evidence of past crimes to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). But once a court allows this type of evidence for the limited purpose permitted by the rule, the government can, and often does, go ahead and violate the rule's prohibition on using past crimes to show that the defendant acted in accordance" with that past conduct. Fed. R. Evid. 404(b)(1). In my view, the government violated the prohibition of Rule 404(b) in Ms. Jeune's case. Because of this violation, I would reverse Ms. Jeune's convictions.

*Id.* at *58. Judge Martin also noted the prejudicial ways in which the government capitalized on the character evidence once it was admitted. She noted that although the District Court's ruling allowed the government to tell the jury about Ms. Jeune's conviction for one count of tax fraud, the government read to the jury from the plea hearing transcript that she was originally charged with 30 counts of tax fraud. Judge Martin found that the government's opening and closing statements violated the prohibition against using Ms. Jeune's prior conviction as character evidence. *Id.* at 63.

Here, the risk of the government misusing prior conviction evidence is high especially given the government admission that this evidence is necessary because there is no evidence that Mr. Pendergrass committed the forgeries at issue or contacted the alleged victims in the case. Because the risk of prejudice outweighs the probative value of this evidence, it should be excluded.

### G. The alleged other acts evidence should be excluded because it is not intrinsic and it is not admissible under Rule 404(b).

#### i. *The Other Acts*

The government argues that *five* alleged "other acts" "will be offered as elements of and/or inextricably intertwined with crimes charged in the indictment." Doc. 73 at 3. The government believes these other acts are "necessary to complete the story of the charged conduct." Doc. 71 a 3. At the outside, it should be noted that Mr. Pendergrass is charged with five substantive counts of mail fraud, one count of money laundering conspiracy and four counts of aggravated identity theft. None of the alleged other acts are inextricably intertwined with the very specific allegations here, nor do they "complete the story" of these specific acts.

The indictment alleges five specific acts of mail fraud occurring on **April 5, 2013 and May 13, 2013**. Doc. 1 at 4. The money laundering conspiracy is alleged to have begun on a date unknown and continuing **until April 2014**. Doc. 1 at 5. The aggravated identity theft charges have corresponding victims and, therefore, track the dates outlined in counts 1-5 (April 5, 2013 and May 13, 2013).

The government would now like to **double the number of substantive fraud allegations** to be presented at trial by admitting evidence of the following "other acts" allegedly committed by Mr. Pendergrass:

Weissman, Nowack, Curry, and Wilco – August 2013

Quarterback Club – March 2013

16

      Lee Family Trust – July 2014

      Holland and Knight – January 2013

      Hemisphere, Inc. – October 2012

See doc. 73. None of these acts complete the story of the charged crimes. Instead, the are separate and distinct transactions that the government would now like to present to the jury. The basis for the request is that the government simply feels like it lacks enough evidence to convict without the addition of these other uncharged acts. This argument should be rejected.

      ***ii.***    ***The government proposed "intrinsic evidence" should be excluded because it is irrelevant, untimely, and unduly prejudicial.***

Under the inextricably intertwined doctrine, evidence of criminal activity other than the charged offense is admissible if it (1) arose out of the same transaction or series of transactions as the charged offense; (2) is necessary to complete the story of the crime; or (3) is inextricably intertwined with the evidence regarding the charged offense. *United States v. Veltmann*, 6 F.3d 1483, 1498 (11th Cir. 1993). Further, evidence explaining the context, motive, and set up of the crime is admitted if it is (1) linked in time and circumstances with the charged crime, (2) forms an integral and natural part of an account of the crime, or (3) is necessary to complete

the story of the crime for the jury. *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)[2].

The government cannot explain how any of these other allegations form an integral and natural part of the account of any of the crimes charged, nor does it show how they are necessary to complete the story of the crime. Additionally, these acts are not temporally related to the very distinct dates listed for the substantive counts listed the indictment (April 5, 2013 and May 13, 2013). Three of these newly offered acts occurred months before these dates and one occurred more than a year later. They do not qualify as intrinsic to the charged crimes.

***The government had almost five years to think about how to charge Mr. Pendergrass in this case*** while it was stalling and waiting for his Ohio sentence to run. It should now be held to its charging decisions and it should not receive the benefit of its attempts to ensure maximum punishment for Mr. Pendergrass by waiting until his sentences in other jurisdictions were complete before bringing him to Atlanta. It admits that it charged only acts that involved Mr. McQueen forging

---

[2]   Other circuits have rejected this articulation of the intrinsic evidence test. The Third Circuit has held that evidence is intrinsic only if it directly proves the charged conduct, or if the uncharged acts performed contemporaneously with the charged crime facilitated the commission of the charged crime. *United States v. Green*, 617 F.3d 233, 248-49 (3d Cir. 2010) (en banc). The Seventh Circuit has also rejected the inextricably intertwined option. *United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010). Under these readings, the alleged acts certainly do not qualify.

documents and contacted alleged victims. It appears to regret that decision now and it asks this Court to permit to ***double the length of the trial*** in an effort to secure a conviction here. It wants to admit five additional uncharged acts and call witnesses related to each of these five other acts. This evidence is not relevant and it will unnecessarily extend the length of the trial and confuse the jury. It should be excluded.

The government argues that even if the Court finds that these five acts are not intrinsic to the charged crimes, they should be admitted under Rule 404(b). For all of the reasons outlined above, the acts do not show knowledge, intent, or absence of mistake and they are more prejudicial that probative of any fact at issue in this case. Additionally, and unlike the prior convictions, there is no proof that the crimes alleged in these five acts actually occurred so these acts cannot meet any of the elements required for the admission of 404(b) evidence.

Respectfully submitted this day 26th of October 2021.

/s/SARALIENE S. DURRETT
Saraliene S. Durrett
1800 Peachtree Street, Suite 300
Atlanta, GA 30309

/s/SYDNEY R. STRICKLAND
Sydney Rene Strickland
Strickland Webster, LLC
Suite 510-203, 830 Glenwood Ave., S.E.
Atlanta, GA 30316

## **CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this date electronically filed the foregoing response to government's 404(b) notice with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney(s) of record:

All Defense Counsel

All AUSAs of record

Respectfully submitted this day 26th of October 2021.

/s/SARALIENE S. DURRETT
Saraliene S. Durrett
GA Bar No. 837897
1800 Peachtree Street
Suite 300
Atlanta, GA 30309
Counsel for Mr. Pendergrass