UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17-cr-00224-AT-CMS |
| | ) |
| ALLEN J. PENDERGRASS, | ) |
|     Defendant. | ) |
| _____ | ) |

**DEFENDANT'S PROPOSED VOIR DIRE QUESTIONS ON RACIAL BIAS AND REQUEST TO SHOW VIDEO AND TO CONDUCT VOIR DIRE ON THIS ISSUE**

Comes now the defendant, by his undersigned counsel, to request that the Court allow the jury to view a video on unconscious bias prior to jury selection and to permit the undersigned to ask the following questions to the jury, along with reasonable follow up questions, depending upon the answers of the prospective jurors[1]. Counsel believes the video is particularly important where the criminal defendant is African American, the evidence is weak, and the government has repeatedly said that the specific counts alleged in the Indictment involve incidents where the co-defendant, not Defendant Pendergrass, signed and sent the forged documents.

---

[1] Counsel will submit additional proposed *voir dire* questions in a separate document. Here, counsel is requesting the opportunity to speak directly to the jury when questioning on the issue of racial bias.

## I.   MR. PENDERGRASS REQUESTS THAT THIS COURT PLAY A VIDEO REGARDING UNCONSCIOUS BIAS TO JURORS PRIOR TO JURY SELECTION.

Mr. Pendergrass asks that this Court grant his request to play the video entitled "Understanding the Effects of Unconscious Bias," which was produced in 2017 by the Federal District Court for the Western District of Washington (WDWA). It was created by a committee of judges and attorneys and is presented to jurors for the purpose "of highlighting and combating the problems presented by unconscious bias." The video can be located here: http://www.wawd.uscourts.gov/jury/unconscious-bias

Counsel can also provide a copy of the video to the Court on a jump drive.

Mr. Pendergrass is an African American man.  Upon information and belief, many of the witnesses will be white. Counsel believes educating the jury about unconscious bias can help facilitate a fair trial in this case.  Counsel notes that this video has been played in at least two other trials in this district, *see United States v. Shields,* 1:16-CR-15-AT-JSA, Doc. 880; *United States v. Hubbard*, 1:19-CR-179-MLB, Doc. 104.  In the *Hubbard* case, Judge Michael Brown discussed the video at length and noted that:

> this video is not meant to shame or embarrass pr even to assume that somebody has a wrongful or prejudicial, or racially animated bias in this case, it's simply intended to remind people to pay attention to how they internally react to people or things that they see.

Doc. 104 at 23.

Judge Brown decided not to play the introduction by Judge Coughenour. Instead, he provided his own introduction to the jury so that he could explain to them "bias is not a dirty word, that it is not an accusatory word." Doc. 104 at 23.

Mr. Pendergrass requests that it be played before jury selection in this case as well. Mr. Pendergrass asserts that the proposed video is one way to educate jurors about their own potential implicit biases and to facilitate a more open and honest *voir dire* process.

Counsel believes that instructing the jurors about race and bias is also instrumental to a fair trial in this case. Therefore, in addition to playing the video for prospective jurors, Mr. Pendergrass asks this Court to read an instruction to jurors that is similar to the one Judge Coughenour reads prior to voir dire:

> It is important that you discharge your duties without discrimination, meaning that bias regarding race, color, religious beliefs, national origin, sexual preference, or gender of the [the plaintiff], defendant, any witnesses, and the lawyers should play no part in the exercise of your judgment throughout the trial. Accordingly, during this voir dire and jury selection process, [the lawyers] may ask questions related to the issue of bias and unconscious bias.

*See* attached instructions.

## II. MR. PENDERGRASS ASKS THAT DEFENSE COUNSEL BE PERMITTED TO DIRECTLY QUESTION JURORS ABOUT RACE AND UNCONSCIOUS BIAS.

The Sixth Amendment right to jury trial 'guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors' [.]" *United States v. Edmond*,

311 U.S. App. D.C. 235, 52 F.3d 1080, 1094 (D.C. Cir. 1995) (per curiam) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). This guarantee includes the right to be tried by jurors who are capable of putting aside their personal impressions and opinions and rendering a verdict based solely on the evidence presented in court. *See Id*.

In *United States v. Orenuga,* 430 F.3d 1158, 1163 (D.C. Cir. 2005), the Court of Appeals for the D.C. circuit noted:

> [Where] "the possibility of prejudice is real, and there is consequent need for a searching voir dire examination, in situations where, for example, the case carries racial overtones, or involves other matters concerning which either the local community or the population at large is commonly known to harbor strong feelings that may stop short of presumptive bias in law yet significantly skew deliberations in fact." (citations omitted.) The court also noted that voir dire must be allowed on subjects with respect to which "bias and distorting influence have become evident, through experience with juries, and have come to be recognized as a proper subject for the voir dire." *Id.* The potential for jurors to attach undue weight to the testimony of law enforcement officials during trial is one such example.

*See id.* (*citing Brown v. United States*, 119 U.S. App. D.C. 203, 338 F.2d 543 (D.C. Cir. 1964)).

Counsel believes that questioning is needed to determine whether or not there is bias resting on the mind of potential jurors that will not go away simply by asking one if she can follow the law. Thus, in order to guarantee Mr. Pendergrass' Sixth Amendment right to an impartial jury, counsel would like to speak directly to the jurors about this issue.

4

In the capital context, the Supreme Court noted that that "general fairness" and "follow the law" questions were insufficient to identify and exclude jurors who would automatically impose the death penalty if a defendant were convicted of a capital crime. *Morgan v. Illinois,* 504 U.S. 719, 734. Those general questions are insufficient in the non-capital cases as well. The Supreme Court reiterated the critical importance of examination of potential jurors regarding potential bias in *Colorado v. Pena-Rodriguez*, 137 S.Ct. 885 (2017) (reversing conviction for unlawful contact and harassment where a juror had revealed his opinion that the defendant did it because he is a "Mexican," and that an alibi witness was not credible because the witness "was an illegal," notwithstanding the federal no-impeachment rule for jury verdicts). *Id.* at 862, 874. The Court explained:

> In an effort to ensure that individuals who sit on juries are free of racial bias, the Court has held that the Constitution at times demands that defendants be permitted to ask questions about racial bias during voir dire. *Ham v. South Carolina,* 409 U. S. 524, 93 S. Ct. 848, 35 L. Ed. 2d 46 (1973); Rosales-Lopez, 451 U. S. 182, 101 S. Ct. 1629, 68 L. Ed. 2d 22; *Turner v. Murray*, 476 U. S. 28, 106 S. Ct. 1683, 90 L. Ed. 2d 27 (1986).

> The unmistakable principle underlying these precedents is that discrimination on the basis of race, "odious in all aspects, is especially pernicious in the administration of justice." *Rose v. Mitchell*, 443 U. S. 545, 555, 99 S. Ct. 2993, 61 L. Ed. 2d 739 (1979). The jury is to be "a criminal defendant's fundamental 'protection of life and liberty against race or color prejudice.'" *McCleskey v. Kemp*, 481 U. S. 279, 310, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987) (quoting Strauder, supra, at 309, 25 L. Ed. 664). Permitting racial prejudice in the jury system damages "both the fact and the perception" of the jury's role as "a vital check against the wrongful exercise of power by the State." *Powers v. Ohio*,

> 499 U. S. 400, 411, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991); cf. Aldridge v. United States, 283 U. S. 308, 315, 51 S. Ct. 470, 75 L. Ed. 1054 (1931); *Buck v. Davis*, ante, at ___, 137 S. Ct. 759, 197 L. Ed. 2d 1.

*Id.* at 868.

In addition, several commentators have written about the need to explore implicit bias in order to ensure fairness in verdicts. For example, see the American Bar Association "toolbox" on "Achieving an Impartial Jury: Addressing Bias in Voir Dire and Deliberations," at https://www.americanbar.org/content/dam/aba/publications/criminaljustice/voirdire_toolchest.pdf Federal District Court Judge Mark Bennett has also addressed the issue. *See* https://www.youtube.com/watch?v=Ge8YzKSuibY.

In an effort to discovery whether there are issues of race and implicit bias that may affect a juror's determination in this case, counsel for Mr. Pendergrass would like to inquire into the following areas:

1. Describe your neighborhood environment, either today or when you were growing up? (Eg. urban, rural, working class, ethnically diverse)

2. How often do you have contact with people of a different ethnicity or race? In what context? (invited to home, at work, social events)

3. How has that experience shaped your opinions and beliefs?

4. What is your most memorable experience with people who are different from you (e.g., from a culture other than your own)?"

5. Has anyone heard of the term implicit bias? Implicit Bias refers to the attitudes or stereotypes that affect our understanding, actions, and decisions in an unconscious manner. Implicit biases can affect how we view people by age, gender, and race. Does everyone agree that we all have them?

6. Can anyone give an example of how implicit bias might have affected their decision making in the past?

7. Who believes people are sometimes treated differently because of their race? Can you tell us about that?

8. What does the phrase "Don't judge a book by its cover" mean to you?

9. Has anyone ever seen someone treated badly because of their race? Tell us about the most serious incident you ever saw where someone was treated badly because of their race.

10. Has anyone ever been stereotyped because of their race, religion, or gender? Tell us about the worst experience you or someone close to you ever had because someone stereotyped you because of you race, gender, religion.

11. Has anyone ever heard the claim that certain ethnic groups are more likely to engage in criminal conduct than the general population? How do you feel about that statement?

12. Does anyone have any knowledge of or experience with groups like Black Lives Matter either through personal experience, social media, or news reports? Tell us about that.

13. Does anyone have any knowledge of or experience with "alt-right" groups or white nationalist groups through personal experience, social media, or news reports? Tell us about that.

14. How do these items you see on social media or on the news affect your views on race?

15. Are you willing to explore how, if at all, your implicit bias affects your verdict, after you have heard all of the evidence and listened to the Court's instructions?

16. To reach a verdict, every juror must agree on the verdict. That is, any verdict must be unanimous. In deliberations you must consider the opinions and points of your fellow jurors. In the final analysis, however, you must follow your own conscience and be personally satisfied with any verdict. Would any of you have difficulty expressing your own opinions and thoughts about this case to your fellow jurors?

17. Do any of you feel that you may change your otherwise sound judgment about a matter because other people disagreed?

18. Why is it necessary to look at the role race plays in our thinking especially in a courtroom?

19. What is the risk to an African American client if his lawyers never mention race with the jury?

20. Is there anything else about your views on the topic of implicit bias or racial bias that you would want the court or the attorneys to know in this case?

Respectfully submitted this day 26th of October 2021.

/s/SARALIENE S. DURRETT
Saraliene S. Durrett
GA Bar No. 837897
1800 Peachtree Street
Suite 300
Atlanta, GA 30309
404-433-0855

/s/SYDNEY R. STRICKLAND
Sydney Rene Strickland
Strickland Webster, LLC
Suite 510-203
830 Glenwood Ave., S.E.
Atlanta, GA 30316
404-590-7967

## **CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this date electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney(s) of record:

All Defense Counsel

All AUSAs of record

Respectfully submitted this day 26th of October 2021.

/s/SARALIENE S. DURRETT
Saraliene S. Durrett
GA Bar No. 837897
1800 Peachtree Street
Suite 300
Atlanta, GA 30309
Counsel for Mr. Pendergrass