IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>ALLEN J. PENDERGRASS | Criminal Action No.<br><br>1:17-CR-00224-AT-CMS |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S PROPOSED VOIR DIRE QUESTIONS ON RACIAL BIAS AND REQUEST TO SHOW VIDEO AND TO CONDUCT VOIR DIRE ON THIS ISSUE**

The United States of America, by Kurt R. Erskine, United States Attorney for the Northern District of Georgia, and Jeffrey A. Brown, Assistant United States Attorney, hereby files this Response to DEFENDANT'S PROPOSED VIOR DIRE QUESTIONS ON RACIAL BIAS AND REQUEST TO SHOW VIDEO AND TO CONDUCT VOIR DIRE ON THIS ISSUE  (Doc. 192).

Defendant filed a motion requesting that this Court (1) play a video for the jury panel regarding unconscious bias; (2) give additional *voir dire* questions regarding bias to the jury panel; and (3) include written instructions to accompany the matters addressed in the video. The Government objects to the showing of this video, the additional proposed voir dire questions, and the written jury instruction for the reasons stated below.

I.    **The Proposed Video Is Essentially an Improper Jury Instruction.**

The proposed video, "Understanding the Effects of Unconscious Bias" was produced in 2017 by the Western District of Washington (WDWA). It was created by a committee of judges and attorneys and is presented to jurors with the stated purpose "of highlighting and combating the problems presented by unconscious bias."[1] The Government has no information that the District Court of the Northern District of Georgia contributed to the production of the video.

During the approximately 10-minute video, a District Court Judge from the WDWA instructs jurors to be aware that unconscious bias exists and that jurors should keep improper biases out of the courtroom. The video continues with a defense attorney and a prosecutor who advise prospective jurors of their own opinions of unconscious bias and their own tips to avoid judging others unfairly. The video cites unnamed studies and researchers as the basis for the information. The Government believes this video amounts to a preliminary jury instruction on "unconscious bias" and that such an instruction is improper under the law of this Circuit.

---

[1] See the District Court's website at wawd.uscourts.gov.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

This Court has discretion to deny any jury instruction unless that instruction (1) is a correct statement of the law; (2) is not adequately covered by other instructions given to the jury; (3) pertains to an issue "so substantive that its omission impair(s) the accused's ability to present a defense;" and (4) addresses an issue properly before the jury. *United States v. Brazel*, 102 F.3d 1120, 1139 (11th Cir. 1997) (citation omitted). The instruction and advice provided in the proposed video fails to meet this test on all prongs. Further, scant research exists that suggests that such instruction is even effective. Because the video could confuse the jury and prolong the jury selection process, the Government objects to playing the video to prospective jurors.

Defendants are essentially asking this Court to allow several non-judicial persons to instruct the jurors. Moreover, where the instruction is given by a judge, it is the chief judge of the WDWA, which jurors here might find confusing.

The video defines the term "unconscious bias" for jurors as "prejudging in a positive way or a negative way." The video also states that researchers have proven that everyone thinks with an unconscious bias.

The term "unconscious bias" is synonymous with "implicit bias" and refers to "attitudes or stereotypes that affect our understanding, decision-making, and

behavior, without our even realizing it."[2] At best, it is a "complex psychological phenomena" that scholars are just beginning to understand.[3] Some scholars have developed metrics that attempt to measure the existence and strength of such biases,[4] but the research is still in its infancy.

Acknowledging that people may harbor implicit biases, and empowering them to overcome those biases, are two very different tasks.[5] Merely being made

---

[2] *See Jerry Kang, et al., Implicit Bias in the Courtroom*, 59 U.C.L.A. L. REV. 1124, 1126 (2012); *see also id.* at 1132 ("[I]mplicit biases are attitudes and stereotypes that are not consciously accessible through introspection.").

[3] *See Jennifer K. Elek, et al., Can Explicit Instructions Reduce Expressions of Implicit Bias? New Questions Following a Test of a Specialized Jury Instruction*, a Nat'l Ctr. For State Courts (April 2014). This article is not paginated, and thus there are no pin citations to reference. However, the article is available online at http://ncsc.contentdm.oclc.org/cdm/ref/collection/juries/id/273. *See also* Erik J. Girvan, *On Using the Psychological Science of Implicit Bias to Advance Anti-Discrimination Law*, 26 GEO. MASON CIV. RTS. L.J. 1, 32 (Fall 2015) (noting that the study of implicit bias began in earnest in the 1990's).

[4] *See generally* Kang, et al., *supra* note 2, at 1129-32 (discussing the Implicit Association Test (IAT) and other techniques to capture implicit attitudes); *see also* Anthony G. Greenwald, *et al., Implicit Bias: Scientific Foundations*, 94 CAL. L. REV. 945, 952-53 (2006) (discussing the IAT and other metrics for implicit bias).

[5] *See* Girvan, *supra* note 3, at 77 ("[Research into the exact processes that cause implicit bias, mechanisms by which it functions, and field-tested interventions to change it or reduce its effects are still in their infancy."); *see also* Greenwald, *supra* note 5, at 963-65 (discussing scientific studies attempting to minimize the effects of implicit bias).

aware of one's implicit biases, the research shows, does nothing to mitigate the effects of those biases.[6] Some, including law enforcement agencies across the country, are turning to implicit bias training.[7] But the growing literature on implicit bias training suggests that combating those ingrained yet subconscious prejudices "is analogous to breaking a bad habit," requiring the consistent use of "tools that help replace biased responses with egalitarian responses."[8] Eliminating bias is "an ambitious and difficult undertaking that requires the formation of new automatic associations," which takes "intention, attention, and time."[9]

The video's legal or factual premises are not recognized in this Circuit. In fact, there is no law in this Circuit directing that an unconscious bias jury instruction or such a preliminary instruction be given, since it is a concept we are just beginning to understand.

Assuming nonetheless that jury members may harbor these unconscious biases, the question then becomes whether this video presentation from another District Court - which tells them they are biased, that they are not even aware of these biases, that such biases infect their decision-making, and that they must not

---

[6] Sarah Jane Forman, *The #Ferguson Effect: Opening the Pandora's Box of Implicit Racial Bias in Jury Selection*, 109 NW. U. L. REV. ONLINE 171, 175 (2015).

[7] *See* Robert J. Smith, *Reducing Racially Disparate Policing Outcomes: Is Implicit Bias Training the Answer?*, 37 HAW. L. REV. 295, 300-02 (2015).

[8] *Id*. at 303-04.

[9] Forman, *supra* note 7, at 176.

rely on these unconscious biases - is a net-positive intervention for achieving a race or gender-neutral verdict. The Government suggests that it is not.

The video presentation is problematic for several reasons. First, the Defendant has produced no evidence that the WDWA's video achieves its aim - to reduce expressions of unfair bias in jury verdicts. The National Center for State Courts attempted to conduct the first ever study of the effect of a specialized implicit bias jury instruction.[10] The results were inconclusive due to failures in design study (for example, they were unable to replicate traditional patterns of implicit bias in their control group, which made it impossible to determine the effect the instruction had on the group that received the instruction).[11] The scholars were unable to determine whether there was any utility to the instruction.  Other research suggests that merely being told one has implicit biases does nothing to combat them.[12]

And the little we do know about implicit bias suggests that such a fleeting intervention may cause more harm than good by undermining the jury's function. It is undisputed that jurors should be told they must decide the case based on the facts as they hear them and the law as this Court gives it, and not

---

[10] Elek *et al., supra* note 4.

[11] *Id.*

[12] Forman, *supra* note 7, at 175.

based on prejudice. We must presume that jurors will follow the instructions they are given.[13]

Jurors are entitled "to decide what testimony to believe and what testimony not to believe," and to "give every piece of evidence whatever weight" they think it deserves.[14] As opposed to beliefs and feelings that jurors may consciously endorse (i.e., "explicit biases"), unconscious or implicit biases are by definition "root[ed] in generalized associations formed from systematically repetitious or unique and limited experience or exposure."[15] In making these decisions, juries should "use their common sense and evaluate the facts in light of their common knowledge of the natural tendencies and inclinations of human beings."[16] Telling jurors how to view the facts in a case ". . . is a parlous business. Jurors' everyday experiences in doing so in the thousands of such choices with which life is filled is a major reason for their role in the trial process."[17] Indeed, the "great genius" of the American jury system is "the human experience which

---

[13] *See United States v. Stone*, 9 F.3d 934, 938 (11th Cir. 1993) ("Few tenets are more fundamental to our jury trial system than the presumption that juries obey the court's instructions.").

[14] Eleventh Cir. Pattern Jury Instr., Preliminary Instr. 1.

[15] Girvan, *supra* note 4, at 32.

[16] *United States v. Cruz-Valdez*, 773 F.2d 1541, 1546 (11th Cir. 1985); *see also id*. ("It has long been the law that in giving effect to such inferences as may be reasonably be drawn from the evidence juries properly apply their common knowledge, observations and experiences in the affairs of life.").

[17] *United States v. Holland*, 537 F.2d 821, 822-23 (5th Cir. 1976).

only a jury can bring to bear on the essentially human problems which a jury is required to decide."[18]

And showing the WDWA video to the jury venire poses an additional risk. Scholars have warned of a possible "backfire effect" from a jury instruction aimed at mitigating implicit bias.[19] Authoritarian mandates "may provoke hostility and resistance, failing to reduce and perhaps even exacerbating expressions of prejudice."[20]

In sum, there is no evidence that showing the WDWA video is likely to achieve the purported result - reducing the effect of implicit bias on this trial. Mitigating such biases, which are assumed to exist, is a complicated task that requires much more than showing a ten-minute video produced with no connection to or input from the Northern District of Georgia. And the video could undermine the jury's function by telling them not to trust their judgment, common sense, and intuition. The Eleventh Circuit has never recognized such instruction as a correct statement of law, or, indeed, even the purported facts upon which the WDWA rested. The Court's qualifying questions adequately address the issue of implicit bias. Even if, assuming arguendo, that the video addresses an issue properly before the jury, the omission of an implicit bias

---

[18] *Daniel v. United States*, 268 F.2d 849, 853 (5th Cir. 1959).

[19] *See Elek et al., supra* note 4.

[20] *Id.* Although Elek's study did not yield evidence of backlash, that may be partly due to the sample studied. *Id.* Elek nonetheless additional research to ensure that any jury instruction does not produce harmful effects. *Id.*

instruction is not so substantive as to impair Defendants' abilities to present a defense. Accordingly, this video constitutes an improper jury instruction, and the Court should not play the video or provide additional written jury instructions related to the video.

## II. The Issue of Bias is Adequately Addressed by the Court's Qualifying

Defendants additionally request that the Court include several questions pertaining to bias as part of voir dire. These questions are unnecessary. "The purpose of voir dire is to enable the defendant to evaluate the prospective jurors and select a fair and impartial jury." *United States v. Vera*, 701 F.2d 1349, 1355 (11th Cir. 1983) (citation omitted). *Voir dire's* purpose is not, however, to determine how jurors would respond to the anticipated evidence or commit them to a specific verdict based on that evidence. *See* Wayne R. LaFave, et al., Criminal Procedure § 22.3(a) (4th ed. 2018) (collecting cases).

Pursuant to Federal Rule of Criminal Procedure 24(a), trial judges are given broad discretion in determining the scope of *voir dire*. *United States v. Bobby*, 675 F.2d 1174, 1184 (11th Cir. 1982) (citation omitted). "Their discretionary authority includes the right to reject questions submitted by counsel." *Id*. The court may limit inquiry to areas "calculated to elicit information necessary to make an informed decision concerning the acceptance of or the dismissal of a juror." *Id*.

The issue of bias is already addressed with the jury panel by this Court through the Court's qualifying questions relating to bias and the formation of an opinion about the case. Those questions posed to the jury panel by the Court are more than sufficient to elicit any bias from potential jury members, and

Defendants can ask appropriate follow-up questions to the Court's bias-related questions as needed.

### III. CONCLUSION

The Government contends that the video constitutes an improper jury instruction. No additional written jury instructions should be provided by the Court regarding implicit bias. For the foregoing reasons, the Government asks that the Court deny Defendant's request to play an unconscious bias video to prospective jury members.

Dated: November 9, 2021

                                                Respectfully submitted,

                                                KURT R. ERSKINE
                                                   *United States Attorney*


                                              /s/JEFFREY A. BROWN
                                                   *Assistant United States Attorney*
                                              Georgia Bar No. 088131
                                              Jeffrey.A.Brown@usdoj.gov

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Saraliene S. Durrett
Counsel for Defendant Allen J. Pendergrass

November 9, 2021

/s/ Jeffrey A. Brown

Jeffrey A. Brown

*Assistant United States Attorney*