The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

1              IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF GEORGIA
2                      ATLANTA DIVISION

3  UNITED STATES OF AMERICA,        :
                                    :
4  vs.                              :  DOCKET NUMBER
                                    :  1:17-CR-0224-1
5  ALLEN J. PENDERGRASS,            :
                                    :  ATLANTA, GEORGIA
6          DEFENDANT.               :  NOVEMBER 17, 2021

7

8        **TRANSCRIPT OF PRETRIAL CONFERENCE PROCEEDINGS**

9          **BEFORE THE HONORABLE AMY TOTENBERG**

10           **UNITED STATES DISTRICT SENIOR JUDGE**

11

12  APPEARANCES OF COUNSEL:

13      **FOR THE GOVERNMENT:**

14      JEFFREY A. BROWN
        TRACIA M. KING
15      UNITED STATES ATTORNEY'S OFFICE

16
        **FOR THE DEFENDANT:**
17
        SARALIENE DURRETT
18      SARALIENE SMITH DURRETT, LLC

19      SYDNEY R. STRICKLAND
        STRICKLAND WEBSTER, LLC
20

21

22      *MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED*
                  *TRANSCRIPT PRODUCED BY:*
23
    *OFFICIAL COURT REPORTER:*        *SHANNON R. WELCH, RMR, CRR*
24                                    *2394 UNITED STATES COURTHOUSE*
                                      *75 TED TURNER DRIVE, SOUTHWEST*
25                                    *ATLANTA, GEORGIA  30303*
                                      *(404) 215-1383*

1      **P R O C E E D I N G S**

2  **(Atlanta, Fulton County, Georgia; November 17, 2021.)**

3          THE COURT:  Good morning, Mr. Pendergrass.

4          THE DEFENDANT:  Good morning, Your Honor.

5          THE COURT:  And morning, Counsel.

6          MR. BROWN:  Jeffrey Brown on behalf of the

7  Government, Your Honor, and Tracia King, as well.

8          MS. DURRETT:  Saraliene Durrett, and I'm here with

9  Sydney Strickland.  Thank you.

10          THE COURT:  Very good.

11          And I know Mr. Pendergrass.  We have met before.  But

12  if you would, just take your mask down for one second so I can

13  remember what you look like more fully.  Thank you.

14          THE DEFENDANT:  Thank you, Your Honor.

15          THE COURT:  I'm going to keep my mask off while I'm

16  talking and put it on otherwise.  And you can follow the same

17  protocols here as well as during trial.

18          You've got a lot of different issues here that you

19  have proposed to me to address today.  And clearly the issues

20  around 404(b) or extrinsic versus intrinsic evidence are the

21  paramount ones.

22          But just to make sure I have got them all, in

23  addition to those evidentiary issues, there is the issue of the

24  certification of the records and, of course, the voir dire and

25  the showing of the -- requested showing of the movie regarding

1    implicit bias within the context of the 404(b).

2         There is also the question of prior convictions and

3    the defendant's motion at Document 190 about the Government

4    should -- whether the document should be precluded from arguing

5    that Mr. Pendergrass signed and sent the forged documents

6    outlined in the indictment.

7         There seems to be an agreement from the Government

8    that they will not mention any prior substance abuse issues of

9    Mr. Pendergrass.

10        Is there anything I have missed?

11        MR. BROWN:  No, Your Honor.

12        THE COURT:  All right.  Well, let's deal with the

13   substantive evidentiary issues first.  And I will just let you

14   know that we have -- at 11:30, I'm going to have to or

15   thereabouts -- I won't stop in the middle of anything.  But I

16   have a plea that is time-sensitive.  So I'm going to have to

17   interrupt and move forward at that point.

18        So I have both the original 2018 motion regarding --

19   that relates to the Government's notice of its intention to

20   introduce a motion in limine to permit the admission of

21   evidence.  And that was at Document 71, and then that was

22   amended at Document 73 but basically incorporated; opposed in

23   Document 191 after more fully -- more fully after the change in

24   counsel that was required to ensure that the defendant had

25   adequate legal representation.

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

4

1            Whether this is intrinsic evidence or -- which there

2    are cases that would say that some of the evidence might be

3    deemed intrinsic -- there is case law that would say that.

4    There is also obviously case law that would say that this

5    was -- in the Eleventh Circuit, at the very least, that the

6    mode of operation, the MO, of some of the cited similar acts

7    would be strong proof of motive and intent and proof if there

8    was a doubt as to who was doing what between Mr. McQueen and

9    the defendant's knowing engagement in very similar sorts of

10   fraudulent activities involving governmental entities.

11           And it really -- unless you-all think that it is

12   essential that I analyze whether I'm admitting this because it

13   is intrinsic evidence or 404(b) evidence -- I mean, I could see

14   it either way.  I see it more through the lens of the 404(b)

15   though.  Because it is not really intrinsic to the specific

16   offense charged that is at issue here.

17           And I do recognize some of the case authority that

18   might allow me to say something else.  But I feel more

19   comfortable in being able to recognize it as 404(b).

20           That said, my view of that really relates to the acts

21   and offenses that involved -- that were really much more on all

22   fours with each other.  And that included the Colorado

23   conviction but not the Ohio conviction.

24           And there were -- I just need to go back and look at

25   each of these offenses in the -- of the other ones.  I'm

1    concerned about the timeline on some of them as well.  Though I

2    realize I could have -- we could go later.  But 2013 --

3              MR. BROWN:  Your Honor, could I be heard?

4              THE COURT:  Yes.

5              MR. BROWN:  So I understand the Court's reasoning as

6    it relates to whether it is intrinsic or 404(b).  The

7    Government's position is that it is intrinsic.  And I just want

8    to give you something that is not actually included in the

9    motion, Your Honor.

10             THE COURT:  Thank you.

11             MR. BROWN:  The co-defendant, Mr. McQueen, is going

12   to testify at trial.  We have prepped him, I guess, multiple

13   times now since this case has been set for many times.

14             What his testimony will be is that Guishard Wilburn &

15   Shorts is a company that Mr. Pendergrass established early on.

16   He is going to testify that during this time frame in 2012,

17   2013, they were -- they were using both companies together as

18   to not alert City of Atlanta and other government entities that

19   they were getting all this business and doing all this to make

20   it look like it was legitimate as opposed to being fraudulent.

21             So his testimony will be for Tousa Homes he received

22   money from that transaction from Tousa Homes.  That is the

23   Colorado conviction referenced in the motion, Your Honor.  He

24   will also testify as to Lee Family Trust.  That letter was sent

25   on January 25th, 2013; that he was involved in that.  He had

1    knowledge of that and received funds from that transaction.

2    And the actual bank records will bear that out.  He received a

3    1000-dollar check of the $5000 that Mr. Pendergrass deposited

4    into his account.

5            Similarly, Your Honor, with the other -- the other

6    information the Government alleges is intrinsic or inextricably

7    intertwined, Holland & Knight -- this is referenced in the

8    Government's motion.  That letter was sent to the City of

9    Atlanta on December 19, 2012.  He worked with Mr. Pendergrass

10   on that transaction.  The bank records will show that, and the

11   actual exhibits in the case will bear that out as well, Your

12   Honor.

13           And then Hemisphere, that is also referenced in the

14   Government's motion.  That letter was sent to the City of

15   Atlanta on October 31st, 2012.

16           So Mr. McQueen is going to testify they worked

17   together.  He will testify about documents that he signed as

18   well as Mr. Pendergrass signed to make it look like two

19   different people were actually signing documents.  So this

20   would be on the Asset Financial Recovery documents, the ones

21   that were charged in the indictment, as well as the Guishard

22   documents and other companies they used to defraud the City of

23   Atlanta and the victims as well.

24           So the Government's belief, as we argued in the

25   motion, Your Honor, this is going on at the same exact time

1  frame.  And I can lay out the dates, Your Honor, so you would

2  see that.

3          But during the same several-month period, they are

4  sending different letters, either one signed by Mr. McQueen or

5  one signed by Mr. Pendergrass.  All the checks were through the

6  mail to the same P.O. Box that Mr. Pendergrass is in charge of.

7  They are signing both documents to appear as if two different

8  people are signing the documents.

9          So this is essentially -- this is the same part of

10  the scheme.  It is not a different scheme.  It is not different

11  evidence.  It is a part and parcel of what the Government

12  charged.  We charge a mail fraud scheme, and we allege five

13  instances.  But these other instances that we want to bring in,

14  that should come in, are tied right into them, Your Honor.  And

15  so I -- so that is the Government's argument on that point.

16          The second point as related to the conviction -- and

17  I understand the Court's position on that.  I think what I

18  heard from the Court is that the conviction for Colorado, which

19  occurred during the same week as another charged count in the

20  indictment was done, is for 404(b).  It should come in.

21          And I think I heard the Court say that as it relates

22  to the conviction from Ohio you have some concerns about that.

23          Is that accurate, Judge?

24          THE COURT:  Right.

25          MR. BROWN:  Right.  So I'm not going to argue with

1    the Court on that.  I think that of the two, the Colorado

2    conviction is on all fours, as the Court indicated.  And the

3    Government is fine with that, Your Honor.

4              THE COURT:  Okay.

5              MR. BROWN:  Do you have any other questions?

6              I can show you -- I have the exhibits, Your Honor.

7    And I can show you --

8              THE COURT:  Well, you were talking very fast, I have

9    to say.  And I was up very late at night, to be candid, reading

10   everything.  So you may -- I may have to get you to slow down

11   for me to --

12             MR. BROWN:  I can slow down.

13             THE COURT:  -- to make sure that I understand what

14   your point was.  It was all there.

15             MR. BROWN:  She always tells me I'm fast.

16             THE COURT:  There are a lot of facts, and you have

17   been living and breathing it.

18             MR. BROWN:  Breathing it.  Yes, Judge.

19             THE COURT:  And I lived and breathed this about a few

20   years ago when I said no, we needed -- he did not have counsel

21   who could handle this at that time because of his own health.

22   And I just -- but then I lived and breathed it this week.  But

23   I cannot tell you that I'm as facile with this.

24             MR. BROWN:  Your Honor, could I hand you the exhibits

25   so I can show you -- I can walk you through it so you can

```
 1    look --
 2              THE COURT:  Sure.  That is fine.
 3              MR. BROWN:  I have already provided them to defense
 4    counsel, Judge.  We only need binder one at this time.
 5              THE COURT:  I'm going to do something somewhat
 6    unusual.  Just for ease, if there is a chair that we could
 7    bring up here then -- since you don't have an extra one for my
 8    law clerk, I would like her to be able to see it at the same
 9    time.  So if you can -- can you bring -- Harry has got one.
10              All right.
11              MR. BROWN:  So, Your Honor, I would direct your
12    attention to Exhibit Number 2.
13              THE COURT:  Okay.
14              MR. BROWN:  And that relates to Count 1 of the
15    indictment.  And so this is -- as referenced in both my motions
16    and defense counsel's motion, this is a letter that Mr. McQueen
17    will say that he signed.  And his signature is at the bottom of
18    this Page 1.
19              But he will testify that -- if you turn to Page 2 of
20    that exhibit, that both he and often Mr. Pendergrass would sign
21    and someone else would actually print different language on
22    some of these forms.
23              So I can just show you the counts -- the documents
24    that relates to the counts in the indictment.  And then I want
25    to show you what the Government alleges is inextricably
```

1    intertwined, intrinsic, and you will see the similarities, Your

2    Honor.  You'll see the exact same form.  They are mailed to the

3    same P.O. Box.  So if you look at -- for him, that is Number 2.

4          If you turn to Exhibit Number 7, Your Honor, which is

5    Tousa Homes, if you look at the top of that page, that is dated

6    April 3rd.  This is two days after the letter was sent in

7    Exhibit Number 2.  One was sent on April 1st to the City of

8    Atlanta, Your Honor.  Government 7 -- Exhibit Number 7 was sent

9    two days later under Guishard Wilburn & Shorts.  And if you

10   look at the bottom of that, you will see it was signed by

11   Mr. Pendergrass.

12         But the similarities, Your Honor, you will see is

13   both direct the Government agency to send the check to P.O. Box

14   1809 in Fayetteville, Georgia.  So we are talking about the

15   same week.  So this is not extrinsic.  This is right there at

16   the same time.

17         And then if you turn to the second page.

18         THE COURT:  Hold on one second, if you wouldn't mind.

19         MR. BROWN:  If you flip back between 2 and 7 and see

20   --

21         THE COURT:  That is what I'm doing.

22         MR. BROWN:  Okay.  Well, I can talk for days.  So let

23   me know if you have a question about that, Judge.

24         So the Government's position is it is the exact same

25   conduct that used a different name.  And what Mr. McQueen will

1    testify is we used a different name so not to throw off -- to

2    put off the government agencies.  And they can appear that it

3    was different people requesting these checks.

4          Mr. McQueen will testify he thought it would raise

5    suspicion if all the requests came from Asset Financial

6    Recovery or all them came from Guishard.  But they are working

7    together.

8          So that is why the Government alleges this is not

9    extrinsic, this is intrinsic.

10         THE COURT:  All right.

11         MR. BROWN:  And I can go through other examples.  But

12   it is much of the same, Your Honor.

13         THE COURT:  Well, give me another example as well.

14         MR. BROWN:  Sure.  I will.

15         So let's look at Government's Exhibit Number 11.

16   This is the Atlanta Quarterback Club.  And this is again --

17   this is what the Government argues is intrinsic.  But -- so the

18   dates on this is earlier.  So the conduct we talked about

19   before is April.  This is February, a few months prior.

20   However, it is the same scheme.  It is the same request to the

21   City of Atlanta.  The same front letter.  This one is signed by

22   Mr. Pendergrass under Guishard.

23         If you turn to the second page, it is the same

24   limited power of attorney used by both companies because they

25   are operating out of the same office by the same people doing

1    the same thing.  This check is also directed to be sent to P.O.

2    Box 1809 controlled by Mr. Pendergrass.

3         The testimony of Mr. McQueen will be -- for this one,

4    he will testify that either he signed or Mr. Pendergrass would

5    sign the name or forge the name of Melvin Waller you'll see on

6    the second page of Exhibit 11.  And then another one of them

7    would sign the name below to make it appear that a notary did

8    it.

9         So if you look at that writing, you will see it looks

10   different to most people.  And he will testify why it looks

11   different.  They were trying to fool the government.

12        So once again, the Government would argue this

13   evidence, like the others, is intrinsic.  They are working

14   together, same time period, same scheme, same P.O. Box, et

15   cetera.

16        And I can walk through all of them and --

17        THE COURT:  Well, I understand that argument, and it

18   seems persuasive.  I will obviously let counsel -- not having

19   had the exhibits in front of me, I understand this a little bit

20   better.

21        MR. BROWN:  Yes.

22        THE COURT:  But this is the same time period.  But

23   then you also are seeking to introduce some events that -- and

24   transactions from 2015, aren't you?

25        MR. BROWN:  No, Your Honor.

13

1           THE COURT:  All right.

2           MR. BROWN:  All the events that the Government is

3    seeking to introduce are 2012 and 2013.

4           So the other two are Holland & Knight and Hemisphere.

5    And they are from late 2012, and Mr. -- they are Government's

6    Exhibit Numbers 12 and 13.  Mr. Pendergrass will testify --

7    excuse me -- Mr. McQueen will testify about his relationship

8    with those.

9           If you want me to walk through those, I'm more than

10   willing to do that, Your Honor.

11          THE COURT:  Sure.

12          MR. BROWN:  So let's turn to Exhibit Number 12, Your

13   Honor.  This is a different company used.  This is Attorney

14   Recovery System, Inc.  This is the same request sent by the --

15   to the City of Atlanta.  Mr. McQueen will testify that he

16   signed the name Gene Bloom.  So you will see his name to the

17   right.  He will say that I was the one that signed the name

18   Gene Bloom and sent this to the City of Atlanta.

19          He will testify as to Page 2 he sent -- he signed the

20   name Steve E. Cohen and had someone else print the name once

21   again so it would appear that it was two different people.  I'm

22   not sure if he will say Mr. McQueen signed this one or not.

23   But he will testify that's the kind of protocol and procedure

24   in doing that to make it appear as if it was a real Mr. Cohen

25   and a different person doing the actual notary, Judge.

```
1            He will also testify as it relates to the notary
2    seals you see on Page 2 of Exhibit Number 12, Your Honor.  If
3    you see that on the second page, there is a notary seal at the
4    bottom.  He will testify that both he and Mr. Pendergrass had
5    people in their company photoshop these notary seals off of
6    real legal documents and have them placed on the limited power
7    of attorney as if they were real.  And you will see that on the
8    charge documents as well as those that the Government believe
9    are intrinsic.
10            So, once again, same scheme, same MO, same kind of
11   documents.  They would just switch the name of the company,
12   Your Honor, and often switch -- just to make it appear as if
13   there were multiple companies doing it and not just one.
14            Your Honor, just to be fair, I just want to let you
15   know the Government executed a search warrant at
16   Mr. Pendergrass' business back in, I believe, 2013.  During the
17   execution of that search warrant -- and we have those documents
18   and provided them to defense counsel.  There are hundreds of
19   these letters.  And the Government could have sought to
20   introduce dozens of them.
21            But in the interest of being fair and in the interest
22   of efficiency, we just selected four or five.  But there are
23   literally -- they are all in the same office.  They are in the
24   same files.  And they all show a relationship between these
25   various companies and Mr. Pendergrass and Mr. McQueen.
```

1          And we just selected a few.  But there are literally

2    dozens of these letters, Your Honor.

3          THE COURT:  So in terms of just case management and

4    trial management, how are you -- would you anticipate

5    presenting this and how much -- because originally we thought

6    this was a week trial, including the jury selection.

7          MR. BROWN:  It is still a week trial.

8          THE COURT:  That is what I'm trying --

9          MR. BROWN:  Yes.  I don't expect the Government's

10   evidence to take more than two days, Your Honor.  Depending on

11   how long the cross is -- I have never had a case with

12   Ms. Durrett.  So I don't know how vigorous her

13   cross-examinations are.

14         But the Government has 13 witnesses.  We expect to

15   put this up within a day and a half, two days at the tops with

16   the evidence we believe is intrinsic, Judge.

17         THE COURT:  All right.  Let's just address that

18   portion.

19         MS. DURRETT:  Thank you, Your Honor.

20         THE COURT:  Thank you.

21         MS. DURRETT:  So I'll start by noting that there are

22   five acts outlined as the execution of the mail fraud scheme,

23   and we talked about those.  And the Government is now saying

24   that these additional five acts are intrinsic and that they

25   complete the story of this crime.

1   I don't understand how these other acts complete the

2   story of the five acts that are charged in Counts 1 through 5.

3   I don't think that they -- the fact that other --

4   Mr. McQueen -- according to the Government just now,

5   Mr. McQueen admits signing and sending other forged documents.

6   I mean, he may have done a lot of fraud.  It sounds like he

7   admitted a lot of fraud to the Government.

8   And now they are saying we want to bring him in and

9   have him admit all the other fraud he did in furtherance of

10  this scheme so that we can try to allege that Mr. Pendergrass

11  was involved in that, Your Honor.

12  I just don't think that we are on notice that those

13  things were coming in, and I don't think that they are

14  intrinsic to the charges in this case.

15  I just -- like they were saying on Exhibit 12,

16  Mr. McQueen -- I'm sorry.

17  THE COURT:  Go ahead.

18  MS. DURRETT:  Mr. McQueen admits that he signed and

19  sent this, just like he admitted that he signed and sent the

20  other letters that are charged as Counts 1 through 5 and

21  Counts 6 -- or 7 through 10.  He admitted that he signed and

22  sent these letters.

23  So I'm not surprised that they found other letters

24  that he also signed and sent.  And I don't see that it adds

25  anything to their case against Mr. Pendergrass to bring in more

1    fraud that Mr. McQueen did.

2             I will note -- and maybe the Court doesn't know

3    this -- that Mr. Pendergrass ran an asset recovery business for

4    at least, I think, 11 years.  So he ran that business with his

5    wife.  That was a successful business.  It is a legitimate

6    business.  I think even the agents who are going to testify in

7    this case will tell you that this is -- it is a legitimate

8    business to recover assets for people.

9             So I am not surprised that during the execution of a

10   search warrant there were hundreds of letters located just like

11   the letters here.

12            The problem in this case is that Mr. McQueen signed

13   and forged these documents and sent them out and collected the

14   money.

15            So that is just our argument.  I don't think these

16   acts are intrinsic in any way.  And I know the Court had talked

17   about 404(b).  And I don't know if you want me to address that.

18            THE COURT:  Sure.

19            MS. DURRETT:  I think the Court said it goes to

20   motive.  I'm not sure exactly what that means.  I know the

21   Government had argued that it goes to absence of mistake or

22   intent.  And I just don't think there is an absence of mistake

23   here.  Mr. Pendergrass is not saying I mistakenly committed

24   fraud.  He is saying I did not.

25            THE COURT:  I understand it doesn't go --

1       MS. DURRETT:  I just don't think it is relevant under

2   404(b).  I don't think it is intrinsic, and that is our

3   objection, and I think it doubles the length of the trial.

4       THE COURT:  Are you still -- Mr. Brown, are you still

5   trying to get the Texas -- the Harris County information in?

6       MR. BROWN:  The Lee Family Trust, Your Honor?  Yes.

7       THE COURT:  Which number is that here?

8       MR. BROWN:  I'll show you, Judge.  Let's see.  Lee

9   Family Trust is Exhibit Number 9, Your Honor.

10      And I'll tell you why this kind of goes right to --

11  goes exactly opposite of what defense counsel is testifying

12  relating to.

13      So if you look at Lee Family Trust, Lee Family Trust

14  is Exhibits Number 9 and 10.  Let's start with Number 10, Your

15  Honor.  Number 10 is an email from an attorney that we are

16  going to have come testify, Michael Cohen.  And he will testify

17  relating --

18      THE COURT:  Not the Michael Cohen of the Trump fame?

19      MR. BROWN:  That would be interesting.  That would

20  spice up the trial, but it is not.  Unfortunately it is not.

21      So, for example, Michael Cohen, who is an attorney

22  here in Atlanta, will testify that he met with Allen

23  Pendergrass.  And Mr. Pendergrass presented to him that he was

24  a representative and had the ability to get funds for the Lee

25  Family Trust.

1              He will testify that Mr. Pendergrass told him, hey, I
2     need to use your account.  If you can just be a trustee -- open
3     a trust account up.  I have all these checks, $168,000 worth of
4     checks.  If you can deposit those into your account.  And I
5     have the ability -- I have power of attorney from Susan Camille
6     Lee, who is now deceased, but we have been in contact with her
7     and her daughter.  They are in Florida.  They will testify her
8     mother never signed this power of attorney that Mr. Pendergrass
9     presented to Michael Cohen.  And Mr. Cohen will testify about
10    that.  And it is detailed in this letter that will come into
11    evidence.

12             If you look at the second page of the document, this
13    is a response from Allen Pendergrass' email account.  And he
14    says, we spoke with Ms. Lee, and she decide -- I guess he meant
15    decided -- to cancel our power of attorney.  See attachment.
16    Please advise.

17             Well, Michael Cohen spoke with Ms. Lee, Ms. Lee's
18    attorney.  And she had -- all of this was forged.  So the power
19    of attorney with her name presented by Mr. Pendergrass was
20    forged.  And that is in Exhibit Number 10.  And I can walk you
21    through that.  But that is why --

22             THE COURT:  All right.  Let me read the letter so I
23    completely understand --

24             MR. BROWN:  Sure.  I'm sorry.

25             THE COURT:  -- what you are saying.

1          **(There was a brief pause in the proceedings.)**

2          THE COURT:  Okay.  Go ahead.

3          MR. BROWN:  So if you look at Exhibit Number 9, Your

4  Honor, that would be the testimony from Mr. Cohen meeting

5  Mr. Pendergrass and finding out these documents he was

6  presenting were forged consistent with and related to the exact

7  kind of conduct that was charged in the case.

8          And why it is important -- and I think what may be

9  omitted from Ms. Durrett's explanation is these are letters

10  that are signed by Mr. Pendergrass.  So I believe her defense

11  is going to say the five instances charged in the indictment,

12  Your Honor, they are letters that Mr. McQueen will come in and

13  say yes, I signed those, but I was working with Mr. Pendergrass

14  at the time, and Mr. Pendergrass may have signed something on

15  the power of attorney.

16          So the way the Government wants to make sure the jury

17  gets the complete picture here is by allowing this other

18  intrinsic evidence to show no, there are letters and instances

19  where Mr. Pendergrass was signing the letter that contains a

20  forged power of attorney and he was also meeting with people

21  and presenting forged documents along the same, you know,

22  six-month time period, Your Honor.

23          And just on the first page of Exhibit Number 9, this

24  also goes to the actual scheme.  You will see a fax -- a 30-day

25  free trial plan.  As a part of the scheme, both Mr. McQueen and

1    Mr. Pendergrass would obtain fake fax numbers, fake telephone
2    numbers, and use those to act as if they are the people who
3    they claim are owed the money to.  This is just an application
4    that the agents found during the search of Mr. Pendergrass'
5    business showing that he is putting Susan Camille Lee's name.
6    He uses his own email and is using a phone number and fax
7    number that he is signing up to purport to be associated with
8    the Lee Family Trust, which he was not.
9            Page 2 of that is the actual signed agreement and fee
10   memorandum, which is a forged signature of Susan Camille Lee.
11   And the third page is a letter dated March 4, 2013.  At the
12   top, it says Lee Family Trust.
13           So, once again, this is another name or business they
14   are using to perpetrate the fraud, Your Honor.  And if you see
15   that -- Michael Cohen will testify I never authorized them to
16   send this information and that is -- the evidence will show
17   that once again that is a forged signature of Susan Camille
18   Lee.
19           Once again, these are documents recovered from and
20   during the execution of the search warrant from
21   Mr. Pendergrass' office, Your Honor.
22           THE COURT:  Okay.  Thank you.
23           So, Ms. Durrett, I understand obviously your
24   position.  But you're going to be able to cross-examine Mr. --
25           You're having Mr. Cohen here?

```
 1            MR. BROWN:  Yes, Your Honor.

 2            THE COURT:  -- Mr. Cohen and any -- and also

 3   Mr. McQueen thoroughly.  So I mean, it doesn't mean that I'm

 4   accepting this as true.  And I do understand that it is

 5   obviously harmful to the position of the defendant.  But that

 6   doesn't mean it is not either -- Mr. Brown makes a very strong

 7   argument for why at least in this time period this evidence is

 8   relevant and intrinsic because it basically shows what the --

 9   the whole way that the scheme was done and was done on an

10   ongoing basis.

11            MS. DURRETT:  Your Honor, I think that that maybe

12   touches on one of the other motions that I filed.  I think I

13   filed a supplement to the motion in limine about the bill of

14   particulars in this case and what the Government has provided

15   notice of as far as what the case is about.

16            I mean, the bill of particulars goes to Count 6,

17   which is the money laundering predicated on the mail fraud.

18   And so we said, hey, we don't know how to defend this money

19   laundering count because it is unclear to us what transactions

20   you are talking about that they could have been doing.

21            The Government filed a bill of particulars.  And they

22   laid out more City of Atlanta documents -- checks and

23   documents.  They did not talk about the Lee Family Trust or

24   Hemisphere or other things like that.

25            So I think that the Government at this point is
```

1    regretful about the way they charged this case and they are

2    trying to expand the scope of the evidence that they could put

3    on because they know that Mr. McQueen is going to have to come

4    in and say for all of these counts that are listed here in the

5    indictment I am the one, I am the one that did it.  Not

6    Mr. Pendergrass.

7            And so they are saying, hey, wait a minute, we have a

8    problem here because Mr. Pendergrass is going to be able to

9    show that Mr. McQueen did these things by his own admission.

10   So how else are we going to try to prove this case?  We're

11   going to try to show that Mr. Pendergrass is a bad guy.  And

12   that is what we want the jury to think.

13           And that is exactly what we're not supposed to do

14   under 404(b).  And I think that they are now -- that is why --

15   that is why they are saying, Judge, it is not 404(b).  It is

16   intrinsic.  It is part of the story of this case.  It completes

17   the story of these crimes.

18           And that is just not true, Your Honor.  It doesn't.

19   It expands the scope of what they have provided notice for, and

20   it expands the scope of the evidence against Mr. Pendergrass

21   that they have charged.

22           So we object.

23           THE COURT:  Well, before you turn around -- come on

24   back.

25           As to the course of events involving Mr. Cohen and

1    the Lee Family, I mean, I understand, on one hand, it is Harris

2    County.  It is not the City of Atlanta.  But on the other hand,

3    this is -- Mr. Cohen is somebody who directly dealt with

4    Mr. Pendergrass.  And so that has a higher level of -- would

5    seem to suggest a higher level of relevance.  Because if the

6    defense is this is really all the product of the crimes of

7    Mr. McQueen, this is -- this situation suggests something

8    otherwise.

9            MS. DURRETT:  Again, I'll note that in the bill of

10   particulars they did not outline anything from Harris County,

11   Texas, or Mr. Cohen or anything related to that.  And so I

12   think they should be limited to the proof to the things they

13   charged in their bill of particulars.

14           But I also think that story is not intrinsic to the

15   charged crimes.  So if the Court is finding that it is 404(b)

16   evidence or the Government is arguing that, I think you can't

17   get there without going through the inference that

18   Mr. Pendergrass is a bad guy because he acted in a bad way with

19   Harris County allegedly and therefore, jury, he acted in a bad

20   way here.

21           THE COURT:  Well, why isn't it intrinsic evidence

22   because this is the way he would manipulate accounts and

23   manipulate how he would gain access to funds?

24           MS. DURRETT:  Because it doesn't complete the story

25   of the charged crime, Your Honor.  I don't think it has

1  anything to do with the City of Atlanta fraud.  And I think

2  that is -- the Government chose to file a bill of particulars.

3  Right?  I filed a motion for it.  Before the court -- the

4  magistrate court ruled on it, they filed their bill of

5  particulars.  So the magistrate court accepted that.  And in

6  that, we said, what transactions are you relying on?  And they

7  outlined these City of Atlanta transactions.  They did not say,

8  oh, we also think this is related to Harris County, Texas, or

9  some other issue.

10          So I just don't think it is intrinsic.  It doesn't

11  complete the story of the charged crime.  And I'll just note it

12  is extremely unduly prejudicial.

13          THE COURT:  All right.  Well, let's move on.  And I

14  think it has been helpful both -- hearing from both of you.

15  And let's just move on to the next item.

16          Is this for us?  This notebook?

17          MR. BROWN:  Your Honor, we may make some additional

18  changes.  So if we could have that back.  And we'll -- on

19  Monday, we'll bring everything to make sure it is accurate,

20  Your Honor.

21          THE COURT:  All right.

22          All right.  Did you want to -- Ms. Durrett, did you

23  want to say anything more regarding your argument in

24  Document 190 that the Government should be precluded from

25  arguing that Mr. Pendergrass signed and sent the forged

1    documents outlined in the indictment?

2         MS. DURRETT:  Your Honor, I do.  I mean, I know the

3    Court understands my argument there.  But I do think it is an

4    admission of a party opponent, if nothing else, that the

5    Government filed in Document 73 a repeated statement saying

6    that the reason that it needed 404(b) evidence in this case was

7    because Mr. Pendergrass is the one that signed and sent forged

8    documents.  And that's their statement, not mine.

9         THE COURT:  Mr. Pendergrass did?

10        MS. DURRETT:  I'm sorry.  Mr. McQueen.

11        So they are saying, hey, we need to get this 404(b)

12   evidence in because it is Mr. McQueen who signed and sent

13   forged documents.  And it says signed and sent.

14        And now the Government is saying, well, wait a

15   minute, no, no, no, he didn't sign them.  He just sent them.

16   And that is not true.  That is not the representations that

17   they made.

18        And I think that we should -- if they attempt to

19   elicit evidence or argue that Mr. Pendergrass signed and sent

20   the forged documents or that someone other than Mr. McQueen

21   signed and sent the forged documents, we should be able to tell

22   the jury that the Government has previously said otherwise.

23        THE COURT:  All right.  So you are asking for two

24   different things:  That they should either not be able to say

25   it or that you should be able to say they have said something

```
 1    different?
 2              MS. DURRETT:  Right.
 3              THE COURT:  All right.  Do you want to respond?
 4              MR. BROWN:  Sure, Judge.  Yes.
 5              Well, first, I just want to clear up the facts.  The
 6    Government is not backing away from what it said.  Mr. McQueen
 7    will testify that he has signed a number of these face
 8    pages that were sent to the City of Atlanta.  He will also
 9    testify that Mr. Pendergrass signed the limited power of
10    attorneys on those very same documents.
11              Then when we say he signed and sent, we are not
12    backtracking that.  He did.  He will testify to that.  His
13    signature is at the bottom of many of those documents.  But
14    there's more than one signature on those documents, as the
15    Government just showed, Your Honor.
16              So the evidence -- so what she stated was a
17    misrepresentation of what I expect the evidence to be.
18              But, secondarily, looking at her motion, Your Honor,
19    the cases do not support the argument that she's making at all.
20    I looked at the cases, and I read the cases.  And I mean, they
21    are just from -- they are not even analogous even by a stretch.
22              The cases that she cites in support of her position
23    relate to the Government trying two different defendants during
24    two different cases and making factual representations through
25    the other case in two separate cases.
```

1          We don't have that here.  So the argument is a

2     stretch.   The Government should be -- not be -- the Government

3     is going to -- the evidence is going to be what the evidence

4     is.  And I suspect Mr. Pendergrass -- Mr. McQueen will testify

5     about what the Government just stated to the Court.

6          So there is nothing that the Government should be

7     limited to or precluded from making an argument because what

8     the Government said there is factually true.  But there is

9     additional evidence relating to Mr. Pendergrass' involvement in

10    forging and sending these documents as we laid out in the

11    substantive counts as well as the inextricably intertwined or

12    intrinsic evidence the Government wants to admit.

13         THE COURT:  Well, why wouldn't at least I authorize

14    the defendant to bring to the attention of the jury to the

15    extent -- to the extent there have been admissions or

16    representations of the Government in this connection, why

17    wouldn't Ms. Durrett be able to bring that to the attention of

18    the jury?

19         MR. BROWN:  To say that the Government -- if she

20    wants to basically say that the Government said what it said in

21    the actual motion, that Mr. McQueen signed and sent many of

22    these documents, sure.

23         But the Government didn't say only Mr. McQueen signed

24    and sent these documents.  The Government didn't say that

25    Mr. McQueen was the one that signed all the documents.

```
1              So that is all I'm saying.  If she's going -- if she
2    wants to point out what the Government said in their motion,
3    that is fine.  I have no objection to that, Judge.
4              But what she's -- for the Government to be precluded
5    from admitting the evidence that should come in this case based
6    on that, I would object to that.
7              THE COURT:  All right.
8              MS. DURRETT:  Your Honor, could I respond?
9              THE COURT:  Yes.
10             MS. DURRETT:  I'm just going to refer the Government
11   and the Court to Document 73 at Page 3.  And it is the bottom
12   of the first paragraph -- half paragraph.  It says,
13   particularly because the specific counts alleged in the
14   indictment involve incidents where Co-defendant McQueen, not
15   Defendant Pendergrass, signed and sent the forged documents,
16   defendant's intent and knowledge of the scheme will be central
17   at trial.
18             So it is not that the Government said McQueen signed
19   them but nobody else is involved.  They specifically say not --
20   not Defendant Pendergrass.
21             So, again, we ask the Government to be precluded now
22   based on -- and I'll just note the Government wants you to say,
23   oh, if you change your theory between cases or between
24   co-defendants, then we've got a problem.  But if I change my
25   theory within the same case, there is no problem.
```

1          And I just wanted to point that out to the Court,

2    that I do think there is a problem with them making

3    representations to try to convince the Court to do something to

4    rule in their favor and then come back and say, well, that is

5    not actually what we meant.

6          So I think the Court should hold them to that.  They

7    should not be able to present evidence to suggest that

8    Mr. Pendergrass signed and sent forged documents or that anyone

9    else besides Mr. McQueen did that.

10          So that is our argument.  It is right there at

11    Document 73 at Page 3.  And, Your Honor, I do think it meets

12    the standard for the admission of a party opponent, as I

13    outlined in Document 190 at Page 3.

14          THE COURT:  Okay.  Well, I understand the argument.

15    And since we're going to have to break, we'll look a little bit

16    more at that with that in mind.  I'm not sure -- I'm just

17    looking at the Government's amended notice.  And -- all right.

18    Thank you.

19          I don't know that defense counsel is ready in the

20    next -- he is talking with the defendant, I assume; is that

21    right?

22          **(A discussion ensued off the record regarding**

23               **other business of the Court.)**

24          THE COURT:  So let me deal with a few easy things

25    while we -- as opposed to all of what we have been dealing

1    with.

2           You know, I have -- as you-all are aware, I have

3    previously in one case allowed the movie on implicit bias to be

4    shown.  And I am open to doing such a revised version of the

5    movie in the future in an appropriate case.

6           I think there are -- the movie could use some -- I

7    think it was useful, and I was glad to have had the experience

8    in using it.  I think it could use some modifications and

9    particularly perhaps regionally, given the jury population

10   here.  And -- but I am -- so I'm not prepared to use the movie

11   in this case, and I'm not sure that it is exactly in any event

12   essential here.

13          But I do think -- I'm perfectly open to looking at

14   Judge Brown's comments.  I don't know that I have a full

15   printout of the comment and a transcript of it.  And I didn't

16   have a chance to go look at it.  And if you have a copy of the

17   transcript of it -- or I can obviously call up Judge Brown and

18   find out what he did.

19          MS. DURRETT:  I do have a copy, but I don't have it

20   with me, Your Honor.  I can provide it to your deputy and to

21   Mr. Brown.

22          THE COURT:  All right.  Let me look at that.  I mean,

23   I'm certainly open to talking to the jury myself without having

24   somebody else.  There are all sorts of -- I know that what the

25   Government objected to about it before -- and I tried to not

1  give it my imprimatur by having it shown in the jury room.  And

2  I thought that that was a pretty good thing.

3          But I really -- I know that there is going to have to

4  be an update of this movie.  I mean, we're in -- even when you

5  think about the movie being made prior to the enormous public

6  discussion of these issues in the last two years, it would

7  be -- you would want to tailor it with the knowledge of the way

8  people react in that context.  And, also, it is such a real

9  issue that it is also a polarizing issue.  So we really want to

10 think very carefully about how we approach it.

11         MS. DURRETT:  Your Honor, I think Judge Brown showed

12 the video with his own comments and did not show like the

13 introduction from the judge from Washington.  He just

14 introduced it with his own comments.

15         THE COURT:  Well, I would be more prepared just to

16 give my own comments at this juncture.

17         The case in which we did it, we also had, if I

18 remember correctly, two defendants present and we had -- and

19 one of them was an inmate, and one of them was the mother of an

20 inmate.  And there was a lot of potential for stereotyping in

21 my mind.

22         MS. DURRETT:  And, Your Honor, I know the Court

23 knows.  But I don't think implicit bias just goes to a certain

24 gender or a certain race, a certain socioeconomic status.  I do

25 think people can have implicit bias about all kinds of things.

1          THE COURT:  I agree.

2          MS. DURRETT:  So it is important for us to point that

3    out to the jury and to have them, you know, acknowledge that

4    and understand that as they are going through the

5    deliberations.

6          THE COURT:  I appreciate that.  And I think it is an

7    appropriate thing to be addressing.  But I would rather use it

8    with my words.  And I'm happy even, you know, in the

9    introduction to think about when we have a jury to tell them

10   right from the start about that.

11         I'm happy to take any additional measures that are

12   suggested and consider them and hear the response of the

13   opposing party as well.  And it is -- just because we have done

14   something one way and remarks all the time doesn't mean that

15   they can't be modified.  And I just -- I don't want to do any

16   harm, on the other hand either.

17         Just in terms of the voir dire questions, I would add

18   a reference to Mr. Buchanan even though he is just a nominee on

19   the -- at this point, which is not a just, but for the U.S.

20   Attorney.

21         And on Question 33 about bias of the -- the

22   defendant's proposed voir dire, which is Document 193, I would

23   say are you willing to consider, rather than explore, how, if

24   at all, your implicit bias affects your verdict.

25         I mean, the problem with that sentence is -- you have

1    asked on Question 32 does anyone believe that implicit bias can

2    affect our decision-making process.  That is okay.  But on

3    Question 33, you basically -- besides the word change, it

4    assumes that the person has an implicit bias.

5           MR. BROWN:  Your Honor, just for the record, the

6    Government would object to 32, 33, 34, and 35.

7           I mean, if Your Honor is going to make some comments

8    before about implicit bias, I mean, I think we're -- I think

9    these questions are not really getting at the issue of whether

10   they can be fair and impartial and they have a bias.

11          One of the questions, as you indicated, they are

12   trying to intimate that they have a bias.  So I think these are

13   questions that go beyond the scope of what voir dire should be

14   as relates to, you know, making sure jurors can be fair and

15   impartial and exploring any bias.

16          I think we're going off on a road of talking and

17   talking about implicit bias.  It is a very controversial issue.

18   So I would ask the Court, if you're going to address that,

19   maybe Your Honor can do that to the jury and that be the end of

20   it and we can strike these questions, Your Honor.

21          MS. DURRETT:  Your Honor, I understand the Court's

22   ruling there.  But I would say as to 33 the Court can say are

23   you willing to consider how implicit bias could affect the

24   verdict in this case.

25          MR. BROWN:  Your Honor, I mean, I understand we

1    could -- so if the jury says are you going to be able to

2    consider that and some juror says I don't believe in implicit

3    bias, I don't believe I have implicit bias, you are indicating

4    that I have it, I don't believe I have implicit bias, and we're

5    off in some far afield to where we need to be.

6           So I would ask Your Honor to strike these questions,

7    have Your Honor use her wisdom, and tell the Court what you

8    want to tell the Court about the -- tell the jurors about

9    implicit bias.  And let's leave this out because we can go down

10   far afield follow-up questions on these issues, Judge.

11          THE COURT:  All right.  Well, I will consider it as

12   to 32 and 33.  I don't think there is anything wrong with 34,

13   which asks would any of you have difficulty expressing your own

14   opinions and thoughts about this case to your fellow jurors.  I

15   think that is an important question.

16          I'm not going to allow 35.  I think if we get into a

17   whole discussion of does anyone have any knowledge or

18   experience with groups like Black Lives Matter either through

19   personal experience, social media, or news reports, we'll end

20   up having everyone disqualified in this jury potentially.

21          And I would understand using this parenthetically if

22   we were in a situation where we had charges against somebody

23   who had been involved in one -- in some street interaction and

24   they were arrested.  That would make sense.  But it is not an

25   issue in this case.

1          I think, you know, basically making sure that people

2    are fair and impartial is.  And that is why I will consider how

3    I would deal with 32 and 33 and let you know.

4          MS. DURRETT:  Thank you, Your Honor.

5          MR. BROWN:  Your Honor, I would also -- that same

6    argument applies to 36 as well where she asks about all white

7    groups.  I think this could --

8          THE COURT:  Yes, I agree.  I just didn't look to the

9    next page while we were discussing it.

10          MS. DURRETT:  Your Honor, for the record, we believe

11   those questions are appropriate.

12          THE COURT:  That is fine.

13          Were there other objections to the questions -- since

14   I'm on defendant's proposed voir dire, are there any other

15   objections that the Government has?

16          MR. BROWN:  Yes, Your Honor.  Just for the record, as

17   it relates to legal principles, I mean -- so I had concerns

18   about Questions 37, 38, 39, 41, and 42.  Because it is getting

19   into the province of Your Honor is going to be instructing the

20   jurors on the law and what the law is.

21          And some of these questions -- for example, 41, does

22   anyone believe that the defendant, Allen Pendergrass, should be

23   required to prove that he is innocent.  You are going to

24   instruct the jurors -- the jury on the burden.  And it is the

25   Government's burden.

1          And this is, you know -- so I would strongly object
2   to 37, 38, 39, 41, and 42, Judge.
3          MS. DURRETT:  Your Honor, I think that those
4   questions are important for us to make sure that the jurors
5   understand that Mr. Pendergrass doesn't have to prove his
6   innocence in this case and that we -- I do think we need to
7   address these issues head-on so we don't have jurors here who
8   are thinking something that they haven't expressed.
9          I think those are important questions.  I think they
10  are fair questions.  And I'll note -- I know we're going to get
11  to the Government's.  But their Question Number 25 is kind of
12  the flip of that where they say proof beyond a reasonable doubt
13  does not mean you have to prove beyond all possible doubt.
14  Possible doubts or doubts based purely on speculation are not
15  reasonable doubts.  A reasonable doubt is a doubt based on
16  reason and common sense.  Is there anyone who can not apply
17  this standard?
18          So while the Government wants to object to my
19  questions about legal principles, it wants the Court to ask its
20  own question, which is the flip side of that.
21          THE COURT:  I'm going to allow Questions 37 through
22  42.  I think that these are reasonable questions given the fact
23  that some people have -- really actually don't believe in
24  burden of proof principles.
25          And you are right.  I will have introduced these

```
 1    issues.  But I think that each of you are entitled to explore
 2    does the juror actually harbor feelings that would make it
 3    impossible individually for him or her to actually apply.
 4              MS. DURRETT:  Your Honor -- well, I'll wait until --
 5              THE COURT:  So anything else from the Government as
 6    to the questions posed by --
 7              MR. BROWN:  Yes, Judge.  We're looking at -- just if
 8    you look on Page 2 of the questions, 9 and 10, Your Honor --
 9    like 9, for example, how do you spend your time when you are
10    not working.
11              How is that getting to the jurors' being fair and
12    impartial and exposing any bias?  I mean, are we going to spend
13    an hour listening to each juror?
14              THE COURT:  All right.  I'm going to sustain that
15    only because I don't think we have time.
16              MS. DURRETT:  Thank you, Your Honor.
17              MR. BROWN:  What about 10, Your Honor, about how
18    often do you have contact with people of a different ethnicity
19    or race?
20              COURT REPORTER:  I am sorry.  You are talking so
21    fast.  I can't --
22              MR. BROWN:  Sure.
23              How about Number 10, Judge?  How about Number 10?
24              THE COURT:  And that asks, how often do you have
25    contact with people of a different ethnicity or race?  In what
```

1    context?

2         MR. BROWN:  I mean, once again, that could take 30

3    minutes, Your Honor, for each juror to ask how often you talk

4    to someone outside of their race.  I mean, how is that getting

5    to whether they are fair and impartial and if they have exposed

6    any bias such that they should not serve on this jury?

7         THE COURT:  The problem is -- in my mind is still the

8    time issue.  If you can think of some other way to raise this

9    without having such an open-ended question -- because everyone

10   has -- is going to have something to say.  And when you have 45

11   or 46 jurors, that is a lot of people to hear from.

12        MS. DURRETT:  Thank you, Your Honor.  We'll revise

13   it.  But I do think it is important.  I know the Government

14   said it could take 30 minutes for each juror.  But it could

15   take zero minutes for someone to talk if they don't have

16   contact.

17        THE COURT:  Well, you know, the thing is you had

18   invited to home, work, social events.  I mean, if you really

19   want to put somebody on the spot and say do you have no

20   contact -- do any of you have no contact with anyone of a

21   different ethnicity or race, you can say that.  But I mean, I'm

22   not sure do you want to be the person who asks that.

23        MS. DURRETT:  I'll think of a way to revise it, Your

24   Honor.  I do think it is an important question.

25        THE COURT:  Well, when you revise it, let me know

1    what it is --

2          MS. DURRETT:  Thank you, Your Honor.

3          THE COURT:  -- and the Government too.

4          MS. DURRETT:  Thank you.

5          MR. BROWN:  Yes, Judge.

6          THE COURT:  Anything else, Mr. Brown?

7          MR. BROWN:  Your Honor, let me see.  So I don't think

8    we talked about 23, 24, 25, and 26.  The only other one I had

9    issue with was Number 28, Judge.

10          If you are looking at 23, 24, 25, and 26, are these

11   questions going to elicit any bias or get to the matter of

12   whether they can be a fair and impartial witness as relates

13   to -- it seems to me that these are trying to, you know, kind

14   of put forth a theory of the case as it relates to 23 and 24

15   and 26 as well.  How many people believe a person can be

16   wrongly accused of committing a crime?  What is that getting to

17   bias or trying to get a fair and impartial juror?  How does

18   that question get to that -- the heart of the issue, Your

19   Honor?

20          And then finally 28, is anyone familiar with the term

21   snitch or cooperating witness?

22          THE COURT:  Okay.  I'm going to allow 23.  I'm going

23   to allow 24.  I'm going to allow 25.  All of those basically

24   ask about what -- it could elicit indications of bias against

25   the defendant's attorneys or against the prosecutors.

```
1              I don't know.  How many people believe a person can

2    be wrongly accused of committing a crime?  That would take a

3    lot to get into.  I mean, you know, what you are -- when you

4    find out what people's criminal history is and their family's

5    and have they had any unfortunate incidents with the police, I

6    think you get a lot of opportunity to ask those questions.

7              MS. DURRETT:  Okay.  Thank you.

8              THE COURT:  I'm not saying you can't ask that in that

9    context where somebody -- did you feel like your loved one

10   was -- was wrongly accused and do you think that can happen.

11   Those are ways of getting at it.

12             But I think just generally speaking this is just --

13   and 27, you are asking about wrongful accusations.  And he

14   hasn't objected to that.

15             MS. DURRETT:  I'm sorry, Your Honor.  What did you

16   say about 27?

17             THE COURT:  I didn't think that Mr. Brown had

18   objected to that.

19             MR. BROWN:  I didn't because -- I didn't, Judge.

20             THE COURT:  I think that is your avenue for getting

21   into some of that in a more pinpointed way.

22             MS. DURRETT:  Thank you, Your Honor.

23             THE COURT:  Are they ready?

24             Okay.  So we'll get back to the Government's ones.

25   Thank you very much.  I'm sorry we had to interrupt you.
```

1          **(This proceeding was adjourned, and the Court**

2          **continued with further business.  This**

3          **proceeding then resumed, as follows at 12:49**

4          **P.M.:)**

5          THE COURT:  All right.  What about -- does the

6    defendant have any objections to the Government's questions?

7          MS. DURRETT:  Your Honor -- I need my glasses.  I'm

8    sorry.

9          The Government's proposed voir dire Number 12, I just

10   think the Court will instruct the jury about what the

11   allegations are.  So I would object to them -- this case

12   involves allegations that the defendant along with his

13   co-defendant (reading unintelligibly) --

14         THE COURT:  I understand your challenge is the first

15   sentence.

16         MS. DURRETT:  That's right.

17         THE COURT:  I think I will have already described

18   what the case is about.  And so I think that the question can

19   just be limited to, do any -- the judge has described what this

20   case is about.  Do any of you have any personal knowledge of

21   the facts, et cetera?

22         MR. BROWN:  Understood, Judge.

23         MS. DURRETT:  Thank you, Your Honor.

24         Then I do have, I think, one other issue, which is on

25   Page 7.  And that is -- I started to talk about this earlier

1    when the Government was talking about my instructions.  I think

2    as far as 25 goes, again, the Court is going to instruct the

3    jury about what reasonable doubt is and what that standard

4    means.

5            In my instructions or in my questions, I don't think

6    I described what reasonable doubt means.  I just said they have

7    to prove it beyond a reasonable doubt.  So I just think this is

8    an instruction that the Court will provide.

9            THE COURT:  All right.  Just that one does not

10   usually provide the full description until obviously the end of

11   the trial rather than at this juncture -- early juncture.  So I

12   think it would be better if the Government wants to rephrase

13   this in some way.

14           MS. DURRETT:  Could we kind of combine mine with

15   theirs and just say the Government is required to prove its

16   case beyond a reasonable doubt, proof beyond a reasonable doubt

17   does not mean proof beyond all possible doubt?

18           I mean, I'm fine with that if the Court could add the

19   Government is required to prove its case beyond a reasonable

20   doubt.

21           THE COURT:  That is fine.

22           MS. DURRETT:  Thank you.

23           MR. BROWN:  Your Honor, we just have one thing.  As

24   related to Number 28 on the defendant's --

25           THE COURT:  I just want to make sure we are through

```
 1   with --

 2           MS. DURRETT:  I am finished, Your Honor.  Thank you.

 3           THE COURT:  Number 28 of the defendant's.  Yes, go

 4   ahead.

 5           MR. BROWN:  Is anyone familiar with the term snitch

 6   or cooperating witness?  If someone says yes, is there a

 7   follow-up with that?

 8           I mean, I would ask the Court to strike that

 9   question.  It doesn't get to the point of fair and impartial if

10   they have any bias about it.

11           MS. DURRETT:  I think it carries certain

12   connotations, Your Honor, which I think are relevant.  But --

13   and I think the follow-up question is the next question:  Does

14   anyone here believe that because a cooperating witness has

15   admitted his guilt or -- is his or her testimony more or less

16   credible than other witnesses?

17           THE COURT:  Okay.  I'll allow it.  But do we have to

18   use snitch?

19           MR. BROWN:  No.

20           THE COURT:  Let's get rid of snitch.

21           MS. DURRETT:  I think it is helpful.

22           THE COURT:  I know why you include it, and it is

23   fine, but I'm going to strike it.

24           MS. DURRETT:  Thank you, Your Honor.

25           THE COURT:  Well, I have given some thought to the
```

1  discussion of the collateral evidence that may be intrinsic

2  because of the timing.  And really it does explain the

3  entire -- the way that the scheme -- alleged scheme worked.

4  I'm inclined to allow the evidence in.  I would not

5  allow, again, the Ohio evidence in.  There was one other one

6  that I was concerned about and which I can't find at the

7  moment.  I'll identify --

8  MS. DURRETT:  Can I be heard?  I know the Government

9  wants to say something.  I would also like to be heard.

10  THE COURT:  But let me just say this.  I've looked at

11  the sentence that you were -- about the representation in

12  the -- I went back and looked at the bill of particulars.

13  I will -- if you want to propose how you want to use

14  the sentence that you discussed from the 2018 brief of the

15  Government, I will consider allowing it to be a statement to be

16  read in to the record or for you -- I mean, obviously you can

17  question Mr. McQueen about it.  But I will go farther than that

18  in terms of saying that this -- but, you know, how effective it

19  is and how you do it is something I would need to know what

20  you -- what you were proposing and what were you proposing --

21  the Court to read it or what were you proposing.

22  MS. DURRETT:  Thank you, Your Honor.  Well, I can

23  draft a stipulation that could be read into the record.  And it

24  may also be that I include it in my proposed instructions.

25  And I'll just note I didn't see a deadline for

1    proposed instructions.  So I have not provided those yet.

2              THE COURT:  All right.

3              MS. DURRETT:  But I will.

4              THE COURT:  No.  This is what I want -- and I'm sorry

5    that we somehow dropped the ball on that.  You know, ideally,

6    what I would like is that at least by Monday morning -- I mean,

7    I would like to have it next week, frankly.  But I know -- I

8    don't know what people's Thanksgiving plans are.

9              My -- the way I really like to have it is the

10   Government provides the defendant with a -- defense counsel

11   with a Word version of the proposal and that you mark it up

12   with redline and that you send it back to them and then see --

13   and talk about it and see if you -- to the extent you can't

14   come to any agreement about it, then just indicate -- you'll

15   give it to me in -- you can put any annotations to it, and

16   we'll look at the annotations so we understand what either of

17   you don't agree about.

18             MS. DURRETT:  Thank you.

19             THE COURT:  And if you want to add another page

20   summary, just simply here are the points that we disagree on so

21   we can just get to it right away.

22             MS. DURRETT:  Thank you, Your Honor.

23             THE COURT:  We also can send you our jury -- our last

24   jury charge, if it would be helpful to you.  I mean, obviously

25   the Government has it.  But we had a trial not very long ago --

1          MS. DURRETT:  Okay.

2          THE COURT:  -- that had cooperating witnesses too.

3          MS. DURRETT:  Thank you, Your Honor.

4      And so I understand the Court's ruling as far as that

5  sentence.  I also wanted to know if I could be heard briefly

6  about the 404(b) evidence.

7          THE COURT:  Yes.

8          MS. DURRETT:  Okay.  So one of the things I did not

9  mention -- I was glad to have the break because we went back

10 and looked at the Government's documents.  And so the

11 Government was referring us to Documents 9 and 12.  And those

12 were related, I think, to the Lee Family Trust and something

13 else.

14     Those are the documents that Mr. Terrell McQueen

15 admitted that he signed as a person named Gene Bloom.  So I

16 know the Court had asked about the Harris County documents and

17 the Lee Family Trust.  That is that.

18     And Mr. McQueen, as the Government told us earlier,

19 admitted that he is Gene Bloom, that he signed as Gene Bloom.

20 So I understand the Court to say, okay, well, this shows

21 Mr. Pendergrass' involvement.

22     But what those documents show -- at least some of

23 them are on Attorney Recovery letterhead, which is different

24 than Asset Forfeiture letterhead.  And they are signed by Gene

25 Bloom, who the Government has told us Mr. McQueen will admit is

1   Mr. McQueen.

2           So, again, I don't think those documents are relevant

3   to Mr. Pendergrass' guilt in this case or innocence.  And I

4   don't think that they complete the story of any of the charged

5   crimes.

6           As far as whether the --

7           THE COURT:  So I will look at that separately.  And

8   maybe we could get the evidence back also on those two -- on

9   that one in particular.

10          MS. DURRETT:  Thank you.  It is Tabs 9 and 12, I

11  think.

12          THE COURT:  If you can just electronically send it to

13  us.

14          MR. BROWN:  Yes, Judge.  I can do that.

15          MS. DURRETT:  And then I wanted to talk about whether

16  the Court was going to admit any other evidence as 404(b)

17  evidence or intrinsic evidence.

18          And is the Court -- I mean, I just want to be clear

19  on the Court's ruling.  Is the Court permitting all of the

20  other evidence that is outlined in the Government's motion as

21  intrinsic?

22          And I think if the Court does that, it invites the

23  jury to convict Mr. Pendergrass on those other acts as opposed

24  to the items charged in the indictment.  This -- again, I'll

25  remind the Court this is not a conspiracy case.  He is not

1    charged with conspiracy to commit mail fraud.

2            And so the idea that those other acts somehow

3    complete the story of those substantive counts -- I don't think

4    there is a basis for that, Your Honor.

5            THE COURT:  Do you want to respond to that?

6            MR. BROWN:  Yes, Judge.  So what the Government has

7    charged is a scheme to defraud.  If you look at the indictment,

8    Your Honor, we lay out that scheme.  And that scheme includes

9    Asset Financial Recovery.  It also includes Guishard Wilburn &

10   Shorts and the other companies.  The actual indictment lays out

11   the scheme of using various companies to defraud Government

12   agencies and get money not owed to Mr. McQueen and

13   Mr. Pendergrass.

14           So it does complete the story.  The other intrinsic

15   evidence completes the story showing both Mr. McQueen and

16   Mr. Pendergrass involved.  We have already explained, for

17   example, Lee Family Trust.  Mr. Pendergrass met with Mr. Cohen

18   as a representative of Lee Family Trust.

19           So I'm not sure -- the defendant is just repeating

20   herself.  But I don't think it changes what this Court already

21   articulated to both parties and what the evidence actually

22   shows on that point.

23           And then, second, I don't know if -- I just want to

24   briefly be heard on the whole party opponent.  The

25   Government's -- has the Court made its decision on that and you

```
1    are going to admit that portion of the Government's brief as an
2    admission by a party opponent?  Is that what the Court has
3    ruled on that point?
4              THE COURT:  Yes.
5              MR. BROWN:  Okay.  All right.  So I'm just --
6              THE COURT:  I can't do it that way.  So either
7    you-all stipulate that you represented something.  You try to
8    come to a stipulation.  And, otherwise, if you can't and you
9    can't come up with another proposal, then I'll have to think
10   about what -- about how to deal with it.
11             MR. BROWN:  Thank you.
12             MS. DURRETT:  Thank you, Your Honor.
13             And I know when you first came on the bench, you said
14   I don't know if parties want me to articulate more fully my
15   reasoning.  And I guess I will just say we do want you to
16   articulate fully the reasoning for each of those additional
17   acts that the Government wants to add in -- those additional
18   five acts that it wants to use to double the length of the
19   trial.  We would ask the Court to provide reasoning for that
20   and whether it is coming in as intrinsic, whether it is coming
21   in as 404(b), and what the basis of that is.
22             THE COURT:  All right.
23             MS. DURRETT:  Thank you.
24             THE COURT:  But I will do that, but we're not going
25   to be issuing a ten-page order let me just say --
```

1          MS. DURRETT:  Thank you, Your Honor.

2          THE COURT:  -- as to that.

3          And if you want any -- also if the defendant wants an

4    instruction about how the Court -- that during the course of

5    the trial as well as in the -- at the conclusion of the trial

6    about how any of this evidence that is not the actual charge --

7    the charges themselves, you can ask for that.

8          MS. DURRETT:  Thank you, Your Honor.  I think there

9    is a specific instruction as to 404(b) evidence.  I don't know

10   that there is a specific instruction as to intrinsic evidence.

11   But we can certainly craft one.

12         THE COURT:  I know there is about the 404(b).  But

13   just -- but just I would like you to indicate for both what you

14   would like because you might modify something in the 404(b).

15   You might want to put some context to it.

16         But if you want something, propose it so I can

17   consider it.  And if you can do that by Friday, then we can

18   sort of hash this out.  I mean, we sort of have this

19   awkwardness of the holiday weekend.

20         MS. DURRETT:  Thank you, Your Honor.

21         **(There was a brief pause in the proceedings.)**

22         THE COURT:  I'm just trying to remember what I said

23   about the time frame for the jury charge.

24         MS. DURRETT:  I think you said you wanted it by

25   Monday and that hopefully we had cooperated and collaborated by

1    then.

2              THE COURT:  That is good.

3              No one has submitted a proposed verdict form; is that

4    right?

5              MR. BROWN:  That's correct.  I haven't, Judge.

6              THE COURT:  Well, we'll send you the verdict form in

7    the last case, and you can -- again, you can take a look at it

8    and see how you want to modify it based on that.

9              Now, did the Government agree that you -- other

10   than -- obviously, we've already discussed the two -- the

11   convictions.

12             But did the Government agree to not proceed with

13   mentioning any prior interactions with law enforcement relating

14   to his prior arrests or convictions other than what I have

15   identified?

16             MR. BROWN:  Other than the 404(b) conviction, Judge,

17   that's correct.

18             THE COURT:  The one 404(b)?

19             MR. BROWN:  The Colorado conviction, Judge.

20             MS. DURRETT:  Your Honor, could I just ask what the

21   nature of the evidence is going to be regarding that.  Is it

22   going to be some sort of, you know, document that shows a

23   conviction, or is there going to be a witness who testifies

24   about that?

25             I mean, we may have objections about that.

```
 1              MR. BROWN:  All of the above, Judge.  We have a
 2    certified copy of the conviction.
 3              Your Honor, could I just -- I can pass these back up
 4    to you.  We're only going to make one minor change.  If we do
 5    that, we can swap it out with the Court so you will have these,
 6    Judge.
 7              THE COURT:  All right.  That is fine.
 8              MR. BROWN:  Thank you.
 9              THE COURT:  So beyond the -- beyond the certified
10    conviction, what else are you planning to do about Colorado?
11              MR. BROWN:  So the conviction will have to be
12    modified, Your Honor.  It is Exhibit Number 28.  You have that
13    up there.  But that is a copy of the certified conviction.
14    Defense counsel has that, Judge.
15              Beyond that, we have been in contact with the actual
16    victim in that case.  And we may call her.  She's in Florida,
17    Sorana Georgescu.
18              And also Mr. McQueen has knowledge of Tousa Homes.
19    He received some money from this transaction, and his bank
20    records shows him getting a check from this.  And he has
21    knowledge of it.  He will testify about Mr. Pendergrass'
22    involvement with this conviction.
23              THE COURT:  You said 28?  Because I don't see any 28.
24              MR. BROWN:  There's two binders, Judge.  I hope I
25    didn't give two of the same binders.
```

1            Did I give you one of two and two of two?

2            THE COURT:  Well, it says binder one of two and

3     binder one of two.  Yes.

4            MR. BROWN:  So I gave you the wrong ones.  Let me

5     give you the other one.  That would help.

6            THE COURT:  This one goes up to -- all right.  Fine.

7            So what would the individual from Florida -- what

8     would be the value of her testimony?

9            MR. BROWN:  If we decided to call her, she would just

10    testify -- I mean, we may not call her in light of you

11    admitting this conviction in, Judge, because we don't want to

12    call her and inconvenience her.  So we likely will not call

13    her.

14            But we will call -- Mr. McQueen will testify about

15    his involvement in this.  And he will be able to testify about

16    his involvement in receiving money and the fact this is just

17    part of the same scheme they were doing.

18            Like I told you before, this is two days after

19    another letter they sent to the City of Atlanta.  This is just

20    part of the -- a continuation of the scheme.

21            THE COURT:  All right.  I don't see any purpose in --

22    and it will just be time-consuming to have the victim of that

23    offense.  And sort of the whole -- that is collateral to me at

24    this juncture so -- since I am allowing the conviction in,

25    so --

1    MR. BROWN:  We were planning not to call her anyways

2    in light of that, Judge.  So that is fine.

3         MS. DURRETT:  Your Honor, I'll just note that I

4    object to Exhibit 28 because it talks about the Ohio federal

5    conviction to be served in the Bureau of Prisons consecutive or

6    concurrent with the Ohio conviction, which I think the Court

7    has said it is not going to admit.  So I certainly object on

8    that basis that the jury would be notified about the Ohio

9    conviction.

10         MR. BROWN:  I was going to say that needs to be

11    redacted out.  We'll do a redacted version of 28, Judge,

12    removing any references to Ohio or anything or his sentence as

13    well and just the fact that he pled guilty to this conviction,

14    Judge.

15         THE COURT:  All right.  Well, please provide

16    Ms. Durrett with the redacted version so I make sure that we

17    can discuss that in advance if we need to.

18         MR. BROWN:  Yes, Judge.

19         MS. DURRETT:  We still object to it being admitted.

20         THE COURT:  I understand.

21         MS. DURRETT:  Thank you.

22         THE COURT:  All right.  My understanding is that the

23    defendant -- the Government has agreed it won't mention any

24    issues as to the substance abuse that are referenced in the

25    defendant's motion in limine.

1          And is the motions referenced in Section 4 to agents

2    and officers offering opinions, ideas, or deductions that

3    invade the province of the jury -- are you just sort of -- is

4    this a placeholder in case that happens?

5          MS. DURRETT:  It is, Your Honor.  And I guess I

6    just -- you know, I don't know.  They told me the case is going

7    to be a day and a half long.  I don't know how many witnesses

8    there are going to be.

9          But we would obviously preemptively object to any

10   agents getting up and trying to synthesize other people's

11   observations or things that they know about the investigation

12   and trying to synthesize that for the jury.

13         THE COURT:  All right.  Is that going to happen?

14         MR. BROWN:  I mean, Your Honor, I do have a law

15   enforcement witness testifying.  He is going to testify as to

16   his investigation.  I mean, if she has an objection, she can

17   raise it during his testimony.

18         But I don't know what she is really objecting to

19   because this is not a drug-type case in which you have an

20   officer getting up talking about jargon.  We don't have that in

21   this case.

22         So any investigator testifying could testify about

23   the evidence in the case itself, not his belief of what

24   Mr. Pendergrass said in an email or letter -- what that

25   actually means.

1          THE COURT:  All right.  So give me an example of what
2     your law enforcement officer would be testifying about.
3     Precisely give me two or three items that you imagine --
4          MR. BROWN:  Sure.  He would be testifying about, for
5     example, the money laundering conspiracy.  He looked at the
6     bank records.  And he will testify about what expenditures came
7     out of the account during and after the money was deposited in.
8     Mr. McQueen would testify about that as well.  The law
9     enforcement would be talking about reviewing the actual
10    evidence in the case.
11         For example, I think one of the exhibits talked --
12    one of the exhibits, Exhibit Number 9, Your Honor -- if you
13    look at the first page of Exhibit Number 9, if you just -- this
14    is evidence that was seized from the actual -- during the
15    search warrant of Mr. Pendergrass' office.
16         So the first page there is Mr. -- somebody using
17    Mr. Pendergrass' name and his email account to get a fax
18    number.  Well, the officer would testify about yes, this fax
19    number appears on letterhead that was sent to -- from the Lee
20    Family Trust, things along those lines, just connecting the
21    dots of the investigation, Your Honor.
22         THE COURT:  Thank you.
23         MS. DURRETT:  Thank you, Your Honor.  I mean, we will
24    be ready with our objection.
25         THE COURT:  Okay.  Is there any co-conspirator

1    hearsay testimony?

2         MR. BROWN:  No, Your Honor.

3         THE COURT:  We'll deal with the redaction of this

4    surplusage from the indictment when we are through with the

5    evidence.  And we'll look at what -- what there is.  If you

6    want to propose anything, you are welcome to do so and mark it

7    up.

8         MS. DURRETT:  Thank you, Your Honor.

9         THE COURT:  All right.  So I want to just address

10    with you Pages 6 and 7 of the defendant's supplemental motion

11    in limine that is at Document 217.  And in particular -- this

12    is just relevant also to the ruling on -- as to the intrinsic

13    evidence or 404(b) evidence or whatever we want to call it at

14    the moment that is at issue that I'm going to do a written

15    order on.

16         The defendant basically says here none of the

17    transactions outlined in the indictment or bill of particulars

18    involved the Guishard Wilburn & Shorts firm, the Recovery

19    Capital, Attorney Recovery System, and other listed asset

20    recovery businesses.  All of the checks at issue involve the

21    very discrete time frame of April to May 2013.

22         If these were just simply different shell companies

23    essentially for the same set of transactions and deals, why

24    wouldn't it be relevant?

25         MS. DURRETT:  Well, Your Honor, I think because what

1    they have alleged in the indictment is a scheme regarding Asset

2    Financial Recovery and the City of Atlanta.  And when we said

3    we can't defend against this, we don't know what you are

4    talking about as far as the transactions that are relevant

5    here -- what are the financial transactions that are relevant,

6    what banking transactions are relevant so that we can defend

7    this case.

8              And the Government voluntarily, without the

9    magistrate ordering them to do so, filed their own bill of

10   particulars and again listed five transactions related to the

11   City of Atlanta and Asset Financial Recovery as the relevant

12   transactions for us to look at.

13             So we think they should be bound by the bill of

14   particulars.  I understand what the Court is saying that they

15   are shell companies or whatever.  I haven't heard that that is

16   going to be testimony in this case.

17             But I don't think that that is relevant, and I don't

18   think -- I think it permits the Government to broaden their

19   charges and to broaden the basis for conviction in this case

20   when the only thing -- when we have specifically asked for

21   notice, the only thing we have been provided with is

22   information about the City of Atlanta transactions and Asset

23   Financial Recovery.

24             THE COURT:  But many of these are still City of

25   Atlanta transactions; right?

```
 1              MS. DURRETT:  Well, I don't know -- I mean, Harris
 2    County Texas is not.
 3              THE COURT:  I understand the ones that aren't.
 4              MS. DURRETT:  Hemisphere is not.
 5              I mean, Your Honor, they have named five different
 6    things.  So I think that it is -- they are just trying to
 7    broaden the scope of the possible convictions, and they want
 8    the jury to convict Mr. Pendergrass not based on the evidence
 9    and the allegations outlined in the indictment but based on
10    other things.
11              THE COURT:  And are there any of them that fall
12    outside of April to May 2013?
13              MS. DURRETT:  I think there is some from 2014, Your
14    Honor.  I think they have gone into 2014 on some things.  And I
15    think some things are from 2012.
16              I would have to go look to be specific.  But I think
17    that is right.  I'll pull up that 404(b) motion.  And I can
18    tell you more specifically.  But I do think there are things
19    from 2012, and I think there are things from 2014.
20              THE COURT:  All right.  Well, I wanted to be sure to
21    look at your addendum.  And we'll look at it when we are
22    writing the order and figure out if there is anything else that
23    needs to be done --
24              MS. DURRETT:  Thank you, Your Honor.
25              THE COURT:  -- or if I change my mind.  And we'll get
```

1    it out this week so you know exactly.

2         MS. DURRETT:  Thank you.

3         MR. BROWN:  Okay.

4         THE COURT:  So then in your -- in terms of voir dire,

5    you have these additional questions, Ms. Durrett, that you

6    asked for in your motion that is at Document 192 regarding

7    proposed voir dire questions on racial bias.

8         Are you seeking then these as well?  Because we

9    didn't go over all of this.

10        MS. DURRETT:  I am, Your Honor.  I understand the

11   Court's decision to be that you might provide instruction to

12   the jury or you might provide information to the jury about

13   implicit bias.  I don't know if some of those will be covered.

14   But I do think that -- as you, I think, understand my position,

15   I want to be able to ask them about implicit bias and how it

16   might affect their decision-making.

17        THE COURT:  Well, some of these questions -- a good

18   number of them appeared in the first list.  A good number of

19   them don't though.  So I think given my comments, I mean, you

20   can either just keep to this and ask me -- I would just ask you

21   to look at them again and ask -- in light of my comments and

22   the concerns about open-ended questions that will keep us here

23   forever in voir dire what ones that you actually think we're

24   going to be able to handle.

25        MS. DURRETT:  Number 11, Your Honor.  I know some of

1    them are the same as my other list of voir dire.  But I think

2    Number 11 kind of strikes at the heart of that.  Has anyone

3    heard that certain ethnic groups are more likely to engage in

4    criminal conduct than the general population?  How do you feel

5    about that statement?

6                THE COURT:  Okay.  What other one --

7                MS. DURRETT:  Let's see.

8                THE COURT:  -- if there is any?

9                MS. DURRETT:  I mean, I like all of them.  But

10   Number 7, who believes people are sometimes treated differently

11   because of their race?

12               THE COURT:  But when we ask them to tell us about

13   that, that is going to be a world of challenges.

14               MS. DURRETT:  All right.

15               MR. BROWN:  I mean, Your Honor, could I just -- I

16   don't know how much more I have to say on this.  But you have

17   already indicated your desire to say something about implicit

18   bias.

19               She has questions that -- what does the phrase judge

20   a book by the cover mean to you.  Number 7, who believes people

21   are treated differently based on their race?  We'll be -- if

22   every juror is going to get an opportunity to talk on that -- I

23   mean, I know what she's trying to do.

24               What she is trying to do is have the juror plant a

25   seed that the Government is prosecuting a black man.  I get

1    that.  Right?  But how many questions can she ask the same way

2    to get that?  We're trying to find out if a juror is biased

3    where they should not sit on the jury and they cannot be fair

4    to Mr. Pendergrass.  Not the question she is trying to elicit.

5          I would just ask the Court to not allow these

6    questions and very limited have the Court deal with this.  But

7    this is just beyond what I think is necessary to get a fair and

8    impartial juror in this case, Judge.

9          THE COURT:  Well, some of them we have dealt with.

10   And I'll consider 11.  But I will probably have to change it

11   because I mean, A, you would be asking the question, not me,

12   and, B, it could -- it could create a lot of issues.

13          So I'll have to think about Number 11.  All right?

14   And I will.

15          MS. DURRETT:  Thank you, Your Honor.

16          THE COURT:  I think it is pretty thorny.  But there

17   may be some way of asking it that is not as thorny.

18          MS. DURRETT:  I know, Your Honor, and I know the

19   Court understands that it is thorny because it is an issue and

20   it is there and we need to address it.  So I know that it is

21   thorny.

22          THE COURT:  Okay.  Let's talk about the business

23   records.  Is it correct that all of the records are ones that

24   were -- that are being certified or many of them are ones that

25   were picked up from the defendant's own office?

64

1          MR. BROWN:  I think, Your Honor, only one of them is

2     one that was picked up at the defendant's office but was

3     certified by the postal office, Your Honor.

4          We have -- I think we have two certifications related

5     to the United States Postal Service relating to a postal

6     application for 1809, which is a post office box where these

7     checks were mailed to from -- I think all of the actual charged

8     conduct.

9          THE COURT:  But is the record that they are

10    certifying one that was in the possession of the defendant?

11    And how have they gone about certifying it, since it is not at

12    that -- if they are not certifying a record that is maintained

13    in the regular course of the business?

14          MR. BROWN:  My understanding is they are certifying a

15    document that was in the custody and control of the United

16    States Postal Service.  It is the same document.  It is the

17    exact same document that came out of his office, yes.  But it

18    is the document that was maintained by the postal service,

19    Judge.

20          MS. DURRETT:  Your Honor, we don't have any way of

21    knowing that.  The document is not attached.  There is no way

22    to show that they subpoenaed the postal service or there was

23    communication.  We don't know that that is what happened.  He

24    said my understanding is that is what they are doing.

25          THE COURT:  So all you have are the certifications

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

```
1    and not any documents attached?

2           MS. DURRETT:  I have -- well, Your Honor, I have

3    received a lot of different emails from Mr. Brown where I have

4    some certifications that have been provided and then he points

5    me to some places in discovery.

6           I have yet to see a stack of documents with a

7    certification attached to the document so that I can verify the

8    person who is certifying the documents actually knows that

9    those documents are in their possession or control and that

10   they meet all the business record requirements.

11          So I have gotten lots of emails that say here's the

12   certification from 2014, here's the certification from 2018.

13   Just go find the records in discovery and were certified.

14          My problem is I can't just say --

15          THE COURT:  All right.  That's fine.

16          MS. DURRETT:  Thank you.

17          THE COURT:  Can the Government provide an actual --

18   something that actually does that?  I mean, I think that is a

19   fair request.

20          MS. KING:  Yes, Your Honor.  First of all, the

21   Government has provided the defendant with copies of the

22   certification.  And, Your Honor, I have copies of the

23   certifications that I would like the Court to see.  Because one

24   of the things that I want to point out -- one of the

25   allegations that Ms. Durrett makes -- Ms. Durrett makes is that
```

1    the certifications were not attached with the documents.

2           But if Your Honor will look at the records, first of

3    all, Your Honor, although the Government's notice does provide

4    notification for several documents, the Government will

5    actually only be tendering records with respect to just a few.

6           Government's Exhibit 1 that we handed to Your Honor

7    is a certification of the records from the City of Fort

8    Collins.  One of the things I wanted to draw to the Court's

9    attention is that that certification was part of the discovery

10   that was provided to defense counsel.

11          At the bottom of it, you see the Bates stamp number

12   for the record.  And that certification was attached to the

13   actual documents the Government intends to introduce at trial.

14   We actually provided Ms. Durrett with notification.  And not

15   only in the Government's notice that is Document 194 as to the

16   Bates stamped numbers for the records that we will be using,

17   with Number 1 being the actual business record certification we

18   also provided again to her on November 15, 2021.

19          Government's Exhibits 2A and 2B are the two

20   certifications that Mr. Brown just spoke about, which is the

21   certification for the postal -- the post office box -- post

22   office box application.

23          That notification -- Your Honor, as Ms. Durrett's own

24   motion actually establishes, the Government did provide the

25   records with the second notification, which is Government's

1    Exhibit 2B.  But 2A was provided to defense counsel in

2    discovery, and we did provide the defendant with a copy of the

3    records in discovery.

4            And then when we sent the second notification, Your

5    Honor, as Ms. Durrett's own motion demonstrates, the document

6    that the post office certified was, in fact, attached to the

7    exhibit.

8            Government's Exhibit 3A and 3B are the business

9    record certifications for the Wells Fargo records.  Now, Your

10   Honor, that one -- with respect to Government's Exhibit 3A,

11   that record pertains to the bank records for account ending in

12   3556.  The Government has -- the Government's documents that we

13   intend to introduce -- that evidence was provided in discovery.

14           And, Your Honor, also let me go back and also say

15   this:  We have provided defense counsel this morning with a

16   copy of the Government's exhibits.  Government's Exhibit

17   Number 1, the business record certification, actually

18   corresponds to Government's Exhibit Number 8 in the actual

19   exhibits notebook.  So those are the records that goes with the

20   certification.

21           THE COURT:  I guess here is the thing.  I can't tell

22   from this because I'm looking at the exhibits -- it is really a

23   question of:  When you look at the exhibits and understandably

24   to some extent the exhibit, for instance, on 8, there are no --

25   I didn't see any certification here.  And I can't really -- and

1   that's the same for any of the ones that you have referenced so

2   far in the notebook.  So --

3           MS. KING:  Your Honor, we can go back and put the

4   certifications with the exhibits.

5           THE COURT:  But the thing about it is this:  What

6   Ms. Durrett is saying -- and maybe this is the way they

7   originally arrived.  She is saying I can't inspect this and

8   know that the documents you've pulled are the same -- that they

9   have actually certified, as I hear it.

10          MS. DURRETT:  That's exactly right, Your Honor.

11          THE COURT:  And so do you have them in their original

12  format the way -- I mean, when you give them to the jury, are

13  you going to have that?  Or at least -- you know, it is one

14  thing to say we don't need it for the exhibits once Ms. Durrett

15  has seen it.

16          But it is a different thing when you don't have it in

17  its original form so that she knows this is, in fact, the

18  document and that nothing else has gotten stuck in either

19  inadvertently or purposely.  But, you know, with handling that

20  many documents, it is very simple for things to get in that are

21  not, in fact, the ones that got certified.

22          MR. BROWN:  So, Judge, if I can address that.  For

23  example, for Wells Fargo, we subpoenaed dozens of accounts with

24  Wells Fargo.  We provided defense counsel with a business

25  records certification that goes in excruciating detail as to

1    all the accounts that they provided documents for.

2         Then we provided all of the evidence in discovery.

3    So we have attached the actual certification showing -- for

4    example, Exhibit Number 20 is bank records in the account

5    ending in 3556.

6         All right.  So that is Government's

7    Exhibit Number 20.  And I think you may have -- do you have the

8    certification -- we provided to her in discovery as well as

9    attached to our notice the certification for those records.

10        Let me just -- so may I hand this to Your Honor?

11        THE COURT:  Yes.

12        MR. BROWN:  So this is what we get back from Wells

13   Fargo, Your Honor, with the records.

14        MS. DURRETT:  Your Honor, I would just object to the

15   suggestion that they got it back with the records.  I don't see

16   a date on the certification.  And -- so I mean, the Court

17   understands my issue.

18        MR. BROWN:  I mean, I understand her position.  Is

19   she suggesting that they are not authentic because it came on a

20   CD and therefore -- we can probably send it back to Wells

21   Fargo -- it may be late at this point.  And they can actually

22   certify our exhibits and say yes, these exhibits are business

23   records that were kept in the normal course of business.

24        But our standard practice is subpoena the records,

25   get a certification for all of those records, and provide that

1    to defense counsel.  We have done that.

2        MS. DURRETT:  I would just ask when the certification

3    was completed.

4        MR. BROWN:  It is on the actual certification.  It is

5    in the notice.  It is there when they sign it and date it.

6        MS. DURRETT:  Where does it say that?

7        THE COURT:  I'm looking at the Wells Fargo one.

8        MS. DURRETT:  2014.

9        MR. BROWN:  (Reading unintelligibly).  What is your

10   objection?

11       MS. DURRETT:  My objection is I cannot tell which

12   records they are certifying.

13       THE COURT:  You can't tell it from the way they

14   describe them?

15       MS. DURRETT:  I can't, Your Honor.  I mean, I don't

16   know how to go through this and say on paper Count 1 and then

17   I'm given thousands of documents and say, oh, well, they must

18   be certifying this.

19       I mean, there is a column for paper count.  There is

20   a column for total copies.  And it is like numbers like three

21   and one, and I literally have thousands of papers.

22       And I will note that the Court is correct that there

23   were I think at least maybe 13 boxes or something that were

24   seized from Mr. Pendergrass' office.  And I don't have a way on

25   some of these documents telling whether these came from his

1    office and -- I just don't know, Your Honor.

2         And then as far as the documents, like the Fort

3    Collins documents, I have multiple objections to those.  One, I

4    think they are not technically business records if they weren't

5    created by that office.  But also on many of the documents,

6    there are handwritten notes.  And that is true for some of the

7    other documents as well.

8         And, for instance, the Government pointed out this

9    morning -- Mr. McQueen, I assume after he interviewed with the

10   Government, wrote his name on one of the documents to tell the

11   Government --

12        THE COURT:  I saw that.

13        MS. DURRETT:  -- that he's actually Gene Bloom.

14   Well, I don't think that Fort Collins or whoever it was

15   certified that.

16        MR. BROWN:  Your Honor, I think -- with all due

17   respect to defense counsel, I think she's making this more

18   complicated than what this really is.  The Government has

19   provided -- for each exhibit the Government seeks to admit via

20   business records, the Government has provided a certification

21   provided by the agency whether it is Synovus Bank or Wells

22   Fargo Bank.

23        So if her question is if she -- we can probably go

24   back to the bank and have them -- if they have time to do that,

25   they can look at the actual exhibit and say yes, these pages

1    came -- because we're not admitting all the records from Wells

2    Fargo.  There are thousands of pages from Wells Fargo.  We are

3    only admitting less than 200 pages.

4            And in the actual certification, it says account

5    ending in 3556.  We provided the statements.  We provided the

6    checks.  We provided the deposit information.  And that is what

7    the Government is seeking to admit.  And I think if you look at

8    the certification, it qualifies under the rules.

9            And I understand what she is trying to make.  But I

10   think, Your Honor, based on what the Government is providing --

11   and if we can provide more, we can do that -- it meets the

12   requirements of the actual rule.  It meets the requirements of

13   803(b)(6) and 902(11) in that we received these records from

14   the actual custodian.  They signed and certified it that it met

15   the requirements of a business record.  And we provided those

16   to defense counsel.

17           THE COURT:  Well, the problem, as I say, is that

18   obviously things have been provided in discovery in larger

19   bulk.

20           MR. BROWN:  Yes.

21           THE COURT:  And so we don't really know.  If these

22   are coming in, we'll have endless troubles, I can see, in

23   the -- as we are discussing did something else get into this.

24   Is this, in fact, the correct copy at this period -- for this

25   period of time or this transaction?

1          So I would suggest you really get a new

2     certification.

3          MR. BROWN:  All right.  So we'll investigate getting

4     new certifications for the actual --

5          THE COURT:  For the actual exhibits.

6          MR. BROWN:  -- for the exhibits.  We will do that,

7     Your Honor.  We'll work on that this week.

8          MS. DURRETT:  Your Honor, I just -- I will note -- I

9     know I noted it in my motion.  But I do have additional

10    objections that I just stated as far as hearsay within hearsay

11    and other issues related to some of those documents.  So I know

12    they are trying to offer them as business records.

13         THE COURT:  Do you want to tell me which ones?  I'm

14    going to just bring this up here.  I think you gave me this

15    Government Exhibit 1.

16         MS. DURRETT:  Yes, Your Honor.  Because that was

17    provided to me by the Government in an email.

18         THE COURT:  All right.  But I just don't want to

19    confiscate somebody's example of it.

20         MS. DURRETT:  So, for instance, Your Honor, that

21    postal box application for which they provided two separate

22    certifications, I think that the text of the document -- there

23    is no way or no one at least has verified that that was created

24    by a person who actually worked at the postal service.

25         And I think I cited case law in my motion that says

```
 1    people filling out forms don't have a duty to keep accurate
 2    business records like the business does.  And that is the
 3    purpose of the business records exception is that there is a
 4    business that has a duty to keep these records in its regular
 5    course.
 6             If you have got someone else filling in a form or
 7    someone else doing something --
 8             THE COURT:  Which one did you point to?  I'm sorry.
 9             MS. DURRETT:  That's the P.O. Box, Your Honor.  I
10    attached it to my motion.  It is that P.O. Box application.
11             THE COURT:  Do you have a document number?
12             MS. DURRETT:  I'm looking, Your Honor.  I'm sorry.
13             THE COURT:  That's all right.  I'm looking at your
14    exhibit.
15             MS. DURRETT:  It is the only one that came with a
16    exhibit.  I mean, the second time they sent it, they attached
17    some documents to the end of it.
18             THE COURT:  The application for the post office box,
19    Document 213-3?
20             MS. DURRETT:  That's right, Your Honor.  And I think
21    I noted --
22             THE COURT:  And then I guess 213-12 is the record
23    certification from the post office?
24             MS. DURRETT:  Well, they gave us two different ones.
25    Yes.  But I mean, just from my review of the discovery, it is
```

1    my understanding that was found in the office -- in

2    Mr. Pendergrass' office.  Mr. McQueen --

3              THE COURT:  The post office application?

4              MS. DURRETT:  Yes.  Mr. McQueen shared that office.

5              And what I noted in my motion is for business

6    record -- for the business records exception to be available

7    all persons involved in the process must be acting in the

8    regular course of the business.  Otherwise, an essential link

9    in the trustworthiness of the chain is missing.  The business

10   record exception applies only if the person furnishing the

11   information to be recorded is acting routinely under a duty of

12   accuracy with the employer reliance on the result or in short

13   of the regular course of business.

14             So I think, you know, they have got the hurdle of the

15   certification, but they also have the hurdle that someone

16   unidentified has filled in the document.

17             THE COURT:  So in terms of the application -- the

18   application for post office box service, you don't -- there is

19   no indication that they maintained this application in the

20   regular course of a business?  Is that what you are saying?

21             MS. DURRETT:  Well, Your Honor, they provided a

22   certification without records in 2014.  And then they provided

23   this new certification in 2021 where the person says -- they

24   don't include their last name in the certification.  And then

25   it says P.O. Box application.  It doesn't say how many pages.

1          And at the bottom, they have -- they wrote E. Hill as

2     their signature.  So, again, I'm running up against the problem

3     that I don't know which documents are being certified.

4          But yeah, I think that the case law tells us if we --

5     if the person filling out the information or providing the

6     information does not have a duty of accuracy, it is not a

7     business record.  Maybe they can find some other exception.

8          THE COURT:  I want to make sure we're talking about

9     the same documents.  Do you have the documents in front of you?

10    Because the document I have was -- and maybe it is referencing

11    something else signed by Ms. Youngblood, and it is executed

12    November 19, 2018.  You talked about something in 2014.

13         MS. DURRETT:  I'm sorry.  It is 2018.  But then they

14    have another document -- so that was provided in 2018, Your

15    Honor.  Then in 2021, they sent me an email with what I have at

16    Docket 213-3.

17         THE COURT:  All right.  I see that.

18         MS. DURRETT:  And so this one, there is a signature

19    from someone named E. Hill.  They don't say their full name.  I

20    guess they say Elizabeth and not their last name and then E.

21    Hill.

22         But then what I'm talking about, in addition to the

23    business record issue, is the form at Page 1 of 213-3 has been

24    filled out by someone.  I don't know who filled it out.  And I

25    don't know if that person had a duty of accuracy to the

```
1   business.
2              So it is a separate objection.
3              THE COURT:  Is this the same page you are talking
4   about?  The one that says I'm qualified to authenticate the
5   records attached hereto because I am familiar with how the
6   records were created, managed, stored, and retrieved?  Or are
7   you talking about a different document?
8              MS. DURRETT:  I'm talking about -- it looks like
9   this, Your Honor.  It is a postal service application.
10             THE COURT:  Is this the one that was signed by
11  Mr. Pendergrass?
12             MS. DURRETT:  Well, it is signed by someone.  And the
13  person who signed it --
14             THE COURT:  Could you send it up?  I'm just --
15  without your giving me the page numbers, I'm just lost.
16             MS. DURRETT:  I did, Your Honor.  It is Docket 213-3.
17             THE COURT:  Yes, that's the one we were talking about
18  before.
19             MS. DURRETT:  Yeah.  Page 1.
20             THE COURT:  Yes.
21             MS. DURRETT:  And it is this application, and someone
22  wrote in information on the form.  And my objection is that
23  person is not identified.  So I can't tell if that person had a
24  duty of accuracy to the business.  And that is why it is not a
25  business record.
```

1          MS. KING:  Your Honor, may I respond?

2          THE COURT:  Yes.

3          MS. KING:  Your Honor, Ms. Durrett's argument is

4    misleading because that is not the purpose of 902(11) and

5    803(6).  The Government has complied with the requirements by

6    providing a certification as to -- by a person who was

7    qualified to certify the records of the business.

8          Now, I want to direct the Court's attention to *United*

9    *States v. Parker*, 749 F.2d 628.  It is an Eleventh Circuit

10   case.  The court advised that the business record certification

11   declarant doesn't have to be the person who prepared the

12   document nor must that person have firsthand knowledge of how

13   the document was, in fact, prepared as long as the document

14   itself was prepared in -- and was made and prepared in the

15   regular course of the business that is certifying the record,

16   that the record was kept in the ordinary regular course of

17   business of the business certifying the record, and that the

18   record was made -- it was part of regularly conducted activity

19   of that business.

20         That is all the Government is required to show.  And

21   this is a post office application, Your Honor, in which we have

22   a certification by two different people that have established

23   that this record was created in the ordinary business of the

24   post office in basically assigning these post office boxes to

25   their customers.

1          So, Your Honor, the Government contends that to the

2    extent she's arguing that we have to bring in the actual person

3    who received the application, that is not what the business

4    record requires and that is not what is ever required.

5          THE COURT:  I don't think that is -- all right.

6          MS. DURRETT:  Your Honor --

7          THE COURT:  We don't have time to do more on this.

8    I'll give you -- I mean, I don't -- I want to make sure, as I

9    understood it, that there are two different certifications, one

10   by Elizabeth Hill and one by Tanya Youngblood for this

11   particular document.  That is what I was trying to get at.

12         Then there is a separate business certification for

13   the SunTrust Bank, which is the last document in your -- in

14   this group.

15         And 30 seconds to wrap up.

16         MS. DURRETT:  The form itself is a business record.

17   The writing on it is not a business record.  We would object to

18   that for all the reasons that we cited at Docket 213, Page 5,

19   which the Eleventh Circuit says, for the business records

20   exception to be available, all persons involved in the process

21   must be acting in the regular course of business.  Otherwise an

22   essential link in the trustworthiness chain is missing.

23         So this is different than a business creating its own

24   documents and storing them in its servers and this is how we

25   run our business.  This is them --

1          THE COURT:  I understand your point.  And we'll --

2     and I will -- don't need to rule on it at this juncture.

3          But I would say my greatest concern relates to

4     documents that have been assembled and moved about in the

5     course of discovery and then having a certification stuck on

6     top of them.  That is why I'm saying you need to go back.

7          MR. BROWN:  Understood.

8          THE COURT:  You know, I don't know -- you know,

9     medical records have handwriting on them.  And that is, you

10    know -- and I will look at the case law about this.  But, you

11    know, I have had lots of things that had somebody's -- that are

12    not just simply only executed by the individuals who are in the

13    business.  But they are still in particular medical records

14    which might have somebody -- you might have the record -- my

15    medical record where I filled out lots of information on that

16    medical record.  Did I smoke?

17         MS. DURRETT:  And you don't have a duty to be honest.

18         THE COURT:  No, I don't.  It doesn't mean that it is

19    true.  But it is part of my medical record.  I get that.  But

20    day in, day out, we have personal injury cases where that is my

21    medical record.

22         And so that is my -- why I think this is probably

23    okay.  But it doesn't mean that something didn't get modified

24    here, and that is something you can deal with.  But the main

25    thing is because it is Wednesday and we have a trial and

1    Thanksgiving is we need to be sure that the Government gets the

2    other stuff in order so you can see exactly what they are

3    certifying.

4         MS. DURRETT:  Thank you, Your Honor.

5         I'll just note that as far as the records produced

6    from cities or municipalities they have hearsay in them and

7    again they have handwritten notes.  I don't know who wrote

8    them.  I don't know when they wrote them.  So I just anticipate

9    that I'll be objecting to other exhibits.

10        THE COURT:  All right.  Now, while we are talking

11   about objections, if we get to a point that -- I cannot do many

12   bench conferences because it just ends up being awkward.  We

13   end up going over here.  And I hate to have the jury in and

14   out.  But I will at some point, if necessary.

15        Have you-all -- are you-all aware of what the

16   protocols are in terms of the jury selection in the larger

17   room?  Because we're going to be not in this room.  We'll be in

18   the ceremonial courtroom.

19        And it actually works much better because we have two

20   microphones up.  And so we get people -- everyone will have a

21   number as well as their name.  It is not -- the number is not

22   supposed to replace the name.  The number is -- because for my

23   brain and probably yours even though it is younger than mine,

24   it is easier to find somebody on your sheet and write down

25   notes.

1          So they are going to be spread throughout the room.

2     And we'll be calling up people when they -- when we have --

3     somebody has a comment they make.  We'll ask them -- Mr. Martin

4     is an incredible troubadour and master of ceremonies.  And he

5     gets -- and we get them really rolling.  So we don't have all

6     that problem of passing microphones in the back, which is

7     really awkward.  And there is plenty of space between people.

8          When they are in this room -- and we will have the

9     trial in this room -- we spread them out here.  We will give --

10    you have been given the jury -- basically the questions that

11    they all know they are going to be asked by me.  And it works

12    pretty efficiently.

13         We'll go over -- there is a strike sheet.  We do that

14    by -- with going back and forth between the two of you -- the

15    four of you.  Excuse me.  And -- but all of that will happen in

16    that courtroom.  So I wanted to be sure you got that.

17         Do you know how long you want for opening statements?

18         MS. KING:  20 to 30 minutes.  20.

19         THE COURT:  How much would you like?

20         MS. DURRETT:  I'm quick, Your Honor.  I'll be quick.

21    20 minutes.

22         THE COURT:  Let's say 20 minutes.  And obviously

23    we'll give you more time on the closing statements.

24         Are there any other major items that I have missed in

25    your papers?  Because we'll go over everything again.

1          MS. DURRETT:  Your Honor, I think just a few things.

2     We have requested Jencks from the Government.  I know they have

3     an obligation, and they'll do that in their time.

4          But I also wanted to say:  There has been some kind

5     of nasty publicity against Mr. Pendergrass recently.  And I

6     don't think we need to raise it with the jury as far as the

7     specifics of it.  But I just would want to caution any

8     Government witnesses or anyone else from mentioning anything

9     about that.

10         MR. BROWN:  I'm not sure what she's talking about.

11    If she wants to let us know what she is speaking of

12    specifically, then I can inquire with the witnesses.  I'm not

13    aware what she's talking about, Judge.

14         THE COURT:  All right.

15         MR. BROWN:  We just have some housekeeping things,

16    Judge.  We have a witness that is in a wheelchair.  So I don't

17    know how the Court -- I just want to put you on notice.  He

18    obviously can't climb up there to the witness stand.

19         And then, two, we have another witness who has his

20    leg amputated below the knee.  So he will need to -- it may be

21    difficult for him to get up there.  I don't know if the

22    Court -- what other arrangements the Court could make.  I think

23    he should be able to.  But I know Mr. Bone, who is the witness

24    in a wheelchair, cannot get up there, Judge.

25         COURTROOM DEPUTY CLERK:  The floor actually lowers.

```
 1              MR. BROWN:  It does?  Nice.

 2              COURTROOM DEPUTY CLERK:  So we can roll the

 3   wheelchair in and have the other gentleman just walk right in.

 4              Thank you for bringing it up because I need to make

 5   sure I have the key to do that.

 6              MR. BROWN:  I wasn't aware.

 7              Judge, one more thing --

 8              THE COURT:  I know you have folks that do technology.

 9              But if you need any technology training or co-counsel

10   --

11              MS. DURRETT:  Your Honor, we may need just a brief --

12   I don't anticipate that we're going to be using a lot of

13   exhibits from our computer or anything like that.  But we may

14   just need a brief overview, if I can talk to Harry maybe.

15              THE COURT:  Sure.

16              MS. DURRETT:  Thank you.

17              THE COURT:  I mean, we have, believe it or not,

18   another hearing after this.  So -- or else I would just -- he

19   can get -- if you can wait, he can get on the -- start us and

20   then you can -- we'll be talking to you.

21              And I don't mean to cut you off.  We just had

22   obviously a lot of things.

23              Anything else in particular that you would like to

24   know?

25              MR. BROWN:  I just have a question about calling
```

1    witnesses.  I mean, it sounds like Monday is going to be a full

2    day.  We're going to actually have witnesses available.

3              But what is your expectation for witnesses being

4    called on Monday?

5              THE COURT:  I don't know anyone who has been able

6    to -- other than Judge Batten probably and Judge Thrash who can

7    pick a jury and have them seated at 1:00.  And certainly as you

8    know me, both of you, it is not going to be me.

9              So we'll use whatever extra time we have, if we have

10   extra time, to go over everything else that has imploded by

11   that point.

12             MR. BROWN:  Thank you, Judge.

13             THE COURT:  How many jurors are we expecting?

14             COURTROOM DEPUTY CLERK:  I have requested 40.  That

15   is the standard number.

16             THE COURT:  Yeah.

17             COURTROOM DEPUTY CLERK:  We always end up with a

18   couple of extras.  Two or three extras.

19             THE COURT:  All right.

20             MR. BROWN:  That should be enough, Judge.

21             THE COURT:  Which one did we get so close on?  Was it

22   the last -- the civil one?

23             That's strange.  I guess that is not so strange

24   because of the smaller number.

25             Yeah.  Anything else?

```
 1              MR. BROWN:  Not from the Government, Judge.

 2              MS. DURRETT:  No, Your Honor.

 3              THE COURT:  Okay.  Have y'all been in the ceremonial

 4    courtroom before?

 5              MR. BROWN:  Yes.

 6              THE COURT:  I'm very far away.  But, you know, you

 7    can turn your tables both ways.  You can turn around at any

 8    time.  I think it works well.  It is a large room.  But it is

 9    certainly -- I just hated the way people were always on top of

10    each other in this room.

11              Okay.  Well, we will look a little more at briefs.

12    We are going to issue a decision this week so you get --

13    understand this a little bit more.

14              And, secondly, if you -- if you are wanting us to

15    consider an instruction, I need to have it --

16              MS. DURRETT:  Thank you, Your Honor.

17              THE COURT:  -- in that time frame and any objections

18    pretty quickly.

19              I will tell you I will really not be available

20    Tuesday onward.  Not that I can't see something and won't look

21    at it.  But I'm just not going to be very reachable.

22              Ms. Boring will send you her contact information.

23    She can normally get hold of me.  But, you know, that is why

24    I'm -- you know, if we have to deal with anything that is

25    substantive, we'll do it late on Monday.
```

1          But I will truly be available in terms of -- that is
2     why I want anything that is -- that is going to detour you on
3     your preparations, try to raise it by Friday so that we can get
4     to it.
5               MS. DURRETT:  Thank you, Your Honor.
6               THE COURT:  I have enough time on Monday to deal with
7     it.
8               MR. BROWN:  Okay.  Thank you, Judge.
9               MS. DURRETT:  Thank you.
10              THE COURT:  All right.  Very good.
11                   **(The proceedings were thereby concluded at 1:58**
12                   **P.M.)**
13
14
15
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T E

UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA

I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of the United States District Court, for the Northern District of Georgia, Atlanta Division, do hereby certify that the foregoing 87 pages constitute a true transcript of proceedings had before the said Court, held in the City of Atlanta, Georgia, in the matter therein stated.

In testimony whereof, I hereunto set my hand on this, the 23rd day of November, 2021.


_____
SHANNON R. WELCH, RMR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT


UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT