UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>ALLEN J.  PENDERGRASS,<br>    Defendant. | )<br>)<br>)<br>) Case No. 1:17-cr-00224-AT-CMS<br>)<br>)<br>)<br>) |

## **DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACUITTAL**

Comes now, Defendant Allen Pendergrass, and pursuant to Fed. R. Evid. Rule 29, hereby files this renewed motion for judgment of acquittal.  In support whereof, he shows the following:

Mr. Pendergrass was indicted in the present case on June 27, 2017.  Doc. 1. He was charged with five counts of mail fraud (18 U.S.C. § 1341), one count of money laundering conspiracy (18 U.S.C. § 1956(h)), and four counts of aggravated identity theft (18 US.C. § 1028A).  After a five-day trial, he was convicted on all counts.  At the close of the government's case, defense counsel moved for a judgment of acquittal on all counts.  Doc. 265 at 211. This motion was renewed at the close of all evidence.  Doc. 266 at 44.  The Court denied this motion.  Doc. 66 at 45.

Mr. Pendergrass now files this renewed motion for judgment of acquittal.

I. **THIS COURT SHOULD GRANT A JUDGMENT OF ACQUITTAL AS TO COUNTS 1 THROUGH 3.**

Mr. Pendergrass was charged with aiding and abetting five substantive counts of mail fraud. Doc. 1. To prove that Mr. Pendergrass aided and abetted the crime of mail fraud, the government had to show that he knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises. As the Eleventh Circuit Pattern Instructions explain, "finding that a Defendant is criminally responsible for the acts of another person requires proof that the Defendant intentionally associated with or participated in the crime – not just proof that the Defendant was simply present at the scene of a crime or knew about it." 11th Circuit Pattern Instruction S7. In other words, the Defendant must be shown to be a willful participant and not merely a knowing spectator. *Id.*

The only witness to discuss Mr. Pendergrass' alleged involvement in the charged fraud was co-defendant McQueen[1]. Although Mr. Pendergrass asserts that Mr. McQueen was wholly unreliable due to his desire to secure a sentence of less than two years in this case and his involvement in multiple other fraud schemes and the use of multiple aliases, Mr. Pendergrass understands the standard by which this Court must review a motion for judgment of acquittal.

---

[1] Although Eric Fitchpatric was also a witness in this case, he was not able to corroborate any of Mr. McQueen's testimony about specific instances of fraud that were allegedly committed. Doc. 263 at 202.

Even if the Court credits Mr. Mcqueen's testimony, as to Counts 1 through 3, Mr. McQueen did not allege any personal involvement by defendant Pendergrass. The chart below summarizes Mr. McQueen's testimony:

| Counts 1 and 7 | Check in the amount of $8,000 payable to Johnson, Coleman & Stephenson LLC C/o Asset Financial Recovery | McQueen testified it was his signature and handwriting for the printed name Sonia Johnson on the document. It was his handwriting on the notary information. Doc. 264 at 93. |
|---|---|---|
| Counts 2 and 8 | Check in the Amount of $76,636.28 payable to Asset Financial Recovery, Inc., C/O Georgia Municipal Association | McQueen took Lou Comer's signature from a document on the internet. McQueen located a GMA seal from a document that was on a previous Document online. McQueen signed the name Lou Comer. McQueen created the business card. Doc. 264 at 148. |
| Count 3 | Check in the amount of $26,874.42 payable to Asset Financial Recovery, Inc., C/O Long Weinbery, Ansley& Wheeler | McQueen did not recognize any of the signatures or handwriting on these forms. Doc. 264 at 153. |

There is no evidence that Mr. Pendergrass intentionally associated with or participated in the crimes charged in counts 1 through 3. He asks the Court to grant his request for judgment of acquittal as to counts 1 through 3.

## II. THIS COURT SHOULD GRANT A JUDGMENT OF ACQUITTAL AS TO COUNTS 7 AND 8.

To convict Mr. Pendergrass of aggravated identity theft, the government must show that he either knowingly transferred, possessed, or used another person's means of identification or identification documents, or aided and abetted Mr. McQueen in doing so. Under an aiding and abetting theory, a defendant is

3

liable if he: (1) associated himself with a criminal venture; (2) participated in it as something he wished to bring about; and (3) sought by his actions to make it succeed. *Rosemond v. United States*, 572 U.S. 65, 76 (2014). *Rosemond* is a case about aiding-and-abetting liability for the layered (or "compound") offense of using or carrying a firearm while committing certain violent or drug-related crimes. 572 U.S. at 67 (2014); *see* 18 U.S.C. § 924(c)(1)(A). The Court applied basic complicity principles to hold that you do not automatically aid and abet a § 924(c) violation just because you intentionally assist the underlying crime. 572 U.S. at 76. Instead, you must intend to assist the § 924(c) violation itself—gun use included. *Id.* In the Court's words, "the intent must go to the specific and entire crime" for which you are charged as an aider and abettor. *Id.* In a § 924(c) case, that requirement is met if you "actively participated in the underlying crime with advance knowledge that a confederate would use or carry a gun during [its] commission." *Id.* at 67 (emphasis added). Applying this principle, the Sixth Circuit Court of Appeals recently held that "aiding and abetting aggravated identity theft requires the intent to assist the identity theft, not just the underlying offense. . . such intent must include (at a minimum) "advance knowledge" of the identity theft. After all, you can't intentionally assist an identity theft that you only learn about after it's been committed." *United States v. Chavez*, 951 F.3d 349 (6th Cir. 2020).

The government failed to elicit any testimony about how Mr. Pendergrass assisted Mr. McQueen in transferring, possessing, or used another person's means of identification as to Counts 7 (Sonia Johnson) and 8 (Lou Comer).  It failed to prove beyond a reasonable doubt that he had advance knowledge of the identity theft at the time it occurred and that he specifically intended to participate in this crime. Therefore, judgment of acquittal should be granted as to these two counts.

### III. THIS COURT SHOULD GRANT A JUDGMENT OF ACQUITAL AS TO THE MONEY LAUNDERING COUNT.

Mr. Pendergrass was charged with one count of money laundering conspiracy. Doc. 1 at 5. The indictment alleges:

> Beginning on a date unknown and continuing until in or about April 2014, in the Northern District of Georgia and elsewhere, the defendants, ALLEN J. PENDERGRASS and TERRELL MCQUEEN, did knowingly and willfully combine, conspire, and agree with each other and others, both known and unknown to the Grand Jury, to conduct and attempt to conduct financial transactions affecting interstate commerce, which involved the proceeds of a specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, with the intent to promote the carrying on of a unlawful activity, that is, mail fraud, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

Prior to trial, Mr. Pendergrass filed a motion for bill of particulars asking that the government actions or transactions Mr. Pendergrass undertook (or aided

and abetted) with the intent to *promote* the carrying on the mail fraud. Doc. 130.

The government filed a bill of particulars describing check deposits and stating:

> In addition to paying employees that worked with Defendant's companies, Defendants also used stolen funds to operate his fraudulent asset recovery business, including using funds obtained in mail fraud scheme to pay fees to obtain lists of excess funds, purchase postage, and pay business expenses as reflected in purchases made from Wells Fargo Bank account.

Doc. 140 at 3. The case then proceeded to trial. At the close of evidence, defense counsel argued:

> As to the money laundering, Your Honor, I think the issue there -- if that is going to carry over, I think they are going to have to show that Mr. McQueen or that Mr. Pendergrass knew that the proceeds in the bank account were proceeds of fraudulent activity. And I don't think they have shown that.
>
> And, again, I'll point the Court to the bill of particulars that the Government filed. And I think they should be bound by those particular acts that they listed in the bill of particulars. And I don't think that they have shown that that money has been deposited and then used to further the fraudulent activity as outlined in Counts 1 through 5. I would also say that Mr. McQueen specifically testified as to the second item outlined in their bill of particulars, the check to Michael Burandt. He specifically testified that that was not a fraudulent check.
>
> And so that was one of the items that the Government specifically outlined in its bill of particulars. I think it should be held to that. And I don't think they have shown that those transactions outlined in the bill of particulars were deposited and then used to further the mail fraud scheme as outlined in Counts 1 through 5.
>
> Then I also have a couple of cases that talk about how the Government must demonstrate that the financial transaction was conducted or attempted with the intent to promote the carrying on of

>the specified unlawful activity. And one of the cases is *United States v. Calderon*. It is 169 F.3d 718. That is a case where the Eleventh Circuit reversed the money laundering conviction because there was no evidence indicating how the money was to be spent. Other circuits have developed a line of cases standing for the proposition that a defendant may not be convicted of promoting -- promotion money laundering where the proceeds of some relatively minor fraudulent transactions are used to pay the operating expenses of an otherwise legitimate business.
>
>. . .
>
>And the other case is *United States v. Miles*. It is 360 F.3d 472 from the Fifth Circuit. And in that case, they said, on the other end of the factual spectrum, however, are cases where a defendant -- are cases where the business as a whole is illegitimate. And then you have this issue where the expenditures are promoting money laundering. But we don't have that circumstance here because everyone has testified that there is a legitimate business underlying this. Mr. McQueen talked about how he was trained to do the legitimate business and told it is a numbers game. He was not successful at that legitimate business, and he decided to commit fraud.
>
>But I think there is ample testimony in this case that there was a legitimate business here. And so any argument that any expenses that came out of the account must support a promotional money laundering conviction is incorrect. Because I don't think the case law supports that when the business is legitimate.

Doc. 265 at 211-15.

To convict Mr. Pendergrass of the money laundering conspiracy, the government must show that he conspired with Mr. McQueen to commit promotional money laundering. As relevant to this motion, it also had to show that the Defendant knew that the money or property involved in the transaction were the proceeds of some kind of unlawful activity and the Defendant was involved in

7

the financial transaction with the intent to promote the carrying on of that specified unlawful activity. Although the government tried to elicit testimony that Mr. Pendergrass used the money he received from the deposit of these checks to promote the continuation of the alleged fraud, it was unsuccessful. For example, when the government asked Mr. McQueen who paid for his trip to Costa Rica, he either could not remember or he chose not to answer. Doc. 264 at 175. It asked why he went to Costa Rica. He answered, "To have a good time." Doc. 264 at 175. It asked, "What did you discuss with Mr. Pendergrass, while on the trip, if anything, about business?" He answered, "Just about the 16 grand that I still owed." Doc. 264 at 183. It asked him who paid for his trip to Rio. He answered, "I paid for my trip." Doc. 265 at 82. Mr. McQueen also admitted that he purchased his own computer and that of Mr. Fitchpatric. Doc. 265 at 60. This line of questioning did not elicit information showing that ***Mr. Pendergrass*** made any financial transactions with the intent to promote the carrying on of the specific underlying mail fraud. *Accord United States v. Calderon*, 169 F.3d 718, 722-23 (11th Cir. 1999) (reversing money laundering convictions because there was "no evidence indicating how the money was to be spent").

Additionally, the government did not present any evidence of an agreement between Mr. Pendergrass and Mr. McQueen to conduct financial transactions with

the intent to promote additional fraudulent activity. Thus, it failed to prove a money laundering conspiracy between the two.

Evidence showed that employees were doing legitimate asset collection work and that they were punching a time clock and getting paid accordingly. Even Mr. McQueen testified that Mr. Pendergrass told him that asset collection was a numbers game and that he just needed to send out a large number of letters to get legitimate clients to retain them. Even if the Court were to consider other business expenses in this case as proof of promotional money laundering, they are not sufficient to support a conviction in this case. Other courts have found that a defendant may not be convicted of promotion money laundering "where the proceeds of some relatively minor fraudulent transactions are used to pay the operating expenses of an otherwise legitimate business enterprise." *United States v. Miles*, 360 F.3d 472, 477 (5th Cir. 2004) (internal quotation marks omitted). The government's money laundering count appears to rely solely on the fact that Mr. Pendergrass deposited the checks into his bank account, *i.e.*, that he conducted the financial transaction. But, in order to use the proceeds of the charged fraud, the checks necessarily had to be deposited. A promotional money laundering conviction based solely on the fact that the checks were deposited and employees or incidental business expenses were paid as a result cannot stand.

The Supreme Court's decision in *United States v. Santos*, 553 U.S. 507 (2008) (plurality opinion)[2], is illustrative of the problem in viewing the evidence here as the government suggests. Although the Eleventh Circuit Court of Appeals has held that the precedential value of this plurality opinion is limited to unlicensed gambling cases, *United States v. Demarest*, 570 F.3d 1232, 1242 (11th Cir. 2009), the reasoning outlined therein is helpful in this case[3].

Although yielding a fractured opinion, the judgment of the Court was driven by a concern regarding a so-called "merger problem." *Santos*, 553 U.S. at 515 (plurality opinion). As Justice Scalia, writing for the plurality, explained, if "proceeds" meant "gross receipts," "nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery." *Id*. "Since few lotteries, if any, will not pay

---

[2] After *Santos* applied the rule of lenity to interpret the ambiguous term "proceeds" in the money laundering statutes, 553 U.S. 507, 128 S. Ct. 2020, 170 L. Ed. 2d 912, Congress amended the language of sections 1956 and 1957 by defining the term "proceeds" to include gross receipts.

[3] Notably, the Fourth Circuit also initially interpreted *Santos* narrowly as applying only where illegal gambling constituted the predicate for a money laundering conviction. *See United States v. Howard*, 309 F. App'x 760 (4th Cir. 2009); *United States v. Halstead*, 634 F.3d 270 (4th Cir. 2011). However, in *United States v. Cloud,* 680 F.3d 396 (4th Cir. 2012), the Fourth Circuit found that *Santos'* merger problem does apply to a defendant's money laundering counts that related to a mortgage fraud conspiracy. The Fourth Circuit defined "proceeds" as "profits" in *Cloud* and reversed the defendant's money laundering convictions.

their winners, the statute criminalizing illegal lotteries, 18 U.S.C. § 1955, would 'merge' with the money-laundering statute." *Id*. at 515-16.  Looking beyond illegal gambling, Justice Scalia added the following:

> For a host of predicate crimes, merger would depend on the manner and timing of payment for the expenses associated with the commission of the crime. Few crimes are entirely free of cost, and costs are not always paid in advance. Anyone who pays for the costs of a crime with its proceeds — for example, the felon who uses the stolen money to pay for the rented getaway car — would violate the money-laundering statute. And any wealth-acquiring crime with multiple participants would become money laundering when the initial recipient of the wealth gives his confederates their shares. Generally speaking, any specified unlawful activity, an episode of which includes transactions which are not elements of the offense and in which a participant passes receipts on to someone else, would merge with money laundering.

*Id*. at 516 (footnote omitted).  *See also United States v. Cloud*, 680 F.3d 396 (4th Cir. 2012) (holding that at individual cannot be convicted of money laundering for paying the 'essential expenses of operating' the underlying crime.).  In reversing convictions for promotional money laundering, the court explained:

> In this case, Cloud's money laundering convictions are based on payments to recruiters, buyers, and other coconspirators for the role each person played in the mortgage fraud scheme. Cloud's mortgage fraud depended on the help of others, and their help, in turn, depended on payments from Cloud. Such payments are no different than "the felon who uses the stolen money to pay for the rented getaway car" or "the initial recipient of the wealth" in "any wealth-acquiring crime with multiple participants . . . [who] gives his confederates their shares." Santos, 553 U.S. at 516 (plurality opinion). Because Cloud's money laundering convictions on Counts 28-33 were based on paying the "essential expenses" of his underlying fraud, we find a merger problem.

11

> . . .
>
> Simply put, Cloud lured his coconspirators with promises of payment. Without these payments, there would have been no recruiters, no buyers, no coconspirators. And without the recruiters to provide the buyers, or the buyers to provide the good credit, or the coconspirators more generally, there would have been no mortgage fraud. Applying *Santos* as interpreted in *Halstead*, we conclude that Cloud's substantive money laundering transactions were simply the "essential expenses" of his underlying fraud, thus presenting a merger problem.

*Id.* at 406-08.

To the extent the Eleventh Circuit has found the reasoning in *Santos* to apply only in illegal gambling cases, Mr. Pendergrass asserts that those cases were wrongly decided.

The evidence in this case was that Mr. Pendergrass ran a legitimate asset recovery business. Even if the Court credits Mr. McQueen's testimony, there was no evidence presented to show that the funds were deposited into Mr. Pendergrass' account with an agreement or with the intent to promote future fraudulent activity. Mr. Pendergrass asks that this Court grant his request for judgment of acquittal as to Count 6.

For all of the reasons outlined below, Mr. Pendergrass asserts that even if this Court credits the trial testimony of co-defendant McQueen, the convictions on the counts outlined here cannot stand. He asks this Court to grant his request for a judgment of acquittal as to counts 1, 2, 3, 6, 7, and 8.

Respectfully submitted this 21st day of February 2022.

/s/SARALIENE S. DURRETT
Saraliene S. Durrett
GA Bar No. 837897
1800 Peachtree Street, Suite 300
Atlanta, GA 30309
404-433-0855


/s/SYDNEY R. STRICKLAND
Sydney Rene Strickland
Strickland Webster, LLC
Suite 510-203
830 Glenwood Ave., S.E.
Atlanta, GA 30316
404-590-7967

Counsel for Mr. Pendergrass