IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>ALLEN J. PENDERGRASS | Criminal Action No.<br><br>1:17-CR-224-AT |

**Response to Defendant's Renewed Motion For Judgment of Acquittal**

The United States of America, by Kurt R. Erskine, United States Attorney, and Tracia M. King, Assistant United States Attorney for the Northern District of Georgia, files this Response to Defendant's Renewed Motion For Judgment of Acquittal.

## 1. Background

### A. Factual Background

Terrell McQueen ("McQueen") met Allen Pendergrass ("Pendergrass") in 2006.  (Doc. 264 at 68).  In or about November 2012, McQueen went to work for Pendergrass who had business called Asset Financial Recovery, Inc. ("AFR"). (*Id.* at 76)[1].  AFR was a business that collected unclaimed funds owed by counties and municipalities to individuals and various entities.  (Doc. 1; Doc. 264 at 77).

---

[1] McQueen previously worked for Pendergrass in about 2006 and again in 2010. (Doc. 264 at 70-73).

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

1

When operating legitimately, AFR contacted intended recipients of the unclaimed funds and offered to collect the money owed them in exchange for a percentage of the amount collected.  (Doc. 264 at 79-80).  McQueen and Pendergrass, however, used AFR to fraudulently obtain unclaimed funds.

The conduct at issued in Pendergrass's Renewed Motion for Judgment of Acquittal concern the unclaimed funds owed by the City of Atlanta to three particular entities - Johnson, Coleman, & Stephenson, LLC (Count One); Georgia Municipal Association (Count Two); and Long, Weinberg, Ansley & Wheeler (Count Three).  McQueen, with Pendergrass's assistance, mailed to the City of Atlanta a request for the unclaimed funds owed to these entities along with a forged power of attorney purportedly authorizing AFR to collect the funds on their behalf.  (*Id.* at 92-93, 107, 146, 152-55).  The City of Atlanta issued a check to AFR in care of the particular entity and mailed the checks to a Post Office Box opened and solely controlled by Pendergrass.  (*Id.* at 102-03, 150, 158; Gov. Tr. Ex. 14).  Each check was subsequently deposited into bank accounts opened and controlled by Pendergrass.  (Gov. Tr. Ex. 19; Gov. Tr. Ex. 20 at ; Gov. Tr. Ex. 22 at 24).

## B.  Course of Proceedings

A grand jury returned a 10-count indictment against Pendergrass on June 27, 2017.  (Doc. 1).  He was charged with Mail Fraud, Counts One through Five;

Money Laundering Conspiracy, Count Six; and Aggravated Identity Theft, Counts Seven through Ten).  (*Id*.).

Trial commenced in this matter on November 30, 2021.  (Doc. 240).  At the close of the government's case and again at the close of the evidence, defense counsel moved for a judgment of acquittal.  (Doc. 265 at 210-15; Doc. 266 at 43). The court denied the motion.  (Doc. 266 at 43).  The jury returned a guilty verdict on all counts.  Pendergrass renews his Motion for Judgment of Acquittal.

**2.  Pendergrass's Motion for Judgment of Acquittal Should Be Denied Because the Evidence Sufficiently Proved His Guilt on Each Count.**

Pendergrass renews his Motion for a Judgment of Acquittal with respect to Counts One through Three, Six, Seven and Eight.  Rule 29 provides the Court with the authority to enter a judgment of acquittal following a guilty verdict. Fed. R. Crim. P. 29 (c)(2).  A motion made under this rule is "a direct challenge to the sufficiency of the evidence presented against the defendant." *United States v. Aibejeris*, 28 F.3d 97, 98 (11th Cir. 1994).  In considering the motion, the district court

> must view the evidence in the light most favorable to the government and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. The prosecution need not rebut all reasonable hypotheses other than guilt. The jury is free to choose between or among the conclusions to be drawn from the evidence presented at trial, and the district court must accept all reasonable inferences and credibility determinations made by the jury.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

3

*United States v. Sellers*, 871 F.2d 1019, 1021 (11th Cir.1989).  The conviction must stand if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007).

### A. The evidence sufficiently established that Pendergrass aided and abetted the commission of Mail Fraud as charged in Counts One through Three and Aggravated Identity Theft as charged in Counts Seven and Eight.

Pendergrass challenges the sufficiency of the evidence for Mail Fraud as charged in Counts One, Two and Three of the Indictment.  He states that McQueen never alleged at trial that Pendergrass was personally involved in the charged conduct.  (Doc. 267 at 2-3)  Pendergrass further asserts that the evidence failed to show how he assisted McQueen in the transfer, possession, or use of the means of identification of others as alleged in the related Counts Seven and Eight.[2]  (Doc. 267 at 5)  These contentions should be rejected.

Counts One through Three charged Pendergrass with aiding and abetting Mail Fraud. To prove mail fraud, the government must show that the defendant "(1) intentionally participated in a scheme or artifice to defraud and (2) used the

---

[2] Count Seven charged Aggravated Identity Theft that occurred during and in relation to Count One.  Count Eight charged Aggravated Identity Theft during and in relation to Count Two of the Indictment. Because the offenses are related, they will be discussed together.

United States mails to carry out that scheme or artifice." *United States v. Ellington*, 348.3d 984 (11th Cir. 2003)(quoting *United States v. Waymer*, 55 F.3d 564, 568 (11th Cir.1995)) . "It is well settled in this circuit that so long as one participant in a fraudulent scheme causes a use of the mails in execution of the fraud, all other knowing participants in the scheme are legally liable for that use of the mails." *United States v. Munoz*, 430 F.3d 1357, 1369 (11th Cir.) (quoting *United States v. Toney*, 598 F.2d 1349, 1355 (5th Cir. 1979)), cert. denied, ––– U.S. ––––, 126 S. Ct. 2305, 164 L. Ed. 2d 816 (2006).  Moreover, "one need not personally mail or receive mail in order to be liable under mail fraud so long as co-schemers do so." *United States v. Funt*, 896 F.2d 1288, 1294 (11th Cir.1990).  Accordingly, the evidence is sufficient if it establishes beyond a reasonable doubt that McQueen knowingly caused the use of the mails in furtherance of the scheme to fraudulently obtain unclaimed funds, and that Pendergrass knowingly participated in that "scheme or artifice  to defraud." *See United States v. Funt*, 896 F.2d 1288, 1294 (11th Cir. 1990).

Pendergrass was additionally charged in Count Seven with aiding and abetting Aggravated Identity Theft during and in relation to Mail Fraud as charged in Count One; and in Count Eight with aiding and abetting Aggravated Identity Theft during and in relation to Mail Fraud as charged in Count Two.  To prove Aggravated Identity Theft, the government must show that the defendant "(1) knowingly transferred, possessed, or used; (2) the means of identification of another person; (3) without lawful authority; (4) during and in relation to" a mail

fraud as charged in Counts One and Two. *United States v. Barrington*, 648 F.3d 1178, 1192 (11th Cir. 2011).

Aiding and abetting is not a separate federal crime, "but rather an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense." *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004). For the jury to convict Pendergrass under this theory of liability, the government must prove that (1) someone – in this case, McQueen – committed the substantive offense; (2) the defendant contributed to and furthered the offense; and (3) the defendant intended to aid in its commission. *United States v. Tagg*, 572 F.3d 1320, 1324 (11th Cir. 2009). A conviction under the aiding and abetting theory stands "even when [the defendant] has not personally committed all the acts constituting the elements of the substantive crime aided." *Hornaday*, 392 F.3d at 1311 (quotation omitted).

Applying these principles, the evidence more than sufficiently supported the jury's guilty verdict. McQueen testified that he worked for Pendergrass at Asset Financial Recovery, Inc., which collected unclaimed funds legitimately and fraudulently. (*Id*. at 76, 79-80). Both Pendergrass and McQueen obtained lists from counties and municipalities containing the names of people and entities owed funds. (*Id*. at 78, 199 ). Pendergrass told McQueen that if he sent out enough letters to potential clients, at least two or three people should respond to their request to collect unclaimed funds on the potential client's behalf. (Doc. 265

at 68-69).  In reality, that didn't happen so Pendergrass and McQueen decided to take the money.  (*Id.* at 68-69).

Pendergrass and McQueen always worked together.  (Doc. 264 at 92-93).  Both Pendergrass and McQueen sent requests under the Freedom of Information Act to obtain lists showing unclaimed funds owed to people and entities.  (Doc. 265 at 65).  They both conducted research to identify companies no longer in business or companies with individuals who were difficult to locate.  (Doc. 264 at 93).

Both Pendergrass and McQueen would sign other people's name on the power of attorney forms to make them appear more believable by not having the same handwriting on the document.  (Doc. 264 at 86-87).  Another person, Eric Fitchpatric also "lifted" signatures and notary seals from real documents for use on the fraudulent forms.  (*Id.* at 87).  McQueen and Pendergrass both reviewed the documents to make sure they "looked authentic."  (*Id.* at 154).

With respect to the charged conduct, the evidence established the following:

### 1.  Count One and Seven – Johnson, Coleman & Stephenson LLC

McQueen testified that Johnson, Coleman & Stephenson LLC was a claim that he and Pendergrass worked together.  (Doc. 264 at 92-93).  McQueen signed the letter and he printed and signed the name Sonia Johnson on page 2 of the fraudulent Limited Power of Attorney. (*Id*. at 93; Gov. Tr. Ex. 2).

Sonia Toson, formerly Sonia Johnson, testified that she never hired AFR to recover funds from the City of Atlanta on behalf of the law firm Johnson,

Coleman & Stephenson, LLC. (Doc. 263 at 121-22). She confirmed that her name was on the fraudulent Limited Power of Attorney, but that she did not sign the form and she did not authorize anyone to sign her name. (*Id*. 263 at 123).

The City of Atlanta mailed the unclaimed funds to P.O. Box 1809, Fayetteville, Georgia, which was the mailbox that Pendergrass opened and over which he had sole control. (Doc. 264 at 102-03; Gov. Tr. Ex. 14). McQueen explained that he was to receive 33% and Pendergrass would keep the rest for this particular deal. (*Id*. at 93).

When they received the check from the city, they couldn't deposit it so both Pendergrass and McQueen went to the City of Atlanta to request that it reissue the check. (Doc. 264 at 107). The city agreed and reissued the check to AFR in care of Johnson, Coleman & Stephenson LLC. (*Id*. at 107). After that check was received, it was deposited into a bank account that Pendergrass controlled.[3] (*Id*. at 106; Gov. Tr. Ex. 22 at 24). Ms. Toson testified that the firm never received the funds. (Doc. 263 at 124).

### 2. Count Two and Eight – Georgia Municipal Association

McQueen testified that he sent the request to the City of Atlanta for the unclaimed funds due to Georgia Municipal Association. (Doc. 264 at 146). He

---

[3] Gov. Tr. Ex. 22 is the Bank of America bank account records for Asset Financial Recovery, Inc. The exhibit shows that Pendergrass is listed as CEO. McQueen and Deidre Barber are listed also listed on the account as the President and Vice President respectively.

learned of this entity because it was on a list that he and Pendergrass reviewed. (*Id*. at 146).  Since he and Pendergrass were not sure which requests the City of Atlanta would pay, they submitted two to three requests with this being one of those submissions.  (*Id*. at 146-47).

McQueen explained that the Limited Power of Attorney was forged. The signature in the name of Lou Comer and the seal were copied from documents McQueen found on the internet.[4]  (Doc. 264 at 147-48).

The City of Atlanta mailed the unclaimed funds to P.O. Box 1809 via a check made payable to Pendergrass's company AFR in care of Georgia Municipal Association.  (Doc. 264 at 150-51; Gov. Tr. Ex. Ex. 3).  On June 20, 2013, Pendergrass was captured by Wells Fargo bank surveillance camera depositing the check into bank account ending in 3556 in the name of Asset Financial Recovery, Inc.  (Gov. Tr. Ex. 19; and Gov. Tr. Ex. 20 at 127).  Pendergrass was the sole person listed on the account.  (Gov. Tr. Ex. 20 at 1-4).  The bank records confirm that the funds were never paid to Georgia Municipal Association or Lou Comer.  (Doc. 265 at 189; Gov. Tr. Ex. 20).

### 3.  Count Three – Long, Weinberg, Ansley & Wheeler.

McQueen submitted a request for unclaimed funds owed to Long, Weinberg, Ansley & Wheeler.  (Doc. 264 at 152).  He also confirmed that Sidney F. Wheeler,

---

[4] Special Agent Wesley Cooper confirmed that Lou Comer was a real person. (Doc. 265 at 183-84).

the name listed on the Limited Power of Attorney, did not sign the fraudulent document.  (Doc. 264 at 153).  This entity was a closed law firm, and it was difficult locating former partners.  (Doc. 264 at 153).

The City of Atlanta mailed the unclaimed funds to P.O. Box 1809 via a check made payable to Pendergrass's company AFR in care of the law firm.  (Doc. 264 at 158).  On May 15, 2013, a surveillance camera captured Pendergrass depositing the check into the Well Fargo bank account for AFR ending in 3556.  (Gov. Tr. Ex. 19; Gov. Tr. Ex 20 at 119).

The government additionally introduced into evidence one other incident under 404b and five other incidents as intrinsic evidence.[5]  Those incidents completed the story for the jury about Pendergrass's involvement in this scheme to obtain unclaimed funds fraudulently.  It additionally established Pendergrass's knowledge of the fraud scheme and his intent to participate in it.  Consequently, and despite assertions to the contrary, the evidence sufficiently established that Pendergrass aided and abetted Mail Fraud.

 Pendergrass knowingly aided and abetted the scheme and artifice to defraud the City of Atlanta.  He, among other things, participated in identifying unclaimed funds to obtain fraudulently from the City of Atlanta.  He permitted

---

[5] Pendergrass challenges the admissibility of this evidence in a separate motion for new trial.  (See Doc. 268).  The incidents at issue in that motions concern the Atlanta Quarterback Club, the Lee Family Trust, Holland and Knight, Hemisphere, Inc., Tousa Homes, Inc., and the Glenridge Drive Group.

his company's name to be used. He provided the workspace where fraudulent documents were created.  He provided the mailing address used for the receipt of the checks.  He deposited the checks into banks accounts he controlled.  He did these knowingly and with the intention to facilitate the fraud in the charged counts.

In addition to challenging the Mail Fraud counts, Pendergrass further contends that the evidence failed to show he assisted McQueen in the transfer, possession or use of Sonia Johnson's and Lou Comer's means of identification as charged in Counts Seven and Eight respectively.  In *Rosemond v. United States*, however, the Supreme Coted explained,

> [i]n proscribing aiding and abetting, Congress used language that comprehends all assistance rendered by words, acts, encouragement, support, or presence," *Reves v. Ernst & Young*, 507 U.S. 170, 178, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993)—even if that aid relates to only one (or some) of a crime's phases or elements. So, for example, in upholding convictions for abetting a tax evasion scheme, this Court found '-irrelevant' the defendants' 'non-participation' in filing a false return; we thought they had amply facilitated the illegal scheme by helping a confederate conceal his assets. *United States v. Johnson*, 319 U.S. 503, 515, 518, 63 S. Ct. 1233, 87 L. Ed. 1546 (1943). "[A]ll who shared in [the overall crime's] execution," we explained, "have equal responsibility before the law, whatever may have been [their] different roles." *Id.*, at 515, 63 S. Ct. 1233. And similarly, we approved a conviction for abetting mail fraud even though the defendant had played no part in mailing the fraudulent documents; it was enough to satisfy the law's conduct requirement that he had in other ways aided the deception. See Pereira v. United States, 347 U.S. 1, 8–11, 74 S. Ct. 358, 98 L. Ed. 435 (1954).

*Rosemond*, 572 U.S. 65, 73-43, 134 S. Ct. 1240, 1246-47, 188 L. Ed. 2d 248 (2014). The evidence in the instant matter established that Pendergrass aided and abetted the commission of these offenses.  His conduct facilitated the commission of the overall crime.  Moreover, Pendergrass engaged in that conduct with the requisite intent.  *See United States v. Tagg*, 572 F.3d 1320, 1324 (11th Cir. 2009).

To the extent he urges that the government must also prove he had advanced knowledge of the identity theft, the evidence established that Pendergrass was part of an ongoing scheme that utilized forged power of attorney forms each time a fraudulent request was made for unclaimed funds.  He therefore knew that names of other people and forged signatures would be used to convince governments to release the funds.  The jury therefore properly convicted Pendergrass on Counts Seven and Eight.

The district court should accordingly deny the defendant's motion as to Counts One, Two Three, Seven, and Eight.

## B. The evidence sufficiently established that Pendergrass committed Promotional Money Laundering Conspiracy.

To prove a conspiracy to commit money laundering under 18 U.S.C. § 1956(h), the government must show beyond a reasonable doubt "(1) [an] agreement between two or more persons to commit a money-laundering offense; and (2) knowing and voluntary participation in that agreement by the defendant."  *United States v. Broughton*, 689 F.3d 1260, 1280 (11th Cir. 2012).  The underlying money laundering offense charged in this matter was the violation of

18 U.S.C. § 1956(a)(1)(A)(i).  Accordingly, to prove promotional money laundering, the government must show the defendant (1) conducted or tried to conduct a financial transaction; (2) knew the involved funds were the proceeds of some unlawful activity; (3) the money did in fact come from an unlawful activity, specifically Mail Fraud; and (4) the defendant intended to promote the carrying on of the specified unlawful activity.  <u>Eleventh Circuit Pattern Jury Instructions (Criminal Cases),</u> Offense Instruction No. 74.5 (2020).

Pendergrass urges that he cannot be convicted of promotional money laundering conspiracy where it is shown that the proceeds were used to pay the operating expenses of an otherwise legitimate business.  (Doc. 267 at 9).  In support, he relies on *United States v. Santos*, 553. U.S. 507, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008).  In *Santos*, the Supreme Court held that revenue in a gambling business used to pay essential operating expenses was not proceeds under 18 U.S.C. § 1956.  *Id*. at 508.

The Eleventh Circuit, however, found that

> *Santos* has limited precedential value. Three parts of Justice Scalia's four-part opinion are for a plurality of justices, and those parts do not state a rule for this case. When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds. The narrow holding in *Santos*, at most, was that the gross receipts of an unlicensed gambling operation were not "proceeds" under section 1956.

*United States v. Demarest*, 570 F.3d 1232, 1242 (11th Cir. 2009).  Therefore, in cases that do not involve gambling, proceeds remain defined as "'what is produced by or derived from something ... by way of total revenue; the total amount brought in.' This definition includes receipts as well as profits." *United States v. Jennings*, 599 F.3d 1241, 1252 (11th Cir. 2010) (quoting *United States v. Silvestri*, 409 F.3d 1311, 1333 (11th Cir. 2005)).

The Eleventh Circuit has additionally held that spending proceeds on the expenses of a business used to generate the unlawful proceeds is evidence supporting money laundering.  For example, in U*nited States v. Azmat*, 805 F.3d 1018, 1037-38 (11th Cir. 2015), the Court rejected Dr. Azmat's claim that the government failed to prove he conspired to commit money laundering.  It found that proceeds from an illegal pill operation in which he participated were used to pay for the clinic's lease, pay salaries, pay additional overhead and operating costs which enabled the participants to continue dispensing  controlled substances unlawfully in exchange for money.  *Id*.  The Court concluded that the illegal proceeds of the pill-mill operation were used to "promote" the clinic's on-going drug-dispensing activities.  *Id*. at 1038.

Additionally, in *United States v. Ramirez*, 724 Fed. App'x 704 (11th Cir. 2018), the Eleventh Circuit affirmed another promotional money laundering conspiracy conviction. In that case, the Court found that

the evidence introduced in the District Court would permit a jury to determine that various individual at the center of the conspiracy . . . agreed to submit fraudulent insurance reimbursement claims and use that money to pay the participants in the scheme, fund clinics, and pay the salaries of the employees at the clinics where the chiropractors worked. The trial evidence was also sufficient to permit a jury to find that Mr. Karow, Mr. Diehl, and Mr. Kreitman knew that their salaries, as well as the expenses of the clinics, were funded with the fraudulent insurance proceeds. Because all three codefendants continued to work and generate profits knowing that fraudulent insurance proceeds were being used to pay their salaries and clinic expenses, the jury could determine that all three had joined the conspiracy to commit money laundering.

724 Fed. App'x at 712-13.

The evidence presented at Pendergrass's trial established that the legitimate business of AFR generated only about ten percent of money in the business. (Doc. 265 at 68).  The rest of the money therefore resulted from McQueen's and Pendergrass's fraud scheme to obtain unclaimed funds.  The evidence also showed that Pendergrass paid McQueen from the bank account used for the deposit of fraudulently obtained unclaimed funds.  (Gov. Tr. Ex. 20; *see also* Doc. 264 at 160, 185-86; Gov. Tr. Ex. 22;).  He also paid himself and Fitchpatric from the same account.  (*Id.*; *see also* Gov. Tr. Ex. 22).  Pendergrass additionally paid the bills for the office, which was where they conducted research on companies for use in the illegitimate fraud scheme and where they created fraudulent Power of Attorney documents. (Doc. 265 at 56-57).  Pendergrass purchased burner phones to obtain phone numbers that would not be traced back to them.  (*Id.* at

62).  He paid for email address tmcqueen@assetfinancialrecovery.com.  (*Id*. at 62).
He also helped pay the cost associated with purchasing unclaimed funds lists
that McQueen requested.  (*Id.* at 65; *see also* Gov. Tr. Ex. 20).  All of these
payments facilitated McQueen's and Pendergrass's ability to continue the mail
fraud scheme.

Pendergrass further urges that the money laundering conviction should be set
aside because the government failed to prove that he knew the funds were
proceeds of unlawful activity, and that there was an actual agreement between
Pendergrass and McQueen as required to establish a conspiracy.  (Doc. 267 at 7-
9).  The evidence, as described above, establishes otherwise.

Moreover, a "[c]onspiracy may be proven by circumstantial evidence and the
extent of the defendant's knowledge of details in the conspiracy does not matter
if the proof shows that he knew the essential objective of the conspiracy." *United
States v. Kennard*, 472 F.3d 851, 856 (11th Cir.2006) (quotation and alterations
omitted).  Proof of a "formal agreement" is not required and the government
may likewise establish the agreement by circumstantial evidence. *United States v.
Arias–Izquierdo*, 449 F.3d 1168, 1182 (11th Cir. 2006).  The bank account records,
other exhibits, and trial testimony established that Pendergrass and McQueen
conspired to commit money laundering and that Pendergrass knew the funds at
issue were proceeds from their fraud scheme.  The court should accordingly
deny Pendergrass's motion as to Count Six.

**Conclusion**

For the reasons stated herein, the district court should deny Pendergrass'
Renewed Motion For Judgment of Acquittal.


Respectfully submitted,

KURT R. ERSKINE
*United States Attorney*


/s/TRACIA M. KING
*Assistant United States Attorney*
Georgia Bar No. 421380


600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

March 18, 2022

/s/ TRACIA M. KING

TRACIA M. KING

*Assistant United States Attorney*