IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

*v.*

ALLEN J. PENDERGRASS

Criminal Action No.

1:17-CR-224-AT

**United States Response to Defendant's Motion For New Trial**

The United States of America, by Kurt R. Erskine, United States Attorney, and Tracia M. King, Assistant United States Attorney for the Northern District of Georgia, files this Response to Pendergrass's Motion for New Trial.

The Court may grant a  motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a).  Where the request for a new trial is based on improperly admitted evidence, the defendant must show that an objection was properly preserved, the court abused its discretion in admitting or rejecting the evidence, and the error was prejudicial to the defendant. *United States v. Stephens*, 365 F.3d 967, 974 (11th Cir. 2004). The error must have created circumstances that rendered the trial prejudicially unfair. *United States v. Green,* 2016 WL 3866567 (S.D. Ga July 13, 201).  Motions for a new trial are highly disfavored and should be granted with great caution. *United States v. Scrushy*, 721 F.3d 1288, 1304 (11th Cir. 2013).

1. **The district court did not abuse its discretion when it admitted evidence of six uncharged incidents pursuant to 404b or as intrinsic evidence of the charged conduct because the evidence was not unfairly prejudicial.**

Pendergrass contends that the admission of six uncharged incidents unfairly prejudiced him at trial and rendered the jury verdict unreliable. (Doc. 286 at 2). The motion for a new trial should be denied.

### A. Background

#### 1. The Indictment

The indictment charged, in part, that two companies associated with Pendergrass – Guishard, Wilburn & Shorts, LLC ("Guishard") and (Asset Financial Recovery, Inc. ("AFR") – were businesses that provided "asset recovery services, including locating unclaimed funds held by local and state governments and returning funds to the rightful owners for a fee." (Doc. 1 at 2). Pendergrass and McQueen also used several other companies for asset recovery including Attorney Recovery Systems. (Doc. 1 at 2).

The Indictment further alleged that McQueen, Pendergrass, and others mailed and emailed requests to local, county and state governments requesting lists of unclaimed funds. (Doc. 1 at 3). After receiving these lists, McQueen and Pendergrass mailed correspondences and power of attorney forms fraudulently claiming that Guishard, AFR, or another related company was an agent for the rightful owner of the unclaimed funds. (Doc. 1 at 3). To facilitate their fraud, they used the actual names and forged signatures of employees and former

employees of companies they claimed to represent that was owed the unclaimed funds. (Doc. 1 at 3). Pendergrass, McQueen, and others deposited fraudulently obtained funds into bank accounts they controlled and used the proceeds without returning the funds to the rightful owners. (Doc. 1 at 3).

### 2. The Six Uncharged Incidents

The evidence regarding the six uncharged incidents that are the subject of Pendergrass's motion is briefly summarized below:

#### a. Atlanta Quarterback Club Incident

Pendergrass signed a letter dated February 7, 2013, on Guishard letterhead that was addressed to the City of Atlanta. (Gov. Tr. Ex. 11)[1]. The letter fraudulently requested unclaimed funds owed to the Atlanta Quarterback Club. (Doc. 264 at 167-69). The letter included a fraudulent Limited Power of Attorney form on which the name and forged signature of Melvin Waller was listed as the person authorizing Guishard to collect the funds. (*Id*. at 168). The letter requested that, and the city mailed, payment be mailed P.O. Box 1809, Fayetteville Georgia, which was a mailbox opened and controlled by Pendergrass. (Gov. Tr. Ex. 14 at 1 and

---

[1] This exhibit was recovered from Pendergrass' business during the execution of a search warrant on September 19, 2013. (Doc. 263 at 39, 44).

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

5).  McQueen deposited the check into a bank account that McQueen opened.  (Doc. 264 at 169-70).

b.  Lee Family Trust Incident

Pendergrass participated in a scheme to defraud the government of Harris County, Texas by forging and mailing correspondence, including a power of attorney form and other documents fraudulently claiming that his business, Attorney Recovery System, was an agent of Lee Family Trust, the rightful owner of unclaimed funds.  (Gov. Tr. Ex. 9)[2].  Michael Cohen ("Cohen") testified that he is an attorney and that he met with Pendergrass who discussed a business plan to "data mine data from counties for unclaimed funds."  (Id. at 3, 5-6).  Pendergrass asked Cohen to assist by becoming the escrow agent and, in the future, to write letters to potential people who had unclaimed funds.  (Id.).  Pendergrass gave Cohen five or six checks for the Lee Family Trust account, which Cohen deposited into a trust account.  (Id. at 6, 7).  Pendergrass also opened a separate bank account in the name of Lee Family Trust with himself as the sole signee. (Gov. Tr. Ex. 25).

Pendergrass showed Cohen a power of attorney form that had Lee's name on it and the form was notarized so he believed it was proper.  (Id.).

---

[2] This exhibit was recovered from Pendergrass' business during the execution of a search warrant on September 19, 2013. (Doc. 263 at 39, 44).

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

4

After Cohen became suspicious about Pendergrass and his company, he contacted the actual Attorney Recovery System and located the attorney for the Lee Family Trust who advised that Lee's signature on the form was not her actual signature.  (*Id*. at 10).  Cohen returned the funds to Harris County and sent an email to Pendergrass advising that he believed he had been deceived by Pendergrass.  (*Id*. at 11).

c.  Holland and Knight Incident

Pendergrass along with McQueen devised a scheme to defraud the City of Atlanta out of unclaimed funds owed to law firm Holland and Knight. The scheme was achieved by falsifying a power of attorney document and submitting a letter on Attorney Recovery System, Inc. letterhead fraudulently claiming that Pendergrass's business was an agent for Holland and Knight.  (Gov. Tr. Ex. 12)[3].  McQueen testified that he and Pendergrass worked together to fraudulently obtain the unclaimed funds. (Doc. 264 at 82, 83-87, 88, 96).  McQueen, who directly drafted the forged documents and deposited the check, provided a portion of the proceeds to Pendergrass.  (*Id*. at 98).

---

[3] This exhibit was recovered from Pendergrass' business during the execution of a search warrant on September 19, 2013. (Doc. 263 at 39, 44).

d.  Hemisphere, Inc. Incident

On or about October 2012, Pendergrass through his company, Guishard, sent a letter that he signed to the City of Atlanta seeking unclaimed funds owed to Hemisphere, Inc.  (Doc. 13)[4].  As a part of the scheme, Pendergrass included a forged power of attorney form falsely claimed that Guishard was the authorized agent of Hemisphere, Inc.  (*Id*.). Pendergrass opened a bank account in the name of Hemisphere, Inc. with himself as the sole signee.  (Doc. 26). He deposited the unclaimed funds into this account.  (*Id*.).

e.  Tousa Homes Incident

Pendergrass signed a letter dated April 13, 2013, on Guishard letterhead that was addressed to the City of Fort Collins, Colorado.  (Gov. Tr. Ex. 7[5]; Doc. 264 at 199).  The letter fraudulently requested unclaimed funds owed to the Tousa Homes, Inc.  (*Id*.).  The letter included a forged Limited Power of Attorney form purportedly authorizing Guishard to collect the funds. (*Id*.; Doc. 264 at 200). McQueen testified that he and Pendergrass created the forged power of attorney form together with Pendergrass signing the

---

[4] This exhibit was recovered from Pendergrass' business during the execution of a search warrant on September 19, 2013. (Doc. 263 at 39, 44).

[5] This exhibit was recovered from Pendergrass' business during the execution of a search warrant on September 19, 2013. (Doc. 263 at 39, 44).

name Sorana Keever, the authorizing person listed on the form.  (Doc. 264 at 200).

f.  The Glenridge Drive Group

McQueen testified that he and Pendergrass fraudulently obtained unclaimed funds owed by the City of Atlanta to The Glenridge Ridge Drive Group. (Doc. 264 at 109; Gov. Tr. Ex. 36). The check obtained from the City of Atlanta was deposited into Asset Financial Recovery's bank account at Bank of America (Gov. Tr. Ex. 22 at 25). This check was deposited into the same bank account on the same date and at the same time as the fraudulently obtained check for unclaimed funds owed to Johnson, Coleman & Stephenson, LLC., which was Count 1 of the Indictment. (Doc. 22 at 23-25).

**B.  Argument**

At trial, Pendergrass argued that he lacked knowledge of the charged conduct, and he lacked the intent to commit the crimes.  In fact, Pendergrass requested the district court to charge the jury on this specific defense theory.[6] He

---

[6] The Defendant's theory of defense stated, in part

As to Counts 1-5 (Mail Fraud): The Defendant contends that Mr. Pendergrass did not know about Mr. McQueen's specific acts of fraud before they occurred, and therefore, the Government has not shown that Mr. Pendergrass possessed the legally required intent to defraud with respect to the offenses charged in Counts 1 through 5.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

urged the jury to find that McQueen acted alone and to accordingly acquit him on all counts.

The government sought to introduce evidence of other incidents to establish that Pendergrass did in fact act with the requisite knowledge and intent.[7] Accordingly, the government introduced the Tousa Homes incident as 404b evidence. Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a [defendant]'s

---

As to Count 6 (Money Laundering Conspiracy): The Defendant contends that Mr. Pendergrass did not know that the checks related to the scheme outlined in Counts 1 through 5 were proceeds of fraud, rather than the product of lawful asset collection efforts. Therefore, the Defendant contends that the Government has not shown that Mr. Pendergrass knowingly conducted financial transactions with the proceeds of that fraud. For the same reasons, the Defendant also contends that Mr. Pendergrass did not knowingly conduct any financial transactions with the intent to promote the carrying on of that fraudulent scheme.

As to Counts 7-10 (Aggravated Identity Theft): The Defendant contends that the Government has failed to prove beyond a reasonable doubt that the Defendant intentionally associated with or participated in transferring, possessing, or using the means of identification of S.J. (Count 7), L.C. (Count 8), J.B. (Count 9), F.A. (Count 10).

(Doc. 266 at

[7] Whether admitted as evidence pursuant to 404b or as intrinsic evidence, the district court must also find that the probative value of the proffered evidence is not substantially outweighed by unfair prejudice and that it meets the other requirements of Rule 403. Fed. R. Evid. 403; see Baker, 432 F.3d at 1205 & n. 9.

character in order to show that on a particular occasion the person acted in accordance with the character." Evidence of uncharged conduct, however, is admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To be admissible as Rule 404(b) evidence,

> (1) it must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403.

*United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (citing *United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000)). The Tousa Homes incident involved Pendergrass fraudulently obtaining unclaimed funds from a local government in Ft. Collins, Colorado utilizing the same methods used in the charged conduct. The request for these funds was dated during the exact time frame as the charged conduct. The evidence was therefore relevant to establish Pendergrass's intent, knowledge, and absence of mistake regarding the charged conduct.

Government additionally introduced the remaining incidents at issue as intrinsic evidence of the charged conduct. Evidence is intrinsic if it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense[s], (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged

offense[s]." *Edouard*, 485 F.3d at 1344 (quoting *United States v. Baker*, 432 F.3d 1189, 1205 n. 9 (11th Cir .2005), abrogated on other grounds by *Davis v. Washington*, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)).  These incidents were part of series of transactions as the charged offenses and they were inextricably intertwined with the charged conduct.  These incidents also completed the story for the jury about the fraud scheme in which Pendergrass participated.

The government filed a pretrial motion to introduce the incidents above, except the Glenridge Drive Club, as intrinsic evidence or alternatively as 404b evidence.  After a pretrial hearing, the district court ruled that the incidents were admissible.  It stated,

> After hearing argument from counsel, the Court concludes that the Colorado conviction is introduced for a proper purpose: to show Mr. Pendergrass's intent and knowledge in connection with the charged crimes, which are highly similar to the allegations in the Colorado complaint. Like the charges in the Colorado complaint, the Indictment in this case involves alleged attempts to defraud a local government through forged correspondence and fake power of attorney documents, all occurring during the same time frame as the charged conduct in the Indictment. Evidence of the Colorado conviction is therefore presented for an appropriate purpose under the first prong of the 404(b) analysis.
>         . . .
> As to the second prong of the analysis, the Court finds that there is sufficient proof for a jury to find that Mr. Pendergrass committed the acts alleged in the Colorado complaint, as he pled guilty in that case.

As to the third balancing prong, the Court finds that the probative value of the Colorado conviction outweighs any prejudicial effect at this juncture.

…

Upon review of the Indictment, and after hearing argument from counsel, the Court finds that all five alleged "bad acts" are "inextricably intertwined" with the evidence regarding the charged offenses. Four of the "other bad acts" involve alleged attempts to defraud the City of Atlanta within the same time period as the allegations in the Indictment. As counsel for the Government demonstrated at the pretrial conference, the allegedly forged documents pertaining to the charged offenses (e.g. power of attorney forms) are materially the same as the documents pertaining to the "other bad acts." For these reasons, the Court concludes that the uncharged City of Atlanta offenses were "linked in time and circumstances with the charged crime," were part of the same scheme, and were inextricably intertwined. Id. While the Lee Family Trust "bad act" involved an alleged attempt to defraud Harris County, Texas and not the City of Atlanta, it also occurred in the same time span as the charged conduct and involved the same scheme, including the use of similar documents. Under the circumstances and in light of the governing authority in this Circuit, the Court finds that the Lee Family Trust incident is also "inextricably intertwined" such that it is not extrinsic evidence proscribed by Rule 404.

(Doc. 227 at 7-8) (internal citations omitted).  Given the probative value of the evidence was not outweighed by substantial prejudice, the court additionally declined to exclude the evidence.  (*Id.* at 9.).  Although the Glenridge Drive Group was not part of the government's pretrial motion, the evidence regarding that transaction was likewise admissible as intrinsic evidence for the same reasons stated above regarding the incidents involving the City of Atlanta.

The district court's analysis regarding the admissibility of this evidence demonstrates that it thoughtfully considered the law and its application to the evidence at issue.  During the trial, the district court remained mindful of its obligation to prevent the introduction of unfairly prejudicial evidence.

In fact, during the course of the trial,  Inv. Ricks, Atlanta Police Department, testified that he participated in the execution of a search warrant at Pendergrass's business location.  (Doc. 263 at 39-40).  One of the items seized during the search was a set of documents concerning the Tousa Homes incident, Gov. Tr. Ex. 7. (Doc. 263 at 44).  Those documents were admitted without objection.  (Doc. 263 at 44-46).  McQueen was also permitted to testify about the documents to explain their creation and the role he and Pendergrass played regarding that incident. (Doc. 264 at 195).  The district court, however, reversed its ruling regarding the Pendergrass's conviction related to the Tousa Homes incident and ruled it inadmissible given other evidence admitted at trial.  (Doc. 264 at 181).

Pendergrass nevertheless asserts that the admission of these incidents was unfairly prejudicial.  (Doc. 268 at 2).  Evidence is unfairly prejudicial if it would "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 650, 136 L.Ed.2d 574 (1997).  That was not the situation in this case.

To demonstrate how the evidence was unfairly prejudicial, Pendergrass asserts that the Holland and Knight incident was discussed at least four times during the trial and the Lee Family Trust incident was discussed at least five

times during the trial. (Doc. 268 at 5).  However, there is no case law supporting Pendergrass's assertion that the mere number of times intrinsic evidence is mentioned sufficiently establishes unfair prejudice warranting a new trial.

With respect to Tousa Homes, Pendergrass primarily argues that McQueen failed to mention his involvement with that incident during an interview with agents in 2018.[8] (Doc. 268 at 6).  That, however, did not render his testimony inadmissible as unfairly prejudicial.

Moreover, and despite assertions to the contrary, the evidence sufficiently established Pendergrass's connection to the Tousa Homes incident. Government's Exhibit 7, which was in evidence by the time McQueen testified, included the letter using Guishard Letterhead requesting the unclaimed funds owed to Tousa Homes.   Gov. Tr. Ex. 7.  The letter was signed by Pendergrass. *Id*.  The letter requested that the check be mailed to the same P.O. Box used for the receipt of the checks involved in the charged conduct.  (*Id*.)  That P.O. Box was opened and controlled by Pendergrass.  (Gov. Tr. Ex. 14).  The physical evidence accordingly connected him to the incident.

Pendergrass further argues that evidence of these other incidents was not necessary to the government's case, therefore its admission and repeated references to it rendered the jury verdict unreliable. (Doc. 268 at 7-8).  This

---

[8] McQueen explained that when he spoke to agents in 2018, he didn't remember his involvement. (Doc. 265 at 147).  He remembered only after he recently saw the documents and recognized his handwriting on the papers. (*Id*.).

argument, however, ignores the fact that Pendergrass argued at trial that he had no knowledge of the charged conduct, and that he lacked the intent necessary for a conviction.

The government's evidence establishing the charged conduct showed McQueen signed the letters submitted to the City of Atlanta and submitted them with the forged power of attorney form. The other incidents were therefore "necessary" to prove the fraud scheme, Pendergrass's involvement, his knowledge, and his intent.

Furthermore, to the extent any prejudice resulted from the admission of this evidence, it was mitigated when the district court gave the defendant's requested limiting instruction to the jury. *See United States v. Edouard*, 485 F.3d 1324 (11th Cir. 2007) (citing *United States v. Diaz–Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993). The district court thusly instructed,

> I want -- before he does come in, I wanted to give the jury an instruction.
> During the trial and in particular with our last witness and several others, you have heard evidence of acts allegedly done by the defendant, Mr. Pendergrass, in connection with Tousa Homes, Quarterback Club, Weissman Nowack Curry & Wilco, the Lee Family Trust most recently, and Holland & Knight and Hemisphere, Inc.
> These acts are not ones that are charged in the indictment. You have been provided this information because the Government believes these acts are intrinsic to the charged conduct. That means that they are -- that they view them as necessary to complete the story of the crimes they have charged and which you have to actually make -- reach a verdict on.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

I caution you that the defendant is on trial only for the specific crimes charged in the indictment, not for any of these collateral acts that are being introduced to you and introduced into evidence.

You are here to determine from the evidence in this case as a whole though whether the defendant is guilty or not guilty of the specific crimes charged in the indictment that were identified to you from the start, the ten offenses.

So this will be deemed relevant evidence, but it is not -- these are not the crimes actually charged. And you are to be careful in understanding that and assessing the evidence accordingly.

Thank you.

(Doc. 264 at 64-65).  The district court should therefore deny the motion for new trial.

## 2.  The prosecutor did not impermissibly vouch for the credibility of witnesses.

Pendergrass additionally argues that the government impermissibly vouched for the credibility of witness McQueen, Eric Fitchpatric ("Fitchpatric") and Michael Cohen ("Cohen") when he asserted his personal belief in their truthfulness.[9]  (Doc. 268 at 12).  This argument should be rejected.

"'Attempts to bolster a witness by vouching for his credibility are *normally* improper and error.'" *United States v. Sims*, 719 F.2d 375, 377 (11th Cir.1983)

---

[9] Pendergrass's motion doesn't specifically name the witnesses, but it cites to the transcript where the alleged improper statements are located.  Those transcript references make clear that McQueen, Fitchpatric and Cohen are the witnesses who are subject of the allegedly improper comments.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

(emphasis added) (quoting *United States v. Ellis*, 547 F.2d 863, 869 (5th Cir.1977)). One circumstance in which an attempt is improper is where the prosecutor's comment could cause the jury to reasonably believe that the prosecutor indicated a personal belief in the witness' credibility. *Id*. In assessing whether the prosecutor asserted his belief, the district court should consider whether (1) the prosecutor placed the prestige of the government behind the witness by making explicit assurances of the witness's credibility, or (2) the prosecutor implicitly vouched for the witness's credibility by implying that evidence not formally presented to the jury supports the witness's testimony. *United States v. Castro*, 89 F.3d 1443, 1456–57 (11th Cir.1996); *United States v. Eyster,* 948 F2d 1196, 1206 (11th Cir. 1991) (citing *Sims*, 719 F.2d at 377).

"The prohibition against vouching does not forbid prosecutors from arguing credibility, which may be central to the case." *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir.), cert. denied, 500 U.S. 958, 111 S. Ct. 2271, 114 L.Ed.2d 722 (1991). Here, credibility was central to the Pendergrass case. Even so, the prosecutor did not impermissibly vouch for the credibility of the government's witnesses.

Pendergrass specifically identifies three comments – one made during the government's closing argument concerning Fitchpatric; one made during the government's rebuttal concerning McQueen and Fitchpatric; and one made during the rebuttal argument concerning Cohen. With respect to the comment

made during the government's closing argument concerning Fitchpatric, the prosecutor stated,

> Now let's talk about Fitchpatric. And we brought him up here and I asked him, do you want to be here? He did not. He -- I heard him get choked up on at least two occasions.
>
> Now, what does that show you? Does it show you he got up here and lied about what Mr. Pendergrass told him to do? No. He didn't want to be here. He didn't want to testify against Mr. Pendergrass. I hope you heard that in his voice.
>
> But he did. And how do we know he did it truthfully? It is corroborated by who? Mr. McQueen. So you should consider his testimony credible. And the defense may get up and argue, well, he wasn't charged and that's why -- no, he wasn't charged because he is a minor bit player in an operation run by Mr. Pendergrass and Mr. McQueen.
>
> Look at the checks he received. $500 here. $300 there. Not 9000, not 10,000, not 60,000. Not the money that they received. But he was truthful. He didn't want to be here. He even said something, if you recall his testimony. He said Mr. Pendergrass is a good -- he is a good guy. I said, why are you upset? Because he is a good man.

(Doc. 266 at 64-65). The prosecutor did not make "explicit assurances" that the witness testified truthfully. Nor did the prosecutor vouch for the witness's credibility based on facts not in evidence. Instead, the prosecutor's statement regarding truthfulness was based on other evidence presented to the jury – the fact that the witness was reluctant to testify, his testimony was corroborated by other evidence including McQueen's testimony, and his relationship with Pendergrass.

The second comment Pendergrass complains about was made in rebuttal and concerned witness Cohen.  The prosecutor stated,

> We have not talked much about Lee Family Trust. But you heard from Michael Cohen. And he was honest. He came in here and said, listen, I can't identify the person who came in and shook my hand and said it was Allen Pendergrass. But I sent him an email. You have a copy of that email. Who is it sent to? Allen Pendergrass. The same email he used for his P.O. Box. The same email that is listed in other documents. The same email that he lists to get the answering service. You will see that same email because that is his email. There is no evidence that anyone else used that email. Zero. He ties Mr. Pendergrass right back into it.

(Doc. 266 at 91).  The prosecutor's comment about honesty was clearly in reference to the fact that Cohen could not identify Pendergrass as the person with whom he spoke about the Lee Family Trust.  This was not an attempt to vouch for his credibility overall.

The third comment by the prosecutor occurred during rebuttal.  Defense counsel attacked both Fitchpatric's and McQueen's credibility during her closing argument.  (*See* Doc. 266 at 70-71, 86-87).  When the defense attacks the credibility of the government's witness, the prosecutor is "entitled to argue fairly to the jury the credibility of the government and defense witnesses." *United States v. Eley*, 723 F.2d 1522, 1526 (11th Cir. 1984).  That was what happened here.

The prosecutor stated in rebuttal,

> The defense theory of the case is just their theory. But there is no evidence for their theory. The Court is going to instruct you you must base your decision on the evidence. Mr. -- as I testified or told you before, he testified truthfully. He said over and over and over again Mr. Pendergrass was the boss. He paid them. He sent the forged signatures and power of attorneys to Mr. Pendergrass. Mr. Fitchpatric had no reason to come here and lie on someone he described as a good person. He did not want to be here. He told you the truth about who was running the show, Mr. Pendergrass.
>
> The stipulation of the parties. McQueen testified that he did sign the cover letters. That is not in dispute. But what the evidence showed is that Mr. Pendergrass and Mr. McQueen were working together on all of the five counts charged in Counts 1 through 5, the money laundering and the agg ID.
>
> And the reason why you know they are working together is not just because he said it but because the evidence shows it.

(Doc. 266 at 90-91).  The prosecutor's comment was not improper.  A full review of the statement makes clear that the prosecutor did not personally vouch for the credibility of the witness.  Instead, he relied on evidence properly before the jury to support his assertion.

**Conclusion**

For the reasons stated above, the Defendant's Motion for a New Trial should be denied.

Respectfully submitted,

KURT R. ERSKINE
*United States Attorney*


/s/TRACIA M. KING
*Assistant United States Attorney*
Georgia Bar No. 421380

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

March 18, 2022

/s/ TRACIA M. KING

TRACIA M. KING

*Assistant United States Attorney*