IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,             :
                                      :
                                      :
                                      :
        v.                            :        CRIMINAL ACTION NO.
                                      :        1:17-cr-224-AT
ALLEN J. PENDERGRASS,                 :
                                      :
        Defendant.                    :
                                      :

## ORDER

Now before the Court is Defendant Allen J. Pendergrass's Motion for Judgment of Acquittal and his Motion for New Trial [Docs. 267, 268]. For the following reasons, the Court **DENIES** the Motions.

### I.  Background

The Indictment in this action charged Mr. Pendergrass with five counts of aiding and abetting mail fraud (Counts 1-5), one count of conspiracy to engage in money laundering (Count 6), and four counts of aiding and abetting aggravated identity theft (Counts 7-10). (Indictment, Doc. 1.) The Indictment alleged that Mr. Pendergrass and his co-defendant Mr. McQueen, from a date unknown until April 2014, *inter alia* (1) mailed correspondence and limited power of attorney forms to government agencies fraudulently claiming that Defendants' companies were agents of the rightful owners of unclaimed funds; (2) used actual names and forged signatures of individuals to accomplish this scheme; and (3) then deposited these

fraudulently obtained funds into accounts they controlled and used the proceeds to further additional fraudulent activities. (Indictment at 1, 6.B, 6.E.) The specific mailings cited in the five mail fraud charges all concern funds sent by the City of Atlanta Finance Department. The aggravated identity charges correspond to incidents of mail fraud charged in Counts 1 through 5.

A trial was held beginning on November 30, 2021. At the close of the Government's case, and again at the close of evidence, Defendant moved for a judgment of acquittal. The Court denied the motions. The jury returned a guilty verdict on all counts.

## II.      Renewed Motion for Judgment of Acquittal [Doc. 267]

Federal Rule of Criminal Procedure 29 authorizes the court to enter a judgment of acquittal after the jury has returned a guilty verdict if the evidence presented at trial is insufficient to sustain a conviction. *See* Fed. R. Crim. P. 29. When analyzing the sufficiency of the evidence, the court must "view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Vernon*, 723 F.3d 1234, 1252 (11th Cir. 2013). In addition, the court must "resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict." *United States v. Medina*, 485 F.3d 1291, 1296-97 (11th Cir. 2007).  "The prosecution need not rebut all reasonable hypotheses other than guilt" and the "jury is free to choose between or among the conclusions to be drawn from the

evidence presented at trial." *Vernon* 723 F.3d at 1252 (quoting *United States v. Miranda*, 425 F.3d 953, 959 (11th Cir.2005) (internal quotation marks omitted).

Mr. Pendergrass has renewed his motion for a judgment of acquittal specifically as to Counts 1-3 (for aiding and abetting mail fraud), Count 7-8 (the corresponding aiding and abetting aggravated identity theft charges), and Count 6 (for conspiracy to commit money laundering).

Counts 1 and 7 relate to the "Johnson, Coleman & Stephenson LLC" account. Co-defendant McQueen testified that this account was one that "me and Mr. Pendergrass decided to try to take fraudulently," and that they "worked together," whereby he (McQueen) signed the name Sonia Johnson on the limited power of attorney to obtain the funds from the City of Atlanta. (Trial Transcript, Doc. 264 pp. 92-93.) Of the $8,000 obtained, Mr. McQueen received 33% and Mr. Pendergrass received the rest. (*Id*. p. 93.) Ms. Johnson (now, Ms. Toson) testified that she never hired Mr. Pendergrass's firm to recover her firm's unclaimed funds and that she did not sign the power of attorney. (Trial Tr., Doc. 263 p. 121-23.) The evidence also demonstrated that the $8,000 check was delivered to a P.O. Box opened and regularly checked by Mr. Pendergrass, (Trial Tr., Doc. 264 p. 104; *see also* Application for P.O. Box, Doc.258-13), and that Mr. Pendergrass and Mr. McQueen had the City of Atlanta re-issue the check in their company name before they deposited the checks into a company bank account (*id*. p. 107-08). This evidence was clearly sufficient for the jury to find that Mr. Pendergrass aided and abetted in mail fraud. *See United States v. Munoz*, 430 F.3d 1357, 1369 (11th Cir.

2006) ("It is well settled in this circuit that so long as one participant in a fraudulent scheme causes a use of the mails in execution of the fraud, all other knowing participants in the scheme are legally liable for that use of the mails.") (quoting *United States v. Toney*, 598 F.2d 1349, 1355 (5th Cir. 1979)) *cert. denied* 126 S.Ct. 2305 (2006). Similarly, this evidence was sufficient for the jury to find beyond a reasonable doubt that Mr. Pendergrass contributed to, furthered, and intended to aid Mr. McQueen's acts of forging Ms. Johnson's limited power of attorney. *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) (noting that a person can be guilty of aiding and abetting a crime even where he has not personally committed "the acts constituting the elements of the substantive crime aided") (internal quotation omitted).

The same assessment applies to Counts 2 and 8. Mr. McQueen testified that he and Mr. Pendergrass submitted a request to the City of Atlanta for unclaimed funds owed to the Georgia Municipal Association. (Trial Tr., oc. 264 p. 146-47.) Mr. McQueen further explained that he forged the signature of Lou Comer, lifted the Georgia Municipal Association seal off the internet, and — at the direction of Mr. Pendergrass — made a fake business card. (*Id.* pp. 147-48.) Again, the City of Atlanta sent the money to the same P.O. Box, opened and operated by Mr. Pendergrass (*id.* pp. 150-51). Mr. Pendergrass was captured on video depositing the check in question into a bank account, with his name as the sole name associated with the account. (*See* Video Snapshot, Doc. 258-21; Bank Account Information, Doc. 258-22.) Under the governing law outlined above specifically as

4

to aiding and abetting charges, this evidence was sufficient for the jury to convict Mr. Pendergrass on Counts 2 and 8.

The evidence in support of Count 3 was also sufficient. The evidence on this claim showed that Mr. McQueen again submitted to the City of Atlanta a forged request for payment of unclaimed funds, this time for the defunct law firm of Long, Weinberg, Ansley & Wheeler. (Trial Tr., Doc. 264 p. 153.) The City again sent the funds to Mr. Pendergrass's P.O. Box, made payable to Mr. Pendergrass's business. (*Id*. at 158.) Again, Mr. Pendergrass was captured on video depositing the check into the same business account, with only his name listed on the account. (*See* Bank Video, Doc. 258-19.)

The Court now turns to the conspiracy to commit money laundering charge (Count 6). Mr. Pendergrass argues that the Government did not demonstrate that he knew that the money involved in the transactions were proceeds of unlawful activity or that he made financial transactions with the intent to carry on the specific underlying mail fraud. (Mot. for Acquittal, Doc. 267 at 7-9.) In so arguing, Mr. Pendergrass also argues that he cannot be convicted of money laundering where the proceeds of "relatively minor fraudulent transactions" are used to pay operating expenses of "an otherwise legitimate business enterprise." *United States v. Miles*, 360 F.3d 472, 477 (5th Cir. 2004).

This argument, however, is a non-starter. Mr. McQueen testified that only 10% of Mr. Pendergrass's business operations were legitimate, with 90% involving fraudulent activity. (Trial Tr., Doc. 265 p. 68.) Further, the evidence indicated that

Mr. Pendergrass paid Mr. McQueen and himself from the same bank account used to deposit fraudulently obtained funds. (Docs. 258-22; 258-25.)  Mr. McQueen testified that he and Mr. Pendergrass would conduct research on what claims to pursue and that he would forge documents from the business office. (Trial Tr., Doc. 265 pp. 56-57.) And, as it was Mr. Pendergrass's business, with his name on the lease, Mr. Pendergrass paid the bills and office operating costs. (*Id.* pp. 57-58.) Mr. McQueen and Mr. Pendergrass purchased burner phones to conduct illegal operations, using money Mr. Pendergrass pulled from an ATM. (*Id.* p. 62.) Under Eleventh Circuit authority, this evidence is sufficient to support a conviction for the promotion of money laundering. *See United States v. Azmat*, 805 F.3d 1018, 1037-38 (11th Cir. 2015) (upholding promotional money laundering conviction where proceeds from illegal pill operation were used to pay for clinic's lease, to pay salaries, pay additional overhead costs, and to open bank account); *United States v. Ramirez*, 724 F. App'x 704, 713 (11th Cir. 2018) (finding evidence sufficient to support jury verdict on promotional money laundering where defendants agreed to submit fraudulent reimbursements and used money to fund clinics, pay salaries, pay business expenses, and pay themselves in efforts to continue to promote further fraudulent activities). The Court also finds that there was an abundance of evidence at trial supporting Mr. Pendergrass's knowledge that the funds were

proceeds of the fraudulent activity, including through the evidence of related acts, discussed below in connection with Mr. Pendergrass's motion for new trial.[1]

All in all, viewing the evidence at trial in the light most favorable to Government, the jury's guilty verdicts were reasonable as to all challenged counts. Defendant's Renewed Motion for Acquittal is **DENIED**.

### III.   Motion for New Trial [Doc. 268]

Federal Rule of Criminal Procedure 33 authorizes the court to vacate a judgment and grant a new trial "if the interest of justice so requires." The Court is vested with sound discretion to determine whether to grant or deny a motion for new trial. *United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985). "On a motion for a new trial based on the weight of the evidence, the court need not view the evidence in the light most favorable to the verdict. It may weigh the evidence and consider the credibility of the witnesses." *Id.* at 1312 (citations

---

[1] Defendant also relies on the Supreme Court's decision in *United States v. Santos*, 553 U.S. 507 (2008). That case involved an illegal gambling operation and the question of whether "proceeds" meant "receipts" or "profits." Applying the rule of lenity, the Court found that "proceeds" meant "profits," not "receipts" in that context. However, as the Eleventh Circuit subsequently explained, the *Santos* decision was of "limited precedential value" because three-fourths of the opinion was for a plurality. *United States v. Demarest*, 570 F.3d 1232, 1242 (11th Cir. 2009). Under the "Marks Rule," where a "fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Id.* (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)). Under this rule, the "narrow holding of *Santos*, at most, was that the gross receipts of an unlicensed gambling operation were not 'proceeds'" under the federal money laundering statute. *Id.* (upholding conviction for money laundering where funds were the proceeds of pill operation); *see also United States v. Jennings*, 599 F.3d 1241, 1252 (11th Cir. 2010) (reiterating *Santos*' limitation to the context of gambling operations and then holding that money laundering statute's definition of "proceeds" means "what is produced by or derived from something ... by way of total revenue; the total amount brought in"). In light of the Eleventh Circuit authority on this issue, Mr. Pendergrass's reliance on *Santos* is unpersuasive.

omitted). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Id.* (internal quotations omitted). However, "the court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* at 1312-13 (internal citations omitted). Motions for new trials based on weight of the evidence are not favored and should be granted sparingly and with caution in only the most "exceptional" of cases. *Id.*

Mr. Pendergrass asserts two primary bases for his motion, arguing: (1) he was prejudiced by uncharged conduct that was introduced at trial, rendering the verdicts on the actual charges unreliable and (2) the Government impermissibly vouched for the truthfulness of its witnesses in closing argument. (Mot. for New Trial, Doc. 268 at 2.)

## 1. The Introduction of Evidence of Uncharged Conduct

Before trial, the Government filed a motion to introduce two prior convictions under Rule 404(b) and five other crimes as intrinsic to the charged offenses, or alternatively as 404(b) evidence. The Court addressed these issues at length orally and, after hearing argument from counsel, in a written order issued on November 19, 2021. (Doc. 227.) In its Order, the Court held that only one of the

two prior convictions ("the Colorado conviction") was admissible and ruled that all five alleged "bad acts" were "inextricably intertwined" with the evidence regarding the charged offenses and therefore were admissible under clear-cut and binding Eleventh Circuit authority, as outlined in the Order. (*Id.*)[2] In its Order, the Court outlined the specific "bad acts" in detail, noting that four involved the City of Atlanta, all involved the same alleged scheme by Mr. Pendergrass and his companies to use similar fraudulent power of attorney documents, and all were linked in time and circumstance to the charged conduct.[3] Although admitting the five "bad acts" and one prior conviction, the Court noted that, "as trial progresses" it would continue to evaluate whether the evidence was outweighed by a danger of unfair prejudice to Mr. Pendergrass. (*Id.*) And indeed, at trial, the Court did just that. In light of the evidence that had already been presented, the Court determined that the introduction of the prior Colorado conviction was cumulative and not warranted and therefore precluded its admission. (Trial Tr., Doc. 264 pp. 181:20-21; 194:13-195:15.)[4]

---

[2] The Court notes that the Government did not include the Glenridge Drive Group incident in its pretrial motion. Mr. McQueen testified about this account, explaining that he and Mr. Pendergrass fraudulently obtained funds owed to this Group from the City of Atlanta and that the check was deposited the same day as the check issued in connection with Johnson, Coleman & Stephenson (the subject of Count 1). It does not appear that Defendant objected to Mr. McQueen's testimony as to this account. (Trial Tr., Doc. 264 pp. 109-110.) While the Government should have included this instance in its pretrial motion, its was nevertheless admissible evidence. As this incident involved the same time and circumstance as the other instances involving unclaimed funds from the City of Atlanta, this incident was also inextricably intertwined with the charged conduct.

[3] As the Court outlined the specific bad acts in detail in its November 2021 Order, it does not do so again here.

[4] Although the Court held that evidence of the conviction was not admissible, documents related to the Colorado conviction — which were seized during the search of Mr. Pendergrass's office — were admitted into evidence without objection. (Trial Tr., Doc. 263 pp. 44-46.) Mr. McQueen was

The Court also took additional measures to ensure that Mr. Pendergrass was not unduly prejudiced by the introduction of uncharged conduct when it instructed the jury during the course of trial, explaining that these other bad acts:

> are not ones that are charged in the indictment. You have been provided this information because the Government believes these acts are intrinsic to the charged conduct. That means they are — that [the Government] view[s] them as necessary to complete the story of the crimes [it] ha[s] charged and which you have to actually make — reach a verdict on.

> *I caution you that the defendant is on trial only for the specific crimes charged in the indictment, not for any of these collateral acts* that are being introduced to you and introduced into evidence.

> You are here to determine from the evidence in this case as a whole though whether the defendant is guilty or not guilty of the specific crimes charged in the indictment that were identified to you from the start, the ten offenses.

> *So this will be deemed relevant evidence, but it is not — these are not the crimes actually charged. And you are to be careful in understanding that and assessing the evidence accordingly.*

(Trial Tr., Doc. 264 at 64-65) (emphases added).

The Court further reiterates that the Government's rationale for seeking to introduce the collateral bad acts was to demonstrate Mr. Pendergrass's intent, knowledge, and lack of mistake. At trial, Mr. Pendergrass in fact did argue that he did not known about Mr. McQueen's acts, did not possess the legally required intent to defraud with respect to Counts 1 through 5, and did not know that the checks were illegal proceeds. Indeed, per Mr. Pendergrass's request, the Court

---

also permitted to testify briefly about the documents that had been previously admitted without objection. (Doc. 264 p. 195.)

instructed the jury on this theory of the defense. (Trial Tr., Doc. 266 pp. 113-114.) Consistent with the Federal Rules of Evidence, the Government was permitted to rely on this intrinsic bad act evidence to rebut those defenses. Fed. R. Ev. 404(b).

 Mr. Pendergrass also contends that the number of times certain non-charged incidents were mentioned throughout trial — with the Lee Family Trust incident mentioned 5 times and the Holland & Knight incident mentioned 4 times — and the number of witnesses that testified about uncharged conduct — three — renders their inclusion prejudicial. But Defendant has provided no comparable situation where a court determined that the number of times uncharged conduct was mentioned, or the number of witnesses related to those instances, rendered evidence overly prejudicial. Moreover, in the full context of the trial and all evidence, in the Court's judgment, these references and witnesses were not so pronounced as to create any undue prejudice, especially in light of the Court's thorough and specific jury instruction on this front.

In sum, under binding Eleventh Circuit authority, the evidence of other bad acts was permissible to show intent and knowledge, and was also admissible as inextricably intwined with the charged conduct. The Court was careful throughout the course of the trial to ensure that the introduction of these collateral acts did not become so significant as to unfairly prejudice Mr. Pendergrass with respect to the jury's consideration of the specific actual charges in this case. Mr. Pendergrass's motion on this basis is denied.

## 2. The Government's Alleged Vouching for Witnesses

Mr. Pendergrass argues that he is entitled to a new trial because the prosecutor impermissibly vouched for the truthfulness of certain Government witnesses: Mr. Fitchpatric, a former employee of Defendant; Mr. Cohen, a lawyer who met with Mr. Pendergrass in connection with the Lee Family Trust incident; and Mr. McQueen. (Mot. for New Trial, Doc. 268 at 12-14.)

"Attempts to bolster a witness by vouching for his credibility are normally improper and error." *United States v. Sims*, 719 F.2d 375, 377 (11th Cir. 1983) (internal quotations omitted). Whether a prosecutor has improperly vouched for a witness depends on whether the jury could reasonably believe that the prosecutor was "indicating a personal belief in the witness' credibility." *Id.* (citation omitted). A prosecutor impermissibly indicates such personal belief when he either (1) places the prestige of the Government behind the witness by "making explicit personal assurances of the witness' veracity" or (2) by implicitly vouching for the witness by "indicating that information not presented to the jury supports the testimony." *Id.* (citations omitted). That said, this "prohibition against vouching does not forbid prosecutors from arguing credibility, which may be central to the case." *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir), *cert. denied*, 500 U.S. 958 (1991). And where defense counsel attacks the credibility of the Government's witnesses, as here, a prosecutor is "entitled to argue fairly to the jury the credibility of government and defense witnesses." *United States v. Eley*, 723 F.2d 1522, 1526 (11th Cir. 1984) (citation omitted).

The Court has reviewed the record and testimony cited by Defendant and finds that the Government did not improperly indicate a personal belief in the credibility of the witnesses. Looking at the comments in their full context, the prosecutor neither made explicit personal assurances of the witnesses' truthfulness or referenced any information that was not presented to the jury. Rather, the prosecutor pointed to various pieces of testimony and evidence presented to the jury, argued that this evidence matched up and thus indicated that the witnesses were telling the truth or had no reason to lie.[5] *See Eley*, 723 F.3d at 1526 (noting that, while a prosecutor is not permitted to vouch for a witness based on facts not introduced at trial, "that does not mean the prosecutor cannot argue that the fair inference from the facts presented is that a witness had no reason to lie.") (internal quotation omitted). While the prosecutor here could have perhaps been slightly more careful with his words, he did not improperly vouch for any witness in a manner that prejudiced Mr. Pendergrass as to warrant a new trial.

## IV. Conclusion

Upon full review of the parties' arguments and the evidence submitted at trial, and in light of the foregoing standards, the Court finds that there is sufficient evidence to uphold the jury's verdict of guilt beyond a reasonable doubt as to all counts. The Court further finds that the evidence does not weigh so heavily against the verdict as to amount to a miscarriage of justice such that it warrants

---

[5] The Court also notes that the comment regarding Mr. Cohen's honesty appears to have been more to point out that Mr. Cohen was honest in saying he could not identify Mr. Pendergrass as the person he spoke to about the Lee Family Trust. (Doc. 266 at 91.)

Defendant's request for a new trial.   The Court therefore **DENIES** Mr. Pendergrass's Motions [Docs. 267, 268].

      **IT IS SO ORDERED** this 30th day of June 2022.

**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**