IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

*v.*

ALLEN J. PENDERGRASS

Criminal Action No.

1:17-CR-224-01-AT

**United States Sentencing Memorandum**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Tracia M. King, Assistant United States Attorney for the Northern District of Georgia, files this Sentencing Memorandum for Defendant Allen J. Pendergrass. This memo provides the United States' sentencing recommendation and discusses Pendergrass' objections to the PSR.

**Sentencing Recommendation**

The United States recommends a total sentence of 121 months of imprisonment – a 97-month term of imprisonment for counts 1 through 6, and a consecutive 24-month term of imprisonment for counts 7 though 10.

**Discussion**

**1.   The PSR properly applies the enhancement under § 2B1.1(b)(11)(A)(ii).**

The Guidelines provide that "[i]f the offense involved (A) the possession or use of any . . .  authentication feature . . . increase by 2 levels." USSG § 2B1.1(b)(11)(A)(ii). For purposes of this provision, an "authentication feature"

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

has the same meaning in 18 U.S.C. §1028(d)(1). USSG 2B1.1, comment. (n. 1). Accordingly,

> *the term "authentication feature" means any hologram, watermark, certification, symbol, code, image, sequence of numbers or letters, or other feature that either individually or in combination with another feature is used by the issuing authority on an identification document, document-making implement, or means of identification to determine if the document is counterfeit, altered, or otherwise falsified.*

18 U.S.C. § 1028(d)(1).

Mr. Pendergrass incorrectly states that the enhancement is inapplicable in this matter because notary stamps were not affixed to any identification documents, document-making implements, or means of identification. *See* Def. Obj. ¶11. He contends that a notary stamp cannot be considered an authentication feature because it is not a symbol used on an identification document. This objection should be overruled.

In a case analogous to the instant matter, *United States v. Sardariani*, 754 F.3d 1118 (9th Cir. 2014), the Court held that a notary seal can qualify as an "authentication feature" under 18 U.S.C. § 1028, and that use of such authentication feature may qualify for the enhancement under §2B1.1(b)(11)(A)(ii). In that case, the defendant was involved in a scheme to procure multiple loans by falsely pledging as collateral properties he did not own. *Id.* at 1119-20. Pursuant to the scheme, he submitted false documents to include two recorded deeds bearing forged signatures and forged notary seals.

*Id.* at 1120. Similar to the instant matter, Sardariani "used notary seals that were cut and pasted" to further the commission of the crime. *Id.*

The Court affirmed the application of § 2B1.1(b)(11)(A)(ii). In doing so, it rejected an argument similar to the one raised Pendergrass – that authentication features are limited to those found on identification documents. First, "actions of a notary, including authentication of a signature, are taken based upon the authority of the state." *Id.* at 1121 (9th Cir. 2014). The Court noted that "the statute itself does not limit the definition of authentication features to those used on identification documents, and we must not either." *Id.* at 1122.

Second, a signature is recognized as a means of identification. *Id.* It accordingly concluded that Sardariani used forged notary seals to convince others that the signatures on the falsified documents were genuine and that the forged signatures were means of identification under 18 U.S.C. § 1028(d)(7). Moreover, Sardariani's use of notary seals to authenticate forged signatures was the use of an authentication feature as defined in §1028(d)(1). *Id.*

Similarly, Pendergrass use of notary seals on forged Powers of Attorney constituted the use of an authentication feature on a means of identification. The use of notary seals is based upon the authority of this state. *See* O.C.G.A. §45-17-8. Moreover, the use of forged signatures on the Power of Attorney forms was a use of a means of identification. *United States v. Wilson*, 788 F.3d 1298, 1310 (11th Cir. 2015) (holding use of a person's name and forged signature sufficiently identifies a specific individual to qualify as a "means of identification"); *see also United States v. Munksgard*, 913 F.3d 1327 (11th Cir. 2019) (finding that forged

signature of victim on a loan application was a use of a means of identification); *United States v. Shanks*, Fed. App'x 922 (11th Cir. 2012) (holding use of another's person's name as the signature on a forged check was use of a means of identification). Therefore, the enhancement under §2B1.1(b)(11)(A)(ii) is properly applied.

**2. The PSR properly applied the sophisticated means enhancement under §2B1.1(b)(10) and 2S1.1(b)(3).**

**A. The fraud scheme involved the use of sophisticated means meriting a two-level enhancement.**

A two-level enhancement applies if "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." USSG 2B1.1(b)(10(C). The Guidelines further instructs that

> *sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense.  For example, in a tele marketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means.  Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.*

USSG 2B1.1, comment. (n. 9 (B)). The United States is not required to prove that each defendant's individual actions are sophisticated in order to impose the enhancement. It will apply if the totality of the scheme was sophisticated. *See United States v. Wayland*, 549 F.3d 526, 529 (7th Cir. 2008); *United States v. Halloran,*

415 F.3d 940, 945 (8th Cir. 2005); *United States v. Jackson*, 346 F.3d 22, 25 (2d Cir. 2003).

Here, the evidence established that Pendergrass and others used sophisticated means to carry out the scheme to fraudulently obtain unclaimed funds from the City of Atlanta and other entities. The participants sent to municipalities requests for unclaimed funds on business letterhead and included forged Powers of Attorney in the name of persons without authorization.

One of the schemes mentioned in support of the enhancement concerns the Lee Family Trust. Michael Cohen testified that he is an attorney and that he met with Pendergrass presented a business plan to "data mine data from counties for unclaimed funds" with the intent of notifying individuals about those funds and how to collect them. Doc. 264 at 35-37.  Pendergrass asked Cohen to write letters to potential people who had unclaimed funds, to deposit checks and to disperse funds. *Id.* at 37-38.

Pendergrass, using his business Attorney Recovery, Inc., submitted a request to Harris County, Texas requesting unclaimed funds owed to the Lee Family Trust. *Id.* at 39. The request included a forged Power of Attorney form indicating that the entity authorized Pendergrass' company to collect the funds on its behalf. Gov. Tr. Ex. 9. Pendergrass and Mr. McQueen additionally obtained a telephone number, fax number, email address for the scheme. Doc. 264 at 216; Gov. Tr. Ex. 9.

Pendergrass also opened a separate bank account in the name of Lee Family Trust with himself as the sole signee. (Gov. Tr. Ex. 25). He subsequently

deposited a check representing unclaimed funds owed to the Lee Family Trust that totaled $5,184.83.

Pendergrass subsequently gave Cohen approximately five checks received from Harris County, Texas that totaled approximately $160,000. *Id*. at 37-38. To convince Cohen to deposit the funds into a bank account, Pendergrass showed Cohen a purported Power of Attorney form that contained Ms. Lee's name and a forged signature. Believing the form to be proper, Cohen deposited the checks into a trust account. *Id*. at 6, 7.

Another scheme mentioned in the PSR in support of the enhancement concerns Hemisphere, Inc.'s unclaimed funds. The City of Atlanta received a signed letter from Pendergrass seeking the funds. Gov. Tr. Ex. 13. In support of the request, the letter included a forged Power of Attorney form that falsely claimed that Pendergrass' company was authorized to receive the funds. *Id*.; Doc. 263 at 89-90.

Pendergrass additionally opened a bank account in the name of Hemisphere, Inc. with himself listed as the sole signatory on the account. Gov. Tr. Ex. 26. He subsequently deposited into this bank account the fraudulently obtained proceeds in the amount of $22,500. *Id*.

The totality of these schemes demonstrate that they were especially intricate offenses. The enhancement under §2B1.1(b)(10) therefore applies.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

**B. The United States does not oppose Pendergrass' objection to the additional application of a two-level enhancement for sophisticated money laundering.**

The Guidelines provides for a two-level increase if the offense involved sophisticated money laundering. USSG 2BS1.1(b)(3). This is defined as

*complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. § 1956 offense. Sophisticated laundering typically involves the use of*
*(i) fictitious entities;*
*(ii) shell corporations;*
*(iii) two or more levels (i.e., layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or*
*(iv) offshore financial accounts.*

USSG 2S1.1, comment. (n. 5(A)). As described above, Pendergrass created bank accounts in the names of the victim entities for the deposit of fraudulently obtained unclaimed funds to which he was not entitled.

Although this conduct qualifies for the enhancement, the Guidelines instructs, "[i]f subsection (b)(3) applies, and the conduct that forms the basis for an enhancement under the guideline applicable to the underlying offense is the only conduct that forms the basis for application of subsection (b)(3) of this guideline, do not apply subsection (b)(3) of this guideline." USSG § 2S1.1, comment. (n. 5 (B)). Accordingly, the district court should not apply this enhancement.

**3.  Pendergrass should receive a two-level enhancement for aggravated role in the offense.**

A two-level enhancement for aggravating role in the offense is proper when "the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in [subsection] (a) or (b)." USSG §3B1.1(c). The Guidelines further instructs that

> *[i]n distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling.  Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.  There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.   This adjustment does not apply to a defendant who merely suggests committing the offense.*

USSG § 3B1.1, comment. (n. (4)). The evidence must establish that "the defendant exerted some control, influence or decision-making authority over another participant in the criminal activity." *United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009).

Here, Pendergrass, among other things, was the owner of the company in which he employed and exercised leadership over Mr. McQueen, Mr.

Fitchpatric[1] and Ms. Barber[2], the other participants in the fraud scheme. All requests for unclaimed funds were discussed with Pendergrass prior to submission. Doc. 264 at 154. Pendergrass purchased burner phones to obtain phone numbers that would not be traced back to them. Doc. 265 at 62. He also controlled the P.O. Box used for the receipt of the fraudulently obtained funds. *Id*. at 94. Pendergrass kept track of the checks coming into the business and the letters going out. Doc. 264 at 139. Fraudulently obtained funds were deposited into bank accounts that Pendergrass controlled. *Id*. at 106, 232. Pendergrass paid Mr. McQueen 33% of the fraudulently obtained proceeds and he kept the rest of the money. *Id*. at 80-81, 93.

Pendergrass led, managed, organized, and supervised more than one participant in the fraud scheme. A two-level enhancement for aggravating role in the offense should be applied.

---

[1] Eric Fitchpatric assisted with copying and placing photocopied seals and signatures onto documents used to execute the fraud scheme. Doc. 264 at 87-88, 156; Doc. 265 at 57.

[2] Deidre Barber was Pendergrass girlfriend at that time. Doc. 264 at 86.  She also worked at Pendergrass office. *Id*.  Mr. McQueen, Ms. Barber and Mr. Pendergrass opened a bank account in the name of Asset Financial Recovery, Inc. at Bank of America on March 22, 2013. *Id*. at 105-06, 170-71; Gov. Tr. Ex. 22. The account was opened after they learned that the City of Atlanta would issue checks in the name of a business if requested. Doc. 264 at 105-06. This account was opened for the deposit of those checks. *Id*. Funds fraudulently obtained from the City of Atlanta were deposited into this account. *Id*. at 106-07.

### 4. Loss Amount

Pendergrass objects to the loss amount as calculated in paragraph 29 and referenced in paragraphs 33 and 37.[3] Def. Obj. ¶4. He further asserts that his loss amount should be limited to McQueen's restitution amount. *Id*. For the reasons below, this objection should be overruled.

The government bears the burden of establishing the attributable loss by a preponderance of the evidence. *United States v. Dabbs*, 134 F.3d 1071, 1081 (11th Cir. 1998). Relevant conduct for determining Chapter Two specific offense characteristics includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," plus all reasonably foreseeable acts and omissions of others in furtherance of a jointly undertaken criminal activity, whether or not the scheme is charged as a conspiracy. USSG § 1B1.3(a)(1)(A)-(B).

The loss amount is determined based on "the greater of actual loss or intended loss." USSG § 2B1.1, comment. n. 3(A). Additionally, this determination does not have to be precise, but "need only make a reasonable estimate of the loss, given the available information." *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011) (quoting *United States v. Lee*, 427 F.3d 881, 893 (11th Cir.

---

[3] Mr. Pendergrass additionally objects to particular amounts included in the loss calculation. Specifically, he objected to the inclusion of the loss amounts associated with unclaimed funds owed to Greg Hickman, Michael Burandt, Holland and Knight, and the Lee Family Trust. The Government will address these objections in this section. Def. Obj. ¶¶5,6,7, and 8.

2005) (internal quotation marks omitted)). The district court may make factual findings regarding loss based on trial evidence, undisputed statements in the presentence report, or evidence presented at the sentencing hearing. *United States v. Bradley*, 644 F.3d 1213, 1290 (11th Cir. 2011).

The evidence presented at trial established by preponderance of the evidence that Pendergrass participated in a scheme resulting in a loss of $765,030.33[4] that is attributable to him. Below, is a summary of that evidence.

### a.  Johnson, Coleman & Stephens LLC (Count 1)

Mr. McQueen testified that he and Pendergrass worked together to fraudulently take the funds unclaimed funds owed by the City of Atlanta to Johnson, Coleman & Stephens. Doc. 264 at 92. They submitted a request to the city that included a forged Power of Attorney form and requested $8,000 in unclaimed funds. Gov. Tr. Ex. 2. The fraudulently obtained check was deposited into the bank account for Asset Financial Recovery, Inc., one of Pendergrass' businesses. Gov. Tr. Ex. 22.

### b.  Georgia Municipal Association (Count 2)

McQueen testified that he sent the request to the City of Atlanta for the unclaimed funds due to Georgia Municipal Association. Doc. 264 at 146.  The

---

[4] The Government did not present evidence at trial regarding claims related to Georgia State University in the amount of $26,000, to Kyrita Anderson in the amount of $2,944, or to Jennifer Jones in the amount of $5,208. The Government is therefore not seeking to attribute that loss to Mr. Pendergrass. After deducting these amounts, the resulting loss amount attributed to him is $765,030.33.

amount of the unclaimed funds requested was $76,636.28. Gov. Tr. Ex. 3. The City of Atlanta mailed to Pendergrass' P.O. Box located in Fayetteville, Georgia a check made payable to Pendergrass's company. Doc. 264 at 150-51; Gov. Tr. Ex. 3. On June 20, 2013, Pendergrass was captured by Wells Fargo bank surveillance camera depositing the check into bank account ending in 3556 in the name of Asset Financial Recovery, Inc. Gov. Tr. Ex. 19; and Gov. Tr. Ex. 20. Pendergrass was the sole person listed on the account. Gov. Tr. Ex. 20.

### c.  Long, Weinberry, Ansley & Wheeler (Count 3)

McQueen submitted a request for $26,874.42 in unclaimed funds owed to Long, Weinberg, Ansley & Wheeler. Doc. 264 at 152; Gov. Tr. Ex. 4. The City of Atlanta mailed the unclaimed funds to Pendergrass' P.O. Box in Fayetteville, Georgia. *Id.* at 158. On May 15, 2013, a surveillance camera captured Pendergrass depositing the check into the Well Fargo bank account for AFR ending in 3556. Gov. Tr. Ex. 19; Gov. Tr. Ex 20 at 119.

### d.  James H. Bone (Count 4)

McQueen testified that $14,875.67 in unclaimed funds owed to James Bone by the City of Atlanta were fraudulently targeted. Doc. 264 at 160; Gov. Tr. Ex. 5. Pendergrass signed the forged Power of Attorney submitted to the city along with the request for Mr. Bone's funds. *Id.* at 160-61. On June 20, 2013, Pendergrass was captured by Wells Fargo bank surveillance camera depositing the check into bank account ending in 3556 in the name of Asset Financial Recovery, Inc. Gov. Tr. Ex. 19; and Gov. Tr. Ex. 20. Pendergrass was the sole person listed on the account. Gov. Tr. Ex. 20.

### e.  Actors Express (Count Five)

McQueen testified that Pendergrass forged a signature on the Power of Attorney submitted to the City of Atlanta with a request for $11,000.00 in unclaimed funds owed to Actors Express. Doc. 264 at 164. On June 20, 2013, Pendergrass was captured by Wells Fargo bank surveillance camera depositing the check into bank account ending in 3556 in the name of Asset Financial Recovery, Inc. Gov. Tr. Ex. 19; and Gov. Tr. Ex. 20. Pendergrass was the sole person listed on the account. Gov. Tr. Ex. 20.

### f.  Lee Family Trust (see Section 2)

In addition to the check in the amount of $5,184.83 that Pendergrass deposited into the bank account he opened, Gov. Tr. Ex. 25, Mr. Cohen testified that Pendergrass gave him approximately 5 checks from Harris County payable to the Lee Family Trust, which totaled approximately $160,000. Doc. 264 at 6-7; Gov. Tr. Ex. 9. This testimony was corroborated by evidence seized from Pendergrass business showing that Harris County issued four checks in the amounts of $21,952.11, $25,592.97, $58,021.30, and $62,969.77. Gov. Tr. Ex. 9. Altogether, the total amount of all checks fraudulently obtained from Harris County by Pendergrass on behalf of the Lee Family Trust was $173,720.98.

Pendergrass argues that this loss amount is not attributable to him because it was not proven that he met with Mr. Cohen and McQueen admitted to applying for a mailbox and forging a name on one of the documents. Def. Obj. ¶8. Although Mr. Cohen could not identify Pendergrass at trial, the evidence,

including the deposit of one check into Pendergrass' account and McQueen's testimony, establish that the loss amount is properly attributed to Pendergrass.

Additionally, the fact that McQueen committed certain acts alone is unavailing because all reasonably foreseeable acts and omissions of others in furtherance of a jointly undertaken criminal activity, whether or not the scheme is charged as a conspiracy is part of the relevant conduct attributable to Pendergrass. USSG § 1B1.3(a)(1)(A)-(B). Pendergrass own conduct establishes that he was aware of the fraud scheme and that the actions of McQueen were reasonably foreseeable to him if not otherwise expected.

### g.  Hemisphere, Inc. (see Section 2)

### h.  Holland and Knight

McQueen testified that he and Pendergrass worked together to fraudulently obtain $359,665.85 in unclaimed funds owed to Holland and Knight by the City of Atlanta. Doc. 264 at 82- 87. McQueen and Pendergrass "made up" up the company Attorney Recovery Systems, Inc. to obtain the funds. *Id*. at 83. Pendergrass provided the signature in Mr. Cohen's name listed near the notary seal on the forged document. *Id*. at 86; Gov. Tr. Ex. 12.  McQueen signed other parts to make the documents appear more believable. *Id*. at 86-87. After depositing the check, McQueen provided a portion of the proceeds to Pendergrass. *Id*. at 98.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

Pendergrass specifically objected to the inclusion of this loss amount because he contends that McQueen acted alone. Def. Obj. ¶7. The evidence, however, establishes that Pendergrass "aided, abetted, and counseled" McQueen and therefore the loss is properly attributed to him. USSG § 1B1.3(a)(1)(A).

### i.  Michael Burandt

McQueen testified that this matter began as a legitimate claim. Doc. 264 at 206-07. Michael Burandt sent a signed Power of Attorney and mailed it to Pendergrass's company for the purpose of obtaining unclaimed funds on his behalf from the City of Atlanta. *Id*. Pendergrass' company submitted a request to recover $4,367. Gov. Tr. Ex. 39. The City of Atlanta mailed a check s to Pendergrass's company. Doc. 264 at 207-08. On June 20, 2013, Pendergrass was captured by Wells Fargo bank surveillance camera depositing the check into bank account ending in 3556 in the name of Asset Financial Recovery, Inc. Gov. Tr. Ex. 19. Pendergrass was the sole person listed on the account. Gov. Tr. Ex. 20.

Pendergrass specifically objects to the inclusion of this claim in calculating the loss amount because he argues the funds were legitimately obtained. Def. Obj. ¶6. The evidence at trial, however, established that after Pendergrass received the check, he failed to deliver the funds to the rightful owner. Doc. 264 at 208. Accordingly, the PSR correctly includes this loss amount.

### j.  Greg Hickman

Mr. McQueen testified that he and Pendergrass worked together on getting the unclaimed funds owed Greg Hickman. Doc. 264 at 209.  Similar to the Lee

(404) 581-6000   fax (404) 581-6181
15

Family Trust incident, this request to Harris County, Texas two unclaimed funds totaling $15,529.97. Gov. Tr. Ex. 38.

Pendergrass argues that this amount should not be attributed to him because this incident is not related to the charged scheme. Def. Obj. ¶5. The Guidelines, however, require the district court to consider all relevant conduct, which includes both charged and uncharged conduct. *United States v. Hamaker*, 455 F.3d 1316, 1336 (11th Cir. 2006). In determining the relevant conduct,

> [courts] evaluate the similarity, regularity, and temporal proximity between the counts of conviction and uncharged conduct. This evaluation includes consideration of whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind.

*United States v. Myles*, 314 Fed. App'x 164, 168 (11th Cir. 2008) (internal quotation marks omitted). Here, the request for unclaimed funds owed to Mr. Hickman was dated May 7, 2013, which was close in time to the charged conduct. Gov. Tr. Ex. 38. The request for Mr. Hickman's unclaimed funds was submitted on the same Asset Financial Recovery business letterhead used to request unclaimed funds from the City of Atlanta on behalf of Johnson, Coleman & Stephenson, LLC (Count 1); Georgia Municipal Association (Count 2); Long, Weinberg, Ansley & Wheeler (Count 3); James Boone (Count 4); and the Actor's Express (Count 5). The funds were requested to be mailed to the same P.O. Box address listed in the requests for the charged conduct. Consequently, this incident is relevant conduct for purposes of determining loss.

Pendergrass argument that the loss amount is not attributable to him because McQueen forged the documents is also unavailing. He, at a minimum, "aided, abetted, and counseled" McQueen. Moreover, the fact the unclaimed funds were not paid is also fails because loss calculations included intended loss. *See* USSG § 2B1.1, comment. n. 3(A).

### k.  Tousa Homes

Pendergrass signed two (2) letters dated April 3, 2013, on Guishard letterhead addressed to the City of Fort Collins, Colorado that requested a total of $21,338.16 in unclaimed funds owed to Tousa Homes. Gov. Tr. Ex. 7; Doc. 264 at 199. McQueen testified that he and Pendergrass created the forged power of attorney form together that was submitted with the request. *Id*. at 200. Pendergrass signed the name Sorana Keever, who was listed as the authorizing person on the Power of Attorney form.

### l.  Atlanta Quarterback Club

Pendergrass signed a letter dated February 7, 2013, on company letterhead requesting $12,622.00 in unclaimed funds owed to Atlanta Quarterback Club by the City of Atlanta and forged a signature on the Power of Attorney. Doc. 264 at 168; Gov. Tr. Ex. 11.  The letter fraudulently requested unclaimed funds owed to the Atlanta Quarterback Club. *Id*. at 167-69. The city mailed payment Pendergrass' P.O. Box located in Fayetteville Georgia, which was a mailbox opened and controlled by Pendergrass. Gov. Tr. Ex. 11, 14.

### m. The Glenridge Driving Group

McQueen testified that he and Pendergrass fraudulently obtained unclaimed funds owed by the City of Atlanta to The Glenridge Ridge Drive Group. Doc. 264 at 109; Gov. Tr. Ex. 36. The request was for $4,900.00. Gov. Tr. Ex. 36. The check obtained from the City of Atlanta was deposited into one of Pendergrass' business bank accounts in the name of Asset Financial Recovery. Gov. Tr. Ex. 22. This check was deposited into the same bank account at the same time as the fraudulently obtained check for Johnson, Coleman & Stephenson, LLC.'s unclaimed funds. *Id*.

### n. Weisman, Nowack, Curry, & Wilco

McQueen identified the request for unclaimed funds owed to Weisman, Nowack, Curry, & Wilco by the City of Atlanta was part of this fraud scheme. Doc. 264 at 90; Gov. Tr. Ex. 1.  The request sought $8,000 in unclaimed funds.

### o. Lydia Walker

Mr. McQueen stated that he and Pendergrass worked together to fraudulently obtain unclaimed funds owed to Lydia Walker. Doc. 264 at 142. The fraudulently obtained check in the amount of $5,000 was subsequently deposited into one of Pendergrass business bank accounts. Gov. Tr. Ex. 22.

## 5.  The recommended sentences do not produce a sentencing disparity.

Title 18, United States Code, Section 3553(a)(6) requires this Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). "[A] variance to prevent a disparity between codefendants is

warranted only when the codefendants are similarly situated." *United States v. Paez-Vega*, 567 F. App'x 840, 843 (11th Cir. 2014) (internal quotation marks omitted) (unpublished opinion). "Similarly situated defendants are those convicted of the same type of offense (i.e. felony versus misdemeanor), in the same manner (i.e. plea bargain versus trial), based on similar conduct of offense." *Id*.

The sentence recommended for Pendergrass does not create sentencing disparities. First, the sentencing recommendation falls within the Guidelines range. *See United State v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (stating that "[w]e ordinarily expect a sentence within the Guidelines range to be reasonable"). This is true because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges" and, therefore, a "correctly calculated and carefully reviewed . . . Guidelines range" gives "significant weight and consideration to the need to avoid unwarranted disparities." *United States v. Lopez*, 18-13896, 2019 U.S. App. LEXIS 22761, at *7 (11th Cir. Jul. 31, 2019) (quoting *Gall v. United States*, 552 U.S. 38, 54 (2007)) (internal quotation marks omitted) (unpublished opinion).

The sentencing recommendation adequately reflects the seriousness of the offence and provides for just punishment. Contrary to Pendergrass' assertions, a guidelines sentence does not substantially overstate his criminal history. Pendergrass has committed significant fraud in multiple states. Although his fraud history may not have been extensive in time, it was extensive in scope.

Moreover, Pendergrass' argument that he should receive credit for the time

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

he previously served in prison in Ohio should be rejected. The matter in Ohio was a separate fraud scheme that was unrelated to the investigation that result in the instant matter. PSR, ¶62. Accordingly, the United States requests that the district court impose a total sentence of 121-month term of imprisonment – 97-month term of imprisonment on Counts 1 through 6, and a consecutive 24-month term of imprisonment on Counts 7 through 10.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

*Tracia M. King*
/s/TRACIA M. KING
*Assistant United States Attorney*
Georgia Bar No. 421380

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

August 20, 2022

/s/ Tracia M. King

Tracia M. King

*Assistant United States Attorney*