UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:17-cr-00224-AT-CMS |
| | ) | |
| ALLEN J.   PENDERGRASS, | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR BOND PENDING APPEAL

Mr. Pendergrass now asks this Court to grant his request for bond pending appeal.  In support of this motion, he shows the following:

## I.   MR. PENDERGRASS MEETS THE LEGAL STANDARD FOR BOND PENDING APPEAL.

Pursuant to 18 U.S.C. § 3143(b), a defendant shall be released pending appeal if the judicial officer finds:

A.   by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) [own recognizance] or (c) [release on conditions] and

B.   that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in – a reversal, an order for a new trial, a non-custodial sentence, or a sentence less than the expected duration of the appeal.

Mr. Pendergrass meets these criteria.   One issue that Mr. Pendergrass intends to appeal is the denial of his motion to dismiss the indictment in this case on speedy trial grounds.  He asserts that his Fifth and Sixth Amendment rights to a

speedy trial were violated when the government intentionally delayed the indictment in this case. As outlined below, this issue alone is sufficient to justify the granting of a motion for bond pending appeal.

### A. Mr. Pendergrass is not likely to flee or pose a danger to the safety of any other person or the community.

Mr. Pendergrass has been on some form of court supervision for the last nine years, including the last five years on federal pre-trial release. He has traveled outside the jurisdiction with permission of the court on several occasions and has always returned without incident. *See* Docs. 32, 112, 116, 166, 282. He is not going to flee. He is not posing a danger to the community. He has been convicted of non-violent offenses, all of which occurred roughly ten years ago. There is no suggestion that he is apt to do harm to anyone while on release. Bond is warranted here. *See United States v. Price*, 611 F. Supp 502, 593 (S.D. Fla. 1985), 773 F.2d 1526, 1527 (11th Cir. 1985) (affirming district court's decision to grant bond pending appeal because the defendant was released pre-trial, complied with all conditions, and was present at all court hearings).

### B. Mr. Pendergrass' appeal is not for the purpose of delay.

Mr. Pendergrass has personally been raising the issue of pre-indictment delay in this case since November 19, 2018, when he filed a *pro se* motion to dismiss his attorney for failing to raise this issue. Doc. 79. Once new counsel was appointed, the issue was heavily litigated before the magistrate court. Doc. 89

(Motion to Dismiss Indictment – Statutory Speedy Trial); Doc. 90 (Motion to Dismiss Indictment – Constitutional Speedy Trial).  Multiple other briefs and related motions were filed, docs. 95, 96, 100, 101, 104, 106, 107, 128, 129, 143. Oral argument was held before the magistrate court.  Doc. 151. The magistrate court denied the motions and Mr. Pendergrass filed objections.  Docs. 152, 156. This Court adopted the magistrate court's recommendation.  Doc. 177.  It cannot be said that Mr. Pendergrass is now raising issues surrounding his speedy trial rights as a way of delaying this case.  During this entire process, he has asserted his challenge to the government's failure to bring the indictment in a timely manner in this case.

### C.    Finding that a substantial question exists does not require that this Court find errors in its own rulings.

The question of whether Mr. Pendergrass' Fifth and Sixth Amendment rights were violated by the pre-indictment delay in this case is a substantial question.

In *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1995), the Eleventh Circuit Court of Appeals addressed the interpretation of the phrase "substantial question" in the context of bond pending appeal. There, the district court had interpreted the relevant bail statute to mean that bail could only be granted on appeal if the court finds that its own rulings are likely to be reversed on appeal.  The appellate court held that this is in an incorrect interpretation of the statute. *Id.* at 900.  Instead, the *Giancola* court adopted the Third Circuit Court of

Appeals' interpretation of the statute, which defined a substantial question as "one which is either novel . . . has not been decided by controlling precedent, or . . . is fairly doubtful." *Id.* at 900 *citing United States v. Miller*, 753 F.2d 19 (3d Cir. 1985). "In short, a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *Id.* at 901. Further, the Eleventh Circuit observed, "there are no blanket categories for what questions do or do not constitute 'substantial' ones. Whether a question is 'substantial' must be determined on a case-by-case basis." *Id.* (footnote omitted). *See also United States v. Fernandez*, 905 F.2d 350 (11th Cir. 1990). In deciding this issue, the Court "must assume that the substantial question presented will go the other way on appeal and then assess the impact of such assumed error on the conviction." *United States v. Powell*, 761 F.2d at 1234 (8th Cir. 1985).

The *Price* district court relied upon prior definitions of the phrase "substantial question" given by Justice Douglas in *Herzog v. United States*, 99 L. Ed. 1299 (1955) (The phrase substantial question "obviously does not mean a decision on the merits.") and by the Ninth Circuit Court of Appeals in *D'Aquino v. United States*, 180 F.2d 271, 272 (9th Cir. 1950) (The inquiry focuses on whether "responsible and conscientious counsel pose some problems that on this record are not free from doubt.") when determining that bond pending appeal was

appropriate. 611 F. Supp at 593. *See also United States v. Hicks,* 611 F. Supp. 497, 499 (S.D. Fl. 1985) ("[I]in determining whether there is a substantial question, a court must keep in mind that it is not being asked to reverse its position on issues decided at trial, nor is it being asked to grant a new trial. It must decide only that a significant issue exists that merits appellate review and that the issue is critical enough to the defendant's conviction that a contrary appellate ruling would warrant a reversal.").

### D. *Mr. Pendergrass' constitutional claims present a substantial question.*

Like the defendant in *Price*, Mr. Pendergrass will raise constitutional issues that warrant review by the appeals court and he should be permitted to remain on bond while these issues are considered. *United States v. Hicks*, 611 F. Supp. 497 (S.D. Fla. 1985) (granting motion for bond pending appeal based upon Sixth Amendment issue). For example, Mr. Pendergrass asserts that his Fifth and Sixth Amendment rights were violated when he was arrested by a joint task force of state and federal agents in September 2013, but was not indicted in this case until 2017. The conduct for which he was arrested in 2013 is the same conduct that forms the basis for the present federal indictment. Police reports describing his arrest make it clear that law enforcement intended to pursue federal charges against him. While detailing the arrest and investigation of Mr. Pendergrass in 2013, APD officer Douglas Ricks explained that "***The USPIS is going to be seeking federal***

*prosecution* and will assist with the computer forensics on the seized computers and sorting the thousands of documents recovered. Pendergrass and his CFO Terrell McQueen were both arrested for multiple felony counts." *See* Ex. 1, report of investigation at 6.  The federal agents who were present at the time of his 2013 arrest took control of all of the electronic evidence seized during the 2013 search. At trial, Officer Ricks testified that he was the lead investigator in the case and that "pretty quickly [he] figured out this was going to be a federal case."  Doc. 263 at 56-57.  State prosecutors never brought charges against him and later told the court that they had no files related to Mr. Pendergrass and that their case was "mistakenly" listed as open.  *See* Ex. 2, emails from Fulton County Assistant District Attorney Tristan Gillespie in response to defense subpoena in this case. The government has claimed that it "adopted" the case from Fulton County in the Spring of 2014.  Doc. 96 at 3.  Mr. Pendergrass asserts that there is no evidence that there was ever a state court case or intent to prosecute him in the state system. Indeed, while in custody with the Bureau of Prisons, Mr. Pendergrass adamantly contested any claim that there was a pending detainer or any pending charges against him in Fulton County.  *See* Ex. 3.  In December 2016, Mr. Pendergrass emailed his case manager as follows: "[Y]ou indicated that I was ineligible for the halfway house due to a detainer, which (I contested I don't have) and in which Records clearly indicated I don't have, other than a note in which C/O Williams

indicated a potential submission to a[n] obscure charge to a grand jury, per policy there exists no factual support that a detainer exists.  Yet I am being precluded for halfway house consideration based upon assumptions." Ex. 3 at 1.

Although, the Fulton County District Attorney's Office had claimed that an "indictment would be brought in 2017" (Ex. 3 at 3), it is clear from the record that it was always meant to be a federal indictment.  At the time that Fulton County was telling the BOP that an indictment was pending (in 2016), two years had already passed since Officer Ricks had begun meeting with AUSA Jeff Brown, the agents from the Internal Revenue Service, and U.S. Postal Service inspectors about this case.  *See* Ex. 4, emails produced in response to defense subpoena for all communications between Fulton County District Attorney's Office (or its representatives) and the United States Attorney's Office for the Northern District of Georgia (or its representatives including Jeff Brown) regarding Allen Pendergrass and the potential prosecution of Mr. Pendergrass.[1]  The intention was that this would be a federal case from the date of Mr. Pendergrass' arrest.

When addressing the Sixth Amendment claims, the magistrate court held that Mr. Pendergrass' rights were not violated "because a defendant is not an

---

[1]     The parties to the 2014 emails are: AUSA Jeff Brown, IRS Special Agent Vaxter Shantanice, US Postal Inspector Sheryl Bouer, Postal Inspector Kemie Green, City of Atlanta Police Department Investigator D.M. Ricks, and BB&T Regional Investigations Manager Gabriel Parks.

'accused' in federal court-and therefore the Sixth Amendment is not triggered-until he is arrested on federal charges or federal charges are filed against him."  Doc. 152 at 14.  This Court adopted that finding.[2]  Doc. 177 at 2.  Mr. Pendergrass asserts that although his situation may present a novel issue for the Court, there is legal support for a position that is contrary to this Court's findings.

The Supreme Court has held that a defendant's rights under the Speedy Trial Clause of the Sixth Amendment are triggered by "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *United States v. Marion*, 404 U.S. 307, 320 (1971).  There is no doubt that Mr. Pendergrass was subject to the actual restraints imposed by arrest and there is no doubt that federal agents were involved in the arrest and investigation beginning in 2013.  Cases relied upon by this Court to deny Mr.

---

[2]    To the extent that the court held there was insufficient evidence to support Mr. Pendergrass' Fifth Amendment claims, Mr. Pendergrass asserts that it was error for the court to deny his request for further hearings on the matter.  In his objections to the report and recommendation, he noted:

> It is impossible for Mr. Pendergrass to make a showing of deliberate delay when all of the evidence regarding the reasons for the delay is in the hands of the government, the Fulton County District Attorney's Office, and the Atlanta Police Department.  Mr. Pendergrass again asks that a hearing be held, at which employees of the Fulton County District Attorney's Office and the Atlanta Police Department can testify and explain the timing of their investigation and "prosecution" of Mr. Pendergrass.

Doc. 156 at 6-7.  The denial of this hearing will be raised on appeal.

Pendergrass' motion are distinguishable from the present case.  It does not appear that *Ponce-Aldana,* No. 2:07-CR-2-WCO, 2008 WL 11432188 (N.D. Ga. Jan. 7, 2008), is similar to the case presented here because no federal authorities were involved in the arrest or investigation of the defendant until many years after the state court prosecution began.  It should be noted that state authorities ***actually prosecuted*** Mr. Ponce-Aldano, as opposed to just placing a hold over him until the federal prosecutors could bring their case, as happened here. Likewise, *United States v. Gomez*, 776 F.2d 542 (5th Cir. 1985), does not govern this case because it does not appear that there was federal involvement in the initial arrest and investigation. Further, as outlined in *United States. v. Nixon*, 634 F.2d 306, 309 (5th Cir.1981):

> "(for) purposes of determining when the right to speedy trial attaches the basis for the arrest is critical." *Gravitt v. United States*, 523 F.2d 1211, 1215 n.6 (5th Cir. 1975) (emphasis in original). In *Gravitt*, petitioner was initially arrested on a state warrant charging armed robbery and assault. A search incident to the arrest revealed a large number of firearms. Some time later, a formal complaint and arrest warrant were filed by federal officials charging him with interstate transportation of firearms by a convicted felon. When the speedy trial question was presented, the Court focused on the basis of the arrest and held that the time was not to be measured from the time of the initial arrest but from the time the petitioner was accused of the crime he was then challenging. The cases of *United States v. DeTienne*, 468 F.2d 151 (7th Cir. 1972), cert. denied, 410 U.S. 911, 93 S. Ct. 974, 35 L. Ed. 2d 274 (1973), and *United States v. Cabral,* 475 F.2d 715 (1st Cir. 1973), also make it clear that the basis of the arrest is critical.

Of course, if the second charge is but a part of or only gilds the initial charge, the initial arrest would start the critical period for trial. As the Seventh Circuit observed in DeTienne:

> (If) the crimes for which a defendant is ultimately prosecuted really only gild the charge underlying his initial arrest and the different accusatorial dates between them are not reasonably explicable, the initial arrest may well mark the speedy trial provision's applicability as to prosecution for all the interrelated offenses. 468 F.2d at 155.

*Nixon*, 634 F.2d at 309.

Mr. Pendergrass has repeatedly asserted that pursuant to the "ruse" exception, a state arrest will start the Speedy Trial clock "when the Government has knowledge that an individual is held by state authorities solely to answer to federal charges." *United States v. Woolfolk*, 399 F.3d 590, 596 (4th Cir. 2005); *see also United States v. Clark*, 754 F.3d 401, 405-06 (7th Cir. 2014) (ruse exception possible if defendant has evidence of agency between federal and state authorities); *United States v. Benitez*, 34 F.3d 1489, 1494 (9th Cir. 1994) ("Speedy Trial Act time periods may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act."). *Compare United States v. Harris,* 551 Fed. Appx. 699 (4th Cir. 2014) ("Unlike in *Woolfolk*, however, Harris does not suggest that the federal government knew—or even should have known—that he was being held on state charges prior to his case being referred to federal authorities."). Many Courts of Appeals have recognized

the "ruse" exception in the context of an INS civil detention where there is "collusion or evidence that the detention was for the sole or primary purpose of preparing for criminal prosecution." *United States v. Garcia-Martinez*, 254 F.3d 16, 20 (1st Cir. 2001); *see also United States v. Guevara-Umana*, 538 F.3d 139, 142 (2d Cir. 2008); *United States v. Pasillas-Castanon*, 525 F.3d 994, 997 (10th Cir. 2008); *United States v. Drummond*, 240 F.3d 1333, 1336 (11th Cir. 2001); *United States v. De La Pena-Juarez*, 214 F.3d 594, 598 (5th Cir. 2000).  In this case, it is clear that Mr. Pendergrass was subject to the actual restraints imposed by arrest in connection with this federal investigation.  The question of whether the circumstances of his arrest can be considered a federal arrest for speedy trial purposes is, at a minimum, a novel issue that should be addressed by the appellate court.  It is not a frivolous issue.

Should Mr. Pendergrass prevail on this issue, his conviction would be vacated.  He should be permitted to litigate this and other issues on appeal prior to serving any custodial sentence.  Other district courts have granted bond pending appeal when it is possible that a defendant could serve a significant portion of their sentence while waiting to complete the appeal process. *See, e.g.*, *United States v. Scheur*, 626 F. Supp. 2d 611 (E.D. La. 2009) (granting bond and noting that "[a]lthough the Court feels confident in its earlier rulings, the Court acknowledges that, if any of these issues are decided in the Defendants' favor, the Defendants

could potentially serve a considerable portion of their sentences prior to receiving the appellate court's decision); *United States v. Eaton*, 2013 U.S. Dist. LEXIS 134570, \*7-8 (W.D. Ky 2013) (granting bond and noting if any of the issues are decided in the Defendant's favor, the Defendant could potentially serve a considerable portion of his 18-month sentence prior to receiving the appellate court decision).

Additionally, in light of the on-going Covid-19 pandemic and Mr. Pendergrass' age and risk of serious complications should he contract this virus while in custody, Mr. Pendergrass asks that he be permitted to litigate his issues on appeal prior to be serving his sentence.

For all of these reasons, Mr. Pendergrass asks that this Court grant his request for bond pending appeal.

Respectfully submitted this day 14th of September 2022.

| /s/SARALIENE S. DURRETT | /s/SYDNEY R. STRICKLAND |
|---|---|
| Saraliene S. Durrett | Sydney Rene Strickland |
| GA Bar No. 837897 | Strickland Webster, LLC |
| 1800 Peachtree Street | Suite 510-203 |
| Suite 300 | 830 Glenwood Ave., S.E. |
| Atlanta, GA 30309 | Atlanta, GA 30316 |
| 404-433-0855 | 404-590-7967 |