The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

```
1                  IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
2                         ATLANTA DIVISION

3   UNITED STATES OF AMERICA,        :
                                     :
4   vs.                              :  DOCKET NUMBER
                                     :  1:17-CR-0224-1
5   ALLEN J. PENDERGRASS,            :
                                     :  ATLANTA, GEORGIA
6            DEFENDANT.              :  NOVEMBER 08, 2018

7

8         TRANSCRIPT OF PRETRIAL CONFERENCE PROCEEDINGS

9            BEFORE THE HONORABLE AMY TOTENBERG

10              UNITED STATES DISTRICT JUDGE

11
    APPEARANCES OF COUNSEL:
12
         FOR THE GOVERNMENT:
13
         JEFFREY A. BROWN
14       TERESA M. STOLZE
         UNITED STATES ATTORNEY'S OFFICE
15

16       FOR THE DEFENDANT:

17       ROBERT H. CITRONBERG
         LAW OFFICE OF ROBERT CITRONBERG
18

19

20

21

22   MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED
                 TRANSCRIPT PRODUCED BY:
23
    OFFICIAL COURT REPORTER:      SHANNON R. WELCH, RMR, CRR
24                                2394 UNITED STATES COURTHOUSE
                                  75 TED TURNER DRIVE, SOUTHWEST
25                                ATLANTA, GEORGIA  30303
                                  (404) 215-1383
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

1     **P R O C E E D I N G S**

2     **(Atlanta, Fulton County, Georgia; November 8, 2018.)**

3           THE COURT:  We're here for the pretrial conference in

4 the United States of America vs. Allen Pendergrass.  I see

5 Mr. Pendergrass there.  This is Criminal Action Number

6 1:17-CR-224.

7           I didn't have -- is there anything you want to advise

8 me of that you made progress on or that you think would be

9 helpful in terms of moving this conference forward without

10 sacrificing anything on the merits?

11           MR. CITRONBERG:  Judge, we're still involved in plea

12 negotiations.

13           THE COURT:  I see.

14           MR. CITRONBERG:  Also, we talked about the fact that

15 the Government recently filed some more 404(b) information.  I

16 would like time to file a written response to that.

17           I understand that Your Honor is leaving next Friday?

18           THE COURT:  No.  I'm going to be in town.

19           MR. CITRONBERG:  Oh, okay.  Well, in any event --

20           THE COURT:  I often do.  But, unfortunately, I'm not.

21           MR. CITRONBERG:  In any event, I said I would like

22 until next Friday to file a written response to the 404(b)

23 stuff.

24           THE COURT:  So what are you -- so you -- in terms

25 of -- we're really talking about the defendant's notice of

1    intention to introduce information -- that you are saying that

2    you've gotten more -- more 404(b) information in connection

3    with the Government's notice?  I'm just trying to --

4              MR. BROWN:  Let me see if maybe I can clear it up,

5    Your Honor.  So the Government filed -- on October 12th, we

6    filed a motion where we asked the Court to introduce 404(b).

7              THE COURT:  Right.

8              MR. BROWN:  And then on November 2nd, we filed an

9    amended motion.  All we did was just add additional

10   convictions.  So nothing really changed.

11             But I know Mr. Citronberg wants an opportunity to

12   respond to the motion.  So we filed one on October 12, amended

13   on November 2nd.  And I think Mr. Citronberg wants a chance to

14   respond to the motion.

15             MR. CITRONBERG:  Judge, the only real hangup I have

16   is I have a trial that may be starting Monday in Cobb County,

17   which I'm really hoping doesn't go.  And then I have a trial

18   starting Tuesday in Forsyth County, which I have a hunch will

19   go.

20             So, again, if I could just ask for a few days to

21   answer the Government's motion.

22             THE COURT:  Well, I guess I don't know what the

23   situation was after October 12.  But did you -- was there

24   anything that had been provided as of, let's say, a week after

25   October 12th that you had concerns about?  That is what I'm

1    trying to --

2         You looked at the material that is being referenced

3    in their notice?  Because, as I understand it, there was almost

4    nothing other than an additional indictment that was added on

5    November 2nd.  So I'm trying to figure out where were you at

6    about --

7         Harry, I just sent you a note.

8              **(There was a brief pause in the proceedings.)**

9         THE COURT:  I mean, I don't -- if you really are

10   going to -- you want to get this in next Friday?

11        MR. CITRONBERG:  Yes.

12        THE COURT:  Next Friday.  All right.

13        MR. CITRONBERG:  Only because I have trials next

14   week.

15        THE COURT:  All right.  Obviously 404(b) issues are

16   always large.  But we really need to get it in because I mean

17   we need to know the scope of the case.

18        MR. CITRONBERG:  Well, if I don't get on trial, then

19   Wednesday is fine, Tuesday is fine.  If I'm sitting with Judge

20   Bagley, then that is not so fine.

21        THE COURT:  Well, I don't know -- the thing is:  I

22   don't know what Mr. Brown's schedule is either in terms of if

23   he wanted to respond.  That is the --

24        MR. BROWN:  Actually, Your Honor, Teresa Stolze,

25   she's co-counsel.  She actually handled the motion.  I don't

1    think we'll need to respond, Judge.

2            THE COURT:  All right.  Very good.  I would like to

3    see it no later than 4:00 on Friday though.

4            MR. CITRONBERG:  Okay.

5            THE COURT:  Because I think you've had ample time to

6    respond.  And I don't know what will be involved in their

7    presenting this but -- some of these other incidents that are

8    identified.

9            Can the Government tell me how you are going to be

10   presenting these other bad acts evidence if you had to -- if

11   you plan to do that?

12           MR. BROWN:  Yes, Judge.  So the other bad act

13   evidence is:  We'll present them through witnesses and evidence

14   in the case.  And the case just involves forged power of

15   attorneys, Your Honor.  So we'll be introducing that evidence

16   of forged power of attorneys that were recovered from the

17   defendant's office.

18           And we will also be introducing a witness whose

19   signature was forged on the power of attorney form to say that

20   it was not their signature and they did not hire

21   Mr. Pendergrass' company to collect these excess funds.

22           THE COURT:  On these other incidents?  I mean, the

23   Atlanta Quarterback Club incident, the Tousa Homes incident, I

24   mean, are you going to have a witness for each one of those?

25           MR. BROWN:  Each one of those except for Holland &

1   Knight.  Holland & Knight -- the co-defendant is cooperating,

2   Your Honor.  He will testify about working with the defendant

3   on that incident of trying to collect about $360,000 the city

4   had owed Holland & Knight.  So the co-defendant would testify

5   as to that, Your Honor.

6           THE COURT:  I'm just trying to perceive how much -- I

7   don't know at this point how broadly this will take us but --

8   and how manageable it will be -- but that is really what I was

9   trying to get at -- if you had one witness and the defendant

10  says it is a complicated story.  Because I'm trying to make use

11  of our time together.  I'm just trying to imagine what that

12  would look like in terms of trial management.

13          MR. BROWN:  Your Honor, it is not going to add that

14  much additional time.  These witnesses will be very brief.  The

15  only issue really is their signature was forged.  They'll

16  identify the forged signature on the documents.

17          So it is not going to be an additional -- extend the

18  trial much because it is only a couple of witnesses, Your

19  Honor.

20          THE COURT:  Could the Government provide me with the

21  404(b)s?

22          MR. BROWN:  The actual evidence we'll introduce or

23  the convictions?

24          THE COURT:  I mean, as I understand it, you've now

25  provided the 404(b) statements to -- the evidence -- the

```
1   evidence to Mr. Citronberg; is that right?
2           MR. BROWN:  We provided -- for 404(b), we provided
3   the convictions to defense counsel.  We have also provided the
4   substantive evidence relating to the incidents we have laid out
5   in the actual motion we would introduce into evidence, Judge.
6           THE COURT:  All I'm saying is that would it be --
7   would it be helpful for me to have that if I end up having a
8   disputed motion?
9           MR. BROWN:  We could provide it to Your Honor, yes,
10  if you think it would be helpful.
11          THE COURT:  I don't know -- I won't know, of course,
12  until I see Mr. Citronberg --
13          MR. BROWN:  I think the motion really lays it out
14  really well, Your Honor, what the evidence is.  And -- but if
15  Your Honor believes you need additional evidence, we'll provide
16  that to you.
17          THE COURT:  All right.  You-all are going to be
18  around on that Monday of Thanksgiving week?  It is kind of an
19  early Thanksgiving.  So it is sort of hard to quite compute.
20          MR. BROWN:  Yes.  I plan to be here that week.
21          MS. STOLZE:  Yes, Your Honor.
22          THE COURT:  All right.  That is fine.
23          All right.  I will just say:  If I don't get a
24  response at that juncture, I'm going to consider that I
25  don't -- that there is no objection to it.  All right?
```

1          So were there objections to the Government's proposed
2     voir dire?
3          MR. CITRONBERG:  No, Your Honor.  I didn't see
4     anything I objected to.  I hadn't filed any yet because I
5     thought it was going to be reset when we reset the pretrial
6     conference.  But it wasn't.  I would like the ability to file
7     voir dire questions.
8          THE COURT:  So you still would like to file some?
9          MR. CITRONBERG:  Yes, ma'am.
10          THE COURT:  All right.  Well, I tell you what.  I
11     mean, that seems straightforward enough in terms of my having
12     seen other matters that if you can -- can you get that out --
13     at least the additional voir dire questions so that they can
14     respond by Friday and also so I can --
15          MR. CITRONBERG:  Yes, ma'am.
16          THE COURT:  If you can get them out to them by -- by
17     Wednesday at 10:00 in the morning, they should be able to
18     respond -- the Government should be able to respond by Friday
19     also.
20          MR. CITRONBERG:  Sure.
21          THE COURT:  As a whole, I would just say -- I guess
22     at that point when I have what you want, I will identify any
23     other issues by writing.
24          But I think some of the questions are -- go over
25     matters that I would expect I would deal with in the

1    preliminary questions.

2              How large of a jury do you think you're going to

3    have?  Because I'm a little bit concerned about whether --

4    about the length of time in voir dire with some questions.

5              Is there anything here that would make you think that

6    we need an unusually large pool?

7              MR. BROWN:  No, Judge.

8              MS. STOLZE:  No.

9              MR. CITRONBERG:  No.

10             THE COURT:  Okay.  Neither of you think so.

11             Mr. Martin, how many people have we --

12             COURTROOM DEPUTY CLERK:  35.

13             THE COURT:  35.  All right.

14             MR. CITRONBERG:  Judge, and from my understanding,

15   we're starting Monday afternoon?

16             THE COURT:  That is right.

17             MR. CITRONBERG:  That is great because it gives

18   people time.

19             THE COURT:  I'm just concerned that people would be

20   coming back from Thanksgiving.

21             MR. CITRONBERG:  That is right.

22             THE COURT:  Be in the state having to be here at 9:30

23   in the morning and be hostile.

24             There is an instruction here basically about proof

25   beyond a reasonable doubt.  And I think the last trials I had I

1    tried to address -- say -- I really don't feel like we should

2    be giving them instructions -- the jury instructions through

3    the voir dire by counsel as to what proof beyond a reasonable

4    doubt means.  I think that is for the Court to instruct them

5    on.  I'm trying not to let anyone sort of implant one view of

6    what that means versus another.

7              MR. BROWN:  Sure.

8              THE COURT:  And even though it is correct as the

9    instruction as to the punishment, the same view about that.

10   I'm not going to let you ask a question that includes an

11   instruction that we're ultimately going to give them.  But it

12   kind of ends up implanting one side's -- what one side or

13   another thinks is important about the punishment issue.

14             MR. BROWN:  So, Your Honor, is there a problem just

15   changing that question Number 23 to just generally asking the

16   jury if they can follow the Court's instruction as given -- if

17   they can or cannot do that?

18             THE COURT:  Yeah.  I mean, I will have talked to them

19   about reasonable doubt beforehand also.  You know, the thing is

20   on 26, just eliminate the first sentence.  Because then you are

21   getting at the question you care about but you're not

22   instructing them about the law.

23             MR. BROWN:  All right.  Okay.  So we'll strike --

24             THE COURT:  And I haven't gone through all of the

25   others.  But that is the principle about this.  Since -- I know

1    that the U.S. Attorney's Office has some of these that are

2    implanted here.  I just wanted to flag it for you.

3              I think we'll have gone through by that point -- the

4    time you get to ask questions, most of the questions that would

5    be about the background of the individual jurors -- Mr. Martin,

6    did you end up giving counsel a list of the questions I ask?

7              COURTROOM DEPUTY CLERK:  Yes, ma'am.

8              THE COURT:  All right.  And so my typical practice is

9    simply to rotate the time between you-all if it ends up taking

10   time so that no one is dominating their questioning of the

11   jury.  So basically 25 minutes at a time, one counsel, and then

12   the next.  And then obviously you don't have to stop in the

13   middle of a question with somebody.  But something roughly like

14   that.

15             MR. BROWN:  Okay.  So, Judge, if we start at 1:30,

16   you expect we'll have the jury and open that afternoon?

17             THE COURT:  I bet we won't be able to open.  Only

18   because I'm not as quick as Judge Batten by any means.  Even

19   he -- so -- I just -- I think that, you know, we've still got

20   to give an opening instruction.  We still have to -- we still

21   have 35 people to question.  And that just takes time.

22             So I don't want you to have to give your -- be rushed

23   at 5:00 when they are irritated also.  I want them to be able

24   to listen to you and listen to my opening instructions.  Let's

25   just hope we have a jury at that point.

1          So right now how long are you thinking it is going to

2  take you to try the case -- the Government's case?

3          MR. BROWN:  I think the Government should be able

4  to -- Wednesday afternoon.  Two full days will be enough to

5  present the Government's case, Judge.

6          THE COURT:  And any anticipated evidentiary issues

7  other than the 404(b) questions?

8          MR. BROWN:  No.  The only thing we did discuss

9  outside -- I don't know if we have an agreement, but we did

10  discuss it as relates to we have a lot of records that are

11  coming in -- business records.

12          I provided the actual -- the form for the custodian

13  of records as well as the records to defense counsel.  So I'm

14  assuming he is not going to object to us admitting those

15  records without calling the custodian.

16          I know we talked about it.  He said he likely would

17  not have an issue with that.  But that would cut down the trial

18  significantly if we don't have to call any records custodians,

19  Judge.

20          THE COURT:  All right.  Is that right,

21  Mr. Citronberg?

22          MR. CITRONBERG:  Yes.  I don't expect.  But I just

23  wanted a couple of more days to be able to look over the

24  documents just to make sure that I can't glean anything from

25  the custodian.

```
1              THE COURT:  All right.  Well, just in case they have
2    to do anything, I think you should let them know.
3              MR. CITRONBERG:  I'll try and let them know tomorrow
4    or Monday.
5              THE COURT:  All right.  Very good.
6              And when are you anticipating -- anticipate getting
7    me a jury charge?  Because this one thing is when you have a
8    short trial you've got to get the jury charge roughly in shape
9    beforehand or else you are left flatfooted.
10             MR. BROWN:  Right.  So next week, Your Honor.  By
11   next Friday, we'll have the charges to you.
12             Is that sufficient?
13             That will give us a full week after that before the
14   actual trial, Your Honor.
15             THE COURT:  I think the full week after that is --
16   everyone is leaving on Wednesday, including any -- if you could
17   get it to us on Thursday, that would be better.
18             MR. BROWN:  All right.
19             THE COURT:  Because the clerk I work with most on
20   this may be leaving after Friday night.
21             MR. BROWN:  And that is just the Government's
22   requests?  You're not asking us to get together and agree on
23   all the charges?
24             THE COURT:  Well, it would be great.  But I don't
25   know whether Mr. Citronberg is going to be available.
```

1         MR. CITRONBERG:  Again, it is fine.  We did it the

2    last trial with Ms. Copeland.  If I'm not on trial, it is

3    great.  If I'm on trial, it is not so great.

4         THE COURT:  So all right.  You are going to notify

5    Mr. Brown whether you are going to be on trial.

6         And you're going to know when?  Do you know when you

7    are going to know?

8         MR. CITRONBERG:  I'm sorry?

9         THE COURT:  Do you know when you're going to know

10   whether you are going on trial next week?

11        MR. CITRONBERG:  Probably not until Monday afternoon

12   or Tuesday morning, really.  It is a state court case.  You are

13   kind of --

14        THE COURT:  All right.  So I think that -- you should

15   assume he may not be on trial.  So just go ahead and provide a

16   draft to Mr. Citronberg by Tuesday afternoon.

17        And, Mr. Citronberg, please advise counsel as well as

18   me whether you are in trial or not so we know what to expect.

19   If you can't get any response because he has confirmed he is on

20   trial, then just give me what you have.

21        MR. CITRONBERG:  We have each other's cell numbers.

22        THE COURT:  And if he's not, then I'm going to expect

23   you -- I'm happy to give you until Friday morning at that point

24   to give him enough time to respond and for you to work out the

25   wrinkles.

```
 1              But to the extent that there is an objection, it is
 2     usually a lot easier not to have two separate documents.  I
 3     think I have dealt with Mr. Citronberg about this before in a
 4     case that Brent Gray was handling.  So you can just chat with
 5     him about what you-all did.  But it is a lot easier just simply
 6     to have a redlined document.  And when Mr. Citronberg sends you
 7     back the objections, then you can just include what they are in
 8     that document so I know.
 9              Are there any other legal issues that you see
10     potentially coming up or evidentiary issues?
11              MR. BROWN:  Not from the Government, Judge.  No, no
12     legal issues.
13              THE COURT:  And, Mr. Citronberg, did you have any
14     different view as to the length of the case?
15              MR. CITRONBERG:  Provisional ballots.
16              THE COURT:  Provisional ballots.  Okay.  You want the
17     jury to give provisional ballots?
18              MR. CITRONBERG:  Provisional verdict form.
19              THE COURT:  A provisional verdict form.  All right.
20     It takes a lot more time when you have provisional things.
21              MR. CITRONBERG:  And you may lose it.
22              THE COURT:  Okay.  So but do you -- do you, in fact,
23     have a different view about the length of the case?
24              MR. CITRONBERG:  No, ma'am.
25              THE COURT:  All right.
```

```
 1              MR. CITRONBERG:  I expect that we will have some
 2    evidence to put up.  It will not be long.
 3              THE COURT:  All right.  So you think you'll be
 4    through by Thursday also?
 5              MR. CITRONBERG:  I would think.
 6              THE COURT:  How long are you-all anticipating for
 7    opening argument -- opening statements?
 8              MR. BROWN:  What do you typically do?  This is a
 9    shorter case.  What is your typical -- what do you typically
10    allow counsel?
11              THE COURT:  I mean, 15 minutes should probably be
12    sufficient, if it is that short.  But if you want 20 minutes,
13    I'm happy to give 20 minutes.
14              MS. STOLZE:  I would say maybe 20 minutes on the safe
15    side, Judge, but I don't think -- we probably won't need that
16    whole time.  But to be on the safe side, we are talking about
17    allowances.
18              MR. CITRONBERG:  20 is reasonable.
19              THE COURT:  All right.  And we'll deal with the
20    closing when we see what the evidence is at that point.
21              Are there any entities that are -- I know we always
22    list the individuals who are potential witnesses.  But
23    sometimes when you've got -- we have here a number of agencies
24    and entities that are referenced in this motion in limine and
25    companies so -- and especially if some of this information
```

1    comes in on the 404(b) evidence.

2         Wouldn't we need to do voir dire that would identify

3    some of these parties?

4         MR. BROWN:  Your Honor, what I typically do is just

5    have a list and I read that list to the jurors during voir

6    dire.  The Government can do that.

7         THE COURT:  Right.  I'm just concerned that if you've

8    got something involving the Atlanta Quarterback Club or the

9    people involved in the Lee Family Trust or whatever that you've

10   got -- even though they are not individual witnesses --

11        MR. BROWN:  Right.

12        THE COURT:  -- I want to have a question that deals

13   with do they have any -- myself I would like to have something

14   that I'm asking them, do they have any interest in this, do

15   they have anyone who is employed, sort of a little bit

16   different than just -- that you personally know a witness.

17   So --

18        MR. BROWN:  Right.

19        THE COURT:  If you could provide me by the end of the

20   week a -- by Friday a list of the -- you could sort of mark it

21   off.  Assuming that I grant -- allow you to present all this

22   evidence, indicate all those entities and then also indicate if

23   it is -- those that relate solely to the indictment.

24        MR. BROWN:  I understand.  I can do that.

25        So by next Friday, you want us to give that list or

1    get it -- give it to Harry?

2              THE COURT:  Right.

3              MR. BROWN:  Email it to Harry?

4              THE COURT:  That will be great.

5              MR. BROWN:  Yes, Judge.

6              THE COURT:  So it is a little bit like in one of

7    these other cases if somebody had an interest in Home Depot or

8    had a relative employed by Home Depot, might have had stock in

9    Home Depot, I would like to -- a list of that.

10             MR. BROWN:  Okay.

11             THE COURT:  Anything else we should address?

12             MR. BROWN:  I have not had a trial in front of you.

13   So for voir dire, are you going to ask the questions here --

14   the qualifying questions in a criminal case?

15             THE COURT:  I'm going to -- go ahead.

16             MR. BROWN:  How do you do the process so we'll make

17   sure --

18             THE COURT:  The process is normally that I will do

19   the qualifying questions and the two sets of questions that

20   you've gotten here, which I'm assuming that --

21             MR. BROWN:  We have --

22             THE COURT:  The Court's qualifying questions and then

23   I have the other questions as background jury questions.  And I

24   will ask follow-up on any of these questions.

25             But, of course, if I haven't covered something, later

1   on you are welcome to do so.  But usually that gets out quite a

2   bit.  And then I'll let you do the rotation on the questions

3   that we talked about that you are asking.

4              MR. BROWN:  Okay.

5              THE COURT:  And, you know, if it is taking a long

6   time, then I'll probably take a break and say how are we going

7   to truncate this because everyone -- this is a group where

8   everyone has had some type of interaction with the Government.

9              And we have had a lot of -- in the last number of

10  trials, we had people having frankly a lot of issues with the

11  police, more so -- I think people are more direct about saying

12  what their issues are or a family member's or they -- and so I

13  just -- it can go on and on.

14             So I just want to flag that because I'm not sure it

15  is all necessarily relevant to this case.  I mean, not

16  necessary for the trial.  I know you want to get a sense of it.

17  But it took a long time on the -- on the Home Depot case even

18  though it was really not a very long trial.

19             MR. BROWN:  Right.

20             THE COURT:  So I know the Government is concerned

21  that somebody may have an antigovernment view from it.  But you

22  end up -- it ends up sorting itself out some.  But that is

23  where we've really slowed down a lot, I have to say.

24             MR. BROWN:  We'll be monitoring that, Judge.  We'll

25  be mindful of that, Judge.

20

```
 1              THE COURT:  It is a different thing if you -- given
 2    the charge if somebody else has been -- a family member or the
 3    individual has -- or close friend of theirs had issues around
 4    money that might be relevant to the charges here.
 5              But that is something different, it seems to me.  So
 6    that is the way we do it.  And I really -- I try to let counsel
 7    really pursue things, unless things are just getting out of
 8    hand in terms of how long it is taking.  Because then you end
 9    up having a jury selection process that is longer than the
10    trial.
11              And I don't know -- Harry, did you talk to them at
12    all -- I don't know whether you -- did Amy share with you
13    anything about the whole -- just simply anything else about the
14    voir dire process?
15              I know that Mr. Citronberg has gone through a trial.
16    But anything else that she gave you?  Otherwise, I mean, I'm
17    going to just say that I use -- we use a piece of paper that is
18    going to be handed back and forth to you.  And if you haven't
19    given it to them --
20              COURTROOM DEPUTY CLERK:  The charts with the strikes?
21              THE COURT:  Yes.
22              COURTROOM DEPUTY CLERK:  I ran some extra copies of
23    that.
24              THE COURT:  It is a short trial.  So do you want more
25    than one alternate?
```

```
1              MR. BROWN:  I wouldn't think so, Judge.

2              MR. CITRONBERG:  No.

3              THE COURT:  All right.  So we'll just have one

4    alternate.  And Mr. Martin will go back and forth.  It won't

5    be -- you will get to see each other's strikes at that point.

6              If you want to see -- keep the jury in present while

7    you are doing that, ask me to do so.  I mean, if it doesn't

8    matter to you, I'm going to talk to you about that.  So I'm

9    really not going to go through that process right now.  But I'm

10   happy to have them in.

11             I think the one wrinkle for the Government that is --

12   no wrinkle is good.  I would like to have -- put a -- I'll have

13   each juror assigned a number -- just remind the jury office

14   about that -- so that the person who is sitting over there is

15   not just Jane Doe but Juror Number 1.  And it is a lot easier

16   for me to track them that way.  It probably will end up being a

17   lot easier for you.

18             And I ask them every time they stand up to both -- to

19   say their juror number.  It is just incredibly easier to find

20   them when you are later trying to figure out who said what and

21   what -- where your notes go to.

22             I think that is it.  Anything else about the process

23   that you want to --

24             MR. BROWN:  No, Judge.

25             THE COURT:  -- ask questions about?
```

1              MR. BROWN:  Thank you.

2              MR. CITRONBERG:  No, Judge.

3              THE COURT:  All right.  Very good.  Thank you again.

4    And obviously if you end up thinking about a plea, let us know

5    as soon as possible so we can schedule things accordingly.

6              MR. BROWN:  Okay.  Thank you, Judge.  Nothing else

7    from the Government.

8              THE COURT:  All right.  Very good.  Thank you.

9              COURTROOM SECURITY OFFICER:  All rise.  Court stands

10   in recess.

11              **(The proceedings were thereby concluded at 5:43**

12              **P.M.)**

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA

4    NORTHERN DISTRICT OF GEORGIA

5

6         I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

7    the United States District Court, for the Northern District of

8    Georgia, Atlanta Division, do hereby certify that the foregoing

9    22 pages constitute a true transcript of proceedings had before

10   the said Court, held in the City of Atlanta, Georgia, in the

11   matter therein stated.

12        In testimony whereof, I hereunto set my hand on this, the

13   18th day of October, 2022.

14

15

16

17                                 _____
                                   SHANNON R. WELCH, RMR, CRR
18                                 OFFICIAL COURT REPORTER
                                   UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT