IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| vs. | : | DOCKET NUMBER |
| | : | 1:17-CR-0224-AT-1 |
| ALLEN J. PENDERGRASS, | : | |
| | : | ATLANTA, GEORGIA |
| DEFENDANT. | : | JULY 1, 2019 |

**TRANSCRIPT OF AUDIO-RECORDED PRETRIAL CONFERENCE PROCEEDINGS**

**BEFORE THE HONORABLE CATHERINE M. SALINAS**

**UNITED STATES MAGISTRATE JUDGE**

APPEARANCES OF COUNSEL:

**FOR THE GOVERNMENT:**

JEFFREY BROWN
UNITED STATES ATTORNEY'S OFFICE

**FOR THE DEFENDANT (VIA TELEPHONE):**

SARALIENE DURRETT
SARALIENE SMITH DURRETT, LLC

***MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED TRANSCRIPT PRODUCED BY:***

***OFFICIAL COURT REPORTER:*** ***SHANNON R. WELCH, RMR, CRR***
***2394 UNITED STATES COURTHOUSE***
***75 TED TURNER DRIVE, SOUTHWEST***
***ATLANTA, GEORGIA 30303***
***(404) 215-1383***

**P R O C E E D I N G S**

**(Atlanta, Fulton County, Georgia; July 1, 2019.)**

THE COURT: Okay. This is Case Number 1:17-CR-224. United States v. Allen Pendergrass. Jeff Davis is here, and Saraliene Durrett is on the phone.

MR. BROWN: It is Jeff Brown.

THE COURT: Oh, sorry.

MR. BROWN: We're like brothers.

THE COURT: Yeah. Sorry.

MR. BROWN: No problem.

THE COURT: Has it always been him?

MR. BROWN: It has. It has always been him.

THE COURT: Jeff Davis just reminds me of like the Civil War.

MR. BROWN: Yes.

THE COURT: You know, that whole thing?

MR. BROWN: Right.

THE COURT: So you're not that. You're not that Jeff Davis.

Sorry.

COURTROOM DEPUTY CLERK: Teresa is on the docket too. I didn't think you were, but --

MR. BROWN: Teresa is on the docket.

THE COURT: Okay. So is there anything we need to do?

I know there is a motion that I've got to deal with, the pre-indictment motion to dismiss.

MS. DURRETT: Yes.

And, Your Honor, I have -- we've requested copies of Mr. Pendergrass's hard drives from the Government. I think when they did the initial arrest of Mr. Pendergrass they seized about ten computers. And they still have those computers.

And we have requested copies of some of the hard drives because they have relevant financial documents on them. And Mr. Brown provided those copies to us. But they are not in a format that we can read for whatever technical reason that is.

And I have requested money from the Court to hire Jim Persinger to produce them in a technical format that we can read. But I'm waiting on the Court's approval for that. So that is kind of the status of where we are as far as the financial documents that we have requested.

But, you know, until I see them, I'm not sure, you know, how they will help us in this process or if they will help us in this process. But my client believes they are relevant to his defense.

THE COURT: I think I approved that. It is very -- it is very possible that I didn't. Like I feel like I'm good at my job. The one thing that I'm not very good at is dealing with the CJA system. And the -- and I forget that I've got

things pending.

But I feel like that one I already ruled on. Do you get notice when I approve them? I don't think you do.

MS. DURRETT: I don't get notice. But I looked this morning. And I can see -- all I can ever see is if it has been submitted or approved. And what it showed me was that it had been submitted.

So maybe I just need to check with Michaela and say does this mean approved because --

THE COURT: Well, I just have a vague recollection of it and --

MS. DURRETT: Okay.

THE COURT: -- thinking do I need to think hard about this or should I just approve it? And I think I just approved it. So I will --

MS. DURRETT: Okay.

THE COURT: If I haven't approved it yet, I'll go ahead and approve it.

So does that mean you need more time to review that?

MS. DURRETT: It does. Jim Persinger has the drive. But he doesn't have permission to do anything with it until we get the money -- until -- as soon as I tell him it is a go, he will start working on it.

But yes, I need more time because I can't read the files right now.

THE COURT: All right. And you think there is going to be evidence that helps your case on the computer?

MS. DURRETT: All I know is that they are supposedly financial documents that were seized at the time of his arrest. And that is all I know about them. But my client feels like there will be information in there that we need to look at.

THE COURT: Well, that's probably true. But whether or not it is helpful to your case, I don't know.

MS. DURRETT: I don't know the answer to that, Your Honor. I just haven't seen it. And I don't know.

THE COURT: Because, you know, if it is not going to be helpful to your case, I don't know that it makes sense to delay it any further.

MS. DURRETT: Well, the only thing I can say is, if it is helpful, it probably weighs on this prejudice idea -- right? -- about whether he has been prejudiced.

I did note in one of my filings -- I don't remember if it was the response. I think it was -- that Mr. Pendergrass had been represented by an attorney in another district. And when that was happening, that attorney wrote to the officer who was kind of heading up this investigation in all districts, including the Georgia state court and federal court and other -- you know, the Ohio court. His attorney wrote to that officer, Officer Ricks, and said I want to get access to those computers. My client wants access to those computers.

And you can see in the emails that I attached to one of my filings Officer Ricks told the other officers, I just ignored that. His attorney wrote to me, and I just ignored that.

So at least I know someone was trying to get it to help Mr. Pendergrass at some point. That attorney, who I have contacted several times -- he was out of the country for several months. But I have been in contact with him -- told me that he never got access to those computers.

So there is something going on there. And I think if the Court is going to be weighing whether Mr. Pendergrass was prejudiced by the delay here the denial of access to those computers is going to be part of it. And I don't know how prejudiced he was or if he was prejudiced until I see what is on there.

THE COURT: All right. Mr. Brown, what do you -- I mean, do you have a problem with giving her more time to look at this computer?

MR. BROWN: I mean, I don't have any problem with that, Judge. It is just the Government has done what we're supposed to do in turning this -- making this stuff available to her.

So I mean, I think what is also before the Court is just ruling on the motion to dismiss for a pre-indictment delay.

THE COURT: Right. And that is something I can go ahead and start working on like -- frankly, I haven't started working on it. But I will now. It is kind of -- it is on my radar now. So I can go ahead and just start working on my R&R for that.

We'll -- I'll go ahead and approve the funds. And let's just start with 30 days. We'll give you 30 days to file any additional motions that you have. And we'll set up a pretrial conference.

MS. DURRETT: Okay. Your Honor, I'll just say we requested a hearing in relationship to that motion that you're talking about. So if the Court is not going to hold a hearing on that, I would object to that. Because I think there are facts -- that we provided documents to the Court showing these emails back and forth between the U.S. Postal Inspector Service and the Fulton County District Attorney's Office talking about AUSA Jeff Brown and bringing him in on this.

So we've shown that there has been some discussion between these groups about the prosecution in this case. We provided a document showing that when there was an arrest and search of Mr. Pendergrass's office that it was a joint operation between APD and the U.S. Postal Service who is working -- and in the report, it says they want this to be a federal case, a federal investigation. And it names all the different jurisdictions that they think are involved.

So we think there is in evidence the record of some sort of working together between all these parties to determine how they wanted to prosecute this to maybe get the most advantage over Mr. Pendergrass that they could get. And I think that's what the motion is talking about is whether or not there was some sort of effort made by APD, U.S. Postal Service, U.S. Attorney's Office to delay this process out and make sure that Mr. Pendergrass was prosecuted in multiple jurisdictions and to make sure there continued to be a hold on him from Fulton County, which there was.

Mr. Pendergrass's counsel -- he was sentenced in Ohio for related activity. When he was sentenced in that case and he got to Jesup to serve his time, his counsel wrote to Fulton County and said, hey, we see you have this hold on him. What is happening with this case? The case has never been resolved even though they are way out of time in statute of limitations for the state case.

But that case remained open and kept a hold on Mr. Pendergrass while he was serving in another district so that he could not be released to a halfway house or anything else. It ensured that he came back to Georgia on the federal -- finally when the feds decided to do something, it ensured that he was still in custody and brought back to Georgia in custody.

So I think we've provided information showing that we

think there should at least be a hearing on this matter, that it shouldn't be summarily dismissed. Unless the Court is going to say yes, we agree, it does sound like there was some business going on to make sure that this was delayed as long as possible to ensure that he was prosecuted in multiple districts and that he was prejudiced by it, then -- you know, then we wouldn't have an objection.

But if the Court is inclined to say, well, I don't see a problem with this delay or with the prejudice, then I object to that. Because I think we need a hearing on it.

THE COURT: Okay. When I look -- I mean, I have glanced at it. And I have seen that -- you know, I kind of understand the facts as you present them and then the question is is that -- you know, is that the Government's prerogative to do it that way.

But I'll look at it. And I'll either, you know, decide that we need a hearing on it and set that up or I'll do an R&R one way or the other on that.

But in terms of other motions that you might want to file, we'll give you 30 days. If you need more time, you can always just let me know. But I mean, y'all are the ones talking about speedy trial. So at this point, it has been a long time.

MS. DURRETT: Right.

THE COURT: That is not your fault, and it is not Mr.

Pendergrass's fault. So I don't mean to say it that way. But there are concerns about speedy trial. So it has been going on a long time.

So let's just say -- let's try for 30 days and see if you can get into the computer. I'll go right now and approve it, if I haven't already done that.

And I mean, did you ask for a reasonable amount? Yes, I'm sure you did.

MS. DURRETT: I think it is reasonable. Persinger told me that is what he always asks for.

THE COURT: Okay. So I'll do that. Then let's just set up another conference.

Angela, what is a good day for us?

COURTROOM DEPUTY CLERK: So 30 days for filing motions will be August 1st.

THE COURT: August 1st --

COURTROOM DEPUTY CLERK: -- is motions.

THE COURT: -- for motions. And that doesn't mean you have to file any motions. It is just the day that will be the deadline if you choose to file a motion.

MS. DURRETT: Okay.

COURTROOM DEPUTY CLERK: What about August 7th at 9:30?

THE COURT: Can you do August 7 at 9:30?

MS. DURRETT: Yes.

MR. BROWN: Is that Monday or Tuesday?

COURTROOM DEPUTY CLERK: It is a Wednesday.

MR. BROWN: It is a Wednesday. That should be fine.

THE COURT: And, you know, I really don't mind doing -- having you come by phone, especially if it is just kind of scheduling issues.

If you want to be here, I think -- if you want to argue something, you probably want to come in person. I think it is stronger. But just for stuff like this, I think being on the phone is fine. So we'll just plan for that.

And that goes for the Government also. I know it is a little bit easier for you to get here.

We'll have that deadline of August 1st for motions; August 7 for our pretrial conference. And in the meantime, I will just take the motion to dismiss under advisement.

MS. DURRETT: Thank you.

THE COURT: Is there anything else we need to brief up? I think that is it; right?

MR. BROWN: No. That is it, Judge.

THE COURT: Okay. All right. Anything else, Ms. Durrett?

MS. DURRETT: No. Thank you, Your Honor.

THE COURT: Okay. Thank you for -- I appreciate you taking on this case, and I know that you came into it late, and you came actually at my recommendation. So I appreciate it.

MS. DURRETT: Thank you, Your Honor. I appreciate it.

THE COURT: Okay. We'll be in recess.

**(The audio-recorded proceedings were thereby concluded at 2:14 P.M.)**

C E R T I F I C A T E

UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA

I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of the United States District Court, for the Northern District of Georgia, Atlanta Division, do hereby certify that the foregoing 12 pages constitute a true transcript of proceedings had before the said Court, held in the City of Atlanta, Georgia, in the matter therein stated.

In testimony whereof, I hereunto set my hand on this, the 28th day of October, 2022.

Shannon R. Welch

SHANNON R. WELCH, RMR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT